Russell Davis (SBN 177959)
PACIFIC JUSTICE INSTITUTE
29 Lakewood Ave.
San Francisco, CA 94127
Tel. (415) 310-6575
rdavis@pji.org

Kevin T. Snider (SBN 170988)
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Fax (916) 857-6902
ksnider@pji.org

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SELINA KEENE, MELODY FOUNTILA, MARK MCCLURE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO; LONDON BREED, Mayor of San Francisco in her official capacity; CAROL ISEN Human Resources Director, City and County of San Francisco, in her official capacity; DOES 1-100,<br><br>Defendants. | Case No.: 4:22-cv-01587-JSW<br><br>**PLAINTIFFS' POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date: July 8, 2022<br>Time: 9:00 AM<br>Courtroom: 5<br><br>Date Action Filed: March 14, 2022<br>Trial Date: None set |

# INTRODUCTION

City Defendant's Motion to Dismiss two public official Defendants under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") is without merit and should be denied as such. Plaintiffs in the case at bar have named three Defendants (together, the "Defendants"), as indicated in the captioning above and consistent with the same captioning in the Defendants' Motion to Dismiss ("Motion"). The first named Defendant is the City and County of San Francisco ("City" or "CCSF"). The second and third named Defendants are each natural persons, and each individual is sued *only* in her official capacity: Mayor London Breed ("Mayor") is sued *only* in her official capacity as Mayor of San Francisco, and Carol Isen is sued *only* in her official capacity as Human Resources Director of the City and County of San Francisco ("Director"). Both the Mayor and Director are sued *only* in their official capacity; neither the Mayor nor the Director is sued in her individual/personal capacity.

The Motion rests on two claims:

> [A] The Individual Defendants are named in their official capacities only and the claims against them should therefore be dismissed as redundant of those asserted against the City and County of San Francisco ("City") and [B] because no individual liability exists for discrimination claims under Title VII or the California Fair Employment and Housing Act ("FEHA").

Motion to Dismiss, p. 2, ¶¶ 7-11. As to the first claim, the Motion cites only one inapplicable case. As to the second claim, Plaintiffs have not sued any Defendant in her individual capacity. To the extent the Motion cites case law with respect to individual liability and employment law, the case law is wholly irrelevant to the case at bar because the Mayor and Director are each sued in her official capacity only.

# ARGUMENT

**I. The Mayor and the Director are each a properly named Defendant in her official capacity, and no case law suggests their inclusion is "duplicative."**

Plaintiffs have properly plead claims against the City and against both the Mayor and the Director with respect to their official capacity. The Motion nonetheless asserts that claims against the Director and Mayor should be dismissed as "duplicative" of Plaintiffs' claims against

the City. *Id.* at 3, ¶ 16. There is no case law to support the Motion's "duplicative" assertion. For this claim, the Motion necessarily relies entirely upon a singular quotation from *Hofmann v. City and County of San Francisco*, 870 F.Supp.2d 799 (N.D. Cal. 2012) (*see* Motion, p. 3, ¶¶ 18-19), which in turn was quoting a footnote from a police dog bite case, *Chew v. Gates*, 27 F.3d 1432, 1446 n. 15 (9th Cir. 1994)) (*see* Motion, p. 3, ¶¶ 20-21).

In *Hofmann,* the "Defendants have moved to dismiss Plaintiffs' federal claims under §§ 1981, 1983 and 1985, pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Hofmann*, 870 F. Supp. 2d at 800. *Hofmann* did not address the dismissal of a public official—let alone the mayor as the official representative of the City—with respect to either Title VII or FEHA. In *Chew,* the defendants were subject to claims only under 42 U.S.C. § 1983. *Chew,* 870 F. Supp. 2d at 1435.[1]

As relevant to the case at bar, *Hofmann* did not dismiss either the Title VII claims or the FEHA claims against *any* defendant named in his or her official capacity. *Hofmann* cannot plausibly be read as standing for the proposition that a Title VII and/or FEHA claim against a City public official, only in her official capacity, is "duplicative" of a claim against a City. *Hofmann* states nothing of the kind.

