1   DAVID CHIU, State Bar #189542
    City Attorney
2   WAYNE K. SNODGRASS, State Bar #148137
    JAMES M. EMERY, State Bar #153630
3   KATE G. KIMBERLIN, State Bar #261017
    Deputy City Attorneys
4   City Hall, Room 234
    1 Dr. Carlton B. Goodlett Place
5   San Francisco, California 94102-5408
    Telephone:    (415) 554-4628 (Emery)
6                 (415) 554-3847 (Kimberlin)
    Facsimile:    (415) 554-4699
7   E-Mail:       jim.emery@sfcityatty.org
                  kate.kimberlin@sfcityatty.org
8
    Attorneys for Defendants
9   CITY AND COUNTY OF SAN FRANCISCO;
    LONDON BREED, Mayor of San Francisco in her official capacity; and
10  CAROL ISEN, Human Resources Director, City and County
    of San Francisco, in her official capacity
11

12                          UNITED STATES DISTRICT COURT

13                        NORTHERN DISTRICT OF CALIFORNIA

14

15  SELINA KEENE, MELODY FOUNTILA,          Case No. 22-cv-01587-JSW
    MARK MCCLURE,
16                                          **DEFENDANTS' OPPOSITION TO**
            Plaintiffs,                     **PLAINTIFFS' MOTION FOR PRELIMINARY**
17                                          **INJUNCTION**
            vs.
18                                          Hearing Date:    July 8, 2022
    CITY and COUNTY OF SAN FRANCISCO;       Time:            9:00 a.m.
19  LONDON BREED, Mayor of San Francisco in  Place:           Judge Jeffrey S. White
    her official capacity; CAROL ISEN, Human                  Oakland Courthouse
20  Resources Director, City and County of San                Courtroom 5 – 2nd Floor
    Francisco, in her official capacity; DOES 1-               1301 Clay Street
21  100,                                                       Oakland, CA 94612

22          Defendants.                     Trial Date:       None set.

23                                          Attachments:

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ............................................................................................... ii

3   INTRODUCTION ...............................................................................................................1

    STATEMENT OF FACTS ....................................................................................................2

4       I.      COVID-19 VACCINES OFFER SAFE AND EFFECTIVE PROTECTION

5               AGAINST THE VIRUS ...............................................................................................2

6       II.     SAN FRANCISCO'S VACCINATION POLICY SEEKS TO PROTECT
                EMPLOYEES AND THE PUBLIC CONSISTENT WITH COVID-19 PUBLIC

7               HEALTH GUIDANCE..................................................................................................3

8       III.    PLAINTIFFS DELAYED SEEKING A PRELIMINARY INJUNCTION ............3

    ARGUMENT........................................................................................................................4

9       I.      PLAINTIFFS HAVE NOT DEMONSTRATED IRREPARABLE HARM ..........4

10      II.     PLAINTIFFS' DELAY UNDERCUTS THEIR REQUEST.................................5

11      III.    PLAINTIFFS HAVE NOT ESTABLISHED THEY ARE LIKELY TO
                PREVAIL ON THE MERITS ........................................................................................6

12          A.      It is Well-Settled That Employers May Impose Vaccine Mandates............6

13          B.      Plaintiffs Have Not Demonstrated They Are Likely to Prevail Under

14                  Either Title VII or the FEHA.......................................................................8

15      IV.     THE EQUITIES WEIGH AGAINST GRANTING A PRELIMINARY
                INJUNCTION.................................................................................................................9

16  CONCLUSION..................................................................................................................10

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Cases**

*America's Frontline Doctors v. Wilcox*
No. EDCV211243JGBKKX, 2021 WL 4546923 (C.D. Cal. July 30, 2021) ...........................7

*Berry v. Department of Soc. Servs.*
447 F.3d 642 (9th Cir. 2006) ........................................................................................8

*Bridges v. Houston Methodist Hosp.*
543 F.Supp.3d 525 (S.D. Tex. 2021) ...........................................................................7

*Brown v. Smith*
24 Cal.App.5th 1135 (2018) ....................................................................................6, 9

*Chalk v. U.S. Dist. Ct.*
840 F.2d 701 (9th Cir. 1988) .......................................................................................5

