1  DAVID CHIU, State Bar #189542
   City Attorney
2  JONATHAN ROLNICK, State Bar #151814
   Chief Labor Attorney
3  ADAM SHAPIRO, State Bar #245368
   LAUREN E. WOOD, State Bar #280096
4  Deputy City Attorneys
   Fox Plaza
5  1390 Market Street, 5th Floor
   San Francisco, California 94102-5408
6  Telephone:     (415) 554-3830
   Telephone:     (415) 554-4261
7  E-Mail:        adam.shapiro@sfcityatty.org
   E-Mail:        lauren.wood@sfcityatty.org
8

9  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO
10

11                UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13

14 | SELINA KEENE, MELODY FOUNTILA, | Case No. 4:22-cv-01587-JSW
   | MARK MCCLURE,

15 |        Plaintiffs, | **DECLARATION OF LAUREN E. WOOD IN
   |                    | SUPPORT OF ADMINISTRATIVE MOTION
16 |        vs.         | TO CONSIDER WHETHER CASES SHOULD
   |                    | BE RELATED
17 | CITY and COUNTY OF SAN FRANCISCO; |
   | LONDON BREED, Mayor of San Francisco in | **(Civil L.R. 3-12(b) and 7-11)**
18 | her official capacity; CAROL ISEN, Human |
   | Resources Director, City and County of San |
19 | Francisco, in her official capacity; DOES 1- |
   | 100,
20 |
   |        Defendants.
21 |_____| Case No. 3:22-cv-06013-CRB
   | THADDEUS SALEEM SHAHEED,
22 | JESSE MURILLO, RICARDO TREJO,
   | and PHILIPPE J. CABRAL,
23 |
   |        Plaintiffs,
24 |
   |        vs.
25 |
   | CITY AND COUNTY OF SAN
26 | FRANCISCO; and DOES 1 through
   | 100,
27 |
   |        Defendants.
28

                                                    1

| | |
|---|---|
| 1  DAVID GOZUM, | Case No. 4:22-cv-03975-KAW |
| 2       Plaintiff, | |
| 3       vs. | |
| 4  CITY AND COUNTY OF SAN FRANCISCO<br>   HUMAN SERVICES AGENCY, AND DOES<br>5  1 TO 100, | |
| 6       Defendants. | |
| 7  JOSE GUARDADO, MELISSA BORZONI,<br>   ANDREW MALONEY, ROMMEL<br>8  TAYLOR, PENNI EIGSTER, TARA<br>   AMADO, and DANIELLE BOLOGNA on<br>9  behalf of themselves and all other similarly<br>   situated persons, | Case No. 3:22-cv-4319-TLT |
| 10 | |
| 11      Plaintiffs, | |
| 12      vs. | |
| 13 CITY AND COUNTY OF SAN<br>   FRANCISCO; and DOES 1 through<br>14 100, | |

I, Lauren E. Wood, declare as follows:

1.      I am a Deputy City Attorney with the City and County of San Francisco (the "City"). Except as expressly stated herein, I have a personal knowledge of the matters set forth below and, if called as a witness, could and would testify truthfully thereto.

2.      Plaintiffs in the *Keene*, *Guardado*, and *Shaheed* Actions are all represented by the Pacific Justice Institute ("PJI"). Prior to filing this administrative motion, I contacted Kevin Snider of PJI, who is listed as counsel of record in all three actions. Mr. Snider indicated his agreement that *Guardado* and *Shaheed* should be related but declined to comment as to the *Keene* Action. Thereafter, Russell Davis of PJI, counsel of record in the *Keene* Action sent me an email advising that he "would not agree to consolidation." I sent a reply clarifying that the City was seeking to relate the cases, not consolidate them, and asked whether plaintiffs would oppose the City's administrative motion to relate the cases in accordance with Civil Local Rule 3-12. As of the time of this filing, Mr. Davis has not

2

responded to my email.  Accordingly, the City is uncertain as to whether the *Keene* plaintiffs will oppose this motion.

3.      Attached hereto as **<u>Exhibit 1</u>** is a true and correct copy of the Complaint filed in the *Keene* Action, which is Docket No. 1 in that action.

4.      Attached hereto as **<u>Exhibit 2</u>** is a true and correct copy of the Court's Order granting the City's Motion to Dismiss and Denying the Plaintiff's Motion for a Preliminary Injunction in the *Keene* Action, which is Docket No. 31 in that action.

5.      Attached hereto as **<u>Exhibit 3</u>** is a true and correct copy of the First Amended Complaint in the *Gozum* Action, which is Docket No. .

6.      Attached hereto as **<u>Exhibit 4</u>** is a true and correct copy of the Notice of Removal in the *Gozum* Action, which is Docket No. 1 in that action.

7.      Attached hereto as **<u>Exhibit 5</u>** is a true and correct copy of the Complaint in the *Guardado* Putative Class Action, which is Docket No. 1 in that action.

8.      Attached hereto as **<u>Exhibit 6</u>** is a true and correct copy of the Complaint in the *Shaheed* Action, which is Docket No. 1 in that action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct October 21, 2022 at San Francisco California.


*Lauren E. Wood*

LAUREN E. WOOD

# EXHIBIT 1

Russell Davis (SBN 177959)
PACIFIC JUSTICE INSTITUTE
29 Lakewood Ave.
San Francisco, CA 94127
Tel. (415) 310-6575
rdavis@pji.org

Kevin T. Snider (SBN 170988)
PACIFIC JUSTICE INSTITUTE
ksnider@pji.org
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Fax (916) 857-6902
ksnider@pji.org

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELINA KEENE, MELODY FOUNTILA, MARK MCCLURE, <br><br> Plaintiffs, <br><br> v. <br><br> CITY and COUNTY OF SAN FRANCISCO; LONDON BREED, Mayor of San Francisco in her official capacity; CAROL ISEN, Human Resources Director, City and County of San Francisco, in her official capacity; DOES 1-100, <br><br> Defendants. | Case No.: <br><br> **VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, DAMAGES** <br><br> [Demand for Jury Trial] |

1. COME NOW Plaintiffs SELINA KEENE, MELODY FOUNTILA, and MARK MCCLURE, employees of Defendant CITY and COUNTY OF SAN FRANCISCO (hereinafter CCSF), seeking declaratory and injunctive relief, in the form of a preliminary and permanent injunction, barring Defendants, and all those in active concert, from abridging Plaintiffs' constitutionally and statutorily protected fundamental rights guaranteed by the First Amendment, Title VII of the Civil Rights Act of 1964, and the California Fair Employment and Housing Act (FEHA). Plaintiffs also seek damages for violation of those same civil rights.

## JURISDICTION AND VENUE

2. This Court has jurisdiction and venue over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983 and 1988 because the Defendants are violating Plaintiffs' civil rights; and 42 U.S.C. § 2000e-5(f)(3), which confers original jurisdiction on federal district courts to address the deprivation of rights, privileges, and immunities secured by the United States Constitution and federal law, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

3. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, and Federal Rules of Civil Procedure, Rule 57 and 65.

4. Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the U.S. Constitution.

5. This Court has the authority to award Plaintiffs' attorneys' fees and costs associated with this action pursuant to 42 U.S.C. §§ 1983 and 1988 and other applicable laws.

6. Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b) because the relevant events have occurred and are threatened to occur in this jurisdictional district and division.

**The Vaccine Mandate**

7. On June 23, 2021, CCSF demanded that all 35,000 of its employees be vaccinated against COVID-19 or risk losing their jobs. The requirement would take effect once a COVID-19 vaccine received full authorization from the Food and Drug Administration. Due to the FDA's authorization of the Pfizer vaccine, the mandate was revised. Thereafter, in a mandate issued by Defendant LONDON BREED, all CCSF workers were to be vaccinated by November 1, 2021.

## PARTIES

**Plaintiffs**

8. Plaintiff SELINA KEENE, is and was at all times relevant to this action a qualified/eligible employee of Defendant CCSF, within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. Plaintiff resides in Contra Costa County, California. MS. KEENE is a Christian who believes in the sanctity of life. She is opposed to the vaccines because they were derived from stem cells from aborted fetuses, in direct contradiction to her Christian beliefs. Based on her sincerely held religious beliefs, KEENE requested a religious accommodation to the vaccine mandate. She responded to CCSF questionnaires about her religious beliefs; however, her request for accommodation to the vaccine mandate imposed by Defendant LONDON BREED was denied without explanation. KEENE also requested a medical exemption based on her a-fib condition; that request was also denied. The mandate at issue was implemented by Defendant CAROL ISEN, who as head of the CCSF's HR Department is responsible for implementing the vaccine mandates against all CCSF employees. In January 2022, KEENE contracted COVID-19 and recovered. She now has natural immunity.

9. Plaintiff MELODY FOUNTILA is and was at all times relevant to this action a qualified/eligible employee of Defendant CCSF, working for the CCSF within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. Plaintiff

resides in Contra Costa County, California. She was infected with and survived COVID-19. FOUNTILA is a Christian who believes in the sanctity of life. She is opposed to taking the current vaccines because they are derived from aborted fetal stem cells, in direct contradiction to her Christian beliefs. FOUNTILA responded to CCSF questionnaires about her religious beliefs; however, her request for accommodation to the vaccine mandate imposed by Defendant LONDON BREED was denied without explanation. The mandate at issue was implemented by Defendant CAROL ISEN, who as head of the CCSF's HR Department is responsible for implementing the vaccine mandates against all CCSF employees. FOUNTILA also requested a medical exemption based on the fact that she has natural immunity to COVID-19. Her medical exemption request was also denied.

10. Plaintiff MARK MCCLURE is and was at all times relevant to this action a qualified/eligible employee of Defendant CCSF, within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act. Plaintiff resides in San Mateo County, California. MR. MCCLURE is a Christian. He is opposed to taking the vaccines because they are derived from aborted fetal stem cells, in direct violation of his Christian beliefs. He responded to CCSF questionnaires about his religious beliefs; however, his request for accommodation to the vaccine mandate imposed by Defendant LONDON BREED was denied without explanation. The mandate at issue was implemented by Defendant CAROL ISEN, who as head of the CCSF's HR Department is responsible for implementing the vaccine mandates against all CCSF employees.

11. All Plaintiffs have received right to sue letters from the EEOC or the DFEH.

**Defendants**

12. Defendant CCSF is a qualified/eligible employer within the meaning of the California Fair Employment and Housing Act and Title VII and conducting its operations in San Francisco

County. It employs Plaintiffs FOUNTILA, KEENE, and MCCLURE. It is an administrative and political subdivision of California that consists of a geographic region with specific boundaries and some level of governmental authority.

13. Defendant LONDON BREED is and was at all times relevant to this action Mayor of the City of San Francisco. She resides in San Francisco County. She is sued in her official capacity. The Mayor of the City and County of San Francisco is the head of the executive branch of the San Francisco City and County government. This officeholder has the duty to enforce city laws and the power to either approve or veto bills passed by the San Francisco Board of Supervisors. Because of San Francisco's status as a consolidated city-county, the Mayor also serves as the head of government of the County and can issue executive orders and/or mandates, and did in fact issue a vaccine mandate for all CCSF employees.

14. Defendant CAROL ISEN is and was at all times relevant to this action head of the Human Resources Department of CCSF. She is being sued in her official capacity. The HR Department is tasked with maximizing employee productivity and protecting CCSF from any issues that may arise within the workforce. HR responsibilities include compensation and benefits, recruitment, firing, and keeping up to date with any laws that may affect the company and its employees. The Human Resources Department executes the Mayor's vaccine mandate by terminating employees that are not vaccinated. For purposes of this litigation, termination includes, but is not limited to, being placed on forced administrative leave or having employees use up their accrued benefits, such as FMLA time, sick time, and vacation time while waiting out the results of this litigation.

15. The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 100, inclusive are unknown to Plaintiffs at this time, who therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that

each of the fictitiously named Defendants are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and are legally responsible in some manner. Plaintiffs will seek leave to amend this Complaint when the true names, capacities, participation, and responsibilities have been ascertained.

16. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, that CCSF and Defendants named in this action as well as the fictitiously named Defendants, and each of them, were agents and employees of each other, and in so doing the things hereinafter complained of, were acting within the course and scope of such agency and/or employment and with the knowledge and consent of the remaining Defendants.

## STATEMENT OF FACTS

17. Plaintiffs herein incorporate paragraphs 1-16. Due to the vaccine mandates, supra, Plaintiffs have been forced to take administrative leave and to use sick time, vacation time, and FMLA time in order to mitigate their damages and to "buy" time while this litigation progresses.

18. Plaintiff FOUNTILA experienced hostility from vaccinated co-workers and had to check her feelings and emotions. She now loses sleep over the prospect of not being able to support herself. Assuming that CCSF wants their staff to have immunity to COVID-19, FOUNTILA's termination is especially egregious because she has natural immunity to the disease.

19. Plaintiff MCCLURE lost his pension and at age sixty (60) and worries about trying to search for another job. His employment with CCSF had been a reliable source of income, and at his age it is a hardship to seek full time employment. His family income has been cut in half. He can no longer afford health care. His mortgage payments are in jeopardy, and his utility bills are now unaffordable.

20. Plaintiff KEENE has an a-fib condition; that condition was exacerbated by stress incident to her fear of loss of income, medical benefits, promotional opportunities, retirement

income, and payments for her medical insurance. As a result, KEENE was forced to take disability leave on October 27, 2021. Because of her reduced income, she is in jeopardy of losing her home and is struggling to pay her utility bills.

21. The Defendants arbitrarily and unreasonably implemented the mandates. The mandates fail to address the reality that unvaccinated employees with accommodations can safely perform their job duties while protecting themselves, fellow employees, and the community they serve through non-pharmaceutical interventions, such as daily health screenings, wearing masks, quarantining, and in some cases, telecommuting for work. Before the mandate was implemented, the Plaintiffs were called heroes for staying on the job and working through the worst of the COVID-19 pandemic. During that time, the Defendants relied on weekly testing, wearing masks and PPE, and telecommuting as the primary means of protecting the peace, health, and safety of the public, other employees, and themselves. Now Plaintiffs are being terminated because they do not want to take a vaccine that violates their protected religious beliefs, and because the Defendants will not admit the efficacy of the prior means of protecting the public and their employees.

