1    DAVID CHIU, State Bar #189542
     City Attorney
2    WAYNE K. SNODGRASS, State Bar #148137
     JAMES M. EMERY, State Bar #153630
3    LAUREN E. WOOD, State Bar #280096
     Deputy City Attorneys
4    City Hall, Room 234
     1 Dr. Carlton B. Goodlett Place
5    San Francisco, California 94102-5408
     Telephone:      (415) 554-4628 (Emery)
6                   (415) 554-4261 (Wood)
     Facsimile:       (415) 554-4699
7    E-Mail:         jim.emery@sfcityatty.org
                    lauren.wood@sfcityatty.org
8
     Attorneys for Defendant
9    CITY AND COUNTY OF SAN FRANCISCO

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14   SELINA KEENE, MELODY FOUNTILA, MARK MCCLURE, | Case No. 4:22-cv-01587-JSW |
| 15         Plaintiffs, | **DECLARATION OF LAUREN E. WOOD IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |
| 16         vs. | |
| 17   CITY and COUNTY OF SAN FRANCISCO; LONDON BREED, Mayor of San Francisco in | **(Civil L.R. 3-12(b) and 7-11)** |
| 18   her official capacity; CAROL ISEN, Human Resources Director, City and County of San | Judge:           Hon. Jeffrey S. White |
| 19   Francisco, in her official capacity; DOES 1-100, | Trial Date:        None set. |
| 20         Defendants. | |
| 21 | |

22

23

24

25

26

27

28

1   I, Lauren E. Wood, hereby declare:

2   1.      I am a member of the bar of the state of California and counsel of record for defendants

3   in this action (collectively, "the City").  I submit this declaration to support San Francisco's Motion to

4   to Consider Whether Cases Should be Related.  If called as a witness, I could and would testify

5   competently to the matters set forth herein.

6   2.      Attached hereto as **Exhibit A** is a true and correct copy of the complaint filed January

7   17, 2023 in *Sanders v. San Francisco Public Library et al.*, Case No. 3:23-cv-00211-JD.

8   I declare under penalty of perjury under the laws of the State of California and the United

9   States that the foregoing is true and correct.  Executed March 29, 2023 in San Francisco, California.

10

11   _____/s/_____Lauren E. Wood_____
     LAUREN E. WOOD

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1  **IN THE UNITED STATES DISTRICT COURT**
2  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

3

| | |
|---|---|
| **CHARLOTTE RAE SANDERS**, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| **SAN FRANCISCO PUBLIC** ) | |
| **LIBRARY**; ) | |
| ) | Civil Case No. _____ |
| **MICHAEL LAMBERT**, in his ) | |
| individual capacity and official ). | VERIFIED COMPLAINT |
| capacity as City Librarian for the ) | |
| San Francisco Public Library; and ) | |
| ) | |
| **LAWRENCE P. LINDISCH**, in his ) | |
| individual capacity and official ) | |
| capacity as a Senior Human | |
| Resources Analyst, | |
| | |
| *Defendants.* | |

4
5

6      Ms. Sanders is a Christian who is religiously prohibited from receiving

7      the COVID-19 vaccine. Instead of granting her an exemption from its vaccine

8      mandate, her government employer terminated her after she sought the

9      exemption. She now seeks to vindicate her fundamental right to the free

10     exercise of religion under the First Amendment of the United States

11     Constitution and Title VII of the Civil Rights Act of 1964.

1

## <u>Introduction</u>

12
13   1.          Plaintiff Charlotte Rae Sanders ("Ms. Sanders" or "Plaintiff") brings this
14   civil rights action against the San Francisco Public Library, Defendant Michael
15   Lambert, and Defendant Lawrence P. Lindisch (collectively, "Defendants")
16   seeking injunctive relief and damages under 42 U.S.C. § 1983 and 42 U.S.C.
17   §2000e for her unlawful termination from her Permanent Civil Service position
18   as a Class 3630 Librarian I.