Even in the context of §§ 1981, 1983, and 1985, *Hofmann* does not stand for the proposition that a lawsuit against the Mayor in her official capacity is duplicative of a lawsuit against the City. Ultimately, *Hofmann* determined liability by focusing on the City Charter, which directs liability squarely to the City's legal representative, the Mayor. *Hofmann,* 870 F. Supp. 2d at 802. *Hofmann* turns upon the capacity of a policy department and its officials to be named defendants *in addition* to the City and its officials. *Hofmann,* 870 F. Supp. 2d at 802. More precisely, *Hofmann* focused on the relationship between the SFPD and the City in order to determine whether any *additional* liability could be assigned to the SFPD as an entity *independent* of the City: "Defendants seek dismissal of the claims against SFPD because it is not an independent legal entity under the City Charter." *Hofmann*, 870 F. Supp. 2d at 802. The court

---

[1] *Chew* did not address defendants Title VII or FEHA, let alone defendants sued in their official capacity with respect to such employment laws.

found that, under the City Charter, the SFPD was not an independent entity. *Id.* No separate liability could be assigned to the SFPD, and thus no *separate* liability could be extended from the SFPD against two former SFPD chiefs acting in their *official capacity*. *Id.* at 802-803. "The claims against SFPD are deemed to be claims against the City." *Id.* at 803. For this reason, the claims against "the former Chiefs in their official capacities" also failed. *Id.* Without any independent liability of the SFPD, liability rested only with the City and City officials; no separate liability could be assigned to the SFPD and SFPD officials because the SFPD was not an entity independent of the City.[2]

For this reason, *Hofmann* points to the City Charter to properly assign and confine liability to the City and City officials, not to the SFPD and two former SFPD chiefs sued in their official *and* individual capacity: "Suits against persons acting in their official capacity generally represent only another way of pleading an action against the entity of which the officer is an agent." *Hofmann* 870 F. Supp. 2d at 803. *Hofmann* found that the SFPD and its agents could not be sued independently of the City, already properly named as the defendant.

The City Charter, of course, names the Mayor, not the SFPD and SFPD officials, as the legal representative of the City. Section 3.100 of the San Francisco City Charter unambiguously states that the Mayor is *the* official representative of the City: "The Mayor shall be the chief executive officer and the official representative of the City and County, and shall serve full time in that capacity." Defendant Mayor London Breed is thus sued as the individual who is acting Mayor of San Francisco, in her official capacity as the chief executive officer and official representative of CCSF. The City Charter commands that "[t]he Mayor shall enforce all laws relating to the City and County, and accept service of process on its behalf." San Francisco City Charter, § 3.100. Just as *Hofmann* looked to the City Charter to determine that the SFPD and its officials could not be assigned liability independent of the City, so too the City Charter directs

---

[2] Although *Hofmann* granted defendants' motion with respect to the dismissal of the SPFD and its officials, even then it granted dismissal leave to amend rather than dismissal with prejudice as requested by the Motion before this Court.

1  that the Mayor is the legal representative of the City. In a lawsuit against the City, the Mayor and

2  City officials—directly appointed "department heads" pursuant to § 3.100, part 19 of the City

3  Charter—have been properly named as Defendants in their official capacity in this case.

4  **II.  The Director and the Mayor are named as Defendants in their "official capacity" only,**

5  **and the Motion's focus on "individual liability" is wholly irrelevant to this case.**

6        No Defendant in this case is sued in their personal capacity, yet the Motion spends the

7  majority of its discussion focusing exclusively on personal-capacity lawsuits. The Motion has

8  perhaps fundamentally confused these two basic concepts: An official-capacity lawsuit is a

9  lawsuit against an individual, public official in their "official capacity"; whereas a personal-

10 capacity lawsuit is a lawsuit against an individual, public official in her personal or individual

11 capacity. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985).

12       As a preliminary matter, then, the Motion either misrepresents or misunderstands the

13 distinction between suing a defendant in an "official capacity" and suing a defendant in a

14 "personal/individual capacity." The U.S. Supreme Court has directly addressed the very

15 confusion demonstrated by the Motion:

> Proper application of this principle in damages actions against public officials requires careful adherence to the distinction between personal- and official-capacity suits. **Because this distinction apparently continues to confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal- and official-capacity actions**.
>
> **Personal-capacity suits seek to impose personal liability upon a government official** for actions he takes under color of state law. *See*, *e. g., Scheuer* v. *Rhodes*, 416 U.S. 232, 237-238 (1974). **Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."** *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon*, 469 U.S., at 471-472. It is *not* a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (emphasis added).