*Children's Health Def., Inc. v. Rutgers*
No. CV2115333ZNQTJB, 2021 WL 4398743 (D.N.J. Sept. 27, 2021)........................7

*Costa Mesa City Emps. Ass'n v. City of Costa Mesa*
209 Cal.App.4th 298 (2012) ........................................................................................5

*Does 1-6 v. Mills*
No. 1:21-DV-00242-JDL, -- F.Supp.3d --, 2021 WL 4783626 (D. Maine Oct. 13, 2021) .......10

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*
575 U.S. 768 (2015)......................................................................................................8

*Enyart v. National Conf. of Bar Examiners*
630 F.3d 1153 (9th Cir. 2011) .....................................................................................5

*Fallon v. Mercy Catholic Med. Ctr. of Se. PA*
877 F.3d 487 (3rd Cir. 2017) .......................................................................................9

*French v. Davidson*
143 Cal.658 (1904) ......................................................................................................6

*Hartman v. Santa Clara County*
Case No. 22-cv-01591-YGR, Dkt No. 38 (N.D. Cal. June 1, 2022) .................................4, 6, 9

*Jacobson v. Massachusett*
197 U.S. 11 (1905)........................................................................................................6

*Keene, et al. v. City and County of San Francisco, et al.*
Case No. 21-09879-SK..........................................................................................3, 5, 6, 9

*Kheriaty v. Regents of the Univ. of Cal.*
No. SACV21001367JVSKESX, 2021 WL 4714664 (C.D. Cal. Sept. 29, 2021).........................7

*Klaassen v. Trustees of Ind. Univ.*
  7 F.4th 592 (7th Cir. 2021) ...........................................................................................6

*Los Angeles Memorial Coliseum Com. v. National Football League*
  634 F.2d 1197, (9th Cir. 1980) .....................................................................................9

*Lydo Enters., Inc. v. City of Las Vegas*
  745 F.2d 1211 (9th Cir. 1984) ......................................................................................5

*Messina v. College of New Jersey*
  No. CV2117576ZQDEA, -- F.Supp.3d --, 2021 WL 4786114 (D. N.J. Oct. 14, 2021)..............2

*Metoyer v. Chassman*
  504 F.3d 919 (9th Cir. 2007) ........................................................................................8

*Oakland Trib., Inc. v. Chronicle. Pub. Co., Inc.*
  762 F.2d 1374 (9th Cir. 1985) ......................................................................................5

*Pippin v. Playboy Entm't Grp., Inc.*
  No. 8:02CV2329T30EAJ, 2003 WL 21981990 (M.D. Fla. July 1, 2003) .................................6

*Plata v. Newsom*
  No. 01-CV-01351-JST, 2021 WL 5410608 (N.D. Cal. Nov. 17, 2021)................................2, 4

*Sampson v. Murray*
  415 U.S. 61 (1974)......................................................................................................4

*South Bay United Pentecostal Church v. Newsom*
  140 S.Ct. 1613 (2020)..................................................................................................6

*Stormans, Inc. v. Selecky*
  586 F.3d 1109 (9th Cir. 2009) ......................................................................................9

*Streight v. Pritzker*
  No. 3:31-CV-50339, 2021 WL 4306146 (N.D. Ill. Sept. 22, 2021).....................................7

*Together Employees v. Mass Gen. Brigham Inc.*
  32 F.4th 82 (1st Cir. 2022)...........................................................................................4

*Valdez v. Grisham*
  559 F.Supp.3d 1161 (D.N.M. 2021) ..........................................................................7, 10

*We the Patriots USA, Inc. v. Hochul*
  17 F.4th 266 (2d Cir. 2021) ..........................................................................................5

*Whitlow v. California Dep't of Educ.*
  203 F.Supp.3d 1079 (S.D. Cal. 2016)..............................................................................6

*Wisconsin v. Yoder*
  406 U.S. 205 (1972)....................................................................................................9

*Zucht v. King*
    260 U.S. 174 (1922) ............................................................................................................6

**Other References**

"What You Should Know About COVID-19 and the ADA, Rehabilitation Act, and Other EEO Laws."
    As of May 31, 2022, the website is available at https://www.eeoc.gov/wysk/what-you-should-know-
    about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ..................................................7