22. The mandates at issue ignore peer-reviewed studies comparing naturally acquired and vaccine acquired immunity. Those studies show overwhelmingly that natural immunity provides equivalent or greater protection against severe infection from COVID-19 than immunity generated by mRNA vaccines. The Defendants do not and cannot point to any evidence that vaccinated individuals have longer lasting or more complete immunity than those who have recovered from COVID-19. Early data also suggests that naturally acquired immunity may provide greater protection against COVID-19 variants than vaccine-induced immunity.

23. CCSF's refusal to allow an opt out, especially for employees with naturally acquired immunity, is not based on science. In line with this unreasonable and arbitrary refusal, CCSF does

not provide any process for employees to submit test results showing antibodies that provide natural immunity from COVID-19.

24. The mandates further presume that requiring vaccination of an individual that has already contracted and recovered from COVID-19 will not cause any short-term or long-term injuries. This presumption is based on absolutely no evidence and is purely conjectural.

**FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e *et seq*.**
**(Against All Named Defendants)**

25. Paragraphs 1 through 24 are hereby incorporated and realleged as though fully set forth herein.

26. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., provides broad workplace protections for people of sincere religious faith.

27. Among other protections, it is generally unlawful for an employer to "exclude or to suspend an employee, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1).

28. Within this framework, Title VII requires an employer to reasonably accommodate an employee's sincere religious observances and practices, unless such an accommodation would impose an undue hardship on the employer.

29. Pursuant to 42 U.S.C. § 2000e(j), "religion" in the employment context is defined as "all aspects of religious observance and practice, as well as belief." In view of this broad definition by Congress, it cannot be said that any employer covered by Title VII may legally or constitutionally require an employee to belong to any "bona-fide" religious organization as a condition for receiving an accommodation.

30. Title VII protects the Plaintiffs and other CCSF employees' rights to request religious or medical accommodations as needed. The employer is required to evaluate the request and determine through an interactive process whether reasonable accommodations can occur and the employee must be provided a reasonable opportunity to submit such requests. "Reasonable accommodation" means a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired. Such accommodation can be made herein by simply having Plaintiffs follow the same protocols that were followed at the height of the pandemic, when they were considered heroes for continuing to work. Doing so would not impose an undue hardship on any of the Defendants. Defendants have utterly failed to make reasonable accommodations for the Plaintiffs' religious accommodation requests. Given that employees could submit to daily health screenings, wearing masks, quarantining, and telecommuting for work, those requests for accommodation would not amount to an undue hardship on the Defendants. Those exact same accommodations were made and worked during the height of the pandemic in 2020 and 2021.

31. Plaintiffs' right to free exercise of religion cannot be conditioned on the Defendants' irrational mandates. As Christians who believe in the sanctity of life, they will not take vaccines derived from aborted fetal cell lines. All Defendants, in denying the Plaintiffs' exemptions, were doing so under color of law and also doing so in order to subject the Plaintiffs to ongoing coercion based on their religious beliefs, that is, they are being coerced into a choice between their religious convictions and continued employment. That coercion is harmful in and of itself and cannot be remedied after the fact and is a violation of their fundamental civil rights under the First Amendment and Title VII. Plaintiffs have been damaged as a result, and also seek equitable relief from these irrational mandates.

32. Plaintiffs herein seek declaratory and injunctive relief, mandating that Defendants stop their coercion based on the Plaintiffs' religious beliefs and to grant their religious accommodation requests. Plaintiffs further request the same relief for medical exemptions based on having had COVID-19 and its concomitant antibodies.

## SECOND CAUSE OF ACTION
**Violation of the California Fair Employment and Housing Act (Cal. Govt. Code § 12900 *et seq.*) – Failure to Provide Religious Accommodation (Against All Named Defendants)**

33. Plaintiffs hereby incorporate and reallege the preceding paragraphs 1-32 as though fully set forth herein.

34. Under FEHA, it is an unlawful employment practice for an employer to discriminate against any employee or other covered person because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer demonstrates that it has explored any available reasonable means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with their belief and observance, or permitting those duties to be performed at another time or by another person.

35. Plaintiffs are persons and employees of Defendants within the meaning of FEHA.

36. Defendants were at all times relevant herein employers for purposes of FEHA.

37. Plaintiffs are able to perform the essential functions of their jobs with Defendants and have been doing so successfully and commendably for many years, including working during the height of the pandemic.

38. The mandates at issue make clear that accepting certain vaccines are suddenly a de facto expectation for their positions.

39. Plaintiffs have strong, sincerely held religious beliefs that taking the COVID-19 vaccines would be morally wrong for them. This is due to the fact that as Christians they have a

duty to uphold the sanctity of life and they want no part of vaccines that are derived from aborted fetal cell lines. The Defendants herein are attempting to coerce Plaintiffs into violating their faith by making them choose between their faith and continued employment. These acts by Defendants violate the Plaintiffs' fundamental rights under Article I of the California Constitution and FEHA.

40. Plaintiffs have notified their supervisors of the conflict and in fact requested accommodations.

41. Accommodation would permit Plaintiffs to continue performing their essential functions as they have been doing for many years.

42. "Reasonable accommodation" means a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired. Defendants refused to explore available reasonable alternatives to the stated vaccine requirement or engage in any timely, interactive, meaningful, or good faith process with Plaintiffs to ascertain whether, in light of their extensive backgrounds and experience, they could in fact perform the essential functions of their positions without being vaccinated. That refusal to explore reasonable alternatives is based on the Defendants' goal to coerce the Plaintiffs into a choice between their religious convictions and continued employment. That coercion is ongoing and cannot be remedied after the fact. An accommodation can be made herein by simply having Plaintiffs follow the same protocols that were followed at the height of the pandemic, when they were considered heroes for continuing to work. Doing so would not impose an undue hardship on CCSF.

43. All Defendants, in denying the Plaintiffs' exemptions, were doing so under color of law. Plaintiffs have been damaged as a result and also seek equitable relief from these irrational mandates.

44. Defendants intentionally violated Plaintiffs' rights with malice and recklessness in violation of FEHA and Article I of the California Constitution. As a result of Defendants'

discriminatory actions, Plaintiffs suffered harm and are entitled to recover damages including but not limited to mental suffering, past and future lost earnings and benefits, and other compensatory damages in an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray this Court grants relief as follows:

1. A preliminary and permanent injunction requiring Defendants to accept all sincere requests for religious accommodations to taking the COVID-19 vaccinations;

2. A preliminary and permanent injunction requiring Defendants to accept all sincere requests for medical exemptions based on having COVID-19 antibodies acquired as a result of surviving a COVID-19 infection;

3. Plaintiffs request compensatory damages in an amount according to proof;

4. Plaintiffs request reasonable costs of suit and attorneys' fees; and

5. Plaintiffs request such other and further relief as the Court may deem appropriate.

Dated: March 4, 2022

/s/ Russell Davis
Russell Davis, Esq.
Kevin T. Snider, Esq.
PACIFIC JUSTICE INSTITUTE

*Attorneys for Plaintiffs*

1

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all causes of action and claims to which they have a right to a jury trial.

/s/ Russell Davis
Russell Davis, Esq.
Kevin T. Snider, Esq.
PACIFIC JUSTICE INSTITUTE

*Attorneys for Plaintiffs*

1  **<u>VERIFICATION</u>**

2      I, Selina Keene, am one of the Plaintiffs in the above-captioned matter. I have read the

3  VERIFIED COMPLAINT and am familiar with same. The contents are true and accurate and

4  known to me by personal knowledge, except for those matters which are stated on information and

5  belief, and as to those matters, I believe them to be true.

6      I declare under penalty of perjury, under the laws of the State of California, that the

7  foregoing is true and correct.

8      Executed this 7ᵗʰ Day of March 2022, in the County of _Contra Costa_ , State of

9  California.

10

11                             Selina Keene, Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Mark McClure, am one of the Plaintiffs in the above-captioned matter. I have read the VERIFIED COMPLAINT and am familiar with same. The contents are true and accurate and known to me by personal knowledge, except for those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed this 30 Day of March 2022, in the County of *San Mateo*, State of California.

Mark McClure, Plaintiff

VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

-14-

**VERIFICATION**

I, Melody Fountila, am one of the Plaintiffs in the above-captioned matter. I have read the VERIFIED COMPLAINT and am familiar with same. The contents are true and accurate and known to me by personal knowledge, except for those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed this 9 Day of March 2022, in the County of Contra Costa, State of California.

_____
Melody Fountila, Plaintiff

VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELINA KEENE, et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>CITY AND COUNTY OF SAN<br>FRANCISCO, et al.,<br><br>               Defendants. | Case No. 22-cv-01587-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS INDIVIDUAL DEFENDANTS AND DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 15, 19, 28 |

Now before the Court is the motion to dismiss claims against Defendants London Breed and Carol Isen as individuals sued in their official capacities and Plaintiffs' motion for a preliminary injunction. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and HEREBY GRANTS Defendants' motion to dismiss the individual defendants sued in their official capacities and DENIES Plaintiffs' motion for a preliminary injunction.[1]

## BACKGROUND

Selina Keene and Melody Fountila ("Plaintiffs"), City workers, filed this lawsuit against the City and County of San Francisco as well as Mayor London Breed and Carol Isen, as Director of Human Resources for the City and County of San Francisco ("City"), in their official capacities.

---

[1] Plaintiffs' *ex parte* motion for shortened time is DENIED as moot. (Dkt. No. 28.)

In their complaint, Plaintiffs allege that on June 23, 2021, the City mandated that all 25,000 of its employees be vaccinated against COVID-19 by no later than November 1, 2021.

Plaintiffs contend that the vaccinations are derived from stem cells from aborted fetuses and are therefore in direct contravention of their deeply held religious beliefs. Based on these beliefs as well as their understanding that their naturally-acquired immunity was sufficiently strong, Plaintiffs refused to get vaccinated. Having failed to cooperate with the mandate, Plaintiffs have left their employment.

Plaintiffs contend that the vaccine mandate is arbitrary and unreasonably implemented. They further contend that the mandates "ignore peer-reviewed studies comparing naturally acquired and vaccine acquired immunity . . . [which] show that natural immunity provides equivalent or greater protection against severe infections from COVID-19 than immunity generated by mRNA vaccines." (Complaint at ¶ 22.) Plaintiffs contend that that the vaccines are really only treatments for COVID-19 and are not effective in preventing infection, transmission, or reinfection of the virus.

Based on these allegations, Plaintiffs contend that the City's mandatory vaccination program violates their rights under Title VII of the Civil Rights Act of 1964 which provides broad protections for people of religious beliefs. Plaintiffs allege that the City failed to accommodate the free exercise of their sincere religious observances and practices. Plaintiffs also allege that the mandatory vaccination program constitutes an unlawful employment practice under the California Fair Employment and Housing Act by failing to accommodate their religious beliefs or observances.

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

**A. Motion to Dismiss Individual Defendants.**

**1. Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most

1   favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

2           Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a

3   plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels

4   and conclusions, and formulaic recitation of the elements of a cause of action will not do."

5   *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to

6   *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege

7   "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial

8   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

9   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

10  678 (2009) (citing *Twombly*, 550 U.S. at 556).

11          If the allegations are insufficient to state a claim, a court should grant leave to amend

12  unless amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th

13  Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th

14  Cir. 1990).  "A pro se litigant must be given leave to amend his or her complaint unless it is

15  absolutely clear that the deficiencies in the complaint could not be cured by amendment."  *Noll v.

16  Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in*

17  *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).  However, a court "is not

18  required to accept legal conclusions cast in the form of factual allegations if those conclusions

19  cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d

20  752, 754-55 (9th Cir. 1994).

21          **2.      Claims Against Individual Defendants Breed and Isen.**

22          In addition to naming the City and County of San Francisco as a defendant, Plaintiffs have

23  also sued London Breed, Mayor of San Francisco, and Carol Isen, as Director of Human

24  Resources for the City and County of San Francisco, in their official capacities.  Defendants move

25  to dismiss the named individual defendants sued in their official capacities, arguing that the

26  addition of the individuals is unnecessary and duplicative of claims pending against the City and

27  County.

28          Plaintiffs allege two claims against the individual officials for religious discrimination

United States District Court
Northern District of California

3

United States District Court
Northern District of California

under Title VII and the FEHA.  To establish a cause of action for religious discrimination under either statute, Plaintiffs must demonstrate (1) "a bona fide religious belief, the practice of which conflicts with an employment duty," (2) that plaintiffs "informed [their] employer of the belief and conflict"; and (3) "the employer discharged, threatened, or otherwise subjected [them] to an adverse employment action because of [their] inability to fulfill the job requirement."  *Berry v. De't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) (quotation marks omitted); *see also Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA.").  In order to prevail on a claim for religious discrimination, a plaintiff must allege that an employer failed to accommodate a religious belief or practice and the plaintiff's "need for an accommodation was a motivating factor in the employer's decision."  *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 & n.2 (2015).

In this matter, where Plaintiffs have sued the employer, here the City and County of San Francisco, the addition of the individual mayor and director of human resources is duplicative. *See Ames v. City of Novato*, No. 16-cv-02590-JST, 2016 WL 6024587, at *4 (N.D. Cal. Oct. 14, 2016) (collecting cases in which "courts have dismissed Title VII claims against individual employees sued in the official capacities as redundant where the employer is also named as a defendant.").  Where the plaintiff sues both the individual defendant in her official capacity and the entity itself, "the court may dismiss the officer as a redundant defendant" because "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity."  *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

Accordingly, the Court GRANTS the motion to dismiss the individual defendants Breed and Isen sued in their official capacities.