## <u>Jurisdiction and Venue</u>

19
20   2.          This Court has jurisdiction under 28 U.S.C. §§ 1331 because all claims
21   arise under the laws of the United States.

22   3.          This Court has authority to grant the requested declaratory relief under
23   the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court is also
24   authorized to grant injunctive relief and damages under 42 U.S.C. §1983,
25   damages under 42 U.S.C. §2000e, and award reasonable attorney's fees and
26   costs under 42 U.S.C. § 1988.

27   4.          Venue is appropriate in the Northern District of California because it is
28   the district in which the events giving rise to the claims occurred.

29   5.          Defendants are all subject to personal jurisdiction within this judicial
30   district because they are all domiciled the State of California.

## <u>Parties</u>

31
32   6.          Plaintiff Charlotte Sanders is a citizen of the State of California. She
33   worked as a librarian at the San Francisco Public Library for 19 years,
34   supporting her family as the primary income-earner.

35  7.        Defendant Michael Lambert is made party to this action in his official
36        capacity as the City Librarian for the San Francisco Public Library (the
37        "Library"). He also holds termination authority for his subordinates and
38        informed Ms. Sanders about her dismissal from City service. He is a citizen of
39        the State of California.

40  8.        Defendant Lawrence P. Lindisch is made party to this action in his
41        official capacity as a Senior Human Resources Analyst who served as the *Skelly*
42        officer for Ms. Sanders' *Skelly* hearing in which he recommended that Ms.
43        Sanders be terminated from employment. He is a citizen of the State of
44        California.

45                                         **Facts**

46  9.        Plaintiff Charlotte Sanders worked for the Library for nineteen years.
47        Originally, she was a frontline reference librarian, but for the last five years
48        before her termination, she served in the Collection Development Office of the
49        Library, which is a position that does not interface with the public. The
50        Collection Development Office itself is located in a building a few blocks from
51        the Main Branch of the SFPL and is closed to the public.

52  10.       Ms. Sanders' primary duties consisted of ordering all audiovisual
53        material for the adult collection, evaluating more than 800 patron material
54        suggestions the Library receives each month, and selecting and ordering titles
55        for the Romance and Health reading collections. While employed by the
56        Library, Ms. Sanders was active in her workplace and served on various
57        committees including as chairwoman of one of those committees.

3

58  11.        On or about March 13, 2020, President Trump issued a "Proclamation
59             of a National State of Emergency Concerning the Novel Coronavirus Disease
60             (COVID-19) Outbreak." Shortly thereafter, the nation began to go into
61             lockdown, which involved the closing of public and private facilities.

62  12.        On or about March 16, 2020, the Library closed its public operations.

63  13.        Ms. Sanders' department, however, was able to shift immediately to
64             telecommuting. In fact, Ms. Sanders did not take any time off due to COVID
65             because all her work could be performed remotely.

66  14.        Throughout the shutdown, Ms. Sanders fulfilled all her regular duties
67             as well as additional work of other frontline librarians who were on
68             administrative leave or eventually deployed as city disaster workers. Ms.
69             Sanders thrived while telecommuting and kept in constant contact with the
70             rest of the Library staff throughout the day on Microsoft Teams.

71  15.        During the telecommuting work period, Ms. Sanders received an
72             exceptional employee performance review.

73  16.        On June 23, 2021, the City and County of San Francisco ("City")
74             announced its COVID-19 Vaccination Policy, which mandated that all City
75             employees report their vaccination status to the City by July 29, 2021 and be
76             fully vaccinated no later than 10 weeks after the Federal Food and Drug
77             Administration ("FDA") gave final approval to a vaccine.

4

78   17.         On July 11, 2021, Ms. Sanders returned to her office at the Library
79          Collection Development Office with a hybrid telecommuting schedule. She
80          would work two days at the office and three days a week remotely from home.

81   18.         On August 23, 2021, the FDA approved Pfizer-BioNTech's vaccine,
82          known as Comirnaty.