The specific guidance from the Supreme Court notwithstanding, the Motion proceeds to focus inexplicably on personal liability case law under Title VII and FEHA. The Motion concedes, twice over, that the "individual Defendants are named in their official capacities only" (Motion, p. 2, ¶¶ 7-8) and again that "[a]longside the City, Plaintiffs have named both Mayor Breed and Director Isen as individual defendants, but acknowledges that each is being sued in her 'official capacity' only" (Motion, p. 3, ¶¶ 3-4). Undeterred, the Motion argues extensively an issue that is not before this Court: whether a defendant can be sued in her individual/personal capacity under Title VII and/or FEHA. Of course, there are no such defendants in the case at bar.

Nonetheless, the Motion proceeds to reference and discuss *only* cases in which an individual defendant is sued, not in their official capacity but in only their individual/personal capacity:

- *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583 (9th Cir. 1993) (dismissing claims for "sex and age discrimination claims against six defendants in their **individual capacities**" because they "have no **personal liability** under Title VII and the ADEA," *id.* at 584, 587) (emphasis added) (Motion, p. 4, ¶¶ 2-3);

- *Grimes v. San Mateo County Transit Dist.*, 2013 WL 1739470 (N.D. Cal. Apr. 22, 2013) (granting only in part defense motion to dismiss claims against personal liability claims against "**individual**" defendants, *id.* at *27-28) (emphasis added) (Motion, p. 4, ¶¶ 4-5);

- *Scott v. Solano County Health & Soc. Serv. Dept.*, 459 F. Supp. 2d 959 (E.D. Cal. 2006) (citing to *Miller* simply to find that there is "no **personal liability**" under Title VII, *id.* at 965) (emphasis added) (Motion, p. 4, ¶¶ 5-6);

- *Reno v. Baird*, 18 Cal. 4th 640, 663 (1998) (citing *Janken* to address the question of "whether FEHA imposes **personal liability** on an individual employee" not sued in her official capacity, *id.* at 645) (emphasis added) (Motion, p. 4, ¶¶ 15-16); and

- *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 76-77 (1996) (declining to allow "**personal liability**" claims against supervisory employees where a "corporate policy violated the FEHA," *id.* at 78) (emphasis added) (Motion, p. 4, ¶ 20).

None of the foregoing address a public official sued in their official capacity, let alone sued only in their official capacity. Each of the preceding five cases advances only the proposition that a non-employer individual may not be subject to a claim of "personal liability" under Title VII and FEHA cases. Neither the Mayor nor the Director is sued in her personal capacity, and consequently none of the foregoing citations are relevant to this case.

**III. Plaintiffs' Complaint is well pled.**

Plaintiffs' Complaint alleges as follows:

> Defendant LONDON BREED is and was, at all times relevant to this action, Mayor of the City of San Francisco. She resides in San Francisco County. She is sued in her official capacity. The Mayor of the City and County of San Francisco is the head of the executive branch of the San Francisco City and County government. This officeholder has the duty to enforce city laws and the power to either approve or veto bills passed by the San Francisco Board of Supervisors. Because of San Francisco's status as a consolidated city-county, **the Mayor also serves as the head of government of the County and can issue executive orders and/or mandates, and did in fact issue a vaccine mandate for all CCSF employees.**

Complaint at ¶ 13 (emphasis added).

In other words, Plaintiffs have pled that Defendant Mayor London Breed is "the individual who committed the constitutional tort [and] was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy." *Hofmann*, supra, at 804.

The Complaint also alleges that Defendant Carol Isen is the head of the Department of Human Resources and as follows: "**The Human Resources Department executes the Mayor's vaccine mandate by terminating employees that are not vaccinated**." Complaint at ¶ 14 (emphasis added).