Catherine M. Brown, et al.
    *"Outbreak of SARS-CoV-2 Infections, Including COVID19 Vaccine Breakthrough Infections,*
    *Associated with Large Public Gatherings — Barnstable County, Massachusetts",* July 2021,
    MMWR MORB MORTAL WKLY REP 2021;70:1059-1062,
    https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w ..................3

Christina Farr, "*How San Francisco succeeded more than other U.S. cities in fighting the coronavirus*"
    CNBC (Aug. 8 2020, 3:01 PM), https://www.cnbc.com/2020/08/08/how-san-francisco-beat-other-
    us-cities-in-fighting-the-coronavirus.html ..................................................................................1

DFEH Employment Information on COVID-19.
    As of May 31, 2022, the website is available at https://www.dfeh.ca.gov/wp-
    content/uploads/sites/32/2020/03/DFEH-Employment-Information-on-COVID-19-FAQ_ENG.pdf 7

1

**INTRODUCTION**

2
3
4
5
6
7
8
9

In the midst of a global pandemic that has killed millions worldwide and more than one million people in the United States, the City and County of San Francisco has distinguished itself in its overwhelmingly successful efforts to curb COVID-19. By quickly implementing science-based protective measures, "San Francisco succeeded more than other U.S. cities in fighting the coronavirus."[1] To sustain this success, San Francisco implemented its Vaccination Policy requiring all City employees to be vaccinated absent applicable medical or religious accommodations. San Francisco's principal goal is to "provide a safe and healthy workplace. . . to protect its employees and the public."[2]

10
11
12
13
14

Nearly a year after the City issued its Vaccination Policy, two of the three plaintiffs – Selina Keene and Melody Fountila – belatedly seek a preliminary injunction to prohibit the City from applying its policy to them.[3] But, both Keene and Fountila retired from their City jobs months ago. The act Plaintiffs seek to enjoin – separation from employment – has already occurred, and there is an adequate remedy at law – monetary damages – for any harm they now claim.

15
16
17
18
19
20
21

Plaintiffs' request for an injunction also falls short because they have failed to argue, let alone establish, any likelihood of success. Plaintiffs make no attempt to demonstrate sincerely held religious beliefs that prohibit them from receiving a COVID-19 vaccination or that the City discriminated against them on the basis of those beliefs. Finally, Plaintiffs' request should be denied because the equities strongly weigh in favor of maintaining the City's Vaccination Policy. For each of these reasons, the City therefore respectfully requests the Court deny Plaintiffs' request for a preliminary injunction.

22

23
24

[1] Christina Farr, *How San Francisco succeeded more than other U.S. cities in fighting the coronavirus*, CNBC (Aug. 8 2020, 3:01 PM), https://www.cnbc.com/2020/08/08/how-san-francisco-beat-other-us-cities-in-fighting-the-coronavirus.html.

25
26

[2] Vaccination Policy at p. 1. The City's Vaccination Policy is incorporated by reference into Plaintiff's Complaint. (*See* Complaint, Dkt. No. 1, at ¶7). A copy of the Vaccination Policy is also attached as Exhibit F to the City's Request for Judicial Notice ("RJN") filed concurrently herewith.

27
28

[3] Though styled as a motion on behalf of all three plaintiffs, the third plaintiff in this matter – Mark McClure – is not mentioned in the moving papers, nor has he submitted a declaration in support of the motion. The City therefore concludes that the motion was brought only on behalf of Plaintiffs Keene and Fountila.

CCSF'S OPP. TO PLTS' MPI
CASE NO. 22-cv-01587-JSW

1

n:\govlit\li2022\220836\01605475.docx

**STATEMENT OF FACTS**

**I.    COVID-19 VACCINES OFFER SAFE AND EFFECTIVE PROTECTION AGAINST THE VIRUS**

As of May 31, 2022, more than 1,002,070 Americans have died of COVID-19. (RJN, Ex. A.) At present, three COVID-19 vaccines are widely available in the United States. The Pfizer and Moderna vaccines have received full approval from the U.S. Food and Drug Administration ("FDA"); the Johnson & Johnson vaccine has been approved through Emergency Use Authorization. (RJN Ex. B.) The Centers for Disease Control and Prevention ("CDC"), FDA, California Department of Public Health ("CDPH"), and San Francisco's Department of Public Health ("SFDPH") have all concluded that COVID-19 vaccines are safe. (RJN Ex. C.) The vaccines have also proven effective at reducing infections, serious illness, hospitalizations, and deaths from COVID-19. (RJN Ex. D.)