**B.      Motion for Preliminary Injunction.**

**      1.      Legal Standard.**

Preliminary injunctive relief is an "extraordinary and drastic remedy" that is never awarded as of right.  *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal citations omitted).  In order to obtain such relief, Plaintiff must establish: (1) she is likely to succeed on the merits; (2) she is

4

likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In *Alliance for the Wild Rockies v. Cottrell*, the Ninth Circuit held that the "serious questions" sliding scale approach survives *Winter*. 632 F.3d 1127, 1134-35 (9th Cir. 2011). Thus, a court may grant a request for a preliminary injunction if a plaintiff demonstrates that there are serious questions going to the merits and a hardship balance that tips sharply in their favor, if the other two elements of the *Winter* test are also met. *Id.* at 1132.

However, a plaintiff also must show that she is likely to suffer irreparable injury and that the injunction is in the public interest. *Id.* at 1135. "For the purposes of injunctive relief, 'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).

Serious questions are "substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1952). Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits." *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985).

### 3. Plaintiffs Have Not Established That They Are Likely to Prevail on the Merits.

Plaintiffs have sued the City and County of San Francisco for the institution and application of a vaccine mandate as a condition of their continued employment. In the complaint and in conjunction with their motion for preliminary injunction, Plaintiffs contend that the vaccine is a mere treatment, and a not so effective one at that. Plaintiffs also allege that the vaccine "is derived from murdered children" and therefore violates their Christian beliefs. (Dkt. No. 19-3, Declaration of Selina Keene, ¶ 8.) Plaintiffs also assert that they have natural immunity derived from having had COVID-19 previously.

Contrary to Plaintiffs' unfounded assertions, the California Department of Public Health has determined that unvaccinated people are considerably more likely to get and pass along

COVID-19 than fully-vaccinated people. (Request for Judicial Notice, Ex. E.) In addition, unvaccinated people are more likely to be hospitalized and more likely to die if they contract the disease. And "because vaccinated individual are less likely to become infected in the first place and also experience accelerated viral clearance, … [they] are less likely to infect others." *Plata v. Newson*, No. 01-cv-01351-JST, 2021 WL 5410608, at *2 (N.D. Cal. Nov. 17, 2021).

Not only do the assertions by Plaintiffs fly in the face of scientific consensus, their claims fail to recognize well-settled law allowing for compulsory vaccination as a condition for employment. *See, e.g., Jacobson v. Massachusetts*, 197 U.S. 11, 39 (1905). Neither Plaintiff has demonstrated that their religious beliefs are sincere or that those beliefs conflict with receiving the COVID-19 vaccine. There are no grounds upon which to assert the mistaken conclusion that the FDA-approved vaccines contain fetal cells or are otherwise derived from murdered babies. (*See, e.g.,* Request for Judicial Notice, Ex. G.) Feeling passionately about something or having a specific personal preference does not merit the status of a sincere religious belief. *See Wisconsin v. Yoder*, 496 U.S. 205, 215 (1972) ("[B]elief that is philosophical and personal rather than religious does not rise to the demands of the Religion Clause."). Personal preferences are not beliefs protected by Title VII or FEHA. Accordingly, Plaintiffs have not established that they are likely to prevail on the merits of their claims.

### 4. Plaintiffs Have Not Demonstrated Irreparable Harm.

Plaintiffs argue that they will face irreparable harm absent an injunction of the application of the vaccination mandate because they have been forced to choose between maintaining their employment or taking a vaccine that they do not want. The majority of courts who have considered this issue have concluded that such a choice does not constitute irreparable harm. *See Plata*, 2021 WL 5410608, at *3 (collecting cases upholding vaccine mandates). It is well-settled law that loss of employment does not constitute irreparable harm for purposes of an injunction. *See id.*

### 5. Balance of Equities and Public Interest Weighs in Favor of Denial.

Even if Plaintiffs had made a showing of likelihood of success on the merits or demonstrated that they suffer irreparable harm, the Court finds that the balance of hardships and

the public interest weigh sharply in favor of denial of an injunction.  The public interest in

preventing the spread of COVID-19 strongly favors increased vaccination rates as mandated by

the City and County of San Francisco.  Moreover, "[i]f . . . the impact of an injunction reaches

beyond the parties, carrying with it a potential for public consequences, the public interest will be

relevant to whether the district court grants the injunction."  *Stormans, Inc. v. Selecky*, 586 F.3d

1109, 1139 (9th Cir. 2009).  Even considering the specific harm of the individual plaintiffs in this

matter who were compelled to retire early, "when balancing that harm against the legitimate and

critical public interest in preventing the spread of COVID-19 by increasing the vaccination rate

. . . the Court finds the balance weighs in favor of the broader public interests."  *Mass. Corr.*

*Officers Federated Union v. Baker*, 567 F. Supp. 3d 315, 327 (D. Mass. 2021).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the

individuals in their official capacities and DENIES Plaintiffs' motion for a preliminary injunction.

The Court HEREBY SETS an initial case management conference for November 4, 2022

at 11:00 a.m.  The parties shall submit a joint case management statement no later than October

28, 2022.

**IT IS SO ORDERED.**

Dated: September 23, 2022

_____

JEFFREY S. WHITE

United States District Judge

EXHIBIT 3

1   Arkady Itkin (SBN 253194)
2   Law Office of A. Itkin
    57 Post Street, Suite 812
3   San Francisco, CA 94104
    Telephone: (415) 640-6765
4   Fax: (415) 508-3474
    arkady@arkadylaw.com
5
6   Attorney for Plaintiff,
    DAVID GOZUM
7

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**05/26/2022**
**Clerk of the Court**
BY: KAREN VALDES
Deputy Clerk

8                   SUPERIOR COURT OF CALIFORNIA

9         COUNTY OF SAN FRANCISCO - UNLIMITED CIVIL JURISDICTION

10  DAVID GOZUM,                          )   **CASE NO.: CGC-22-599306**
                                          )
11            Plaintiff,                  )
                                          )   **FIRST AMENDED COMPLAINT FOR**
12  vs.                                   )   **DAMAGES AND REQUEST FOR JURY**
                                          )   **TRIAL AND INJUNCTIVE RELIEF**
13                                        )
                                          )
14  CITY AND COUNTY OF SAN                )   **1. FAILURE TO PROVIDE**
    FRANCISCO HUMAN SERVICES              )   **   REASONABLE RELIGIOUS**
15  AGENCY, AND DOES 1 TO 100,            )   **ACCOMMODATIONS AND**
                                          )   **TERMINATION IN VIOLATION OF**
16                                        )   **FEHA**
                                          )
17            Defendants                  )   **2. VIOLATION OF TITLE VII OF THE**
                                          )   **   CIVIL RIGHTS ACT OF 1964 FOR**
18                                        )   **FAILURE TO ACCOMMODATE ON**
                                          )   **THE BASIS OF RELIGION**
19                                        )
20  _____
21
22
23  COMES NOW PLAINTIFF GOZUM and complains and alleges as follows:
24                          **<u>NATURE OF THE ACTION</u>**
25       1.      This is an individual action brought by an employee against his former employer City
26  and County of San Francisco Human Services Agency. Plaintiff David Gozum (hereinafter
27  "Plaintiff") alleges violations of the Fair Employment and Housing Act (hereinafter "FEHA") and
28
                                        -1-

1  violations of Title VII, based upon the Defendants' failure to accommodate his religion by refusing

2  to grant exemption from the Covid-19 vaccination mandate and terminate his employment as a

3  result.

### PARTIES

5       2.      Plaintiff is and at all material times alleged herein, was a resident of County of San

6  Francisco.

7       3.      At all material times alleged herein, Plaintiff was employed by Defendant the City

8  and County of San Francisco Human Services Agency.

9       4.      In addition to the Defendant named above, Plaintiff sues fictitiously Defendants

10  DOES 1 through 100, pursuant to Code of Civil Procedure §474, because their names, capacities,

11  status, or facts showing them to liable are not presently known. Plaintiff will amend this complaint

12  to show their true names and capacities, together with appropriate charging language, when such

13  information has been ascertained.

### JURISDICTION AND VENUE

15      5.      The acts of Defendants that form the basis for the causes of action in this complaint

16  occurred in the County of San Francisco. Therefore, the San Francisco venue is proper.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

18      6.      Plaintiff timely obtained a Right to Sue letter from the Department of Fair Employment

19  and Housing (hereinafter "DFEH"), a true and correct copy of which is attached hereto as Exhibit A.

20

### FACTUAL ALLEGATIONS

22      7.      Plaintiff started working for the Defendants around August 9, 2010 as a 2910 Social

23  Worker with IHSS program. Plaintiff was promoted to his most recent position of Employment

24  Training Specialist IV around March 2013.

25      8.      Around August 11, 2021, Plaintiff submitted the City's vaccine declination form and

26  submitted his request for religious accommodation to be exempted from the Defendants' Covid-19

27

28                                                  -2-
_____

*First Amended* Complaint for Damages and Demand of Jury Trial;

1    vaccine mandate based on his religious beliefs. Plaintiff submitted a number of documents

2    supporting his request, which reflected a history of his religious practice.  The Defendants denied

3    Plaintiff's request for an accommodation due to "insufficient documentation".

4          9.      Plaintiff was working remotely since May 26, 2020. Plaintiff was foreseeable going to

5    continue working remotely indefinitely due to the nature of his assignment.

6          10.     Around November 1, 2021, Plaintiff was notified that he will not be able to continue

7    working remotely due to vaccine mandate and he was placed on paid administrative leave.

8          11.     On November 9, 2021, Plaintiff provided seven additional documents supporting his

9    request for exemption from the vaccination requirements. Those documents reflected Plaintiff's

10   extensive background and involvement in religious studies.

11         12.     On November 12, 2021, Plaintiff provided a signed letter from Rev. Pastor Alois

12   Ramos of Faith Bible Church of San Francisco to further show proof of his religious beliefs.

13         13.     Plaintiff was officially dismissed from his employment with the Defendants on April

14   1, 2022.

15

16                              **FIRST CAUSE OF ACTION**
                     FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS OF FEHA
17

18         14.     Plaintiff hereby incorporates by reference paragraphs 1 through 13, as though fully set

19   forth herein.

20         15.     At all times material to this complaint, Plaintiff was a person who held a sincerely

21   religious belief within the meaning of FEHA.

22         16.     Defendant is an employer within the meaning of the FEHA.

23         17.     On information and belief, Plaintiff alleges that, during times material here,

24   the Defendant violated the FEHA by failing to provide reasonable accommodations to Plaintiff's

25   religious beliefs and by denying his request to be exempt from the Covid-19 vaccine mandate.

26         18.     The effect of the above actions and omissions have been to deprive Plaintiff of equal

27

28                                       -3-

1  employment opportunities and otherwise adversely affect his status as an employee because of his

2  disability.

3       19.    As a direct and further proximate result of the above violations of her rights under the

4  FEHA, Plaintiff has suffered compensatory damages in the form of past and future wage loss, and

5  emotional distress.

6       20.    As a result of Defendant's unlawful acts, Plaintiff is entitled to compensatory

7  damages, equitable relief, and attorney's fees and costs.

8  **SECOND CAUSE OF ACTION**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 FOR FAILURE TO**
9  **ACCOMMODATE ON THE BASIS OF RELIGION**

10       21.    Plaintiff hereby incorporates by reference paragraphs 1 through 20, as though fully set

11
12  forth herein.

13       22.    Title VII forbids an employer from refusing a job to someone because of his need for

14  religious accommodation absent proof that granting the accommodation would cause it undue

15  hardship. 42 USC §§ 2000e(j), 2000e-2(a)(1); EEOC v Abercrombie & Fitch Stores, Inc., 575 US

16  768, 774 (2015).

17       23.    The Defendants denied Plaintiff's request for religious accommodation, providing

18
19  which would not have imposed an undue hardship on the Defendants.  Further, the Defendants did

20  not propose any alternative reasonable accommodations to Plaintiff.

21       24.    As a result of the Defendants' violations, Plaintiff suffered lost income and other

22  economic and non-economic damages.
23

24  **PRAYER FOR RELIEF**

25  **WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

26      1.    For compensatory damages;
27

28  -4-

---

*First Amended* Complaint for Damages and Demand of Jury Trial;

2.      For equitable relief, including but not limited to full reinstatement with full backpay;

3.      For statutory attorneys' fees and costs of suit, for any applicable interest;

4.      For injunctive relief as no plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein;

5.      For judicial declaration of the rights and duties of the respective parties; and

4.      For such other and further relief as is just and proper.

//

DATED: May 26, 2022                          RESPECTFULLY SUBMITTED,


BY: _____
Arkady Itkin
Attorney for Plaintiff,
DAVID GOZUM

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial for each and every claim for which she has a right to a jury trial.


DATED: May 26, 2022                          RESPECTFULLY SUBMITTED,


BY: _____
Arkady Itkin
Attorney for Plaintiff,
DAVID GOZUM

-5-

*First Amended* Complaint for Damages and Demand of Jury Trial;

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency        GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**     KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 684-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

March 18, 2022

David Gozum

RE: **Notice of Case Closure and Right to Sue**
  DFEH Matter Number: 202203-16452118
  Right to Sue: Gozum / City and County of San Francisco; Human Services
  Agency.

Dear David Gozum:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective March 18, 2022 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact DFEH's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Form DFEH-ENF 80 RS (Revised 02/22)

**PROOF OF SERVICE BY MAIL**

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 57 Post Street, Suite 812, San Francisco, CA 94104. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On June 6, 2022, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

in a sealed envelope, postage fully paid, addressed as follows:

Amy Super
City Attorney's Office
1390 Market Street, 5th Floor
San Francisco, CA 94102-5408
amy.super@sfcityatty.org


Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare under penalty of perjury under the laws of the State of California that he above is true and correct.

Executed on June 6, 2022, at San Francisco, California.

_____
ARKADY ITKIN

EXHIBIT 4

1  DAVID CHIU, State Bar #189542
   City Attorney
2  JONATHAN C. ROLNICK, State Bar #151814
   Chief Labor Attorney
3  AMY SUPER, State Bar #274617
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, 5th Floor
5  San Francisco, California 94102-5408
   Telephone:     (415) 554-3931
6  E-Mail:        amy.super@sfcityatty.org

7  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO

8

9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12  DAVID GOZUM,                          Case No.