83   19.         On August 25, 2021, the City notified Ms. Sanders that a COVID vaccine
84          had been approved and all City employees fell under the mandate to get the
85          vaccine and report their vaccination status to the City no later than November
86          1, 2021.

87   20.         On September 11, 2021, Ms. Sanders returned fully to in-person work
88          complying with all Library safety precautions, including masking, a daily
89          online health screening questionnaire, and other COVID hygiene measures,
90          such as frequent handwashing.

91   21.         Ms. Sanders' department continued work in cubicles which were at least
92          six feet apart. Meetings were conducted via Zoom or Microsoft Teams, and
93          colleague interaction occurred only upon passing one another in the building.
94          There was no interaction with the public.

95   22.         In September of 2021, the City of San Francisco, and by extension the
96          Library, imposed a vaccine mandate on its employees, requiring all employees
97          to receive a COVID-19 vaccine unless they qualified for an exemption. The
98          mandate gave the Library the authority to grant exemptions to its employees.

99    23.          On or about September 29, 2021, Ms. Sanders contacted the Library and
100           asked where she could submit her request for an exemption from the vaccine
101           mandate. She received a reply directing her to use the form on the Library
102           website to submit the request to the HR department.

103    24.          On October 1, 2021, Ms. Sanders submitted her request for a religious
104           exemption.

105    25.          As stated in the City's Employee Request for Religious Accommodation
106           form, the request may be granted to City employees who (1) hold a sincere
107           religious belief that conflicts with the vaccination requirement, (2) complete
108           the required form, and (3) provide any necessary information needed to support
109           the exemption request.

110    26.          The request for exemption detailed Ms. Sanders' sincerely held religious
111           belief that the use of aborted fetuses, or cells derived therefrom, in the vaccine
112           process is gravely evil and that participating by permitting herself to be
113           injected with those vaccines would compound that moral wrong.

114    27.          On October 7, 2021, a week after Ms. Sanders submitted her request,
115           Jamie Shih, Senior HR Analyst for the San Francisco Public Library, asked
116           Ms. Sanders to submit a "Declaration of Support" from someone who knew of
117           her faith.

118    28.          On October 13, 2021, Ms. Sanders submitted the requested declaration
119           from Elka Carroll, who attested to the sincerity of Ms. Sanders' religious belief.

29.     Ms. Sanders is a non-denominational Christian who has been a practicing Christian since childhood and regularly attends church. She underwent an intense spiritual awakening in 2010. After much prayer and contemplation, Ms. Sanders stopped vaccinating that same year.

30.     Ms. Sanders believes in the sanctity of human life and is opposed to the use of fetal stem cells in the development, testing, or manufacturing of vaccines.

31.     The COVID-19 vaccines available to Ms. Sanders at the time the mandate was imposed were developed in part with the use of fetal stem cells.

32.     The City's (and therefore the Library's) policy states that after an employee establishes a sincere religious objection, employers "must then engage with the employee to determine if the employer can provide a reasonable accommodation in lieu of vaccination." *See* FAQs for COVID-19 Health Order C19-07y, SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH (Mar. 14, 2022) https://www.sfdph.org/dph/alerts/coronavirus-faq.asp.

33.     No Library employee engaged with Ms. Sanders to determine if the Library could provide a reasonable accommodation to Ms. Sanders.

34.     Instead, the Library moved to formally discipline Ms. Sanders.

35.     On October 14, 2021, Ms. Sanders was called into the office of floor manager Shellie Cocking. Ms. Cocking read from a statement that Ms. Sanders was a valued employee, and Ms. Cocking offered to provide Ms. Sanders more

141  information about the vaccines if Ms. Sanders needed any. Ms. Cocking also

142  offered to go with Ms. Sanders to get a vaccine.

143  36.   Ms. Sanders informed Ms. Cocking that she had notified HR requesting

144  an exemption based upon her religious beliefs. That ended the conversation

145  between the two. Ms. Cocking asked Ms. Sanders to sign the COVID-19

146  Vaccination Discussion Acknowledgement form and ended the meeting. Ms.

147  Cocking was wholly uninterested in engaging in conversation about Ms.

148  Sanders' religious views or desire for a religious exemption.

149  37.   Eleven days after her truncated conversation with Ms. Cocking, Ms.