"Plaintiff may [allege] that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Hofmann*, supra, at 804. Thus, Plaintiffs have alleged that Defendant Mayor Breed issued a mandate and that Defendant Carol Isen has enforced it. These are sufficient facts to establish municipal liability and also raise jurisdictional issues, as argued below.

**IV. By suing Defendants Mayor Breed and Carol Isen in their official capacity, Plaintiffs are really suing their offices. The issue is whether or not those offices have the jurisdiction to issue health mandates in the first instance.**

### A. There is an issue of jurisdiction.

On May 12, 2022, opposing counsel first raised the issue of *Monell* liability in regards to Defendants Mayor Breed and Carol Isen. Plaintiffs' counsel responded on May 13, stating that Plaintiffs were suing the office of the Mayor and that there were jurisdictional issues at play. On May 14, opposing counsel wrote back asking what issues were at play. On May 20, Plaintiffs' counsel wrote back asking who (agency and person) issued the June 23, 2021 vaccine mandate. On May 31, Defendants responded and provided a document that indicates that it was the DHR that issued the mandate. It also indicates that DHR was implementing a policy of the Health Department. That document is the same as the document attached to the Russell Davis Decl. in Opposition as Exhibit 2. *See also*, Davis Decl. in Opposition, Exhibits 1, 3-4. On the same day, Plaintiffs' counsel wrote back stating that Plaintiffs needed the underlying policy and/or document referenced in Exhibit 2. To date that has not been provided. In addition, Defendants have artfully pled that Defendant Isen has not implemented Defendant Mayor Breed's mandate. *See* Answer, page 2, lines 7-9. That statement implies that Defendant Isen is implementing someone else's mandate. It should be obvious that Plaintiffs are entitled to know who that is.

It is axiomatic that Defendant CCSF can only act through its departments and agencies and the executives that are in charge of those departments and agencies. The jurisdictional issue raised by the Complaint is whether the offices of the Mayor and/or the Department of Human Resources (DHR) have the power (jurisdiction) to issue a vaccine mandate in the first place. Plaintiffs state that they have not read the entire municipal code and do not know whether any department or agency within CCSF has the power to issue the vaccine mandate at issue. If such power exists, it more than likely resides in the office of the Health Department. However, Plaintiffs have not been able to find any documentation that CCSF's Health Department or the Health Officer issued the mandate at issue. *See* Davis Decl. in Opposition, ¶ 6. More importantly, Defendants have not provided any such document. On information and belief, Plaintiffs allege that the office of the

Mayor and DHR do not have such power; therefore, the Mayor and head of DHR should remain in the Complaint.

**B. The Complaint is sufficient to raise the jurisdictional issue.**

Plaintiffs believe that the Complaint, ¶¶ 13-14, is sufficient to raise the jurisdictional issue referenced above. However, if this Court disagrees, it should grant Plaintiffs leave to amend, in order to more fully "flesh" out the jurisdictional issue. Plaintiffs anticipate that they will be filing a motion for preliminary injunction based on said jurisdictional issue. It is likely that a generic injunction against CCSF will not be granted if some agency within CCSF has the power to issue a vaccine mandate and did so. Defendants have not provided the requested documentation regarding who and what agency issued the actual mandate. If they had answered that question, it is possible that the instant Motion would not have been necessary. At this point in litigation it is too early to tell whether the Mayor's office or the office of the DHR issued the mandate and whether those offices have the jurisdiction to do so. Therefore, the Motion to Dismiss should be denied.

**V.  Defendants' argument cuts both ways.**

Defendants state that they have no personal liability and therefore should be dismissed from the Complaint. Plaintiffs agree that Defendants have no personal liability. Therefore, there is no prejudice to the Defendants by remaining in the case, pending resolution of the jurisdictional argument raised above.

**CONCLUSION**

Unresolved jurisdictional arguments remain, and there is no prejudice if Defendants Mayor Breed and Carol Isen remain in the case. Therefore, Defendants' Motion to Dismiss should be denied. If the Court deems it necessary, Plaintiffs can amend their Complaint to more fully develop the jurisdictional argument.

Respectfully submitted this 2nd day of June 2022 in San Francisco, California.

/s/ Russell Davis  
Russell Davis, Esq.  
PACIFIC JUSTICE INSTITUTE

*Attorney for Plaintiffs*