Contrary to Plaintiffs' baseless allegations that the vaccines are mere "treatments" that do not decrease spread of COVID-19, CDPH concluded that unvaccinated people are 4.8 times more likely to get COVID-19 than fully vaccinated people, 6.8 times more likely to be hospitalized, and 10.1 times more likely to die from COVID-19 than those who are fully vaccinated. (RJN Ex. E.)[4] And "because vaccinated individuals are less likely to become infected in the first place and also experience accelerated viral clearance," "[they] are less likely to infect others." *Plata v. Newsom*, No. 01-CV-01351-JST, 2021 WL 5410608, at 2 (N.D. Cal. Nov. 17, 2021).

Plaintiffs' repeated assertion in their motion papers that vaccinations do not reduce the spread of COVID-19 flies in the face of scientific consensus. *See, e.g., Messina v. College of New Jersey*, No. CV2117576ZQDEA, -- F.Supp.3d --, 2021 WL 4786114 (D. N.J. Oct. 14, 2021) ("the CDC has clearly opined that these constitute "vaccines." The Court has deferred to the expertise of the CDC and its guidance with respect to COVID-19 in the past and sees no reason to depart from it in this case."). And, Plaintiffs mischaracterize the scientific literature they do cite in their motion papers. As an example, Plaintiffs assert "[t]he CDC has acknowledged that the 'vaccinated' and 'unvaccinated' are equally likely to spread the virus. (Plaintiffs' MPA, at 2 & fn. 6). To the contrary, the scientific article

---

[4] Fully vaccinated people are people who have received vaccinations plus their booster dose if they are eligible.

Plaintiffs cite for this proposition states the exact opposite.[5]

## II.   SAN FRANCISCO'S VACCINATION POLICY SEEKS TO PROTECT EMPLOYEES AND THE PUBLIC CONSISTENT WITH COVID-19 PUBLIC HEALTH GUIDANCE

San Francisco issued its Vaccination Policy on June 18, 2021, and amended the policy most recently on January 4, 2022. (RJN Ex. F.)[6] The City's Vaccination Policy seeks to "provide a safe and healthy workplace, consistent with COVID-19 public health guidance and legal requirements," and "to protect its employees and the public as [the City] reopens services and returns more employees to workplaces." (*Id.* at p. 1.) Consistent with public health guidance from the CDC, FDA, CDPH and the San Francisco County Health Officer, the City generally requires employees to be vaccinated against COVID-19 as a minimum qualification of employment. (*Id.* at pp. 2-3.) Employees with a medical restriction or a sincerely held religious belief that prohibits them from receiving a vaccine have the opportunity to request a reasonable accommodation to be excused from the vaccination requirement. (*Ibid.*) Employees who fail to comply with the Vaccination Policy may face disciplinary action or non-disciplinary separation from employment for failure to meet the minimum qualifications for City employment.

## III.   PLAINTIFFS DELAYED SEEKING A PRELIMINARY INJUNCTION

Plaintiffs allege two claims against the City for religious discrimination under Title VII and California's Fair Employment and Housing Act ("FEHA"). (*See generally* Complaint at Dkt. 1). Both moving Plaintiffs acknowledge they have been aware of the City's Vaccination Policy since at least June 2021, and understood by no later than October 2021 that they faced separation from employment as a result of being unvaccinated. (Keene Decl. at ¶¶7, 19; Fountila Decl. at ¶¶6, 10-11). Nevertheless, Plaintiffs waited until December 21, 2021 to file their initial lawsuit against the City. (*See Keene, et al. v. City and County of San Francisco, et al.*, Case No. 21-09879-SK, Dkt. No. 1 (N.D. Cal. Dec. 21, 2021) ("*Keene I*")).

---

[5] Catherine M. Brown, et al., *Outbreak of SARS-CoV-2 Infections, Including COVID19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021*, MMWR MORB MORTAL WKLY REP 2021;70:1059-1062, https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w (last visited June 1, 2022) ("[D]ata from this report are insufficient to draw conclusions about the effectiveness of COVID-19 vaccines against SARS-CoV-2, including the Delta variant, during this outbreak.").