13          Plaintiff,                    **NOTICE OF REMOVAL OF ACTION
                                          PURSUANT TO 28 U.S.C. §§ 1441 AND 1446**
14          vs.
                                          Date Action filed:     April 22, 2022
15  CITY AND COUNTY OF SAN FRANCISCO
    HUMAN SERVICES AGENCY, AND DOES
16  1 TO 100,

17          Defendants.

18

19

20      **TO THE CLERK OF THE DISTRICT COURT FOR THE NORTHERN DISTRICT OF**

21  **CALIFORNIA AND TO PLAINTIFF DAVID GOZUM AND HIS ATTORNEY OF RECORD:**

22          NOTICE IS HEREBY GIVEN that Defendant City and County of San Francisco

23  ("Defendant") in the captioned action, San Francisco Superior Court Case No. CGC 22-599306,

24  hereby files in the United States District Court for the Northern District of California, a Notice of

25  Removal of said action to said United States District Court, pursuant to 28 U.S.C. §1441, and are

26  filing in said Superior Court a Notice of Removal.

27

28

NOTICE OF REMOVAL                                      n:\labor\li2022\220985\01612319.docx

## STATE COURT ACTION

Pursuant to 28 U.S.C. §1441, Defendant presents the following facts to the Judges of the United States Court for the Northern District of California:

On or about June 6, 2022, Plaintiff David Gozum filed a First Amended Complaint.  A copy of the First Amended Complaint ("First Amended Complaint") filed in the San Francisco Superior Court was served on Defendant City and County of San Francisco on or about June 6, 2022.  The First Amended Complaint alleges claims arising under Title VII 42 U.S.C. Section 2000e, et seq.  A true and correct copy of the First Amended Complaint received by Defendant is attached as **Exhibit A**.

On July 6, 2022, Defendant City and County of San Francisco filed its Answer to Plaintiff's First Amended Complaint for Damages in Superior Court of California, in and for the City and County of San Francisco, Action No. CGC CGC-22-599305.  A copy of the Answer was filed and served on Plaintiff on or about July 6, 2022.  A true and correct copy of the Answer served on Plaintiff is attached as **Exhibit B.**

The above represents the only pleadings, processes and orders on file with the Superior Court to the knowledge of the undersigned, as required by 28 U.S.C. §1441.  The above also represents a true and accurate description of the status of the Superior Court action.

## JURISDICTION

Where a defendant is sued in a state court for alleged federal civil rights violations, the defendant has the option of defending in the state court or removing the proceeding to federal court pursuant to 28 U.S.C. §1441(b).  Section 1441(b) provides in relevant part:

> [a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

Section 1441(a) states that the proper venue upon removal is to the district court "for the district and division embracing the place where such state action is pending."  28 U.S.C. §1441(a).  Section 1446(b) provides that the notice of removal "may be filed within thirty days after receipt by defendant. . . of a copy of an amended pleading, motion . . . or other paper from which it may first be ascertained that the case is one which is or has become removable. . ."  28 U.S.C. § 1446(b).

2

The above-described Complaint presents a civil action of which this court has original jurisdiction under 28 U.S.C. §1331, in that Plaintiff's sixth cause of action alleges violation of 42 U.S.C. §1983, over which this Court has original jurisdiction.  Defendant files this Notice within 30 days after Defendant's receipt of service of the Complaint, which is the first pleading from which it can be ascertained that this action is removable, pursuant to 28 U.S.C. §§ 1441(a) and 1446(b).

WHEREFORE, Defendant prays that the above action now pending in the Superior Court of the State of California in and for the City and County of San Francisco be removed in its entirety to this Court for all further proceedings, pursuant to 28 U.S.C. § 1441, *et. seq.*

Dated:  July 6, 2022

DAVID CHIU
City Attorney
JONATHAN C. ROLNICK
Chief Labor Attorney
AMY D. SUPER
Deputy City Attorneys


By: */a/Amy D. Super*
AMY D. SUPER
Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

NOTICE OF REMOVAL                                             n:\labor\li2022\220985\01612319.docx

EXHIBIT 5

Kevin T. Snider, CA State Bar No. 170988
*Counsel of Record*
Matthew B. McReynolds, CA State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Email: ksnider@pji.org; mmcreynolds@pji.org

Emily C. Mimnaugh, NV State Bar No. 15287 *pro hac vice*
PACIFIC JUSTICE INSTITUTE
1580 Grand Point Way #33171
Reno, NV 89533
Tel.  (916) 857-6900
Email: emimnaugh@pji.org

Ronn Bisbee, CA State Bar No. 207071
BISBEE LAW GROUP
24040 Camino del Avion, Suite E-109
Monarch Beach, CA 92629
Tel. (949) 481-9664
Email: info@bisbeelawgroup.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GUARDADO, MELISSA BORZONI, ANDREW MALONEY, ROMMEL TAYLOR, PENNI EIGSTER, TARA AMADO, and DANIELLE BOLOGNA on behalf of themselves and all other similarly situated persons, <br><br>        Plaintiffs, <br><br> v. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No.: <br><br> **COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF** <br><br> CLASS ACTION |

CITY AND COUNTY OF SAN )
FRANCISCO, and DOES 1-100, )
                                    )
            Defendants.             )
_____

## <u>INTRODUCTION</u>

1.      This is a complaint for employment discrimination brought as a class action by employees holding religious convictions against the SARS-CoV-2 (COVID-19) vaccine. Casting aside the presumption of sincerity of faith, a government employer has zealously hunted for heretics and hypocrites among its workforce. Of the approximately 1,000 employees seeking a religious accommodation, only a small fraction were deemed true believers.

2.      The City and County of San Francisco (San Francisco) ordered all of its employees to submit to vaccination for COVID-19. Pursuant to federal and state law, San Francisco as an employer must allow employees to submit requests for religious accommodation when compliance with a work requirement would violate religious beliefs. Absent an actual undue hardship on San Francisco, the requests for accommodation must be granted. Approximately 1,000 employees submitted requests for religious accommodation. But while these employees acted in good faith, San Francisco did not. Instead, San Francisco conducted a religious inquisition to determine which employees were true believers. According to San Francisco, only 51 employees requesting religious accommodation hold a sincere faith; for those who survived its religious wringer, the "accommodation" provided was placement on a 60-day citywide job search. What is more, San Francisco claims that accommodation constitutes an undue hardship because an unvaccinated employee poses a danger to themselves, co-workers, and the public. As a result, nearly all 1,000 religious objectors have either been fired or are in the process of San Francisco terminating their employment.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, and presents a federal question, pursuant to 28 U.S.C. § 1343(a)(3)-(4).  The Court also has jurisdiction under 42 U.S.C. § 2000-e5(f)(3).  Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b), because the relevant events have occurred and are threated to occur in this jurisdictional district and division. The Defendant's principal place of business is in this district.

4.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-02, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

**PARTIES**

**Plaintiffs**

5.      Plaintiff, JOSE GUARDADO, was employed by the CITY AND COUNTY OF SAN FRANCISCO as an Architectural Associate II.  GUARDADO has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  GUARDADO submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  GUARDADO utilized San Francisco's form entitled *Employee Request for Religious Accommodation (COVID-19 Exemption)*.  A true and correct copy of his request, along with the combined requests of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 1.  His beliefs are sincerely held.  San Francisco deemed his claim of faith to be insincere and denied his request for a religious accommodation via its standardized form entitled *Reasonable Accommodation Determination (COVID-19 Vaccination Exemption)*.  On the form, the box **DENIED** was checked.  A true and correct copy

of the denial, combined with those of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 2. In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to himself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19. GUARDADO was thus fired. GUARDADO has exhausted administrative remedies and has received a notice of right to sue from the Equal Employment Opportunity Commission (EEOC). A true and correct copy of the notice from the EEOC right to sue letter, along with those of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 3. GUARDADO sues on behalf of himself and on behalf of others similarly situated. GUARDADO is the Plaintiff Class representative.

6.      Plaintiff, MELISSA BORZONI, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Senior Community Development Specialist I. BORZONI has sincerely held religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith. BORZONI submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act. *See* Exhibit 1. Her beliefs are sincerely held. San Francisco denied her request for a religious accommodation. *See* Exhibit 2. In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to herself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19. BORZONI was thus fired. BORZONI has exhausted administrative remedies and has received a notice of right to sue from the EEOC. *See* Exhibit 3. BORZONI sues on behalf of herself and on behalf of others similarly situated. BORZONI is a first alternate Plaintiff Class representative.

7.      Plaintiff, ANDREW MALONEY, was employed by the CITY AND COUNTY OF SAN FRANCISCO as an Architect.  MALONEY has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  MALONEY submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  His beliefs are sincerely held.  San Francisco denied his request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to himself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19.  MALONEY was thus fired.  MALONEY has exhausted administrative remedies and has received a notice of right to sue from the EEOC. *See* Exhibit 3.  MALONEY sues on behalf of himself and on behalf of others similarly situated.  MALONEY is a second alternate Plaintiff Class representative.

8.      Plaintiff, ROMMEL TAYLOR, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Senior Community Development Specialist II.  TAYLOR has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  TAYLOR submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  His beliefs are sincerely held.  San Francisco deemed his claim of faith to be insincere and denied his request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to himself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19. TAYLOR was thus fired.  TAYLOR has exhausted administrative remedies and has received a notice of right to sue from the EEOC.  *See* Exhibit 3.  TAYLOR

sues on behalf of himself and on behalf of others similarly situated.  TAYLOR is a third alternate Plaintiff Class representative.

9.     Plaintiff, PENNI EIGSTER, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Manager I.  EIGSTER has sincerely held religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith.  EIGSTER submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  Her beliefs are sincerely held.  San Francisco deemed her claim of faith to be insincere and denied her request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to herself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19.  EIGSTER was thus fired.  EIGSTER has exhausted administrative remedies and has received a notice of right to from the EEOC.  *See* Exhibit 3.  EIGSTER sues on behalf of herself, and on behalf of others similarly situated.  EIGSTER is a fourth alternate Plaintiff Class representative.

10.     Plaintiff, TARA AMADO, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Transit Operator.  AMADO has sincerely held religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith.  AMADO submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  Her beliefs are sincerely held.  San Francisco denied her request for a religious accommodation.  *See* Exhibit 2.  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to herself, co-workers, and the public, although fully vaccinated employees continued to contract and spread

COVID-19. AMADO was thus fired. AMADO has exhausted administrative remedies and has received a notice of right to from the EEOC. *See* Exhibit 3. AMADO sues on behalf of herself, and on behalf of others similarly situated. AMADO is a fifth alternate Plaintiff Class representative.

11. Plaintiff, DANIELLE BOLOGNA, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Public Service Aid – Associate to Professionals. BOLOGNA has sincerely held religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith. BOLOGNA submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act. *See* Exhibit 1. Her beliefs are sincerely held. San Francisco deemed her claim of faith to be insincere and denied her request for a religious accommodation. *See* Exhibit 2. In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to herself, co-workers, and the public, although fully vaccinated employees continued to contract and spread COVID-19. BOLOGNA was thus fired. BOLOGNA has exhausted administrative remedies and has received a notice of right to from the EEOC. *See* Exhibit 3. BOLOGNA sues on behalf of herself, and on behalf of others similarly situated. BOLOGNA is a sixth alternate Plaintiff Class representative.

## Defendants

12. Defendant, CITY AND COUNTY OF SAN FRANCISCO, is established as a consolidated charter county and city pursuant to the California Constitution art. XI, § 6. It is an *employer* as defined by 42 U.S.C. § 2000e(b) and Cal. Gov. Code § 12926(d) and employs or has employed the named Plaintiffs in the above-captioned case as well as members of the Plaintiff Class.

13. The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1-100, inclusive, are unknown to Plaintiffs at this

time, who therefore sues said Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is in some way responsible for, or participated in or contributed to, the matters and things complained of herein, and is legally responsible in some manner.  Plaintiffs will seek leave to amend this Complaint when the true names, capacities, and responsibilities have been ascertained.

## CLASS ACTION ALLEGATIONS

14.     Plaintiffs, JOSE GUARDADO, MELISSA BORZONI, ANDREW MALONEY, ROMMEL TAYLOR, PENNI EIGSTER, TARA AMADO and DANIELLE BOLOGNA (each a Plaintiff and, together, the named Plaintiffs), bring this action for a class of persons defined as follows: All employees presently or previously employed by San Francisco (1) who have been ordered to submit to a COVID-19 vaccination, (2) who have submitted a written request for a religious accommodation, and (3) whose requests were denied due to a finding of a lack of religious sincerity and/or due to the claim that granting a religious accommodation would pose an undue hardship on San Francisco.

15.     These persons are collectively referred to as the Plaintiff Class.

16.     The proposed Plaintiff Class satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party under Rule 23 of the Federal Rules of Civil Procedure.

    A. **Numerosity**: The proposed Plaintiff Class is comprised of approximately 1,000 current or former employees of San Francisco.

    B. **Commonality**: There are questions of law and fact common to each member of the proposed Plaintiff Class, to wit:

        (1)  Whether the universal denial of *religious* accommodation to the unvaccinated based on the claim that the unvaccinated employee poses a danger to the employee, co-workers, and the

public is lawful under federal and state employment laws when the employer simultaneously allows *secular* accommodations for the unvaccinated;

(2) Whether San Francisco's standardized process of inquiring into the sincerity of the faith of any employee who requests religious accommodation is consistent with federal employment laws, including Title VII of the Civil Rights Act of 1964—42 U.S.C. § 2000e, et seq. (Title VII), and state employment laws, including the California Fair Employment and Housing Act—Cal. Gov. Code § 12900, et seq. (FEHA);

and

(3) Whether San Francisco's standardized process of inquiring into the sincerity of the faith of any employee who requests religious accommodation is consistent with the religion clauses enumerated in the First Amendment.

C. **Typicality**: The named Plaintiffs' claims are typical of the Plaintiff Class in that (1) all named Plaintiffs hold religious beliefs that compel them not to receive the COVID-19 vaccine; (2) they have claimed sincerity of their religious beliefs; (3) they have submitted written requests for religious accommodation; and (4) their requests have been denied.