150  Shih sent Ms. Sanders thirteen further questions. These questions were

151  unnecessarily intrusive and upsetting to Ms. Sanders. They included a request

152  for a complete lifetime history of all medical procedures and medications and

153  probing questions about her faith and religious doctrine.

154  38.   The next day—October 26, 2021—Ms. Sanders completed and returned

155  the additional questions, despite their invasive nature.

156  39.   On October 27, 2021, Ms. Shih sent an additional four questions,

157  including asking whether Ms. Sanders' son had previously received certain

158  vaccinations. Ms. Sanders considered these questions a violation of her child's

159  medical privacy. Nevertheless, she complied with this request, too, submitting

160  her answers on October 28, 2021.

161  40.   On October 29, 2021—the very next day—the Library denied Ms.

162  Sanders' request for a religious exemption for three purported reasons: (1) an

accommodation would pose a direct threat to the health and safety of others and/or Ms. Sanders, (2) an accommodation would prevent Ms. Sanders from performing essential function(s), and (3) an accommodation would result in undue hardship for the City.

41.     When Ms. Sanders arrived at work on November 1, 2021, she was told to report to Denise Schmidt, manager of Collections and Cataloguing. At the meeting, Ms. Schmidt gave Ms. Sanders a packet with the *Skelly* meeting instructions and notified Ms. Sanders she was officially being placed on leave. Ms. Sanders was told to collect her belongings and leave the premises immediately, which was humiliating and distressing to Ms. Sanders.

42.     Once the Library denied Ms. Sanders her requested exemption, it considered Ms. Sanders in violation of the City's COVID-19 Vaccination Policy. Shellie Cocking signed the Notice of Proposed Employment Action and *Skelly* Meeting (*Skelly* Notice) on November 1, 2021.

43.     On November 16, 2021, Ms. Sanders appeared at the *Skelly* meeting, which was also attended by Arcelia Montoya, a Union Field Representative, and Yoon Gette, a Union Chapter President. Mr. Gette read a statement contending that the Library failed to bargain in good faith and therefore violated paragraph 624 of the L-1021 Collective Bargaining Agreement.

44.     Defendant Lawrence Lindisch, the *Skelly* officer, disregarded both Ms. Sanders' and Mr. Gette's responses. He also gave no attention to possible accommodations and instead claimed that Ms. Sanders' unvaccinated status

185    "endangers the health and safety of the City's workforce and the public we

186    serve." Mr. Lindisch upheld the Library's decision to fire Ms. Sanders.

187    45.    Defendant Lindisch did not cite a single piece of scientific or medical

188    evidence to support his claim that Ms. Sanders' unvaccinated status

189    endangered the health and safety of the City's workforce.

190    46.    On November 29, 2021, Ms. Sanders received notice from the Library,

191    signed by Defendant Michael Lambert, that she was officially dismissed from

192    her Permanent Civil Service position as a Class 3630 Librarian I. Defendant

193    Lambert affirmed the findings of Defendant Lindisch.

194    47.    Ms. Sanders received a final notice of dismissal on April 4th, 2022, which

195    was signed by Defendant Lambert.

196    48.    As a result of her termination, Ms. Sanders has suffered immense

197    financial and psychological harm.

198    49.    Following her dismissal, Ms. Sanders timely filed a charge of

199    discrimination with the United States Equal Employment Opportunity

200    Commission. On October 18, 2022, Ms. Sanders received her Notice of Right to

201    Sue.

202    50.    Around the time the Library terminated Ms. Sanders, the City of San

203    Francisco (the parent entity of the Library) granted numerous exemptions to

204    the vaccine requirement to various other employees. Upon information and

205    belief, at least some of these other exemptions were granted to non-Christians

206    or were not religious exemptions at all. In so doing, the City demonstrated an

207    animus against Christianity or religion generally.