[6] The Second Amended Complaint contains an outdated version of the policy as Exhibit A.

1
2
3
4
5
6

Even then, Plaintiffs did not seek emergency relief. Instead, on February 28, 2022, Plaintiffs voluntarily dismissed their original lawsuit (*id.*, Dkt. No. 26), and refiled this narrower action on March 14, 2022.[7] They then waited more than two more months to bring their motion for a preliminary injunction. During that period, both moving Plaintiffs – Keene and Fountila – retired from employment with the City, effective March 30 and April 1, 2022, respectively. (Decl. of Keene at ¶19; Decl. of Fountila at ¶11).

**ARGUMENT**

**I.     PLAINTIFFS HAVE NOT DEMONSTRATED IRREPARABLE HARM**

"It is black letter law that 'money damages ordinarily provide an appropriate remedy' for unlawful termination of employment." *Together Employees v. Mass Gen. Brigham Inc.*, 32 F.4th 82 (1st Cir. 2022) (internal citation omitted). "[I]nsufficiency of savings or difficulties in immediately obtaining other employment – external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself – will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). The vast majority of courts considering similar employer vaccination policies during the COVID-19 pandemic have therefore concluded that preliminary injunctive relief is not appropriate because an individual's choice "between maintaining their employment or taking a vaccine that they do not want . . . does not constitute irreparable harm that warrants enjoining a vaccine mandate." *Plata v. Newsom*, No. 01-CV-01351-JST, 2021 WL 5410608, *3 (N.D. Cal. Nov. 17, 2021) (collecting nationwide cases denying preliminary injunctions against COVID-19 vaccine mandates).

In *Together Employees*, the Court of Appeals affirmed the district court's denial of a preliminary injunction sought by eight employees who had resigned, been terminated, or chose to receive a vaccine. 32 F.4th at 85. Concluding that "[m]oney damages would adequately resolve all of the alleged harms," the Court of Appeal expressly rejected the appellant's assertion they would suffer

[7] Plaintiffs' co-plaintiffs in *Keene I*, who worked for Santa Clara County, filed a separate action asserting identical Title VII and FEHA claims against their employer. On June 1, 2022, Judge Gonzales Rogers denied the Santa Clara plaintiffs' preliminary injunction motion that sought to enjoin Santa Clara's COVID-19 vaccination policy. *Hartman v. Santa Clara County*, Case No. 22-cv-01591-YGR, Dkt No. 38 (N.D. Cal. June 1, 2022).

1   not only loss of income and benefits, but irreparable harm in the form of "emotional distress, and

2   chilled religious exercise." *Id.* at 86 (internal citation omitted); *see also We the Patriots USA, Inc. v.*

3   *Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) (denying preliminary injunction because "adverse

4   employment consequences" resulting from vaccine mandate "are not the type of harm that usually

5   warrants injunctive relief"). Here, the moving Plaintiffs' allegations are typical of those in any

6   employment case, and their request for preliminary injunctive relief should be similarly rejected.

7         None of the cases Plaintiffs cite in their moving papers overcome the presumption that they are

8   *not* entitled to preliminary injunctive relief. Those cases concerned unique circumstances not present

9   here: the denial of accommodations for the California bar exam (*Enyart v. National Conf. of Bar*

10  *Examiners*, 630 F.3d 1153 (9th Cir. 2011)), reinstatement of a teacher suffering from AIDS with a few

11  "precious" months to live (*Chalk v. U.S. Dist. Ct.*, 840 F.2d 701 (9th Cir. 1988)), and the preparation

12  of bids to outsource the work of over 100 employees (*Costa Mesa City Emps. Ass'n v. City of Costa*

13  *Mesa*, 209 Cal.App.4th 298 (2012)). Because Plaintiffs' claims are typical of those rejected time-and-

14  again by other courts considering COVID-19 vaccine mandates, this Court should likewise deny

15  Plaintiffs' request.

16  **II.    PLAINTIFFS' DELAY UNDERCUTS THEIR REQUEST**

17        In addition, Plaintiffs' own conduct belies their claim of irreparable harm. Plaintiffs waited

18  nearly a year after they learned of the City's Vaccination Policy to seek preliminary injunctive relief.