D. **Adequacy of Representation**: The named Plaintiffs will fairly and adequately protect the interests of the proposed Plaintiff Class. The interests of the named Plaintiffs do not conflict with the interests of the Plaintiff Class members, and the named Plaintiffs have retained counsel experienced in successful class action litigation and constitutional litigation in order to vigorously prosecute this action

on behalf of the Plaintiff Class.  The relief sought by the named
Plaintiffs will inure to the benefit of the Plaintiff Class generally.

E.  The named Plaintiffs raise predominantly common factual and legal
questions that can be answered for all Plaintiff Class members
through a single class-wide proceeding, which will be a superior
method for adjudicating these issues for the Plaintiff Class.

## FACTS

17.    On June 23, 2021, San Francisco issued a COVID-19 Vaccination
Policy requiring all employees to be fully vaccinated as a condition of employment.

18.    Approximately 1,070 employees submitted requests to be exempted
from COVID-19 vaccination due to their sincerely held religious beliefs.

19.    The named Plaintiffs and the individual members of the Plaintiff Class
have each submitted a written request for a religious accommodation in order to be
exempted from COVID-19 vaccination.  Like the rest of the Plaintiff Class, they
affirmatively assert that their religious convictions against taking the COVID-19
vaccination are sincerely held.

20.    Generally, an employer should proceed on the assumption that a
request for religious accommodation is based on sincerely held religious beliefs,
practices, or observances.  San Francisco has turned this standard on its head.
Instead, San Francisco has instituted a detailed probe into the sincerity of the faith
of its employees.

21.    Through a standardized protocol, San Francisco has instituted a
detailed inquiry for each employee requesting a religious accommodation to
COVID-19 vaccination.  This is done whether or not there is an objective basis for
questioning either the religious nature or the sincerity of a particular belief.

22.    San Francisco provided a PowerPoint presentation to its Department of
Human Resources (HR) entitled *Medical & Religious Exemptions to COVID-19*

*Vaccination* (September 1, 2021).  A true and correct copy of the PowerPoint accompanies this Complaint, is incorporated in full, and marked as Exhibit 4.

23.     Under the heading *What is religion?* slide 14 reads as follows:

- No political, philosophical, scientific, sociological, ecological, charitable groups
- No conspiracy theorists
- No personal choices or fears cloaked in religion
  Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. *Friedman v. Southern Cal. Permanente Medical Group* (2002) 102 Cal. App. 4th 39.

24.     San Francisco's position on religious accommodation, reflected in slide 14, resulted in the denial of its employees' requests for religious accommodation.

25.     Employees are rejected by San Francisco if they merely mention non-religious views *along with* their religious views.  Some employees have religious convictions that overlap religious and political views.  Their views are not isolated teachings but part and parcel of comprehensive religious belief systems.

26.     Slide 15 directs HR personnel to "get specific belief, tenet or observance that conflicts with the vaccine requirement."  San Francisco's position regarding religious sincerity is to require narrow focus as to the COVID-19 vaccine. This position results in religious employees being deemed insincere if their convictions are based on broad theological principals.  For example, an employee might believe in the sanctity of life or that a Christian's body literally houses the Holy Ghost.  The first conviction would preclude the use of any substance that was developed through the use of aborted fetal tissue.  The second belief would prevent

an adherent from ingesting a substance they thought could harm them, thus not treating the body with the sacredness that the fleshly temple of God deserves.

27.     Slide 16 directs HR personnel to "[l]ook for factual inaccuracies in beliefs, i.e., the vaccines contain aborted fetal cells . . . the vaccine causes sterility." San Francisco's position regarding claimed "factual inaccuracies" is an inquiry outside of the issue of whether the belief is both religious and sincerely held.  A finding of claimed "factual inaccuracies" resulted in the faith of employees being wrongfully deemed as insincere.

28.     San Francisco provided employees with a declaration, to be signed under penalty of perjury, for religious leaders entitled, "Declaration in Support of Employee Religious Exemption Request (COVID-19" [*sic*] (Religious Leader Declaration).  A true and correct copy of the Religious Leader Declaration accompanies this Complaint, is incorporated in full, and marked as Exhibit 5.

29.     The Religious Leader Declaration provides in part:

Does the religion or belief system . . . requires [*sic*] all adherents to abstain from the COVID-19 vaccination because the vaccination conflicts with the tenets, practices and observations [*sic*] of a recognized church, religious denomination, or recognized religious organization:
__ YES __ NO   If YES, please cite the specific tenet, practice or observation [*sic*] that conflicts with the COVID-19 vaccination requirement, and/or explain how it is followed.

30.     San Francisco's use of the Religious Leader Declaration results in the denial of religious accommodation to employees because it requires (1) universal abstinence (i.e., all adherents of a particular religion, denomination, or sect) from COVID-19 vaccination, (2) a specific tenet, practice or observance that conflicts with receipt of the COVID-19 vaccine, and (3) membership in a "recognized church, denomination or organization."

31.     San Francisco's requirement of "universal abstinence" is not what Title VII and FEHA require because it assumes that an employee is insincere simply because the employee adheres to some common practices of his or her faith tradition but not others. Likewise, San Francisco penalizes the faithful by denying religious accommodations to the COVID-19 vaccination for employees whose practices deviate from the commonly followed tenets of the employee's religion. This deviation speaks only to orthodoxy – a practice which state actors cannot indulge – rather than actual sincerity.

32.     San Francisco also requires, and/or gives greater consideration to, those belonging to a recognized church, denomination, or organization.  This results in depriving employees of their constitutional and statutory religious liberties if they adhere to nontraditional religious beliefs, practices, or observances. This requirement has resulted in the unlawful denial of religious accommodation of employees.

33.     San Francisco's HR issued a document to the employees in its department who process requests for religious accommodation.  A true and correct copy of *Tips for Processing Religious Accommodation Vaccine Exemption Requests* (Issued September 1, 2021) accompanies this Complaint, is incorporated in full, and marked as Exhibit 6 (herein described as "Tips").

34.     One of the tips for HR evaluators is to "make sure the employee responds to question #4, regarding prior vaccinations and their religious beliefs." This tip regarding past vaccinations has resulted in San Francisco deeming employees who have previously been vaccinated as insincere.

35.     San Francisco asks employees seeking religious accommodations whether they have ever taken vaccines for measles, chickenpox, hepatitis A, or influenza.

36.     San Francisco asks employees seeking religious accommodations whether they have had their children take any vaccines.

37.     San Francisco asks employees seeking religious accommodations whether they have ever taken Tylenol, Pepto Bismol, Aspirin, Tums, Lipitor, Senokot, Motrin, Ibuprofen, Maalox, Ex-Lax, Benadryl, Sudafed, Albuterol, Preparation H, Claritin, Zoloft, Prilosec OTC, and Azithromycin.

38.     Tips cautions reviewers that "most recognized religions do not prohibit vaccinations.  A non-exhaustive list of religious faiths and their stance on vaccination can be found here: https://www.vumc.org/health-wellness/news-resource-articles/immunizations-and-religion."  As a result of this position of looking to whether a particular religious faith has a position on vaccination, San Francisco denied requests for religious accommodation of employees who belong to faith groups that did not broadly oppose vaccination.

39.     Tips also specifically calls into question the validity of specific religious beliefs related to the sanctity of life:

> With respect to the COVID-19 vaccine specifically, a statement that the employee is refusing the vaccine due to concerns about the use of fetal cells may not be a qualifying religious belief because neither Pfizer nor Moderna vaccines contain cells. (*See,* Los Angeles County COVID-19 Vaccine and Fetal Cell Lines http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCelllines.pdf."  Ex.6, p. 2.

40.     The referenced document by Tips is from Los Angeles County and quotes the U.S. Conference of Catholic Bishops which reads, in part, "neither vaccine is completely free from any use of abortion-derived cell lines."  The Conference of Catholic Bishops goes on to state that "one may receive any of the clinically recommended vaccines in good conscience with the assurance that reception of such vaccines does not involve immoral cooperation in abortion."  Similarly, the document states that "the Catholic Church and the Southern Baptist

Ethics & Religious Liberty Commission have both stated that **receiving a COVID-19 vaccine that required fetal cell lines for production or manufacture is morally acceptable**." *Id.* (Emphasis in original).

41.     On the issue of the sanctity of life and the use of COVID-19 vaccines, San Francisco is either substituting its judgment—or that of specific religious bodies—for the sincerely held beliefs of its employees.  Moreover, the Los Angeles County document that San Francisco utilizes is a state-sponsored attempt to talk persons of faith out of their religious convictions.  This is conduct that the First Amendment's religion clauses forbid.

42.     Tips also claims that other vaccines such as hepatitis A, rubella, and rabies used fetal cell lines.  "If the employee has previously received other vaccines without concern, the claimed belief may not be religious."  Ex. 6, p. 2.  This tip presumes that the employee had knowledge of the fetal cell lines used in such vaccines.

43.     San Francisco's HR evaluators are coached in determining if there is a "reasonable objective basis for questioning their sincerity":

> The following are a few objective facts that may raise questions about whether an exemption request is based on a sincerely held belief:
> - The employee only recently adopted the stated belief, i.e., this year or since the start of the pandemic.
> - The request is accompanied by a declaration or letter from an online 'church' or pastor.
> - The employee provides vague or incomplete information about their religious beliefs.
> - The employee has previously accepted other vaccinations, and now has a different position regarding only the COVID-19 vaccination.

Ex. 6, p. 3.

44.     Employees are subjected to a regulatory religious crucible of ten questions, "to be used as needed."  Below are some of those questions:

COMPLAINT
15

- Please identify the specific religious tenet that prohibits COVID-19 vaccination.
- Please identify the Christian/Muslim/Jewish/etc. Sect of denomination that teaches that COVID-19 vaccination is prohibited.
- The [Vatican/insert religious authoritative or governing body][1] has endorsed the COVID-19 vaccines and pronounced that the connection between the fetal cell lines used in vaccine testing and actual abortion is sufficiently remote and the pandemic sufficiently serious to allow members to receive the vaccine in good conscience. Are your beliefs contrary to this pronouncement? If so, why?
- Please identify the specific religious tenet, practice or observance that prohibits receiving vaccines developed or tested using fetal cell lines.

Ex. 6, p. 4. The third bullet point is calculated to identify heretics.

45.     HR evaluators are told to seek information from third-party clerics regarding the employee's religious beliefs under the following circumstances:

- Employee provides vague or incomplete responses to questions about their religious beliefs or belief systems.
- Employee's religion or belief system is not well-known, or has a structure that is not like traditional religions.
- Employee statements objectively raise questions regarding whether the employee's belief is part of a religion or belief system.
- Employee actions are inconsistent with the alleged religious beliefs.

Ex. 6, p. 4. The fourth bullet point is calculated to identify hypocrites.

46.     On San Francisco's standardized form entitled *Reasonable Accommodation Determination (COVID-19 Vaccination Exemption)* a box was checked **DENIED** for members of the Plaintiff Class. See Exhibit 2.

47.     The protocol and standardized forms used by HR evaluators comprise a detailed, individualized assessment.

---

[1] Brackets appear in the original.

48.     San Francisco viewed the approximately 1,000 religious employees who sought religious accommodation as either hypocrites or heretics and thus denied their requests.

49.     A small percentage of requests for religious accommodation were found to be sincere.  That minute percentage of employees were granted an "accommodation" of placement on a 60-day citywide job search.  Since all jobs required vaccination, this search was a fool's errand.

50.     Plaintiffs believe and thereon allege that some employees who sought medical exemptions were approved by San Francisco.

51.     San Francisco denies religious accommodations as an undue hardship because it asserts that those who are unvaccinated pose a danger to themselves, coworkers, and the public.

52.     In a published statement, the federal Centers for Disease Control and Prevention (CDC) stated that Delta infection resulted in similarly high COVID-19 viral loads in vaccinated and unvaccinated people.[2]  CDC Director Rochelle Walensky has confirmed that COVID-19-positive individuals carry the same "viral load" (equivalent to the risk of spreading infection) whether they are vaccinated or unvaccinated.[3]

53.     The CDC Director's statement was based on a study in the summer of 2021 which tested vaccinated and unvaccinated persons and found: "Cycle

---

[2] Statement from CDC Director Rochelle P. Walensky issued on July 30, 2021 and available at:  https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html downloaded on July 5, 2022.

[3] *Id.*

threshold values [(COVID-19 viral loads)] were similar among specimens from patients who were fully vaccinated and those who were not."[4]

54. Later studies have found that the viral load associated with COVID-19 variants such as Omicron also does not vary based upon vaccination status: "[F]ully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts."[5]

55. In another official statement, the CDC has confirmed those studies and stated that it expects that anyone with an Omicron infection, regardless of vaccination status or whether or not they have symptoms, can spread the virus to others.[6]

56. Because the viral loads are no different for the vaccinated and the unvaccinated, San Francisco's position that the unvaccinated pose a danger to themselves, coworkers, and the public, but that the vaccinated do not pose this danger, is not consistent with the above-cited statements from the CDC.

///

///

---

[4] "Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021" *Morbidity and Mortality Weekly Report, CDC* (July 30, 2021), available at: https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w.

[5] David W. Eyre, B.M., B.Ch., D.Phil. et al. *Effect of Covid-19 Vaccination on Transmission of Alpha and Delta Variants*, New England J. Med 386:744-756 (February 24, 2022) available at: https://www.nejm.org/doi/full/10.1056/NEJMoa2116597 downloaded on July 6, 2022.

[6] "Omicron Variant: What You Need to Know" *CDC* (March 29, 2022) available at: https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FIRST CAUSE OF ACTION

### FAILURE TO PROVIDE RELIGIOUS ACCOMMODATION
### Violation of Title VII of the Civil Rights Act of 1964
All Plaintiffs Against All Government Defendants
(42 U.S.C. § 2000e)

57.   Plaintiffs repeat and reallege the allegations above and incorporate those allegations herein by reference.

58.   At all times relevant hereto, Title VII was in full force and effect and was binding on San Francisco.

59.   At all times relevant hereto, the Plaintiffs were performing competently in the positions they held as employees of San Francisco.