208

209                              **CAUSES OF ACTION**

210                                    **COUNT I**
211
212    **Violation of the First Amendment's Free Exercise Clause,**

213    **against all Defendants in their official capacities pursuant to §1983**

214    51.        Ms. Sanders incorporates all allegations of this Complaint by reference

215           as if set forth in full herein.

216    52.        The First Amendment provides that "Congress shall make no law

217           respecting the establishment of religion or prohibiting the free exercise

218           thereof." U.S. CONST., AMEND. I. The Free Exercise Clause is incorporated

219           against the States via the Fourteenth Amendment. *Cantwell v. Connecticut*,

220           310 U.S. 296 (1940).

221    53.        The Free Exercise Clause of the First Amendment prohibits the

222           government from enacting or enforcing laws or policies targeting the exercise

223           of religious belief unless such laws are narrowly tailored to achieve a

224           compelling government interest. *Roman Cath. Diocese of Brooklyn v. Cuomo*,

225           141 S. Ct. 63, 67 (2020).

226    54.        A law is not generally applicable, and therefore triggers strict scrutiny

227           under the Free Exercise Clause, whenever it "represents a system of

228           'individualized governmental assessment of the reasons for the relevant

229           conduct.'" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S.

230    520, 537, 113 S. Ct. 2217, 2229 (1993). The Library's vaccination policy

231    provides for individualized discretionary exceptions, and thus is not generally

232    applicable.

233    55.    Because the Library's vaccine policy is not generally applicable, it is

234    subject to strict scrutiny.

235    56.    Under strict scrutiny, the Library's mandate must be narrowly tailored

236    to serve a compelling governmental interest and be the least restrictive

237    means for achieving such interest.

238    57.    Requiring all employees to be vaccinated from COVID-19 was not the

239    least restrictive means to achieve public health and safety because the Library

240    could have required Ms. Sanders to work remotely if she chose to not be

241    vaccinated, as it had previously done.

242    58.    Indeed, the Library required Ms. Sanders to continue working remotely

243    during the COVID shutdown. Ms. Sanders did so effortlessly, even receiving a

244    laudatory review from the Library for her remote work. This alternative is

245    therefore clearly effective. There is no credible reason why the Library officials

246    could not accommodate Ms. Sanders' religious beliefs by offering this remote

247    work alternative.

248    59.    By terminating Ms. Sanders' from her job, Defendants have

249    substantially burdened her religious exercise by forcing her to choose between

250    her sincerely held religious belief and her job.

251   60.       Ms. Sanders requests declaratory relief in the form of a declaration that

252           the Library violated her First Amendment rights.

253

254                                   **COUNT II**
255
256   **Violation of the First Amendment's Free Exercise Clause,**

257   **against all Defendants in their individual capacities pursuant to §1983**

258   61.       Ms. Sanders incorporates all allegations of this Complaint by reference

259           as if set forth in full herein.

260   62.       The First Amendment provides that "Congress shall make no law

261           respecting the establishment of religion, or prohibiting the free exercise

262           thereof." U.S. CONST., AMEND. I. The Free Exercise Clause is incorporated

263           against the States via the Fourteenth Amendment. *Cantwell v. Connecticut*,

264           310 U.S. 296 (1940).

265   63.       The Free Exercise Clause of the First Amendment prohibits the

266           government from enacting or enforcing laws or policies targeting the exercise

267           of religious belief unless such laws are narrowly tailored to achieve a

268           compelling government interest. *Roman Cath. Diocese of Brooklyn v. Cuomo*,

269           141 S. Ct. 63, 67 (2020).

270   64.       A law is not generally applicable, and therefore triggers strict scrutiny

271           under the Free Exercise Clause, whenever it "represents a system of

272           'individualized governmental assessment of the reasons for the relevant

273           conduct.'" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S.

274           520, 537, 113 S. Ct. 2217, 2229 (1993). The Library's vaccination policy

275    provides for individualized discretionary exceptions, and thus is not generally
276    applicable.