19  "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and

20  irreparable harm." *Oakland Trib., Inc. v. Chronicle. Pub. Co., Inc*., 762 F.2d 1374, 1377 (9th Cir.

21  1985); *see also Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay

22  in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.").

23  Plaintiffs offer nothing to explain why they waited nearly a year, but suddenly need injunctive relief

24  now.

25        To the contrary, Plaintiffs' leisurely approach to this litigation demonstrates the absence of any

26  irreparable harm. In December 2021, Plaintiffs' commenced their original action challenging the

27  City's Vaccination Policy. (*See Keene I*, Dkt. No. 1.) Plaintiffs then dismissed their first action. (*Keene*

28  *I*, Dkt. No. 26.) They refiled their Title VII and FEHA claims, resisted a related case determination,

1   (*id.* Dkt. No. 31), and now months later seek a preliminary injunction in this Court. Plaintiffs'

2   maneuvering and long-delayed preliminary injunction motion reflect their shifting litigation tactics,

3   and are inconsistent with irreparable harm. *See Pippin v. Playboy Entm't Grp., Inc.*, No.

4   8:02CV2329T30EAJ, 2003 WL 21981990, at \*2 (M.D. Fla. July 1, 2003) (no irreparable injury where

5   "late request for preliminary injunctive relief is merely a change in litigation tactics"). This Court

6   relied in part on plaintiffs' delay when it recently denied the preliminary injunction motion of the

7   *Keene I* co-plaintiffs. *Hartman*, Dkt. #38 at 3.

**III.   PLAINTIFFS HAVE NOT ESTABLISHED THEY ARE LIKELY TO PREVAIL ON THE MERITS**

8

9   **A.   It is Well-Settled That Employers May Impose Vaccine Mandates**

10   For over 100 years, it has been well settled that the United States Constitution allows

11   compulsory vaccination. *Jacobson v. Massachusetts,*197 U.S. 11, 39 (1905); *Zucht v. King,* 260 U.S.

12   174, 176 (1922); *French v. Davidson,* 143 Cal.658, 662 (1904); *Brown v. Smith,* 24 Cal.App.5th 1135,

13   1143-1144 (2018); *Whitlow v. California Dep't of Educ.,* 203 F.Supp.3d 1079, 1083 (S.D. Cal. 2016).

14   In such matters, the Courts defer to local and state officials "to guard and protect" the welfare of the

15   people they serve. *Jacobson*, 197 U.S. at 38.

16   In the context of the current COVID-19 pandemic, the Supreme Court has reaffirmed this

17   deference, holding that when the government acts "'in areas fraught with medical and scientific

18   uncertainties,' their latitude 'must be especially broad.' Where those broad limits are not exceeded,

19   they should not be subject to second-guessing by an 'unelected federal judiciary' which lacks the

20   background, competence, and expertise to assess public health and is not accountable to the people."

21   *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613-1614 (2020). Federal courts

22   have therefore universally rejected attempts to enjoin COVID-19 vaccine mandates, such as the one at

23   issue here. *See, e.g*., *Klaassen v. Trustees of Ind. Univ.,* 7 F.4th 592 (7th Cir. 2021) (affirming district

24   court's denial of preliminary injunction motion seeking to enjoin Indiana University's vaccine

25   mandate: "Given *Jacobson v. Massachusetts*, … which holds that a state may require all members of

26   the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination

27   against SARS-CoV-2."); *Kheriaty v. Regents of the Univ. of Cal*., No. SACV21001367JVSKESX,

28

1   2021 WL 4714664 (C.D. Cal. Sept. 29, 2021) (University of California's vaccine mandate for

2   employees and students); *Children's Health Def., Inc. v. Rutgers*, No. CV2115333ZNQTJB, 2021 WL

3   4398743, (D.N.J. Sept. 27, 2021) (Rutgers University's vaccine mandate for students); *Streight v.*

4   *Pritzker*, No. 3:31-CV-50339, 2021 WL 4306146 (N.D. Ill. Sept. 22, 2021) (college's vaccine

5   mandate); *Valdez v. Grisham*, 559 F.Supp.3d 1161 (D.N.M. 2021) (New Mexico's vaccine mandate

6   for healthcare workers); *America's Frontline Doctors v. Wilcox*, No. EDCV211243JGBKKX, 2021

7   WL 4546923 (C.D. Cal. July 30, 2021) (University of California's vaccine mandate for employees and

8   students); *Bridges v. Houston Methodist Hosp.,* 543 F.Supp.3d 525 (S.D. Tex. 2021) (hospital's

9   vaccine mandate for employees).