60.   Plaintiffs have bona fide religious beliefs that conflict with receiving the COVID-19 vaccination; they have informed their employer of such beliefs.  The Plaintiffs were disciplined for failure to comply with the conflicting employment requirement.

61.   Title VII makes it an unlawful employment practice to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee.

62.   San Francisco failed to provide reasonable alternative means of accommodating the religious belief or observance that was in conflict with the COVID-19 vaccination work requirement.

63.   There is a dispute between the Plaintiffs and Defendant.  San Francisco asserts that it can undertake a detailed probe of the sincerity of the religious beliefs of its employees; this includes placing a burden on the Plaintiff Class to provide an objective basis for religious convictions regarding the refusal to take the COVID-19 vaccination.  Plaintiffs disagree.  Because faith is intrinsically subjective, a religious objector cannot be held to an objective measure of proof regarding what lay within his or her heart, mind, and soul.  Belief in what one may demonstrate to the senses is not faith.  Plaintiffs assert that Title VII presumes sincerity of belief by an

employee and therefore San Francisco's standardized practice of a rigorous inquisition is an unlawful standard. The Plaintiffs' legal position is that, although an employee's faith may be deemed as heresy to some and incomprehensible to others, employers cannot require orthodoxy of employees according to a recognized religion or demand that employees be put to the proof of their religious beliefs.

64.     There is a dispute between the Plaintiffs and Defendant. San Francisco universally asserts that every unvaccinated employee poses a threat to the health and safety of themselves, coworkers, and the public. San Francisco asserts that an accommodation for any religious adherent poses an undue hardship on San Francisco, which is more than a *de minimis* burden. Plaintiffs disagree. San Francisco has granted medical exemptions to some of its employees. The risks involving employees who receive medical exemptions to the COVID-19 vaccination stand as identical to the unvaccinated employees of faith. What is more, terminating unvaccinated religious employees does not place San Francisco in a safer position relative to the spread of COVID-19. Employees that have been fired have not been confined to their homes. They can move about freely within the City and County. Employees have not been sentenced to exile; while still within San Francisco, terminated employees ride public transportation, enter stores to purchase goods and services, conduct business in government offices, attend houses of worship, and are in the stands at sporting events. Therefore, any claimed hardship that keeping an employee on the payroll would incur is not substantially mitigated by firing the employee.

///

///

///

///

///

## SECOND CAUSE OF ACTION
### RELIGION CLAUSES
**First Amendment to the U.S. Constitution**
All Plaintiffs Against All Government Defendants
(42 U.S.C. § 1983)

65.    The Plaintiffs repeat and reallege the allegations above and incorporate those allegations herein by reference.

66.    The right to free exercise of religion is a right protected and guaranteed by the First Amendment of the U.S. Constitution. The liberties under the First Amendment apply to the states and their political subdivisions through the Fourteenth Amendment.

67.    The actions of San Francisco have been, and continue to be, done under color of law.

68.    The Plaintiffs have sincerely held religious beliefs that compel them to refuse the COVID-19 vaccine.

69.    San Francisco's detailed probe into the beliefs of the Plaintiff Class exceeds sincerity by determining orthodoxy, verity of beliefs, and hypocrisy.

70.    The depth of San Francisco's inquiry into the faith of employees who request religious accommodations is structured such that employees are denied an accommodation because they are perceived by the government to not be as devout of a member of their religion as state actors believe the employee should be.  This occurs by HR evaluators determining the following:

(1) whether the employee is part of a recognized religion;
(2) whether the employee's beliefs are in line with the teachings of religious authorities;
(3) whether the religion holds a universal prohibition against vaccination; and
(4) whether the beliefs should be called into question as judged by the presence of (a) alleged inconsistencies or (b) "factual inaccuracies."

71.    San Francisco HR evaluators are taking on the role that the First Amendment reserves to ecclesiastical courts, not government officials.

72.    The protocol HR evaluators use imposes requirements that stand as hostile to the religious beliefs of the Plaintiff Class and acts in a manner that passes judgment upon, or presupposes the illegitimacy of, religious beliefs and practices. Therefore, the protocol used is not neutral.

73.    The protocol HR evaluators use involves individualized assessments and thus are not neutral and generally applicable.

74.    San Francisco has engaged in indirect coercion and penalties on the Plaintiff Class for the exercise of their religion.  In doing so, San Francisco is excluding religious observers from continued employment.

75.    The vaccination requirement forces the Plaintiff Class to choose between receiving the COVID-19 vaccine in violation of their sincerely held religious beliefs or being fired, thus imposing a substantial burden on the Plaintiffs and the Plaintiff Class and interfering with, and depriving them of, the enjoyment of the religious liberties guaranteed by the First Amendment to the U.S. Constitution, as made applicable to the states through the Fourteenth Amendment.

### THIRD CAUSE OF ACTION
**FAILURE TO PROVIDE RELIGIOUS ACCOMMODATION**
**Violation of the California Fair Employment and Housing Act**
All Plaintiffs Against All Government Defendants
(Gov. Code § 12900 et seq.)

76.    The Plaintiffs repeat and reallege the allegations above and incorporate those allegations herein by reference.

77.    At all times relevant hereto, FEHA was in full force and effect and was binding on San Francisco.

78.     San Francisco failed to provide reasonable alternative means of accommodating the religious belief or observance that conflicted with the work requirement, i.e., COVID-19 vaccination.

79.     There is a dispute between the Plaintiffs and Defendant.  San Francisco universally asserts that every unvaccinated employee poses a threat to the health and safety of themselves, coworkers, and the public.  San Francisco asserts that an accommodation for any unvaccinated religious adherent imposes an undue burden on San Francisco.  Plaintiffs disagree.  Plaintiffs assert that accommodating the Plaintiffs does not pose a *significant difficulty or expense* on San Francisco per Gov. Code § 12926(u).

80.     Plaintiffs are entitled to further relief as more fully set forth below in their Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor, and against the Defendant, for full relief, including the following:

a.      Declaratory judgment that San Francisco's protocol for determining sincerity of faith in whole, or in part, on its face, and as applied, does not comport with the requirements of Title VII;

b.      Declaratory judgment that San Francisco's protocol for determining sincerity of faith in whole, or in part, on its face, and as applied, does not comport with the requirements of FEHA;

c.      Declaratory judgment that San Francisco's protocol for determining sincerity of faith is in whole, or in part, on its face, and as applied, is violative of the religion clauses of the First Amendment;

d.      Declaratory judgment that San Francisco's universal declaration that each and every unvaccinated-religious-objector-employee poses a danger to the

employee, co-workers, and thus accommodation poses an undue hardship on San Francisco, fails the reasonableness requirement under Title VII;

  e. Declaratory judgment that San Francisco's universal declaration that each and every unvaccinated-religious-objector-employee poses a danger to the employee, co-workers, and thus accommodation poses an undue hardship on San Francisco, fails the reasonableness requirement under FEHA;

  f. Declaratory judgment that providing a religious accommodation does not impose an undue hardship on San Francisco under Title VII;

  g. Declaratory judgment that providing a religious accommodation does not impose an undue hardship on San Francisco under FEHA;

  h. Preliminary and permanent injunction prohibiting San Francisco's protocol for determining sincerity of faith;

  i. Equitable relief in the form of an order setting aside the denials for accommodation and that the Plaintiff Class receive *de novo* consideration of their accommodation requests;

  j. Preliminary and permanent injunction prohibiting San Francisco from deeming the Plaintiff Class as a danger to themselves, coworkers, and the public;

  k. An award for actual, consequential, and incidental financial losses, including, but not limited to lost back pay, front pay, benefits, and other compensation plus interest;

  l. An award of compensatory damages;

  m. Restoration of employee benefits, including, but not limited to, medical benefits, pensions, and insurance;

  n. Restore vacation days, comp hours, and lost time hours;

  o. Attorneys' fees and costs; and

  p. Any and all other appropriate relief to which the Plaintiffs may be entitled including all "appropriate relief" within the scope of F.R.C.P. 54(c).

Dated: July 26, 2022

/s/ Kevin T. Snider
Kevin T. Snider
*Counsel of Record*
Matthew B. McReynolds
**PACIFIC JUSTICE INSTITUTE**
NORTHERN CALIFORNIA OFFICE
P.O. Box 276600
Sacramento, CA 95827
Tel.  (916) 857-6900
Fax  (916) 857-6902
Email: ksnider@pji.org

Emily C. Mimnaugh
**PACIFIC JUSTICE INSTITUTE**
NEVADA OFFICE
1580 Grand Point Way #33171
Reno, NV 89533
Tel.  (916) 857-6900
Fax  (916) 857-6902
Email: emimnaugh@pji.org

Ronn Bisbee
BISBEE LAW GROUP
24040 Camino del Avion, Suite E-109
Monarch Beach, CA 92629
Tel. (949) 481-9664
Email: info@bisbeelawgroup.com

*Attorneys for Plaintiffs*

# EXHIBIT 6

Kevin T. Snider, CA State Bar No. 170988
*Counsel of Record*
Matthew B. McReynolds, CA State Bar No. 234797
Milton E. Matchak, CA State Bar No. 215739
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Email: ksnider@pji.org
        mmcreynolds@pji.org
        mmatchak@pji.org

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THADDEUS SALEEM SHAHEED, JESSE MURILLO, RICARDO TREJO, and PHILIPPE J. CABRAL<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, and DOES 1-100,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.     This is a complaint for employment discrimination brought by employees holding religious convictions against the SARS-CoV-2 (COVID-19) vaccine. Casting aside the presumption of sincerity of faith, a government employer has zealously hunted for heretics and hypocrites among its workforce. And regardless of whether the religious objection was eventually accepted or denied, the end result was termination of the Plaintiffs from their employment with

San Francisco because they had a sincerely held religious objection to the COVID-19 vaccine.

2.      The City and County of San Francisco (San Francisco) ordered all of its employees to submit to vaccination for COVID-19.  Pursuant to federal and state law, San Francisco as an employer must allow employees to submit requests for religious accommodation when compliance with a work requirement would violate religious beliefs.  Absent an actual undue hardship on San Francisco, the requests for accommodation must be granted.  Approximately 1,000 employees submitted requests for religious accommodation.  But while these employees acted in good faith, San Francisco did not.  Instead, San Francisco conducted a religious inquisition to determine which employees were true believers.  For those who survived its religious wringer, the "accommodation" provided was placement on unpaid leave and a citywide job search, which yielded no benefit to the Plaintiffs.  What is more, San Francisco claims that accommodation constitutes an undue hardship because an unvaccinated employee poses a danger to themselves and others.  As a result, Plaintiffs, all being sincere religious objectors, were fired from their employment with San Francisco.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, and presents a federal question, pursuant to 28 U.S.C. § 1343(a)(3)-(4).  The Court also has jurisdiction under 42 U.S.C. § 2000-e5(f)(3).  Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b), because the relevant events have occurred in this jurisdictional district and division.  The Defendant's principal place of business is in this district.

4.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-02, Federal Rules of Civil Procedure 57 and 65, and the general

legal and equitable powers of this Court, which empower this Court to grant the requested relief.

## PARTIES

### Plaintiffs

5.       Plaintiff, THADDEUS SALEEM SHAHEED, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Customer Service Representative for the 311 Call Center.  SHAHEED has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  SHAHEED made San Francisco aware of his religious beliefs by submitting a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  SHAHEED utilized San Francisco's form entitled *Employee Request for Religious Accommodation (COVID-19 Vaccination Exemption)*.  A true and correct copy of his request, along with the combined requests of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 1.  His beliefs are sincerely held.  San Francisco determined that SHAHEED qualified for a religious exemption, but refused to reasonably accommodate, in effect denying his exemption.   San Francisco alleged they could not reasonably accommodate SHAHEED in his current position via its standardized form entitled *Determination on Covid-19 Vaccination Exemption Request Reasonable Accommodation Determination*.  On that form, the box **DENIED** was checked.  A true and correct copy of the denial, combined with those of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 2.  Below the **DENIED** box it states in part: "Your request for an exemption based on an asserted sincerely held religious belief, practice or observance is **DENIED** . . ."  In addition, San Francisco speculated that an accommodation for SHAHEED would be an undue hardship based on the claim that an unvaccinated employee presents a danger to himself and

others, although fully vaccinated people continue to contract and are capable of spreading COVID-19.  San Francisco also speculated that accommodation would prevent SHAHEED from performing essential functions and result in undue hardship for the city, without any explanation of what that "undue hardship" entailed.  The 60-day Citywide job search was futile.  SHAHEED was thus fired.  SHAHEED has exhausted administrative remedies and has received a notice of right to sue from the Equal Employment Opportunity Commission (EEOC).  A true and correct copy of the notice from the EEOC right to sue letter, along with those of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 3.

6.     Plaintiff, JESSE MURILLO, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Utility Service Representative Supervisor.  MURILLO has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  MURILLO submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  His beliefs are sincerely held.  San Francisco denied his request for a religious accommodation.  *See* Exhibit 2.  San Francisco alleged they could not reasonably accommodate MURILLO in his current position via its standardized form entitled *Determination on Covid-19 Vaccination Exemption Request Reasonable Accommodation Determination*.  On that form, the box **DENIED** was checked.  A true and correct copy of the denial, combined with those of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 2.  Below the **DENIED** box it states in part: "Your request for an exemption based on an asserted sincerely held religious belief, practice or observance is **DENIED** . . ."  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to himself or others, and

accommodation would result in undue hardship for the City, without any explanation of what that "undue hardship" entailed, and although fully vaccinated people continue to contract and are capable of spreading COVID-19.  MURILLO was thus fired.  MURILLO has exhausted administrative remedies and has received a notice of right to sue from the EEOC.  *See* Exhibit 3.