277    65.    Because the Library's vaccine policy is not generally applicable, it is
278    subject to strict scrutiny.

279    66.    Under strict scrutiny, the Library's mandate must be narrowly tailored
280    to serve a compelling governmental interest and be the least restrictive
281    means for achieving such interest.

282    67.    Requiring all employees to be vaccinated from COVID-19 was not the
283    least restrictive means to achieve public health and safety because the Library
284    could have required Ms. Sanders to work remotely if she chose to not be
285    vaccinated, as it had previously done.

286    68.    Indeed, the Library required Ms. Sanders to continue working remotely
287    during the COVID shutdown. Ms. Sanders did so effortlessly, even receiving a
288    laudatory review from the Library for her remote work. This alternative is
289    therefore clearly effective. There is no credible reason why the Library officials
290    could not accommodate Ms. Sanders' religious beliefs by offering this remote
291    work alternative.

292    69.    By terminating Ms. Sanders' from her job, Defendants have
293    substantially burdened her religious exercise by forcing her to choose between
294    her sincerely held religious belief and her job.

295           Ms. Sanders requests compensatory and punitive damages in an amount
296    to be determined at trial.

14

297

**COUNT III**

**Violation of the Title VII of the Civil Rights Act of 1964,**

**against the San Francisco Public Library**

70.     Ms. Sanders incorporates all allegations of this Complaint by reference as if set forth in full herein.

71.     Ms. Sanders was an employee of the Library, which employed over 15 employees, entitling her to the protections of Title VII.

72.     The Library is required to abide by Title VII's prohibitions on religious discrimination.

73.     The Library discriminated against Ms. Sanders by intentionally rejecting her religious exemption request rooted in her Christian faith, while at the same time the City granted other exemption requests under the same policy. The Library further evidenced its bias against Ms. Sanders on the basis of her religion through its hostile treatment of her immediately following her exemption request based on her Christian faith.

74.     Ms. Sanders was qualified for her position at the Library as evidenced by her stellar performance reviews.

75.     Ms. Sanders suffered an adverse employment action in the form of her termination from employment.

76.     Upon information and belief, the Library did not terminate a non-Christian for failing to comply with the vaccine mandate.

15

320 77.　　　There is no legitimate nondiscriminatory reason for the Library's

321　　　behavior.

322 78.　　　Even if a legitimate nondiscriminatory reason exists, it is merely pretext

323　　　for unlawful discrimination.

324 79.　　　Ms. Sanders has suffered severe professional, economic, and

325　　　psychological harm as a result of the Library's discriminatory behavior.

326 80.　　　Ms. Sanders requests compensatory and punitive damages, and back

327　　　pay under Title VII.

328

329　　　　　　　　　**Prayer for Relief**

330 Ms. Sanders requests the following relief against Defendants:

331　　(a) Award Plaintiff Sanders compensatory damages in an amount to be

332　　　determined at trial;

333　　(b) Award Ms. Sanders punitive damages;

334　　(c) Award Ms. Sanders back pay;

335　　(d) Award Ms. Sanders attorneys' fees and costs;

336　　(e) Grant her request for declaratory relief as delineated above; and

337　　(f) Order other and further relief as the court may deem just and equitable under

338　　　the circumstances of this case.

339　　　　　　　　　**Jury Demand**

340 Ms. Sanders demands a trial by jury.

341

342

343
344
345
346    Dated: January 17, 2022                    Charlotte Sanders
347
348                                               By: /s/ Heather Flick
349    _____         Heather Flick (Bar # 184206)
350                                               Molly    McCann    (*pro    hac    vice*
351                                               forthcoming)
352                                               BINNALL LAW GROUP, PLLC
353                                               717 King Street, Suite 200
354                                               Alexandria, VA 22314
355                                               Tel:  (703) 888-1943
356                                               Fax: (703) 888-1930
357                                               heather@binnall.com
358                                               molly@binnall.com
359                                               *Attorneys for Charlotte Sanders*
360