10         Both the United States Equal Employment Opportunity Commission ("EEOC") and California

11   Department of Fair Employment and Housing ("DFEH") also explicitly approve the use of COVID-19

12   vaccine mandates by employers.[8] Such mandates are permissible so long as an employer does not

13   discriminate against employees on the basis of their protected characteristics and "provides reasonable

14   accommodations related to disability or sincerely-held religious beliefs." (DFEH Guidance at p. 7; *see*

15   *also* EEOC Guidance at Section L).

16         The City's Vaccination Policy comports with the legal requirements outlined in the cases cited

17   above as well in in the EEOC and DFEH Guidance. The Vaccination Policy is facially neutral and

18   allows for those with sincerely-held religious beliefs to seek reasonable accommodations. (RJN, Ex. F

19   at p. 6). Plaintiffs have neither offered evidence nor argument that the Vaccination Policy is invalid

20   and they therefore lack any basis to seek a preliminary injunction against the City's implementation of

21   the policy.

22

23

24

25         [8] *See* publicly available webpage maintained by the EEOC and entitled "What You Should
Know About COVID-19 and the ADA, Rehabilitation Act, and Other EEO Laws." As of May 31,
2022, the website is available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-

26   and-ada-rehabilitation-act-and-other-eeo-laws; publicly available webpage maintained by the DFEH
and entitled "DFEH Employment Information on COVID-19." As of May 31, 2022, the website is

27   available at https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2020/03/DFEH-Employment-
Information-on-COVID-19-FAQ_ENG.pdf. These websites are hereinafter referred to, respectively, as

28   "EEOC Guidance" and "DFEH Guidance."

**B.      Plaintiffs Have Not Demonstrated They Are Likely to Prevail Under Either Title VII or the FEHA**

Having failed to articulate any facial defect in the Vaccination Policy itself, Plaintiffs apparently seek to enjoin the City's application of that policy only as it pertains to their particular circumstances. However, neither moving party has offered evidence or argument to demonstrate they are likely to prevail on their Title VII or FEHA discrimination claims.

To establish a *prima facie* case under either Title VII or the FEHA, a plaintiff must demonstrate: (1) "a bona fide religious belief, the practice of which conflicts with an employment duty," (2) that plaintiff "informed [her] employer of the belief and conflict"; and (3) "the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." *Berry v. Department of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) (quotation marks omitted); *see also Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA."). Where, as here, the "gravamen" of the complaint is an employer's failure to accommodate a religious belief or practice, the plaintiff must demonstrate that her "need for an accommodation was a motivating factor in the employer's decision." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 & n.2 (2015).

In the instant case, neither Plaintiff Keene nor Plaintiff Fountila has offered evidence to suggest they have sincerely held religious beliefs, that those beliefs conflict with accepting a COVID-19 vaccination, or that the City took adverse actions because of their need for an accommodation. Rather, Plaintiff Keene asserts only that she is a "Christian" and "believe[s] in the sanctity of life." (Keene Decl., ¶8). Plaintiff Fountila similarly declares that she is "a Christian who believes in the sanctity of life" and that she "will not take a vaccine that was derived from murdered children." (Fountila Decl., ¶2). Setting aside Plaintiffs' profound misunderstanding of the science behind the available COVID-19 vaccines,[9] neither Plaintiff has demonstrated that their religious beliefs are sincere, that those beliefs conflict with receiving a COVID-19 vaccination, or that, as a result of any conflict, they require an accommodation.

_____

[9] *See* RJN, Ex. G, a compilation of materials regarding the myth that FDA-approved vaccines contain fetal cells.