7.      Plaintiff, RICARDO TREJO, was employed by the CITY AND COUNTY OF SAN FRANCISCO as an Engineer.  TREJO has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  TREJO submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  His beliefs are sincerely held.  San Francisco denied his request for a religious accommodation.  *See* Exhibit 2.  San Francisco alleged they could not reasonably accommodate TREJO in his current position via its standardized form entitled *Determination on Covid-19 Vaccination Exemption Request Reasonable Accommodation Determination*.  On that form, the box **DENIED** was checked.  A true and correct copy of the denial, combined with those of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 2.  Below the **DENIED** box it states in part: "Your request for an exemption based on an asserted sincerely held religious belief, practice or observance is **DENIED** . . ."  In addition, San Francisco speculated that an accommodation would be an undue hardship based on the claim that an unvaccinated employee presents a danger to himself and others, and the claim that accommodation result in undue hardship for the City, although fully vaccinated people continue to contract and are capable of spreading COVID-19, and without giving any explanation of how granting TREJO'S accommodation would result in any undue hardship.  TREJO was allowed to continue work (full-time remotely) during the citywide job search which lasted from November 2,

2021, to February 28, 2022. Then, upon the City's "unsuccessful" job search determination, TREJO was put on administrative unpaid leave from March 2, 2022, to April 1, 2022.  TREJO was eventually fired.  TREJO has exhausted administrative remedies and has received a notice of right to sue from the EEOC.  *See* Exhibit 3.

8.	Plaintiff, PHILIPPE J. CABRAL, was employed by the CITY AND COUNTY OF SAN FRANCISCO as a Construction Inspector.  CABRAL has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine without violating his faith.  CABRAL submitted a written request for a religious accommodation under Title VII and the California Fair Employment and Housing Act.  *See* Exhibit 1.  His beliefs are sincerely held.  San Francisco denied his request for a religious accommodation.  *See* Exhibit 2.  San Francisco alleged they could not reasonably accommodate CABRAL in his current position via its standardized form entitled *Reasonable Accommodation Determination (Covid 19 Vaccination Exemption)*.  On that form, the box **DENIED** was checked.  A true and correct copy of the denial, combined with those of the other Plaintiffs, accompanies this Complaint, is incorporated in full, and marked as Exhibit 2. Below the **DENIED** box, in the Religious Belief section of the form San Francisco asserts: "Your request for an exemption based on a religious belief, practice or observance is **DENIED** for the following reason(s):".  Then another box is checked and next to that box it states, "Documentation Insufficient to Show a Conflict with Religious Belief, Practice or Observance and Vaccination Requirement".  See Exhibit 2.  CABRAL was eventually fired.  CABRAL has exhausted administrative remedies and has received a notice of right to sue from the EEOC.  *See* Exhibit 3.

**Defendants**

9.     Defendant, CITY AND COUNTY OF SAN FRANCISCO, is established as a consolidated charter county and city pursuant to the California Constitution art. XI, § 6.  It is an *employer* as defined by 42 U.S.C. § 2000e(b) and Cal. Gov. Code § 12926(d) and has employed the named Plaintiffs in the above-captioned case.

10.     The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1-100, inclusive, are unknown to Plaintiffs at this time, who therefore sues said Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is in some way responsible for, or participated in or contributed to, the matters and things complained of herein, and is legally responsible in some manner.  Plaintiffs will seek leave to amend this Complaint when the true names, capacities, and responsibilities have been ascertained.

## FACTS

11.     On June 23, 2021, San Francisco issued a COVID-19 Vaccination Policy requiring all employees to be fully vaccinated as a condition of employment.

12.     Approximately 1,070 employees submitted requests to be exempted from COVID-19 vaccination due to their sincerely held religious beliefs.

13.     The Plaintiffs have each submitted a written request, therefore placing San Francisco on notice, for a religious accommodation in order to be exempted from COVID-19 vaccination.  (See Exhibit 1.)  The Plaintiff's affirmatively assert that their religious convictions against taking the COVID-19 vaccination are sincerely held.

14.     Through a standardized protocol, San Francisco has instituted a detailed inquiry for each employee requesting a religious accommodation to

COVID-19 vaccination. This is done whether or not there is an objective basis for questioning either the religious nature or the sincerity of a particular belief.

15. San Francisco provided a PowerPoint presentation to its Department of Human Resources (HR) entitled *Medical & Religious Exemptions to COVID-19 Vaccination* (September 1, 2021). A true and correct copy of the PowerPoint accompanies this Complaint, is incorporated in full, and marked as Exhibit 4.

16. Even though, under Title VII, an employer should proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances, nowhere in the PowerPoint (Exhibit 4) is this included. In fact, a simple reading of the PowerPoint makes it clear that those reviewing the Religious Exemption/Accommodation requests are to look at the requests with a jaundiced eye, taking a cynical/questioning approach to each request.

17. Under the heading *What is religion?* slide 14 of the PowerPoint reads as follows:

- No political, philosophical, scientific, sociological, ecological, charitable groups
- No conspiracy theorists
- No personal choices or fears cloaked in religion

Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. *Friedman v. Southern Cal. Permanente Medical Group* (2002) 102 Cal. App. 4th 39.

18. San Francisco's position on religious accommodation, reflected in slide 14, resulted in the denial of its employees' requests for religious accommodation.

19. San Francisco might reject employees if they merely mention non-religious views *along with* their religious views. Some employees have religious

convictions that overlap religious and political views. Their views are not isolated teachings but part and parcel of comprehensive religious belief systems.

20. Slide 15 directs HR personnel to "get specific belief, tenet or observance that conflicts with the vaccine requirement." San Francisco's position regarding religious sincerity is to require narrow focus as to the COVID-19 vaccine. This position results in religious employees being deemed insincere if their convictions are based on broad theological principals. For example, an employee might believe in the sanctity of life or that a Christian's body literally houses the Holy Ghost. The first conviction would preclude the use of any substance that was developed through the use of aborted fetal tissue. The second belief would prevent an adherent from ingesting a substance they thought could harm them, thus not treating the body with the sacredness that the fleshly temple of God deserves.

21. Slide 15 also directs HR personnel to "[l]ook for factual inaccuracies in beliefs, i.e., the vaccines contain aborted fetal cells . . . the vaccine causes sterility." San Francisco's position regarding claimed "factual inaccuracies" is an inquiry outside of the issue of whether the belief is both religious and sincerely held.

22. San Francisco provided employees with a declaration, to be signed under penalty of perjury, for religious leaders entitled, "Declaration in Support of Employee Religious Exemption Request (COVID-19" [*sic*] (Religious Leader Declaration). A true and correct copy of the Religious Leader Declaration accompanies this Complaint, is incorporated in full, and marked as Exhibit 5.

23. The Religious Leader Declaration provides in part:

Does the religion or belief system . . . requires [*sic*] all adherents to abstain from the COVID-19 vaccination because the vaccination conflicts with the tenets, practices and observations [*sic*] of a recognized church, religious denomination, or recognized religious organization:

__ YES __ NO   If YES, please cite the specific tenet, practice or observation [*sic*] that conflicts with the COVID-19 vaccination requirement, and/or explain how it is followed.

24.     San Francisco's use of the Religious Leader Declaration might result in the denial of religious accommodation to employees because it requires (1) universal abstinence (i.e., all adherents of a particular religion, denomination, or sect) from COVID-19 vaccination, (2) a specific tenet, practice or observance that conflicts with receipt of the COVID-19 vaccine, and (3) membership in a "recognized church, denomination or organization."  None of these are required by Title VII or the FEHA.

25.     San Francisco's requirement of "universal abstinence" is not what Title VII and FEHA require because San Francisco assumes that an employee is insincere simply because the employee adheres to some common practices of his or her faith tradition but not others. Likewise, San Francisco penalizes the faithful by denying religious accommodations to the COVID-19 vaccination for employees whose practices deviate from the commonly followed tenets of the employee's religion.  This deviation speaks only to orthodoxy – a practice which state actors cannot indulge – rather than actual sincerity.

26.     San Francisco also requires, and/or gives greater consideration to, those belonging to a recognized church, denomination, or organization.  This results in depriving employees of their constitutional and statutory religious liberties if they adhere to nontraditional religious beliefs, practices, or observances, or adhere to traditional religious beliefs, practices or observances without actual membership in a recognized church, denomination, or organization.

27.     San Francisco's HR issued a document to the employees in its department who process requests for religious accommodation.  A true and correct copy of *Tips for Processing Religious Accommodation Vaccine Exemption*

*Requests* (Issued September 1, 2021) accompanies this Complaint, is incorporated in full, and marked as Exhibit 6 (herein described as "Tips").

28.     One of the tips for HR evaluators is to "make sure the employee responds to question #4, regarding prior vaccinations and their religious beliefs." This tip regarding past vaccinations has resulted in San Francisco deeming employees who have previously been vaccinated as insincere.

29.     San Francisco asks employees seeking religious accommodations whether they have ever taken vaccines for measles, chickenpox, hepatitis A, or influenza.

30.     San Francisco asks employees seeking religious accommodations whether they have had their children take any vaccines.

31.     San Francisco asks employees seeking religious accommodations whether they have ever taken Tylenol, Pepto Bismol, Aspirin, Tums, Lipitor, Senokot, Motrin, Ibuprofen, Maalox, Ex-Lax, Benadryl, Sudafed, Albuterol, Preparation H, Claritin, Zoloft, Prilosec OTC, and Azithromycin.

32.     Tips cautions reviewers that "most recognized religions do not prohibit vaccinations.  A non-exhaustive list of religious faiths and their stance on vaccination can be found here: https://www.vumc.org/health-wellness/news-resource-articles/immunizations-and-religion."  As a result of this position of looking to whether a particular religious faith has a position on vaccination, San Francisco could deny requests for religious accommodation of employees who belong to faith groups that did not broadly oppose vaccination.

33.     Tips also specifically calls into question the validity of specific religious beliefs related to the sanctity of life:

> With respect to the COVID-19 vaccine specifically, a statement that the employee is refusing the vaccine due to concerns about the use of fetal cells may not be a qualifying religious belief because neither Pfizer nor Moderna vaccines contain cells. (*See,* Los Angeles County

COVID-19 Vaccine and Fetal Cell Lines
http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/Vac
cineDevelopment_FetalCelllines.pdf."

Ex.6, p. 2.

34.     The referenced document by Tips is from Los Angeles County and quotes the U.S. Conference of Catholic Bishops which reads, in part, "neither vaccine is completely free from any use of abortion-derived cell lines."  The Conference of Catholic Bishops goes on to state that "one may receive any of the clinically recommended vaccines in good conscience with the assurance that reception of such vaccines does not involve immoral cooperation in abortion."  Similarly, the document states that "the Catholic Church and the Southern Baptist Ethics & Religious Liberty Commission have both stated that **receiving a COVID-19 vaccine that required fetal cell lines for production or manufacture is morally acceptable**."  *Id.* (Emphasis in original).

35.     On the issue of the sanctity of life and the use of COVID-19 vaccines, San Francisco is either substituting its judgment -- or that of specific religious bodies -- for the sincerely held beliefs of its employees.  Moreover, the Los Angeles County document that San Francisco utilizes is a state-sponsored attempt to talk persons of faith out of their religious convictions.  This is conduct that the First Amendment's religion clauses forbid.

36.     Tips also claims that other vaccines such as hepatitis A, rubella, and rabies used fetal cell lines.  "If the employee has previously received other vaccines without concern, the claimed belief may not be religious." Ex. 6, p. 2.  This tip presumes that the employee had knowledge of the fetal cell lines used in such vaccines.  This tip also presumes that an employee who may have had a sincere change of belief since getting the previous vaccines is automatically insincere concerning the Covid-19 vaccine.

37.     San Francisco's HR evaluators are coached in determining if there is a "reasonable objective basis for questioning their sincerity":

> The following are a few objective facts that may raise questions about whether an exemption request is based on a sincerely held belief:
> * The employee only recently adopted the stated belief, i.e., this year or since the start of the pandemic.
> * The request is accompanied by a declaration or letter from an online 'church' or pastor.
> * The employee provides vague or incomplete information about their religious beliefs.
> * The employee has previously accepted other vaccinations, and now has a different position regarding only the COVID-19 vaccination.

Ex. 6, p. 3.

38.     Employees are subjected to a regulatory religious crucible of ten questions, "to be used as needed."  Below are some of those questions:

> * Please identify the specific religious tenet that prohibits COVID-19 vaccination.
> * Please identify the Christian/Muslim/Jewish/etc. Sect of denomination that teaches that COVID-19 vaccination is prohibited.
> * The [Vatican/insert religious authoritative or governing body][1] has endorsed the COVID-19 vaccines and pronounced that the connection between the fetal cell lines used in vaccine testing and actual abortion is sufficiently remote and the pandemic sufficiently serious to allow members to receive the vaccine in good conscience.  Are your beliefs contrary to this pronouncement? If so, why?
> * Please identify the specific religious tenet, practice or observance that prohibits receiving vaccines developed or tested using fetal cell lines.

Ex. 6, p. 4. The third bullet point is calculated to identify heretics.

---

[1] Brackets appear in the original.

39.     HR evaluators are told to seek information from third-party clerics regarding the employee's religious beliefs under the following circumstances:

- Employee provides vague or incomplete responses to questions about their religious beliefs or belief systems.
- Employee's religion or belief system is not well-known, or has a structure that is not like traditional religions.
- Employee statements objectively raise questions regarding whether the employee's belief is part of a religion or belief system.
- Employee actions are inconsistent with the alleged religious beliefs.

Ex. 6, p. 4.  The fourth bullet point is calculated to identify hypocrites.

40.     On San Francisco's standardized form entitled *Reasonable Accommodation Determination (COVID-19 Vaccination Exemption)* a box was checked **DENIED** for each member of the Plaintiffs.  See Exhibit 2.

41.     The protocol and standardized forms used by HR evaluators comprise a detailed, individualized assessment.

42.     San Francisco viewed the religious employees who sought religious accommodation as either hypocrites or heretics and thus denied their requests, or the religious employee's requests were "granted," and they were then subsequently fired.

43.     San Francisco's policies, procedures and practices utilized for their religious objection and "accommodation" process for enforcement of its Covid-19 mandate was intended to weed out and terminate those who held sincere religious objections to the Covid-19 vaccine and refused to capitulate.