CCSF'S OPP. TO PLTS' MPI                                    8                          n:\govlit\li2022\220836\01605475.docx
CASE NO. 22-cv-01587-JSW

1    Feeling passionately about something is not enough to give it the status of a religion in

2  someone's life. A personal preference is not religious in nature. *Wisconsin v. Yoder*, 406 U.S. 205, 215

3  (1972) ("[B]elief that is philosophical and personal rather than religious does not rise to the demands

4  of the Religion Clauses."); *see also Brown*,  24 Cal.App.5th at  1144. Social, political, or economic

5  philosophies, as well as mere personal preferences are also not religious beliefs protected by Title VII.

6  *See, e.g., Fallon v. Mercy Catholic Med. Ctr. of Se. PA*, 877 F.3d 487, 492 (3rd Cir. 2017) (belief that

7  "one should not harm their own body" and that flu vaccine "may do more harm than good" were not

8  religious in nature).

9    Plaintiffs have omitted any information that would allow the Court to conclude that they do, in

10  fact, have sincere religious beliefs as opposed to personal or political views, or that any beliefs they

11  have actually conflict with vaccination. Because they have not demonstrated any need for

12  accommodation, Plaintiffs have also failed to establish that the City took any action against them as a

13  result of such needs. Rather, Plaintiffs ask the Court to conclude that they can establish a likelihood of

14  success merely by alleging the City denied their requests for religious exemption. Such broad

15  allegations do not remotely meet the Plaintiffs' burden for obtaining a preliminary injunction. This

16  Court has already denied the *Keene I* co-plaintiffs' preliminary injunction motion for exactly these

17  reasons. *Hartman*, Dkt. No. 38.

18  **IV.    THE EQUITIES WEIGH AGAINST GRANTING A PRELIMINARY INJUNCTION**

19    "Traditional standards for granting a preliminary injunction impose a duty on the court to

20  balance the interests of all parties and weigh the damage to each, mindful of the moving party's

21  burden to show the possibility of irreparable injury to itself and the probability of success on the

22  merits." *Los Angeles Memorial Coliseum Com. v. National Football League*, 634 F.2d 1197, 1203,

23  no.9 (9th Cir. 1980). Moreover, "[i]f…the impact of an injunction reaches beyond the parties, carrying

24  with it a potential for public consequences, the public interest will be relevant to whether the district

25  court grants the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir.

26  2009). "When an injunction is asked which will adversely affect a public interest … the court may in

27  the public interest withhold relief until a final determination of the rights of the parties…." *Id.*

28  (quotation marks omitted).

1    The balance of equities does not tip in Plaintiffs' favor. Here, as numerous district courts have

2  already held, "the balance of equities tips in Defendants' favor given the strong public interest here

3  they are promoting—preventing further spread of COVID-19, a virus that has infected and taken the

4  lives of thousands of residents… Plaintiffs' requested relief here would weaken the efforts of

5  Defendants to carry out those goals." *Valdez*, 559 F.Supp.3d at 1182 (quotation marks and citation

6  omitted); *see also Does 1-6 v. Mills*, No. 1:21-DV-00242-JDL, -- F.Supp.3d --, 2021 WL 4783626 (D.

7  Maine Oct. 13, 2021) (finding the public interest "factor weighs heavily against granting preliminary

8  injunctive relief"). In short, the religious rights of two former City employees must be balanced with

9  the health, well-being, and safety of the entire City and the public its employees serve. In that

10  equation, the City must prevail.

**CONCLUSION**

11

12    Plaintiffs Keene and Fountila are not entitled to a preliminary injunction. They unreasonably

13  delayed their request, have failed to allege irreparable harm, and do not demonstrate likelihood of

14  success on the merits of their Title VII or FEHA claims. These factors, along with the strong public

15  interest in preventing the spread of COVID-19, all support the Court's denial of Plaintiffs' motion.

16

17  Dated: June 6, 2022

18
19                               DENNIS J. HERRERA
                             City Attorney
20                               WAYNE K. SNODGRASS
                             JAMES M. EMERY
21                               KATE KIMBERLIN
                             Deputy City Attorneys

22

23                       By: */s/ Kate G. Kimberlin*

24
                             Attorneys for Defendants
25                               CITY AND COUNTY OF SAN FRANCISCO,
                             MAYOR LONDON BREED and CAROL ISEN

26

27

28