44.     The Plaintiffs were granted an "accommodation" of placement on a 60-day citywide job search.  Since all jobs required vaccination, this search was a fool's errand.

45.     Some employees who sought medical exemptions were approved by San Francisco.

46.     San Francisco denies religious accommodations as an undue hardship because it asserts that those who are unvaccinated pose a danger to themselves and others.

47.     In a published statement, the federal Centers for Disease Control and Prevention (CDC) stated that Delta infection resulted in similarly high COVID-19 viral loads in vaccinated and unvaccinated people.[2]  CDC Director Rochelle Walensky has confirmed that COVID-19-positive individuals carry the same "viral load" (equivalent to the risk of spreading infection) whether they are vaccinated or unvaccinated.[3]

48.     The CDC Director's statement was based on a study in the summer of 2021 which tested vaccinated and unvaccinated persons and found: "Cycle threshold values [(COVID-19 viral loads)] were similar among specimens from patients who were fully vaccinated and those who were not."[4]  This information was available to San Francisco prior to San Francisco firing the Plaintiffs.

49.     Later studies have found that the viral load associated with COVID-19 variants such as Omicron also does not vary based upon vaccination status: "[F]ully vaccinated individuals with breakthrough infections have peak viral load similar to

---

[2] Statement from CDC Director Rochelle P. Walensky issued on July 30, 2021 and available at:  https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html downloaded on July 5, 2022.
[3] *Id.*
[4] "Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021" *Morbidity and Mortality Weekly Report, CDC* (July 30, 2021), available at: https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w.

unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts."[5]

50.    In another official statement, the CDC has confirmed those studies and stated that it expects that anyone with an Omicron infection, regardless of vaccination status or whether or not they have symptoms, can spread the virus to others.[6]

51.    Because the viral loads are no different for the vaccinated and the unvaccinated, San Francisco's position that the unvaccinated pose a danger to themselves and others, but that the vaccinated do not pose this danger, is not consistent with the above-cited statements from the CDC.  At least one of the above cited statements from the CDC (see Footnote 2 above) was published well before the Plaintiffs were unlawfully terminated from their employment and therefore could have, and should have been known by San Francisco, yet San Francisco still unlawfully terminated the Plaintiffs.

52.    The CDC spokesperson, Greta Massetti, stated that immunity for the population is now around 95 percent when combining those who have contracted and recovered from COVID-19 with those that have been vaccinated.  As such, "it makes the most sense not to differentiate" between the vaccinated and unvaccinated.[7]

_____

[5]  David W. Eyre, B.M., B.Ch., D.Phil. et al.  *Effect of Covid-19 Vaccination on Transmission of Alpha and Delta Variants*, New England J. Med 386:744-756 (February 24, 2022) available at: https://www.nejm.org/doi/full/10.1056/NEJMoa2116597 downloaded on July 6, 2022.

[6] "Omicron Variant: What You Need to Know" *CDC* (March 29, 2022) available at: https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.

[7] "With new guidance, CDC ends test-to-stay for schools and relaxes COVID rules" NPR (Aug. 11, 2022), https://www.npr.org/sections/health-

# FIRST CAUSE OF ACTION

## FAILURE TO PROVIDE RELIGIOUS ACCOMMODATION
### Violation of Title VII of the Civil Rights Act of 1964
All Plaintiffs Against All Government Defendants
(42 U.S.C. § 2000e)

53.     Plaintiffs repeat and reallege the allegations above and incorporate those allegations herein by reference.

54.     At all times relevant hereto, Title VII was in full force and effect and was binding on San Francisco.

55.     At all times relevant hereto, the Plaintiffs were performing competently in the positions they held as employees of San Francisco.

56.     Plaintiffs have bona fide religious beliefs that conflict with receiving the COVID-19 vaccination; they timely informed their employer of such beliefs. The Plaintiffs were disciplined for failure to comply with the conflicting employment requirement by being placed on unpaid leave and then fired.

57.     Title VII makes it an unlawful employment practice to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee.

58.     Title VII states in part: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . ."  (42 USC 2000e-(2)(a)(1))

59.     San Francisco failed to provide reasonable alternative means of accommodating the religious belief or observance that was in conflict with the COVID-19 vaccination work requirement.

shots/2022/08/11/1116991600/with-new-guidance-cdc-ends-test-to-stay-for-schools-and-relaxes-covid-rules.

60.     There is a dispute between the Plaintiffs and Defendant.  San Francisco asserts that it can undertake a detailed probe of the sincerity of the religious beliefs of its employees; this includes placing a burden on the Plaintiffs to provide an objective basis for religious convictions regarding the refusal to take the COVID-19 vaccination.  Plaintiffs disagree.  Because faith is intrinsically subjective, a religious objector cannot be held to an objective measure of proof regarding what lay within his or her heart, mind, and soul.  Belief in what one may demonstrate to the senses is not faith.  Plaintiffs assert that Title VII presumes sincerity of belief by an employee and therefore San Francisco's standardized practice of a rigorous inquisition is an unlawful standard.  The Plaintiffs' legal position is that, although an employee's faith may be deemed as heresy to some and incomprehensible to others, employers cannot require orthodoxy of employees according to a recognized religion or demand that employees be put to the proof of their religious beliefs.  The ultimate sincerity of Plaintiff's beliefs has been seen in their willingness to lose their livelihood before capitulating to San Francisco's demand that they be vaccinated.

61.     Additionally, while the employers may compel an employee to articulate what her religious beliefs are, they are prohibited from requiring the employee to prove that such beliefs are logical, widely acceptable, consistent, or even comprehensible.

62.     Therefore, under Title VII, an employer should proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances.  San Francisco has turned this standard on its head.  Instead, assuming nothing, San Francisco has instituted a detailed probe into the sincerity of the faith of its employees.

63.     San Francisco's policies, procedures and practices utilized for their religious objection and "accommodation" process appear designed to weed out

those who sincerely held religious objections to the Covid-19 vaccine and would not capitulate to San Francisco's demands.

64.     There is a dispute between the Plaintiffs and Defendant.  San Francisco universally asserts that every unvaccinated employee poses a threat to the health and safety of themselves, coworkers, and the public.  San Francisco asserts that an accommodation for any religious adherent poses an undue hardship on San Francisco, which is more than a *de minimis* burden.  Plaintiffs disagree. San Francisco has granted medical exemptions to some of its employees.  The risks involving employees who receive medical exemptions to the COVID-19 vaccination stand as identical to the unvaccinated employees of faith.  What is more, terminating unvaccinated religious employees does not place San Francisco in a safer position relative to the spread of COVID-19.  Employees that have been fired have not been confined to their homes.  They can move about freely within the City and County.  Employees have not been sentenced to exile; while still within San Francisco, terminated employees may ride public transportation, enter stores to purchase goods and services, conduct business in government offices, attend houses of worship, and may be in the stands at sporting events.  Therefore, any claimed hardship that keeping an employee on the payroll would incur is not substantially mitigated by firing the employee.

65.     Additionally, San Francisco's argument that unvaccinated employees pose a risk to their own safety and the safety of others is undercut by the fact that the vaccinated and unvaccinated carry the same "viral load" and can both infect others with the Covid-19 virus.  (See Footnotes 2, 3, and 4, above.)

///

///

///

///

## SECOND CAUSE OF ACTION
### RELIGION CLAUSES
**First Amendment to the U.S. Constitution**
All Plaintiffs Against All Government Defendants
(42 U.S.C. § 1983)

66.     The Plaintiffs repeat and reallege the allegations above and incorporate those allegations herein by reference.

67.     The right to free exercise of religion is a right protected and guaranteed by the First Amendment of the U.S. Constitution. The liberties under the First Amendment apply to the states and their political subdivisions through the Fourteenth Amendment.

68.     The actions of San Francisco have been, and continue to be, done under color of law.

69.     The Plaintiffs have sincerely held religious beliefs that compel them to refuse the COVID-19 vaccine.  The sincerity of their beliefs can be seen in their willingness to lose their livelihood so as not to violate their religious beliefs. Nevertheless, San Francisco punished the Plaintiffs by termination from employment for not capitulating into renouncing their religious beliefs concerning the vaccine.

70.     San Francisco's detailed probe into the beliefs of the Plaintiffs' exceeds sincerity by determining orthodoxy, verity of beliefs, and hypocrisy.

71.     The depth of San Francisco's inquiry into the faith of employees who request religious accommodations is structured such that employees might be denied an accommodation because they are perceived by the government to not be as devout of a member of their religion as state actors believe the employee should be.  This occurs by HR evaluators determining the following:

(1) whether the employee is part of a recognized religion;
(2) whether the employee's beliefs are in line with the teachings of religious authorities;

---

COMPLAINT
20

(3) whether the religion holds a universal prohibition against vaccination; and

(4) whether the beliefs should be called into question as judged by the presence of (a) alleged inconsistencies or (b) "factual inaccuracies."

72.     San Francisco HR evaluators are taking on the role that the First Amendment reserves to ecclesiastical courts, not government officials.  San Francisco's actions smack more of an inquisition with the outcome ostracization from one's livelihood, rather than a sincere interactive process to try and accommodate Plaintiffs sincerely held religious beliefs.

73.     San Francisco's policies, procedures and practices utilized for their religious objection and "accommodation" process appear designed to weed out those who sincerely held religious objections to the Covid-19 vaccine and would not capitulate to San Francisco's demands.

74.     The protocol HR evaluators use imposes requirements that stand as hostile to the religious beliefs of the Plaintiffs and acts in a manner that passes judgment upon, or presupposes the illegitimacy of, religious beliefs and practices. Therefore, the protocol used is not neutral.

75.     The protocol HR evaluators use involves individualized assessments and thus are not neutral and generally applicable.

76.     San Francisco has engaged in indirect coercion and penalties on the Plaintiffs for the exercise of their religion.  In doing so, San Francisco is excluding religious observers from continued employment.  One could make a fair assessment that this indeed, has been the goal of San Francisco's inquisition.

77.     The vaccination requirement forces the Plaintiffs to choose between receiving the COVID-19 vaccine in violation of their sincerely held religious beliefs or being fired, thus imposing a substantial burden on the Plaintiffs, and interfering with, and depriving them of, the enjoyment of the religious liberties guaranteed by

the First Amendment to the U.S. Constitution, as made applicable to the states through the Fourteenth Amendment.

### THIRD CAUSE OF ACTION
#### FAILURE TO PROVIDE RELIGIOUS ACCOMMODATION
**Violation of the California Fair Employment and Housing Act**
All Plaintiffs Against All Government Defendants
(Gov. Code § 12900 et seq.)

78.     The Plaintiffs repeat and reallege the allegations above and incorporate those allegations herein by reference.

79.     At all times relevant hereto, the FEHA was in full force and effect and was binding on San Francisco.

80.     San Francisco failed to provide reasonable alternative means of accommodating the religious belief or observance that conflicted with the work requirement, i.e., COVID-19 vaccination.

81.     There is a dispute between the Plaintiffs and Defendant.  San Francisco universally asserts that every unvaccinated employee poses a threat to the health and safety of themselves and others.  San Francisco asserts that an accommodation for any unvaccinated religious adherent imposes an undue burden on San Francisco. Plaintiffs disagree.  Plaintiffs assert that accommodating the Plaintiffs does not pose a *significant difficulty or expense* on San Francisco per Gov. Code § 12926(u).

82.     Plaintiffs are entitled to further relief as more fully set forth below in their Prayer for Relief.

///

///

///

///

1

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor, and against the Defendant(s), for full relief, including the following:

a. Declaratory judgment that San Francisco's protocol for determining sincerity of faith in whole, or in part, on its face, and as applied, does not comport with the requirements of Title VII;

b. Declaratory judgment that San Francisco's protocol for determining sincerity of faith in whole, or in part, on its face, and as applied, does not comport with the requirements of the FEHA;

c. Declaratory judgment that San Francisco's protocol for determining sincerity of faith is in whole, or in part, on its face, and as applied, is violative of the religion clauses of the First Amendment;

d. Declaratory judgment that San Francisco's universal declaration that each and every unvaccinated-religious-objector-employee poses a danger to the employee, co-workers, and others, and thus accommodation poses an undue hardship on San Francisco, fails the reasonableness requirement under Title VII;

e. Declaratory judgment that San Francisco's universal declaration that each and every unvaccinated-religious-objector-employee poses a danger to the employee, co-workers, and others, and thus accommodation poses an undue hardship on San Francisco, fails the reasonableness requirement under the FEHA;

f. Declaratory judgment that providing a religious accommodation does not impose an undue hardship on San Francisco under Title VII;

g. Declaratory judgment that providing a religious accommodation does not impose an undue hardship on San Francisco under the FEHA;

h. Preliminary and permanent injunction prohibiting San Francisco's protocol for determining sincerity of faith;

i.    Equitable relief in the form of an order setting aside the denials for accommodation and that the Plaintiffs' receive *de novo* consideration of their accommodation requests;

j.    Preliminary and permanent injunction prohibiting San Francisco from deeming the Plaintiff's as a danger to themselves, coworkers, and the public;

k.    An award for actual, consequential, and incidental financial losses, including, but not limited to lost back pay, front pay, benefits, and other compensation plus interest;

l.    An award of compensatory damages;

m.    Restoration of employee benefits, including, but not limited to, medical benefits, pensions, and insurance;

n.    Restore vacation days, comp hours, and lost time hours;

o.    Attorneys' fees and costs; and

p.    Any and all other appropriate relief to which the Plaintiffs may be entitled including all "appropriate relief" within the scope of F.R.C.P. 54(c).

Dated: October 12, 2022

/s/ Kevin T. Snider
Kevin T. Snider
*Counsel of Record*
Matthew B. McReynolds
Milton E. Matchak
**PACIFIC JUSTICE INSTITUTE**
NORTHERN CALIFORNIA OFFICE
P.O. Box 276600
Sacramento, CA 95827
Tel.  (916) 857-6900
Fax  (916) 857-6902
Email: ksnider@pji.org

*Attorneys for Plaintiffs*