1   DAVID CHIU, State Bar #189542
    City Attorney
2   WAYNE K. SNODGRASS, State Bar #148137
    JAMES M. EMERY, State Bar #153630
3   LAUREN E. WOOD, State Bar #280096
    ADAM M. SHAPIRO, State Bar #267429
4   Deputy City Attorneys
    City Hall, Room 234
5   1 Dr. Carlton B. Goodlett Place
    San Francisco, California 94102-5408
6   Telephone:      (415) 554-4628 (Emery)
                    (415) 554-4261 (Wood)
7   Facsimile:      (415) 554-4699
    E-Mail:         jim.emery@sfcityatty.org
8                   lauren.wood@sfcityatty.org
                    adam.shapiro@sfcityatty.org
9
    Attorneys for Defendant
10  CITY AND COUNTY OF SAN FRANCISCO

11

12                      UNITED STATES DISTRICT COURT

13                      NORTHERN DISTRICT OF CALIFORNIA

14  SELINA KEENE, MELODY FOUNTILA,              Case No. 4:22-cv-01587-JSW
    MARK MCCLURE,
15                                              **DECLARATION OF ADAM M. SHAPIRO IN
            Plaintiffs,                         SUPPORT OF ADMINISTRATIVE MOTION
16                                              TO CONSIDER WHETHER CASES SHOULD
        vs.                                     BE RELATED**
17
    CITY and COUNTY OF SAN FRANCISCO;           **(Civil L.R. 3-12(b) and 7-11)**
18  LONDON BREED, Mayor of San Francisco in
    her official capacity; CAROL ISEN, Human    Judge:          Hon. Jeffrey S. White
19  Resources Director, City and County of San
    Francisco, in her official capacity; DOES 1- Trial Date:    None set.
20  100,
21          Defendants.

22

23

24

25

26

27

28

1    I, Adam M. Shapiro, hereby declare:

2    1.      I am a member of the bar of the state of California and counsel of record for defendants

3    in this action (collectively, "the City").  I submit this declaration to support San Francisco's Motion to

4    to Consider Whether Cases Should be Related.  If called as a witness, I could and would testify

5    competently to the matters set forth herein.

6    2.      Attached hereto as **Exhibit A** is a true and correct copy of the first amended complaint

7    filed October 7, 2022, in *Monegas v. City and County of San Francisco*, Case No. 3:22-cv-004633-JD.

8    3.      Attached hereto as **Exhibit B** is a true and correct copy of Judge Donato's May 1, 2023

9    Order granting the City's Motion to Dismiss, in *Monegas v. City and County of San Francisco*, Case

10   No. 3:22-cv-004633-JD.

12   I declare under penalty of perjury under the laws of the State of California and the United

13   States that the foregoing is true and correct.  Executed May 2, 2023 in San Francisco, California.

15   _____/s/_____Adam M. Shapiro_____
     Adam M. Shapiro

# EXHIBIT A

April Monegas
Plaintiff in *Propria Persona*
2104 East Anderson Lane, Apt. 1513
Austin, Texas 78752
amonegas@gmail.com
(415) 802-9276



FILED

OCT 07 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### 450 Golden Gate Avenue, San Francisco, CA 94102

APRIL MONEGAS
PLAINTIFF

v.                                                    CASE NO.  3:22-cv-04633 (JD)

CITY AND COUNTY OF SAN FRANCISCO
DEPARTMENT OF PUBLIC HEALTH
DEFENDANT
_____/

## COMPLAINT FOR DISCRIMINATION, RETALIATION, AND PROHIBITED ACTIONS ON THE BASIS OF DISABILITY

April Monegas  ("plaintiff"), sues the City County of San Francisco Department of Public Health ("defendant") for violations of the Americans with Disabilities Act and the Americans with Disabilities Amendments Act of 2008 (hereafter "ADA" and "ADA-AA", respectively), 42 U.S.C. §12101, *et seq.*, for discrimination, retaliation, and prohibited actions taken on the basis of disability under the "regarded as" and "record of" prongs in violation of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendment Act of 2008 (hereafter "ADA" and "ADA-AA", respectively), 42 U.S.C. § 12101, *et seq.* Plaintiff petitions for declaratory and injunctive relief under Title I of the ADA as implemented under 29 CFR Part 1630, *et seq.*

## PARTIES

1.      The plaintiff resides in Austin, Texas at the address of 2104 East Anderson Lane, for all times material to the facts giving rise to the complaint.

2.      The defendant is an "employer" within the definition of 42 U.S.C. 12111(5), with their principal place of business at 101 Grove Street, San Francisco, CA 94102 for all times material to the facts giving rise to the complaint.

## JURISDICTION AND VENUE

3.      This court has original and exclusive jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. §1331, in that the matters in controversy are brought pursuant to Title I of the ADA and ADA-AA of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "discrimination"; as implemented by 29 CFR Part 1630.14(b)(3), (c) and (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

4.      Venue is proper in this judicial district under 28 U.S.C. §1391 because the defendant does business in this judicial district and the acts complained of took place in this judicial district.

5.      The plaintiff timely filed a charge of discrimination against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of February 18, 2022. The plaintiff has exhausted all administrative remedies and obtained her right to sue letter from the EEOC within the ninety days preceding the date on which she commenced her original complaint against the defendant. A true and correct copy of the EEOC's right to sue letter is alleged and included as Exhibit A.

6.      The plaintiff has exhausted all administrative remedies available to her.

## BACKGROUND

7.      Since 2021, the defendant adopted measures known collectively as its "Covid-19 Policy", which included requirements or accommodations that employees wear surgical masks, take experimental vaccines, practice isolation and segregation, submit to medical examinations, and disclose vital statistics as new conditions of employment.

8.      The defendant admits that its "Covid-19 Policy" is intended to prevent the spread of "Covid-19", which it describes as a deadly, contagious disease. The policy rests on the assumption that every employee, the plaintiff included, has or could have this disease. That is, the policy's underlying assumption is that all of its employees are simultaneously at risk

and pose a risk to the health of all other employees. No provision exists in the policy to establish through individualized assessment whether a particular employee poses any direct threat to the health of their co-workers.

9.     The policy imposed mitigation measures developed by the Center for Disease Control and Prevention (CDC), largely recommended for an "over-65, immune-compromised" population.  The defendant's "Covid-19 policy" imposed these measures upon all of its workers without considering the individualized medical assessment of each employee's health or whether the policies were appropriate for the working population.

10.    Likewise, no provisions are in place which authorize the policy measures either by legal duty or by statute, thus the defendant's adoption of this policy is voluntary.

11.    In the rush to implement the policy no oversight was given to provide the policy with any legal enforcement mechanism. Thus the policy also relies upon the voluntary compliance of employees waiving their rights to informed consent, to medical privacy, to refuse experimental medical treatments and to refuse non-job-related medical inquiries or treatments. A voluntary policy is not a legitimate requirement and cannot trigger compulsory termination.

12.    One of the mitigation measures established by the defendant's "Covid-19 policy" is a vaccination mandate. On the basis of compliance with this accommodation, the defendant's policy identified three types of employees: (1) vaccinated; (2) unvaccinated but with a medical or religious exemption; and (3) unvaccinated with no request for exemption.

13.    The defendant's policy treated the third group of employees (as opposed to the other employees that complied with the "Covid-19 Policy" or exempted themselves from it) either "as if" they carried a specific, active, infectious disease, or "as if" they had an impaired or suppressed immune system that made them prone to contracting "Covid-19". The policy regarded them as disabled with a contagious disease with an impaired immune system.

14.    It should also be noted that the policy fails to provide any provisions or guidance for employers to remain compliant with the ADA when they started implementing the new "Covid policy". This is a major flaw of the "Covid policy" and one which this case seeks to redress.

**15.**     The policy has no provisions or guidance that instructs the employer on the practice of conducting an individualized assessment[1] once an employee refuses any of the accommodations offered by the policy (such as mask-wearing or experimental vaccinations).

**16.**     The policy fails to outline the process for an employer to follow if it wants to claim an exemption to it's duties under the ADA.

**17.**     The policy fails to provide guidance on the manner in which defendant could establish, by financial records, that it would suffer an undue financial burden for an employee's refusal, and it fails to provide guidance on how the plaintiff would document that an employee's refusal would fundamentally alter defendant's normal operations.

**18.**     The policy fails to describe how any provision of the policy is directly related to any single employee's essential job function.

**19.**     The policy also fails to provide guidance on how to give adequate notice to employees as to the manner in which the policy is directly related to the essential job function of any employee, including the plaintiff.

**20.**     The policy failed to include guidance on how to process employees exceptions to the policy under the ADA.   The plaintiff is not limited only to the two "accommodations" defendant refers to as a "religious exemption" or a "medical exemption".

**21.**     The "accommodations" of religious or medical exemptions fail to meet the statutory requirements of ADA compliant accommodations as defined in 29 CFR Part 1630.2 (o) because the "exemptions" offered are not job-related adjustments to the workplace environment.

**22.**     Any employee may refuse any accommodation under 29 CFR Part 1630.9(d) if the defendant does not have a *bona fide* exemption or exception from its legal duties under the ADA.

---

[1]   29 CFR 1630.2 (r) Individualized assessment shall include determining whether an individual would pose a direct threat, the factors to be considered include: the duration of the risk; the nature and severity of the potential harm; the likelihood that the potential harm will occur; and the imminence of the potential harm.

23. The plaintiff may refuse any or all accommodations regarding the "Covid policy" because the policy is not related to her essential job function which is the reason the job exists.

24. The policy also asked representatives of the defendant to make repeated, non-job-related medical inquiries of employees and to impose non-job-related medical treatments on them. It has no provisions for protecting the medical privacy of employees, and specifically the plaintiff's. Medical decisions are far beyond the scope of the employer-employee relationship.

25. The plaintiff took exception to the policy partly because the practices were unrelated to the performance of her essential job functions[2]. The policy, as mentioned previously, lacked enforceability, and rather than allow employees to make their own medical decisions, the defendant chose to adopt and implement its "Covid-19 Policy" through obfuscation, coercion, retaliation and interference specifically towards the "unvaccinated" employees, such as the plaintiff.

26. When the plaintiff, as a qualified individual, exercised her right under the ADA to refuse the accommodations imposed by the "Covid-19 Policy" and gave notice that the policy discriminated against her by perceiving her as having an un-assessed disability, the defendant denied her equal access to the premises and continued to impose these unrequested accommodations.

27. The defendant also retaliated against the plaintiff by interfering with her rights, imposing punitive measures including isolation and medical examinations, barring her from the workplace, withholding her pay, and ultimately terminating her employment which was directly and proximately caused by her good faith refusal to participate in the defendant's "Covid-19 Policy".

## STATEMENTS OF FACT

28. Plaintiff worked for the city of San Francisco Department of Public Health as a Senior Administrative Analyst helping analyze existing and proposed administrative contracts since July of 2017.

---

[2] 29 CFR 1630.2(n)(2) definition "Essential Function": "(i) ….the reason the position exists is to perform that function."

29.      Starting on April 30, 2021 until August 2, 2021, defendant's Disaster Worker Service (DSW) Alert system sent multiple harassing emails to both plaintiff's personal and work emails, and texts to her personal cellphone asking her to submit her "vaccination" status to an online portal. Defendant was asking for plaintiff's private medical information and making a non-job-related medical inquiries. Additionally, defendant did not offer an option for plaintiff to petition for an exemption from the defendant's policies based upon claiming her rights under the ADA.

30.      On July 2, 2021, plaintiff's employer began classifying employees based upon their "vaccine" status and discriminating against "unvaccinated" employees. The emails plaintiff received stated that only those employees who had been "vaccinated" would be allowed to go around umasked in offices, and in indoor settings.

31.      On August 2, 2021, Dr. Grant Colfax, Director of Health, DPH, sent an email with subject line, 'Director's Message-COVID-19 Update' claiming that the "COVID-vaccine" was "safe", and suggesting that everyone get vaccinated and wear masks. However, this email did not contain an absolute risk/benefit analysis of the injections nor did it mention any right of refusal under Emergency Use Authorization guidelines. Without the benefit of any individualized assessment of plaintiff's personal health, her employer was suddenly regarding her as disabled with a contagious disease and an impaired immune and respiratory systems to the extent that it did not want plaintiff to work without using these mitigation measures.   Additionally, plaintiff's employer was making a record of said perceived disability.

32.      On November 1, 2021, plaintiff submitted a request for a religious exemption as this was the only path her employer disclosed to her.

33.      On November 11, 2021, Aldrich David, Human Resources Analyst Labor Relations, DPH denied plaintiff's request for a religious exemption alleging that accommodating her request would be a hardship for the city; that plaintiff would be a danger to her co-workers, and that her accommodation would prevent her from performing the essential functions of her job. Mr. David stated that she could look for another job with the City but that she was not allowed to work in her current position. Finally, Mr. David stated that plaintiff would be

placed on "leave", which plaintiff understood as her being terminated. Plaintiff decided to challenge Mr. David's decision.

34.     On November 23, 2021, in an email exchange with plaintiff's Manager, Michelle Ruggels, she confirmed that plaintiff was being fired. Ms. Ruggels stated that plaintiff was being terminated unless she could provide an "original out-of-state waiver". She pointed out that defendant was not allowing unvaccinated employees for the most part, and was authorizing almost no waivers from the vaccination mandate.

35.     Plaintiff was fired on December 10, 2021—this was the last day of work she was paid for.

36.     On December 13, 2021, plaintiff asked for an appeal of this decision as it was not based upon her actual circumstances or any facts. Plaintiff mentioned that Mr. David from Human Resources did not provide any facts to support his claim that plaintiff's continuing to work from home with a "religious exemption" would be an undue burden, or would fundamentally alter the way the business worked because the business had already made alterations. As this determination led to plaintiff being terminated from her job, she requested a Skelly hearing (which should have happened prior to her being fired), as well as the individualized assessment her employer was relying upon to consider her a direct threat.

37.     On the same date, plaintiff sent her employer a formal "notice" in writing stating that she was claiming the protection of the ADA because her employer was regarding her as disabled and a direct threat without any individualized assessment.

38.     That same day plaintiff was put on "paid leave" for 60 days, but in fact said period corresponded to the amount of vacation days plaintiff had accumulated. Therefore, she was being paid from the benefits she had accrued. This "leave with pay" was scheduled to end on February 4, 2022. Plaintiff understood that since she was no longer being paid for working and was only receiving money from being placed on leave, that defendant was firing her and would not hire her back unless she got "vaccinated".

39.     On December 21, 2021, plaintiff sent a "second notice" letter asking defendant to disclose who was the proper employee to open an ADA discrimination case. She also stated that she no longer was requesting a religious exemption because she was already "exempt"

from the policy because it discriminated against her on the basis of disability. She claimed that her employer was regarding her as disabled with a contagious disease and treated her as if she was a direct threat without any individualized assessment. Again plaintiff asked for a Skelly hearing.

**40.** Defendant did not follow agency protocol and refused to hold a Skelly hearing. Therefore, plaintiff was not allowed to appeal HR determinations that concerned her continued employment. Afterwards, plaintiff was taken off the schedule. She received her last paycheck on February 23, 2022 and was not assigned any more work.

**41.** On May 10, 2022 she received a right to sue letter on the basis of discrimination from the EEOC.

**42.** A true and correct copy of all written communications are attached in Exhibit A.

### COUNT I. COMPLAINT FOR DISCRIMINATION IN VIOLATION OF THE ADA AS AMENDED

**43.** Plaintiff re-alleges each of the foregoing statements and those in her affidavit, and incorporates each herein and further alleges that this is a case of first impressions.

**44.** The defendant is a covered entity as defined under 42 U.S.C. §12111(5) of the ADA.

**45.** Disability cases typically involve plaintiffs who have assumed the burden of proof under the "actual" or "diagnosed" prong of the ADA; whereas, the plaintiff is proceeding under both the "regarded as" and the "record of" prongs of the ADA where the burden of proof is upon the defendant to prove that it qualified for an exemption or exception to their legal duties to comply with the ADA. These are further expressed in this complaint.

**46.** The plaintiff belongs to a minority of employees claiming to being regarded as having a disability by the "Covid policy".

**47.** The plaintiff was obviously qualified for a job she was already doing, and she was willing to the job.

**48.** Despite the plaintiff's qualifications, the plaintiff was denied equal access and was terminated.

49.     The defendant's implementation of the "Covid policy" was a direct and proximate cause of the defendant's decision to terminate plaintiff's employment and there was no other reason to terminate plaintiff's employment.

50.     This is a case of "first impression" because the plaintiff has exercised her rights to medical privacy and informed consent to refuse the "Covid policy's" medical treatments. These rights are not limited merely to the "doctor-patient" relationship, but are squarely rooted in the ADA under 29 CFR Parts 1630.9(d), 1630.12(b), 1630.13(b) and Parts 1630(c) and (d) for the reason that these rights are <u>intangible private property rights of people</u>, and of the plaintiff specifically, and are protected by law and are not originated or granted by any statute. These rights existed long before any laws were adopted by modern society and in fact, have been exercised in the formation of modern society.  Plaintiff asks the question how can the "Covid-19 policy" which is not authorized by any statute overcome established rights that form the bedrock of modern society?

51.     This is also a case of "first impression" because the plaintiff, in using the ADA to protect her rights,  has asked the question: how did the defendant suddenly acquire a new legal authority or legal duty to treat the plaintiff, its employee, for a disease without any medical examination or diagnosis? The answer of course is that the defendant never did acquire any such legal duty or authority.

52.     This is also a case of "first impression" because, while the defendant makes the noble-sounding but disingenuous claim that their "Covid-19 Policy" is intended to prevent the spread of "Covid-19", it has absolutely no financial responsibility to engage in or administer such a policy. In fact, employers may adopt a "Covid policy" for the entirely ulterior motive of qualifying for the government's disaster relief funds.

53.     This case, for the first time, requires answers for the following questions: (1) Does the defendant have proof of any financial responsibility (insurance, etc.) to compensate anyone for becoming infected with "Covid-19" after complying with their "Covid-19 Policy"?; (2) Does the defendant have proof of any financial responsibility (insurance, etc.) to compensate anyone for suffering any adverse health consequences as a result of complying with its "Covid-19 Policy"?

54.     This is additionally a case of "first impression" because, if the defendant actually had the novel and *bona fide* legal right to require the plaintiff to disclose her medical records, then the defendant would have the right to simply obtain the name and address of the plaintiff's physician and request such records directly from the physician. It is well-established that no physician would make such disclosure without the express written permission of the patient (plaintiff) or without a *bona fide* court order.

55.     Finally, it must be noted that an "exceptional condition" exists with this case which must be acknowledged.  If the United States District Court itself has adopted the same policies as the defendant, can the court be impartial?

56.     The defendant's "Covid-19 Policy" is a failed policy because it does not include several necessary provisions.

57.     It has no provisions for remaining compliant with disability law or addressing the needs of employees with disabilities.

58.     It has no provisions for protecting the medical privacy of employees, and specifically the plaintiff's.

59.     It lacks any authorized enforcement provisions and relies either on the plaintiff to voluntarily waive her rights to medical privacy, informed consent, and rights protected under the ADA **or** upon the defendant's willingness to force submission to the policy in exchange for disaster funding.

60.     The policy fails to provide any advice or instruction on how to conduct any individualized assessment[3].

61.     For those employees claiming rights under the ADA, the policy fails to identify that an ADA representative of the defendant will be necessary to oversee that the policy remains in compliance.

62.     In fact, the defendant's "Covid-19 Policy" completely ignores all legal duties to aid and encourage those with disabilities under the ADA.

---

[3]  29 CFR 1630.2 (r) Individualized assessment shall include determining whether an individual would pose a direct threat, the factors to be considered include: the duration of the risk; the nature and severity of the potential harm; the likelihood that the potential harm will occur; and the imminence of the potential harm.

63.     The defendant's "Covid-19 Policy" is applied in a discriminatory fashion by identifying distinct groups of employees, such as those who are "vaccinated" and those who are "unvaccinated" and treating them differently.

64.     The policy identifies one group of employees who claim to be exempted from the policy for medical or religious reasons but ignores the group of employees who invoke their rights under the ADA and are in a protected class.

65.     The defendant presumes that it "somehow" acquired the legal duty and legal authority to cure or treat the un-assessed disability by imposing the policy measures upon the plaintiff.

66.     The defendant claims that its "Covid-19 Policy" is a legitimate requirement, which authorizes termination for non-compliance, yet the defendant fails to act under any legal authority or legal duty to impose its policy measures on employees.  Simply claiming that a policy is "mandatory" or "required" does not automatically make it compulsory or legitimate.

67.     The plaintiff is regarded as having a disability by the defendant's "Covid-19 Policy", which, according to the defendant, was intended to prevent the spread of the contagious disease known as "Covid-19".

68.      Although the plaintiff is not required by law to discuss the nature of an un-assessed disability she was assumed to have, for clarity's sake she alleges that the defendant's policy rested on the assumption that every employee, the plaintiff included, had or could have this disease. That is, the policy's underlying assumption was that all of its employees were simultaneously at risk and also posed a risk to the health of all other employees.

69.     It is undisputed that the defendant openly admitted that the purpose of such policy was the prevention of the spread of "Covid-19".  The defendant's "Covid-19 Policy" regarded the plaintiff as having "Covid-19" or being prone to getting infected with "Covid-19".  All mitigation measures flowed from this premise; but the defendant terminated the plaintiff specifically for not being "vaccinated".

70.     It is not necessary to allege that the defendant's agents personally regarded the plaintiff as having a disability, the defendant's "Covid-19 Policy" clearly demonstrates that the defendant sought to impose the policy's provisions upon the plaintiff based upon the

pure speculation, stereotype and generalization that she was infected or may in the future become infected with a deadly, contagious disease (e.g. "Covid-19").

**NON-JOB RELATED MEDICAL INQUIRIES**

71.    The defendant required non-job-related medical examinations of the plaintiff that were not consistent with any conceivable business necessity.

72.    The defendant made disability-related inquiries of the plaintiff that were not consistent with business necessity and not permitted under 29 CFR Part 1630.13(b).

73.    The defendant's "Covid-19 Policy" imposed certain non-job-related medical inquiries ("accommodations") on the plaintiff including, but not limited to: disclosing private medical records and medical history; and disclosing vital statistics, like body temperature, which are a diagnostic tool of physicians but are not a diagnosis in and of themselves.

74.    The defendant's "Covid-19 Policy" imposed submitting to medical tests[4] which are a diagnostic tool of physicians but are not a diagnosis in and of themselves. This practice results in the absurd situation of relying upon a lay-man's "self-diagnosis" based upon interpreting one piece of data rather than upon a physician's professional finding.

75.    The defendant also assumes that its policy was the proper treatment to mitigate the effects of "Covid-19" in the workplace.  The defendant's "Covid-19 Policy" imposed certain non-job-related medical treatments including, but not limited to: taking experimental vaccines;  wearing a surgical mask over the face; engaging in "social distancing" which is a euphemism for quarantine and isolation.

76.    These medical treatments and medical inquiries are beyond the scope of the employee-employer relationship (contract) when they are non-job-related; in addition the defendant is trespassing on the plaintiff's medical privacy rights, both of these issues are expressed in the ADA.

77.    In addition, if a vaccine prevents infection and transmission of a disease as defined by modern scientific standards, why would anyone need to take a vaccine so that someone else could avoid becoming ill? A vaccine protects the person taking it, and there is

---

4    "Covid 19 testing" results does not verify a diagnosis of being infected with "Covid", the test it is designed to detect the presence of a coronavirus, of which there are many, including the common cold.  The tests also give many false positives when they are were not set to correct cycling according to instructions.

absolutely no scientific standard where any vaccine is taken to protect anyone else but the person taking it.

78.     The "vaccines" demanded by the defendant are experimental because the policy was adopted during the Emergency Use Authorization (EUA) period and none of these experimental vaccines have been <u>approved</u> by the Food and Drug Administration, they have only been "authorized" for emergency use which means they are in clinical trial phase. The only "vaccine" that is FDA-<u>approved</u>, Comirnaty, is not commercially available, should the plaintiff choose to take it.

79.     The "Covid-19 policy" as implemented by the defendant allowed un-skilled and unlicensed individuals to impose medical interventions upon employees because commentary on a website stated that such interventions might prevent a disease, even when these very websites disclaim such commentary as valid legal or medical advice (e.g., CDC[5], EEOC[6], etc.).

80.     The defendant never provided notice of any kind to the plaintiff, advising the plaintiff as to the manner in which these medical treatments and medical inquiries were related to her essential job function. In fact, none of the accommodations were related to the plaintiff's essential job function because she was able to continue performing her essential employment duties without participating in the defendant's "Covid-19 Policy".

81.     The plaintiff also alleged in her testimony and in written communications[7] that she was both willing and able to continue performing her employment duties and that the defendant's "Covid-19 Policy" was not related in any way to her essential job functions and that the defendant failed to give conspicuous notice as to the manner in which such policies were related to the plaintiff's essential job functions.

**MEDICAL PRIVACY**

82.     Furthermore, the defendant's policy violates 29 CFR §1630.14(c) of the ADA because it involves sharing non-job-related medical classifications (e.g. "vaccination status", vital statistics and "PCR"[8] testing history) without any regard to confidentiality. The policy

---

5 https://www.cdc.gov/other/disclaimer.html
6 https://www.eeoc.gov/disclaimer
7 A true and correct copy of which is alleged as Exhibit A-7.
8 Polymerase Chain Reaction

includes no provision to preserve the medical privacy rights of any employee, including the plaintiff's.

83.     The defendant's policy purportedly requires employees to examine themselves, and then make a self-diagnosis[9] upon which the defendant intends to rely as if such diagnosis was obtained by a licensed, qualified professional physician.

84.     The defendant's policy does however require employees to obtain a physician's note if they are claiming some exemption to the policy for religious or medical reasons.

85.     Ironically, the defendant's "Covid-19 Policy" also impairs the plaintiff's ability to perform her essential job functions by imposing mitigation measures which create a physical impairment that substantially limits the plaintiff's ability to engage in one or more major life activities, such as working, communicating with others, caring for oneself, breathing, etc.

86.     The defendant refused to allow the plaintiff to continue working without first submitting to its discriminatory "Covid-19 Policy".

### MEDICAL AND RELIGIOUS EXEMPTIONS

87.     The plaintiff is not required to request exemptions from the defendant's "Covid-19 Policy" for religious or medical reasons and in fact, is not required to request any accommodations or reasonable modifications regarding such policy because none of its provisions are related to her essential job function.

88.     Therefore the plaintiff had no duty to request any reasonable modification or accommodation to the defendant's "Covid-19 Policy"; however, the plaintiff was deceptively informed that she could request a "religious or medical exemption".

89.     The "accommodations" of religious or medical exemptions fail to meet the statutory requirements of ADA compliant accommodations as defined in 29 CFR Part 1630.2 (o) because the "exemptions" offered are not job-related adjustments to the workplace environment.

90.     The defendant's policy did not impose any new legal duties upon the plaintiff from which she could have been exempted or needed to request exemption from.

---

9     "Covid 19 testing" results does not verify a diagnosis of being infected with "Covid", the test it is designed to detect the presence of a coronavirus, of which there are many, including the common cold.  The tests also give many false positives when they are were not set to correct cycling according to instructions.

91.    In fact this deceptive practice was only intended to give the appearance of fairness while the defendant could deny or revoke exemptions as it suited the defendant. The defendant never disclosed the qualifying criteria for such an "exemption" nor disclosed the legal duty from which the plaintiff was being "exempted".

92.    The plaintiff is not required to discuss the nature of an un-assessed disability she is "assumed" to have; nor is she required to request any "reasonable modifications", for an un-assessed disability she is assumed to have.

93.    In actuality, the plaintiff was always protected under the ADA once she opposed the policy. She is not required to use the language of the ADA to claim this protection, however the plaintiff did specifically give notice to the defendant that she was a qualified individual who was being regarded as having a disability by the defendant's policy.

### ABSENCE OF AN INDIVIDUAL ASSESSMENT

94.    The defendant failed to conduct any individualized assessment establishing that the plaintiff's good faith refusal to participate in its "Covid-19 Policy" was a direct threat.

95.    The defendant simply punished the plaintiff for her refusal on the pure speculation that the plaintiff had a disability known as "Covid-19", or on the pure speculation that someday she might have such a disease, and on the false premise that the defendant had the legal duty and authority to protect her and everyone else from contracting such a disease (disability).

96.    Claiming that the plaintiff had a deadly contagious disease, or that she might someday become infected with such a disease, is not a defense to violating the ADA, specifically, 29 CFR Parts 1630.9(d), 1630.12(b), 1630.13(b) and Parts 1630(c) and (d).

97.    The defendant cannot rely upon news or public announcements to determine that the plaintiff individually poses a direct threat because the statute requires a *bona fide* medical examination and diagnosis by a physician.

98.    The "Covid-19 policy" does not include a provision for requiring an individualized assessment by a physician to determine whether the employee poses a direct threat in the first place yet it requires employees to obtain a note from their physician in order to qualify for a "medical exemption" to the policy.

99.     Is it rational to regard oneself and others as having an illness without any diagnosis, and then seek to treat everyone with the same medical intervention without any diagnosis? This behavior is defined as a mental illness in the Fifth Edition of the <u>Diagnostic and Statistical Manual for Mental Health</u>.[10] The "Covid-19 Policy" generates such irrational behavior from those seeking to impose that they act "as if" they are suffering from an un-diagnosed mental illness.

## RECORD OF A DISABILITY

100.     The plaintiff is also entitled to the protections established in the ADA under the third prong which establishes coverage when others make a "record of" of an individual's disability.

101.     The defendant's "Covid-19 Policy" assumes that "unvaccinated" employees who do not have a medical or religious exemption are impaired by a contagious disease and simultaneously assume that they are impaired by a suppressed or weak immune system or respiratory system that makes them vulnerable to "Covid-19".

102.     The defendant <u>made a record of the impairment its policy is intended to treat</u>, by documenting plaintiff's "vaccination status" (even though plaintiff refused to disclose her medical records) and via its communication, attitude and treatment of the plaintiff.

103.     The defendant mis-classified the plaintiff and made a record of impairment by imposing its policy upon the plaintiff without any diagnosis, but based upon pure speculation, generalization and stereotype.

104.     The defendant made a record of disability by classifying the plaintiff as an "unvaccinated" employee, and classifying her as needing to wear a mask and self-test which led to segregating and isolating her from her coworkers; confining her to work from home; harassing her with non-job-related medical inquiries and treatments; refusing to grant her request for an exemption to its policy based on her rights to informed consent, to refuse experimental medical treatments, and those protected under the ADA; preventing plaintiff from performing her employment duties without first complying with the "Covid-19 protocols"; not allowing her on the premises due to her unvaccinated status; forcing her into

---

10  Factitious Disorder or Munchausen Syndrome by Proxy.

unpaid leaves of absence; threatening her with termination, and ultimately firing her, and thus causing plaintiff to suffer loss of income and employment opportunities.

**105.** The mitigation measures imposed by defendant's "Covid-19 policy" also create physical impairments that substantially limit the plaintiff's ability to engage in one or more major life activities, including working, communicating and interacting with others.

**106.** The defendant, by its own policies, attitude toward the plaintiff, written communications, method of record-keeping and general treatment of the plaintiff, created a set of facts that satisfy the criteria under the ADA's "record of" disability prong.

**PROTECTION UNDER THE ADA**

**107.** The defendant's "Covid-19 Policy" was not uniformly or universally applied to the plaintiff once the defendant began making a record of such disability by mis-classifying the plaintiff as having an impairment which needed to be treated or cured by the defendant's "Covid-19 Policy".

**108.** Upon giving the defendant notice that she was regarded as having a disability,[11] the plaintiff identified herself as being within a protected group; upon claiming her rights to refuse the defendant's accommodations based upon her good faith opposition, she engaged in a protected activity.

**109.** The defendant applied the policy to everyone equally and failed to recognize that the plaintiff (1) opposed the policy, (2) gave notice of being regarded as having a disability, (3) objected to submitting to the defendant's "accommodations", and (4) was within a protected class and engaged in a protected activity.

**110.** The plaintiff therefore was not subject to the same "Covid-19 Policy" as everyone else who had not invoked their rights under the ADA. As an analogy: consider a defendant requiring a wheelchair-bound employee to use the stairs or face loss of income, title or employment termination because e*veryone is required to use the stairs and the policy is applied equally to everyone*. It is clear that this is an erroneous conclusion that does not allow disability rights.

**ABSENCE OF AN ADA EXEMPTION FOR EMPLOYER**

---

11 As a current employee she is, of course, understood to be a "qualified individual".

111.    Regarding each incident of the plaintiff's good faith refusal to accept defendant's "Covid-19 Policy" measures, and the defendant's adverse response, the plaintiff was in a protected class and engaged a protected activity, and was not required to participate in the defendant's policy under 29 CFR Part 1630.9(d), unless the defendant established an exemption or exception to its legal duty to comply with the ADA.

112.    The defendant failed to identify or describe any set of facts establishing that the plaintiff's good faith refusal to participate in the defendant's "Covid-19 Policy" would have created any undue financial hardship.

113.    The defendant failed to identify or describe any set of facts establishing that the plaintiff's good faith refusal to participate in the defendant's "Covid-19 Policy" would have fundamentally altered their normal operations. In fact, the defendant's policy itself already did in fact fundamentally alter their normal operations.

114.    The defendant required non-job-related medical examinations of the plaintiff that were not consistent with any conceivable business necessity.

115.    The defendant made disability-related inquiries of the plaintiff that were not consistent with business necessity and not permitted under 29 CFR Part 1630.13(b).

116.    The defendant failed to establish any set of facts that proved that its regarding the plaintiff as carrying the "Covid-19 disease" was transitory or minor. If the disability is **both** transitory **and** minor, such as having the common cold, then why the need for this draconian policy and all?

117.    There is no established end-date when the defendant would cease regarding the plaintiff in need of mitigation.  The defendant cannot now claim that such disability is "transitory", especially since it is not acting upon any medical diagnosis, court order obtained by the Department of Health, or any individualized assessment establishing that the plaintiff individually is a direct threat.

118.    To this day, the defendant has failed to demonstrate that it met or satisfied any exemptions or exceptions to its *bona fide* legal duties under the ADA to aid and encourage those with disabilities, including the plaintiff.

**119.** The plaintiff's allegations easily satisfy the elements of discrimination by showing that she falls within a protected group, that she is qualified for the position she held, that she was subject to adverse employment actions and that the adverse employment actions were taken under circumstances which constitute unlawful discrimination.

**120.** The plaintiff demands a jury trial.

**WHEREFORE** plaintiff demands injunctive relief, including but not limited to: (i) a judgment from this Court that defendant's actions were unlawful; (ii) back pay; (iii) compensatory damages in whatever amount the plaintiff is found to be entitled; (iv) reinstatement, or in the alternative front pay in the event reinstatement is not practical; (v) an equal amount as liquidated damages, other monetary damages; (vi) an award of costs and reasonable court fees; and (vii) punitive damages to the extent available; (viii) pre-judgment and post-judgment interest; and (ix) a jury trial on all issues so triable, and for other relief deemed appropriate by this court.

## COUNT II. COMPLAINT FOR RETALIATION IN VIOLATION OF THE ADA AS AMENDED IN 2008

**121.** The plaintiff sues the defendant for retaliation in violation of the ADA and the ADA-AA.

**122.** The plaintiff re-alleges the foregoing statements of fact and allegations from her complaint for discrimination in Count I along with her affidavit, and further alleges the following.

**123.** Upon giving defendant notice that she was regarded as having a disability and that she was a qualified individual with a disability, the defendant began retaliating against the plaintiff by imposing punitive measures and adverse employment actions, upon her for her good faith refusal to participate in the defendant's offered accommodations.

**124.** The defendant's "Covid-19 Policy" depends solely upon getting the employee to voluntarily waive her rights to medical privacy and disclose such records through coercion and retaliation, any act by an employer designed to deter an employee from claiming their rights is an adverse employment action under the ADA and is prohibited by law.

**125.** The defendant implemented a policy which regarded the plaintiff as disabled because of the plaintiff's unvaccinated status and when the plaintiff refused mitigation measures, the defendant responded with adverse employment actions.

**126.** The defendant admits that refusing to disclose the plaintiff's "vaccination status" (i.e. medical records) would directly and causally result in the plaintiff's contract being either terminated or not renewed.

**127.** Beginning from the moment she gave such notice to the defendant, the plaintiff suffered adverse employment actions[12] and the defendant continued attempting to impose its "Covid-19 Policy" upon the plaintiff. Defendant ignored and denied her claim of disability, reprimanded her, on a daily basis, for refusing its accommodations as alleged in the plaintiff's affidavit, and finally, terminated her employment as alleged in her affidavit.

**128.** Title 29 of Part 1630.12(b) prohibits employers from retaliating against employees, namely the plaintiff for exercising and enjoying her rights under the ADA, specifically, "[i]t is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that individual aided or encouraged any other individual in the exercise of, any right granted or protected by this part."

**129.** The defendant retaliated by seeking to impose its "Covid-19 Policy" upon the plaintiff in violation of its *bona fide* legal duty of care under the ADA.

**130.** The defendant's "Covid-19 Policy" classified the plaintiff in such a way that her employment opportunities were adversely affected and limited because the defendant would not permit the plaintiff to do her job without first submitting to defendant's accommodations ("mitigation measures").

**131.** The defendant proceeded to segregate and isolate her from her coworkers; confine her to work from home; harass her with non-job-related medical inquiries and treatments; refuse to grant her request for an exemption to its policy based on her rights to informed consent, to refuse experimental medical treatments, and those protected under the ADA; prevent plaintiff from performing her employment duties without first complying with the "Covid-19 protocols"; not allow her on the premises due to her unvaccinated status; force

12 Under the ADA, adverse employment actions include any actions taken which interfere the with the plaintiff claiming their rights; which deter plaintiff from claiming their rights or which punish or retaliate against the plaintiff for claiming their rights.

her into unpaid leaves of absence; diminish her responsibilities; disregard proper protocols for firing employees; fail to recognize her employment rights; threaten her with termination, and ultimately fire her, actions that causally resulted in the plaintiff's loss of assignment (job opportunities) and income.

132.    The plaintiff exercised her right to refuse the defendant's Covid-19 Policy measures based upon a good faith belief that the policy did not apply to her because of the foregoing alleged failure of the defendant to establish any exemption or exception to its legal duty to comply with the ADA.

133.    Exercising this right is a protected activity and the defendant's "Covid-19 Policy" was not equally or universally applied to the plaintiff because she had given notice of a disability and was therefore in a protected class and engaged in a protected activity.

134.    The plaintiff exercised her right to refuse the defendant's policy measures based upon a good faith belief that the policy did not apply to her because the policy was not related in any way to her essential job function.

135.    The plaintiff exercised her right to refuse the defendant's policy measures based upon a good faith belief that the policy did not apply to her because the defendant failed to give plaintiff conspicuous notice as the manner in which its policy was related in any way to her essential job function.

136.    The defendant imposed pecuniary measures and other adverse employment actions upon plaintiff which included the loss or threatened loss of pay, isolation, segregation, diminished employment responsibilities, interference with her rights as alleged in her affidavit.

137.    Each time the plaintiff exercised her right to refuse the defendant's accommodations, she did so in good faith, and the defendant subsequently, in a manner that was causally-related to the exercise of such right, imposed adverse employment actions upon the plaintiff for no necessary reasons other than to deter her and punish her for exercising her rights.

138.    The defendant imposed adverse employment actions upon the plaintiff which included, isolation and segregation, or sending her home so that she could not perform her essential job functions.

**139.** The defendant's "Covid-19 Policy", as alleged herein and described in more detail in the plaintiff's affidavit, describes a materially adverse change in the terms and conditions of employment, compared to the conditions of employment which existed prior to the defendant's implementation of it's "Covid-19 Policy".

**140.** These changes did not simply create an inconvenience for the plaintiff, they substantially altered the manner in which she was able to do her job and interact with co-workers by substantially impairing her ability to perform her essential employment duties.

**141.** The "Covid-19 Policy" is technically voluntary and yet the defendant imposed pecuniary measures and other adverse employment actions as a direct and proximate cause of the plaintiff's good faith refusal to participate or accept the provisions of the policy.

**142.** Each of the foregoing adverse employment actions resulted from every effort the defendant undertook to coerce the plaintiff into submitting to its "Covid-19 Policy" accommodations, and each adverse employment action described herein was causally related to plaintiff's good faith refusal to comply with the defendant's policy.

**143.** Each adverse employment action took place within moments of, or in direct response to, plaintiff's expression of her good faith refusal to comply with the defendant's policy.

**144.** These facts demonstrate the defendant's adverse employment actions derived from the "Covid-19 Policy" and defendant' failure to comply with the ADA.

**145.** This constituted a materially adverse change in the terms and conditions of employment. Before the policy, the plaintiff and other employees were protected by disability law, medical privacy rights and the right to informed consent (which as explained previously are rooted in and protected by the ADA), the right to be heard, and the right to have a complaint for harassment heard impartially by the defendant, and after the defendant's adoption of its Covid-19 Policy, all of those rights were ignored and violated in a direct and causal response to the plaintiff's exercise of her right to refuse.

**146.** These changes were not just "disruptive" or inconvenient; they were not merely limited to include a change in plaintiff's employment duties. These changes included (actual or likely) termination of employment, isolation, demotion, decrease in wages and loss of

1   benefits and were each causally-related to each time the plaintiff chose to exercise and

2   enjoy her rights under the ADA.

3   **147.**   Ultimately, the defendant did terminate the plaintiff's employment as a direct and

4   proximate cause of her refusal to participate in the defendant's "Covid-19 Policy".

5   **148.**   The plaintiff was engaged in the protected activity of refusing in good faith to

6   participate in its "Covid-19 Policy". The defendant was aware of plaintiff refusal from the

7   very moment she expressed that she was regarded as having a disability and began

8   refusing to participate in the policy.

9   **149.**   Each time the defendant approached the plaintiff with a demand or request to submit

10  to the terms of the "Covid-19 Policy", the defendant informed the plaintiff that she would be

11  penalized, such as the plaintiff has previously alleged.

12  **150.**   Each time the plaintiff exercised her right to refuse, the defendant undertook adverse

13  employment actions against the plaintiff as previously alleged, and in each instance, such

14  measures were causally related to the incident of refusing the policy and suffering penalties

15  or pecuniary measures imposed by the defendant and each of these are detailed in the

16  foregoing allegations.

17  **151.**   The plaintiff demands a jury trial.

18  **WHEREFORE** plaintiff demands injunctive relief, including but not limited to: (i) a judgment

19  from this Court that defendant's actions were unlawful; (ii) back pay; (iii) compensatory

20  damages in whatever amount the plaintiff is found to be entitled; (iv) reinstatement, or in the

21  alternative front pay in the event reinstatement is not practical; (v) an equal amount as

22  liquidated damages, other monetary damages; (vi) an award of costs and reasonable court

23  fees; and (vii) punitive damages to the extent available; (viii) pre-judgment and post-

24  judgment interest; and (ix) a jury trial on all issues so triable, and for other relief deemed

25  appropriate by this court.

26  DATED this 5th day of October, 2022.

27                                                            _____
                                                              April Monegas
28                                                            Plaintiff in *propria persona*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A
written communications

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



# EXHIBIT A
written communications

## Monegas, April (DPH)

**From:** San Francisco Employee Alert <noreply@everbridge.net>
**Sent:** Friday, April 30, 2021 1:11 PM
**To:** Monegas, April (DPH)
**Subject:** The City wants to make sure that you have access to the COVID-19 vaccine



### City and County of San Francisco DSW Alert

Please reply to this message with the corresponding number to let us know your vaccination status. This information will be kept confidential.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org.

1. I would like to be vaccinated, but I need help getting an appointment.

2. I am fully vaccinated.

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled.

4. Decline to state.

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

 Gmail

A M <amonegas@gmail.com>

## The City wants to make sure that you have access to the COVID-19 vaccine
1 message

**San Francisco Employee Alert** <noreply@everbridge.net>                                      Fri, Apr 30, 2021 at 3:10 PM
Reply-To: San Francisco Employee Alert <conf-608c643c5a632e32e2191e50-608c6431be8b88705792012e@smtpic-
ne.prd1.everbridge.net>
To: "AMONEGAS@GMAIL.COM" <AMONEGAS@gmail.com>



### City and County of San Francisco DSW Alert

Please reply to this message with the corresponding number to let us know your vaccination status. This information
will be kept confidential.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org.

1. I would like to be vaccinated, but I need help getting an appointment.

2. I am fully vaccinated.

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled.

4. Decline to state.

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

A-1a



88911 ›

Fri, Apr 30, 3:10 PM

The City wants to make sure that you have access to the COVID-19 vaccine
Please reply to this message with the corresponding number to let us know your vaccination status. This information will be kept confidential.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org.
1. I would like to be vaccinated, but I need help getting an appointment.
2. I am fully vaccinated.
3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled.
4. Decline to state.
Reply with your choice number or https://evb.gg/06TrL5vZ

A-1a

## Monegas, April (DPH)

| | |
|---|---|
| **From:** | hrd.noreply@sfgov.org <noreply@everbridge.net> |
| **Sent:** | Wednesday, May 5, 2021 4:52 PM |
| **To:** | Monegas, April (DPH) |
| **Subject:** | DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine |



### City and County of San Francisco DSW Alert

Please reply to this message with the corresponding number to let us know your vaccination status. This information will be kept confidential. Thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org

1. I would like to be vaccinated, but I need help getting an appointment

2. I am fully vaccinated

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled

4. Decline to state

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

A-1b

1

**Monegas, April (DPH)**

| | |
|---|---|
| **From:** | hrd.noreply@sfgov.org <noreply@everbridge.net> |
| **Sent:** | Wednesday, May 5, 2021 5:54 PM |
| **To:** | Monegas, April (DPH) |
| **Subject:** | DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine |



**City and County of San Francisco DSW Alert**

Please reply to this message with the corresponding number to let us know your vaccination status. This information will be kept confidential. Thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org

1. I would like to be vaccinated, but I need help getting an appointment

2. I am fully vaccinated

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled

4. Decline to state

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

A-1b

1



**88911** ›

Wed, May 5, 6:51 PM

DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine Please reply to this message with the corresponding number to let us know your vaccination status. This information will be kept confidential. Thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org
1. I would like to be vaccinated, but I need help getting an appointment
2. I am fully vaccinated
3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled
4. Decline to state
Reply with your choice number or https://evb.gg/06UckOxU

 

**Monegas, April (DPH)**

| | |
|---|---|
| **From:** | hrd.noreply@sfgov.org <noreply@everbridge.net> |
| **Sent:** | Wednesday, May 5, 2021 6:57 PM |
| **To:** | Monegas, April (DPH) |
| **Subject:** | DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine |



**City and County of San Francisco DSW Alert**

Please reply to this message with the corresponding number to let us know your vaccination status. This information will be kept confidential. Thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org

1. I would like to be vaccinated, but I need help getting an appointment

2. I am fully vaccinated

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled

4. Decline to state

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

IMG-4462.jpg                                                                              about:blank

 

88911 ›

Wed, May 5, 7:53 PM

DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine Please reply to this message with the corresponding number to let us know your vaccination status. This information will be kept confidential. Thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org
1. I would like to be vaccinated, but I need help getting an appointment
2. I am fully vaccinated
3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled
4. Decline to state
Reply with your choice number or https://evb.gg/06UdT6Co

 

A-1b





**88911** ›

Wed, May 5, 8:55 PM

DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine Please reply to this message with the corresponding number to let us know your vaccination status. This information will be kept confidential. Thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org
1. I would like to be vaccinated, but I need help getting an appointment
2. I am fully vaccinated
3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled
4. Decline to state
Reply with your choice number or https://evb.gg/06UOL_lq




A-1b



A M <amonegas@gmail.com>

## DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine
1 message

**hrd.noreply@sfgov.org** <noreply@everbridge.net>                                   Wed, May 5, 2021 at 8:57 PM
Reply-To: "hrd.noreply@sfgov.org" <conf-60934d00654c97630ef6c0ad-60932f73b36aba562de4a2e5@smtpic-ne.prd1.everbridge.net>
To: "AMONEGAS@GMAIL.COM" <AMONEGAS@gmail.com>



**City and County of San Francisco DSW Alert**

---

Please reply to this message with the corresponding number to let us know your vaccination status. This information will be kept confidential. Thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, you can also reach out to DHR-DOC@sfgov.org

1. I would like to be vaccinated, but I need help getting an appointment

2. I am fully vaccinated

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled

4. Decline to state

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

**Monegas, April (DPH)**

| | |
|---|---|
| **From:** | hrd.noreply@sfgov.org <noreply@everbridge.net> |
| **Sent:** | Thursday, May 13, 2021 10:03 AM |
| **To:** | Monegas, April (DPH) |
| **Subject:** | DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine |



**City and County of San Francisco DSW Alert**

Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org

1. I would like to be vaccinated, but I need help getting an appointment

2. I am fully vaccinated

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled

4. Decline to state

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.



88911 ›

Thu, May 13, 11:00 AM

DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org
1. I would like to be vaccinated, but I need help getting an appointment
2. I am fully vaccinated
3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled
4. Decline to state
Reply with your choice number

 

A-1c

**Monegas, April (DPH)**

| | |
|---|---|
| **From:** | hrd.noreply@sfgov.org <noreply@everbridge.net> |
| **Sent:** | Thursday, May 13, 2021 11:05 AM |
| **To:** | Monegas, April (DPH) |
| **Subject:** | DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine |



**City and County of San Francisco DSW Alert**

Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org

1. I would like to be vaccinated, but I need help getting an appointment

2. I am fully vaccinated

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled

4. Decline to state

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

A-1c

 Gmail

A M <amonegas@gmail.com>

## DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine

hrd.noreply@sfgov.org <noreply@everbridge.net>                    Thu, May 13, 2021 at 11:02 AM
Reply-To: "hrd.noreply@sfgov.org" <conf-609d4d8934cfd54201ad39b8-609d4d0ae71c2e282bfb8b57@smtpic-ne.prd1.everbridge.net>
To: "AMONEGAS@GMAIL.COM" <AMONEGAS@gmail.com>



### City and County of San Francisco DSW Alert

Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org

1. I would like to be vaccinated, but I need help getting an appointment

2. I am fully vaccinated

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled

4. Decline to state

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

A-1c

 Gmail

A M <amonegas@gmail.com>

## DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine

**hrd.noreply@sfgov.org** <noreply@everbridge.net>                              Thu, May 13, 2021 at 12:04 PM
Reply-To: "hrd.noreply@sfgov.org" <conf-609d5c1134cfd54201b1f2a4-609d4d0ae71c2e282bfb8b57@smtpic-ne.prd1.everbridge.net>
To: "AMONEGAS@GMAIL.COM" <AMONEGAS@gmail.com>



### City and County of San Francisco DSW Alert

Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org

1. I would like to be vaccinated, but I need help getting an appointment

2. I am fully vaccinated

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled

4. Decline to state

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

A-1c

IMG-4466.jpg                                                                    about:blank



88911 ›

Thu, May 13, 1:04 PM

DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org
1. I would like to be vaccinated, but I need help getting an appointment
2. I am fully vaccinated
3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled
4. Decline to state
Reply with your choice number

 

A-1c

 Gmail

A M <amonegas@gmail.com>

## DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine

**hrd.noreply@sfgov.org** <noreply@everbridge.net>                      Thu, May 13, 2021 at 1:06 PM
Reply-To: "hrd.noreply@sfgov.org" <conf-609d6a9934cfd54201b50cd0-609d4d0ae71c2e282bfb8b57@smtpic-ne.prd1.everbridge.net>
To: "AMONEGAS@GMAIL.COM" <AMONEGAS@gmail.com>



**City and County of San Francisco DSW Alert**

Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org

1. I would like to be vaccinated, but I need help getting an appointment

2. I am fully vaccinated

3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled

4. Decline to state

DSW Alerts is owned and operated by the City and County of San Francisco and powered by Everbridge, Inc.

A-1c



88911 ›

Wed, May 19, 11:30 AM

DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine [Rebroadcast DSW Alert] Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org
1. I would like to be vaccinated, but I need help getting an appointment
2. I am fully vaccinated
3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled
4. Decline to state

 

A-1d



88911 ›

Wed, May 19, 12:32 PM

DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine [Rebroadcast DSW Alert] Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org
1. I would like to be vaccinated, but I need help getting an appointment
2. I am fully vaccinated
3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled
4. Decline to state

 

A-1d



**88911** ›

Wed, May 19, 1:34 PM

DSW Alert: The City wants to make sure that you have access to the COVID-19 vaccine [Rebroadcast DSW Alert] Join your City colleagues by replying to this message with the number that corresponds to your vaccination status. All replies will be kept confidential, and thank you for replying even if you replied to an earlier poll. This survey will be open for 24 hours.

If you need assistance getting a vaccine, reach out to DHR-DOC@sfgov.org
1. I would like to be vaccinated, but I need help getting an appointment
2. I am fully vaccinated
3. I have received the first dose of Moderna or Pfizer, and my second appointment is scheduled
4. Decline to state

 

A-1d

## Monegas, April (DPH)

| | |
|---|---|
| **From:** | DHR Alert (HRD) |
| **Sent:** | Wednesday, June 23, 2021 5:17 PM |
| **Subject:** | New Vaccine and Face Covering Policy for City Employees |
| **Attachments:** | DHR_Vaccination Policy_6.23.21.pdf; DHR_ Face Coverings Policy_6.23.21.pdf |

Dear City employee-

According to the federal Centers for Disease Control (CDC), the California Department of Public Health, and the San Francisco County Health Officer, COVID-19 continues to pose a risk, especially to individuals who are not fully vaccinated, and certain safety measures remain necessary to protect against COVID-19 cases and deaths. Vaccination is the most effective way to prevent transmission and limit COVID-19 hospitalizations and deaths.

This email is to provide you with information about the new vaccination related requirements for all City employees, which require all employees to:
   (1) report their vaccination status to the City no later than July 29, 2021, and if they are fully vaccinated, to provide documentation to verify that status; and
   (2) be fully vaccinated and report that vaccination status to the City no later than 10 weeks after the Federal Food & Drug Administration (FDA) gives final approval to at least one COVID-19 vaccine.

The policy will be effective as of Monday, June 28, 2021. All employees will have 30 days (until July 29, 2021) to report their vaccination status including documentation verifying that status, using the City's People and Pay system through a link that will be found on the Employee Portal. All employees must provide the name of vaccine, date(s) of vaccination, and upload documentation into the system. This information will remain protected under existing City standard procedures for keeping any protected information in your employee file confidential.

If you need assistance uploading your verification to the Employee Portal or have other related questions, please reach out to your department human resource representative.

As always, thank you for all you are doing to support the residents of the City and County of San Francisco.

Sincerely,


Carol Isen
Human Resources Director

 **Department of Human Resources**

Connecting People with Purpose


⁺ Please do not reply to this message. Replies to this message are routed to an unmonitored mailbox.

City and County of San Francisco
Carol Isen
Human Resources Director



Department of Human Resources
Connecting People with Purpose
www.sfdhr.org

**COVID-19 Vaccination Policy**
**Issued June 23, 2021**
**Effective June 28, 2021**

**PURPOSE STATEMENT**

The City and County of San Francisco (City) must provide a safe and healthy workplace, consistent with COVID-19 public health guidance and legal requirements, to protect its employees and the public as it reopens services and returns more employees to workplaces.

According to the federal Centers for Disease Control (CDC), the California Department of Public Health, and the San Francisco County Health Officer, COVID-19 continues to pose a risk, especially to individuals who are not fully vaccinated, and certain safety measures remain necessary to protect against COVID-19 cases and deaths. Vaccination is the most effective way to prevent transmission and limit COVID-19 hospitalizations and deaths.

On June 17, 2021, Governor Newsom issued Executive Order No. N-09-21, which implements new State Division of Occupational Safety and Health (Cal/OSHA) rules, effective June 17, 2021. These rules require employers to take specific measures to protect employees from COVID-19, including enforcing masking and quarantine requirements, and offering COVID-19 testing and time off, for employees who are unvaccinated or for whom the employer does not have documentation verifying they are fully vaccinated. Unvaccinated employees are at greater risk of contracting and spreading COVID-19 within the workplace and to the public that depends on City services.

To best protect its employees and fulfill its obligations to the public, effective June 28, 2021, the City's policy is to require that all employees must, as a condition of employment: (1) report their vaccination status to the City; and (2) be fully vaccinated and report that vaccination status to the City no later than 10 weeks after the Federal Food & Drug Administration (FDA) gives final approval to at least one COVID-19 vaccine.

**LEGAL REQUIREMENTS**

Cal/OSHA's COVID-19 Temporary Emergency Standard, revised June 17, 2021 and effective June 17, 2021 by Governor Newson's Executive Order No. N-09-21, requires employers to verify and document that an employee is fully vaccinated before allowing that employee to discontinue masking indoors (except at certain worksites where a face covering remains required even for fully-vaccinated employees). For unvaccinated employees or employees for whom the City does not have documentation verifying fully vaccinated status, the City must enforce masking, provide COVID-19 testing for employees following a close contact in the workplace or anytime they have COVID-19 symptoms, and exclude these employees from the workplace for at least

One South Van Ness Avenue, 4ᵗʰ Floor • San Francisco, CA 94103-5413 • (415) 557-4800

COVID-19 Vaccination Policy
June 23, 2021

10 days after a close contact. Upon request, the City also must provide non-vaccinated employees with respirators (N95 masks) and provide education about using that type of mask.

**STATEMENT OF POLICY**

To protect the City's workforce and the public that it serves, all City employees must report their vaccination status to the City. The City will use this information to enforce the Cal/OSHA masking, testing, quarantine and other requirements and compliance with this Policy.

In addition, except as otherwise provided below, all City employees must be fully vaccinated no later than 10 weeks after the FDA gives final approval to at least one COVID-19 vaccine. Employees with a medical condition or other medical restriction that affects their eligibility for a vaccine, as verified by their medical provider, or those with a sincerely held religious belief that prohibits them from receiving a vaccine, may request a reasonable accommodation to be excused from this vaccination requirement. The City will review requests for accommodation on a case-by-case basis consistent with existing procedures for reasonable accommodation requests.  Employees who previously reported that they were unvaccinated must update their status once they are fully vaccinated.

Failure to comply with this policy may result in discipline up to and including termination of employment.

**Process for Reporting Vaccination Status**

All City employees must report their vaccination status into People and Pay using the COVID-19 Vaccination Status Form no later than July 29, 2021, with the following information:
- The type of vaccine obtained (Moderna, Pfizer, or Johnson & Johnson);
- Date of first dose of vaccine;
- Date of second dose of vaccine for a 2-dose vaccine;
- Declaration under penalty of perjury that they have been fully vaccinated; and
- Uploaded documentation verifying proof of vaccination status. Proof of vaccination can include a copy of the CDC Covid-19 Vaccination Record Card, documentation of vaccine from the employee's healthcare provider, or documentation issued by the State of California by going to:  https://myvaccinerecord.cdph.ca.gov/

To be fully vaccinated, 14 days must have passed since an employee received the final dose of a two-shot vaccine or a dose of a one-shot vaccine.  Employees who are not fully vaccinated but partially vaccinated as of July 29, 2021 shall provide that information. All unvaccinated employees must continue to comply with masking, testing, and other safety requirements until they are fully vaccinated and have reported and documented that status to the City consistent with this Policy.

COVID-19 Vaccination Policy
June 23, 2021

Unless excused through an approved reasonable accommodation request, all employees must comply with the requirement to be fully vaccinated and submit documentation of that status no later than 10 weeks after the FDA gives final approval to at least one COVID-19 vaccine.

**POLICY IMPLEMENTATION**

Employees must report their vaccination information and upload documentation verifying that status into the City's People & Pay system using the Employee Portal. Only City employees authorized to access employee personnel information will have access to the medical portion of the file. The City will share information about an employee's vaccination status only on a need-to-know basis, including to the employee's department, managers, and supervisors for the purpose of enforcing masking and safety requirements.

The first date that a fully vaccinated employee who has provided verification and documentation of that status to the City is allowed to unmask at indoor work sites is July 6, 2021. Thereafter, Departments will receive updated information on a weekly basis. Fully vaccinated employees may not remove masks at work until their department has been provided with the information necessary to confirm their status and enforce these requirements.

A-2b



**City and County of San Francisco**
Carol Isen
Human Resources Director

**Department of Human Resources**
*Connecting People with Purpose*
www.sfdhr.org

**Face Covering Requirements At Work**
**COVID-19 Prevention**
**Revised June 23, 2021**

*Revision Note: This Face Covering Requirements at Work policy (Policy) supersedes the Face Covering Requirements at Work policy issued June 5, 2020 and amended August 3, 2020. The revision complies with Governor Newsom's Executive Order No. N-09-21, which implements new State Division of Occupational Safety and Health (Cal/OSHA) rules effective June 17, 2021.*

*The changes in this Policy specify the face covering requirements for employees based on vaccination status, as reported and documented by employees pursuant to the Vaccine Policy issued June 23, 2021.*

POLICY

This Policy applies to all City employees, except employees whose work is governed by the safety requirements in the Cal/OSHA Aerosol Transmissible Disease Standard (ATD Standard). The ATD Standard generally applies to workplaces where employees have an elevated risk of contracting disease, such as healthcare settings where patients are present, including hospitals, medical clinics, skilled nursing facilities, home health care, long-term healthcare facilities, medical transport, and paramedic response. If employees have questions about whether this Policy or the ATD Standard applies to them, they should ask their supervisor or departmental Human Resources personnel.

All employees subject to this Policy must comply with its requirements. Generally, employees are not required to wear face coverings when working outdoors. Employees who have submitted documentation to the City verifying that they are fully vaccinated are not required to wear face coverings indoors or outdoors, except as otherwise described in this Policy. Employees who have not submitted documentation verifying fully vaccinated status must wear a face covering indoors, except as otherwise described in this Policy.

The first date that a fully vaccinated employee who has provided documentation of that status to the City is allowed to unmask at indoor work sites is July 6, 2021. Thereafter, Departments will receive updated information on a weekly basis. Fully vaccinated employees may not remove masks at work until their department has been provided with the with the information necessary to confirm their status and enforce these requirements.

Departments must enforce face covering requirements for employees who have not submitted documentation to the City verifying that they are fully vaccinated. Upon request, departments must also provide employees who are not documented as fully vaccinated and who are working indoors or in vehicles with more than one person with respirators (N95 mask) for voluntary use (although these employees must wear some face covering, even if they elect not to wear a respirator). Departments must provide face coverings to any employee regardless of vaccination status.

These safety rules are essential to protect the health of City employees and the public. All employees subject to this Policy must comply with them. If an employee is unable to comply with this face covering requirement

based on a qualifying disability or medical restrictions or because of a sincerely held religious belief, they may request an accommodation by contacting their departmental Human Resources representative.

Employees shall be sent home and may use sick leave, if available, during the interactive reasonable accommodation process, unless the department determines telecommuting is available and appropriate.

**An employee who fails to comply with these face covering requirements will receive one direct notice of the requirement and will be given an immediate opportunity to comply with the requirement. If the employee does not immediately comply, the employee will be sent home on vacation or accrued leave, other than sick leave. If the employee does not comply with the requirement a second time, the City will proceed with discipline up to and including separation from employment.** There is no tolerance for employees who will not adhere to these reasonable and necessary safety requirements.

**Vaccination Status Defined**

For purposes of this Policy and City employment, an employee is considered fully vaccinated when they have submitted documentation to the City verifying that it has been at least 14-days since their final dose of a COVID-19 vaccine, consistent with the City's Vaccination Policy. Employees who have not submitted proof of vaccination are considered unvaccinated.

**Face Coverings Defined**

A face covering means a surgical mask, a medical procedure mask, a voluntarily worn respirator, or a cloth covering that is two-layers, without holes, and that fits closely around and covers the nose, mouth, and surrounding areas of the lower face. Face coverings may not have a one-way valve (an "exhaust valve"), typically a small plastic square or disc on the front or side of the face covering, that is designed to allow easy exhaling.

Bandanas, scarves, turtlenecks, ski masks, balaclavas, plastic face shields, or single-layer fabric coverings are not acceptable.

Unvaccinated employees who have a medical exemption from wearing a face covering due to a medical condition or disability may wear an effective non-restrictive alternative, such as a face shield with a drape on the bottom, if their condition or disability permits it.

**Face Covering Requirements**

All employees, including fully vaccinated employees, must continue to wear face coverings at work in the following locations as required by State and Federal law:
- On public transit (airplanes, ships, ferries, trains, subways, buses, taxis, and ride-shares) and in transportation hubs (airport, bus terminal, marina, train station, seaport or other port, subway station, or any other area that provides transportation);
- Indoors at K-12 schools, childcare and other youth settings;
- Healthcare settings (including long-term care facilities);
- State and local correctional facilities and detention centers; and
- Homeless shelters, emergency shelters, and cooling centers.

In addition, in certain circumstances such as an outbreak, all employees regardless of vaccination status may be required to wear a face covering, regardless of whether working indoors or outdoors.

Face Covering Requirements
June 23, 2021

In certain circumstances, departments may determine that additional Personal Protective Equipment is necessary during high-risk activities or to comply with other governmental requirements. Any additional requirements must be included in the department's COVID-19 Prevention Plan required by Cal/OSHA.

Except as provided above and beginning July 6, 2021, **fully vaccinated** employees are not required to wear a face covering indoors if they have submitted the required documentation to the City. Employees who provide documentation after that will be allowed to remove face coverings in indoor workspaces on the Monday following the receipt of the necessary information to ensure that the departments may enforce the safety requirements.

Employees who are **unvaccinated** (including those who have not submitted documentation verifying their fully vaccinated status) must also continue to wear a face covering as follows:

- **Indoors**: Unvaccinated employees must wear a face covering indoors with the following exceptions:
  - When eating and drinking while maintaining 6-foot distancing;
  - When working alone in a private office so long as the employee can put on the face covering quickly if someone enters; and
  - When the employee's department determines that wearing a face covering while working would create a safety risk to the employee.

- **Vehicles**: Unvaccinated employees must wear a face covering when in a vehicle with another person.

  Employees who are vehicle operators of a bus or public transit vehicle must continue to wear face coverings at all times, even if fully vaccinated.

 Gmail

A M <amonegas@gmail.com>

---

## Letter to the City Regarding New Vaccination Policy
1 message

IFPTE Local 21 <union21@ifpte21.org>                                    Thu, Jul 8, 2021 at 2:22 PM
Reply-To: IFPTE Local 21 <union21@ifpte21.org>
To: Lovely April <amonegas@gmail.com>

View this email in your
browser



## Letter to the City Regarding New Vaccination Policy

Dear Lovely April,

The City and County of San Francisco has gone public with a new policy requiring city
employees to report their vaccination status by July 28th and become vaccinated within 10
weeks after the FDA fully approves the vaccine as safe. In their rushed rollout, we are
concerned that **the City has carelessly created fear and uncertainty** with threats of job
termination.

**We are doing everything possible to ensure that going forward this policy is
pursued with fairness and sensitivity.** The rights of every IFPTE Local 21 member will
be protected by our union.

Yesterday the Public Employee Committee (PEC) sent a letter to the City outlining
our shared concerns and requests. We are asking for the following:

1. Culturally competent outreach to CCSF employees that listens to and addresses the
   experiences of veterans and communities of color with historical reasons for
   hesitancy.

2. Immediate and transparent provision of exemption forms for CCSF employees who
   have the right to opt out of vaccination for medical or religious reasons.

3. Alignment of this plan with other city and county jurisdictions, or the State of California.

As emergency, healthcare, and essential disaster service workers, we answered the call to keep vital public services accessible to our communities. Through our work, we have come to see and understand the need to engage citizens with compassion and cultural competence when dealing with this public health crisis. **We seek the same understanding and good faith from the City in its role as our employer.**

In Solidarity,
IFPTE Local 21

Copyright © 2021 IFPTE LOCAL 21, All rights reserved.

**Our mailing address is:**
1167 Mission St. 2nd Floor
San Francisco, CA 94103

Want to change how you receive these emails?
You can update your preferences or unsubscribe from this list

## Monegas, April (DPH)

| | |
|---|---|
| **From:** | Dr. Grant Colfax <DirectorsMessage@sfdph.org> |
| **Sent:** | Monday, August 2, 2021 4:36 PM |
| **To:** | Monegas, April (DPH) |
| **Subject:** | Director's Message - COVID-19 Update |

SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH
GRANT COLFAX, MD
DIRECTOR OF HEALTH

CITY AND COUNTY OF SAN FRANCISCO
LONDON N. BREED
MAYOR

August 2, 2021

Dear Team DPH,

To see COVID-19 cases again on the rise is incredibly challenging. I know that many of us are feeling frustrated and weary as our path toward recovery is complicated.

The highly contagious Delta variant is here, spreading quickly, and it has changed our fight against the virus. Our current projections show this fourth surge will peak at the end of August or early September.

The Delta variant—essentially COVID-19 on steroids—requires that we work together as a department. As health care professionals, we find ourselves at yet another critical point in the pandemic. And again, you are on the frontlines of how our city responds. Your work has made us a national model over the past 18 months, and I know you will continue to lead with compassion, excellence, and grace.

Fortunately, we are in a much better place than we were during the last three surges. The vaccines remain highly effective and vaccinated individuals are extremely unlikely to become severely ill if they do contract COVID. I am proud to live in one of the most vaccinated places in the country—and proud of your efforts to vaccinate San Franciscans. Even as cases rise, our data tells us the vaccine has already saved lives. While the pace of vaccinations has slowed significantly since the spring, across the city we are now seeing an uptick in vaccinations. The San Francisco Health Network alone continues to give over 100 first doses a day. And each dose is a win.

This requires that we all get vaccinated. It is not too late for you or those in your life to get a shot. They are free, safe, effective and appointments are readily available throughout the City at sf.gov/getvaccinated.

It also requires that we re-commit to masking. Please be sure to wear a mask indoors, whether you are vaccinated or not, as required in healthcare settings and as directed by the health order released today.

And finally, please stay home when sick, regardless of your vaccination status. If you have COVID-19 symptoms or were exposed to someone diagnosed with COVID-19, contact your manager immediately and do not come to work until directed. This applies whether or not you have been fully vaccinated.

Thank you for your continued dedication to protecting and promoting public health. Every day, you are saving lives.

With gratitude,

Grant

101 Grove Street, San Francisco, CA 94102

## Monegas, April (DPH)

| | |
|---|---|
| **From:** | David, Aldrich (DPH) |
| **Sent:** | Monday, November 22, 2021 2:55 PM |
| **To:** | Monegas, April (DPH); April Monegas |
| **Cc:** | DHR-EEO; DPH-EEO; Comes, Jessica (HRD) |
| **Subject:** | RE: Exemption Determination |
| **Attachments:** | Monegas, April Determination-on-COVID-19-Vaccination-Exemption.pdf |

Good Afternoon April,

Please see the attached regarding your request for exemption. Due to your sincerely held religious beliefs, I have copied DHR EEO who should contact you in regards to the Citywide job search process.

You must comply with the state and local Health Orders and City policy requiring COVID-19 vaccination. You are also required to provide updated vaccination status and documentation to the City and Department through the SF Employee Portal. Please see below for information on uploading documentation.

Because you are unvaccinated and do not have an approved exemption from the vaccination requirement, you must remain on leave until "vaccinated" (or if on or after November 1, 2021 until you are "fully vaccinated"). "Vaccinated" under the health orders means you received the final dose of your vaccine regimen. You are "fully vaccinated" two weeks after you received the final dose.

You will receive additional notice from DPH HR Labor Relations in the following days.

Should you change your mind about vaccinating, here are the instructions for updating your vaccination record:

- Go to the SF Employee Portal site, log on, and click on the "Employee Links" tab. Then, click on "Update/View Vaccine Status." Once there you will be taken to a screen titled "Search/Fill a Form." The subject should be "COVID." Click the "Search" button. Go to the "Form" tab and make the change to the dates. Click "Save" once you are done.
  - Important Note: Going back to the "Form" tab and clicking "submit" must be done for the attachment to upload.
- Additional information can be found at:
  https://sfemployeeportalsupport.sfgov.org/support/solutions/articles/11000077233-how-to-submit-your-covid-19-vaccine-status-via-the-sf-employee-portal
- Assistance with uploading/correction: please contact dph-hradmin@sfdph.org and/or Alyssa Mendoza alyssa.mendoza@sfdph.org with your vaccination documentation

Thanks,
Rich David
Sr. Human Resources Analyst
Labor Relations, ZSFG DPH
Phone: 628-206-5419
Cell:    415-994-7162
Fax:    628-206-4580

 **City and County of San Francisco**

## DETERMINATION ON COVID-19 VACCINATION EXEMPTION REQUEST

| Employee Name | Employee DSW# |
|---|---|
| Lovely April F Monegas | 180292 |
| Job Code and Title | Department |
| 1823 Senior Administrative Analyst | DPH |
| Division/Unit | Supervisor/Manager |
| HBH Substance Use Disorder | Anne M Ruggels |

This notice is to advise you of the following departmental determination on your request for exemption from COVID-19 vaccination requirements submitted on ____/____/20____.

---

☐ **APPROVED**

Your request for an exemption based on a disability, medical condition, or sincerely held religious belief is **APPROVED.** You will remain in your current position with the following reasonable accommodations (including any mandatory health and safety protocols for unvaccinated employees, such as regular testing and specific masking requirements and to protect coworkers and members of the public);

_____

_____

(Attach separate sheet as necessary.) Failure to comply with any of the required accommodations, including health and safety requirements, may result in revocation of this approval.

**DURATION**

Approved accommodations are subject to change in accord with public health orders, or to align with current essential job functions, or operational needs. Should either your condition or religious beliefs change such that this accommodation is no longer necessary, or needs to be modified, you must immediately notify your supervisor or department Human Resources personnel.

This accommodation is subject to review and re-approval on: 09 / 20 /2021 .

---

☒ **DENIED**

| ☐ **DISABILITY OR MEDICAL CONDITION** | ☐ **SINCERELY HELD RELIGIOUS BELIEF** |
|---|---|
| Your request for an exemption based on an asserted disability or medical condition is **DENIED** for the following reason(s): | Your request for an exemption based on an asserted sincerely held religious belief, practice or observance is **DENIED** for the following reason(s): |
| ☐ Medical Documentation Inadequate/Not Submitted<br>☐ No Disability or Medical Condition Requiring Accommodation<br>☐ Accommodation Would Pose a Direct Threat to the Health and Safety of Others and/or Yourself<br>☐ Accommodation Would Prevent Employee from Performing Essential Function(s)<br>☐ Accommodation Would Result in Undue Hardship for the City<br>☐ Other: _____ | ☐ Documentation Insufficient to Show a Conflict Between Vaccination Requirement and Sincerely Held Religious Belief, Practice or Observance<br>☒ Accommodation Would Pose a Direct Threat to the Health and Safety of Others and/or Yourself<br>☒ Accommodation Would Prevent Employee from Performing Essential Function(s)<br>☒ Accommodation Would Result in Undue Hardship for the City<br>☐ Other: _____ |

---

☒ **CITYWIDE SEARCH**

The department has determined that you have a medical condition, disability, or sincerely held religious belief that precludes you from being vaccinated, but that the department cannot reasonably accommodate you in your current position. While you cannot remain in your current position, you may continue the interactive process to explore other options for reasonable accommodation through the Citywide job vacancy search. This 60-day process involves a search for available, vacant, non-promotive positions within City employment for which you are qualified and that you can perform while unvaccinated, with or without accommodation.

**FOR HR USE ONLY**

Vaccination Status Updated in PeopleSoft ☐ Yes ☐ No

Date Determination Form Uploaded to PeopleSoft: ___/___/20___

Referred to Citywide Reasonable Accommodation Coordinator ☐ Yes ☐ No

April Monegas
2104 East Anderson Lane, Apt. 1513 Austin, Texas 78752
email: amonegas@gmail.com

| Aldrich David, Human Resources Analyst 2789 25th Street San Francisco, CA 94110 email: Aldrich.david@sfdph.org | Luenna Kim, Director of Human Resources Human Resources Office 101 Grove St. San Francisco, CA 94102 email: luenna.kim@sfdph.org |
|---|---|
| Wilson Ng, ADA Coordinator 1 Dr. Carlton B. Goodlett Place, City Hall, Room 244 San Francisco, CA 94102 email: Wilson.L.Ng@sfgov.org | Office of the City Attorney City Hall, Room 234 1 Dr. Carlton B. Goodlett Pl. San Francisco, CA 94102 cityattorney@sfcityatty.org |
| Amalia Martinez , EEO HR 1 South Van Ness Ave., 4th Floor San Francisco, CA 94103 amalia.martinezl@sfgov.org | |

December 13th 2021.

RE:  **Notice of Discrimination and Retaliation Based Upon Disability**
     **Notice of Request for Skelly Hearing**

Greetings ,

On November 1, 2021, based upon my employer's information, I sent in a request for a religious exemption. On November 11, 2021, I received a determination email from Aldrich David and an unsigned determination (Enclosure 1 a & b) on my exemption request that both listed a pre-request date of September 20, 2021 in the approval box as the date my approval would be subject to re-approval; and it listed in the denied box that my accommodation would be a hardship for the city, that I would be a danger to co-workers, and that an accommodation would prevent me from performing essential functions of my job.

However, I work remotely and have no physical contact with co-workers, and further, there is no individualized assessment that Aldrich David is relying upon to consider me a direct threat.

There is no hardship for the City because I have already been working this way for a few months and performing all functions of my job. In addition, there was no determination that my documentation was insufficient. Further, no "effective date" was given for the 60 days of paid leave I am under prior to being wrongfully terminated.

When I asked for an appeal of this decision (Enclosure 2), I was told by Amalia Martinez, EEO by email (Enclosure 3), that no appeal was allowed. This is counter to the process of a Skelly hearing which includes the right to respond, either orally or in writing to the authority initially imposing discipline. As this determination will lead to me being terminated from my job, a Skelly hearing is surely the next step.

As a matter of record, Aldrich David failed to allege any facts in his determination:

He failed to allege any facts that would constitute an undue burden for my refusal to accept your accommodations.

He failed to allege any fact that would establish any fundamental alteration in the manner in which SFDPH business operates. SFDPH policies themselves have created a fundamental alteration in the manner in which its business operates.

He failed to allege facts that the disability SFDPH is, in fact, regarding me as having, is not transitory and minor.

SFDPH policies have created a disability for me. Please be advised of the law:

29 CFR Part 1630.2(r):

"Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a 'direct threat' shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:

(1) The duration of the risk;

(2) The nature and severity of the potential harm;

(3) The likelihood that the potential harm will occur; and

(4) The imminence of the potential harm."

SFDPH policies have nothing to do with anyone's safety, in fact, its policies violate the safety of its employees and violate its actual duty of care toward those employees. Safety requirements must be based on <u>actual risks</u> (not "guidelines" published on a website) and <u>not on mere speculation, stereotypes,</u> or <u>generalizations about individuals with disabilities.</u> All my employer's forms which only offer medical or religious exemption as the only "opt-out" choices interfere with my ADA rights because they limit an employee's right to invoke ADA protections of the 'Regarded As" prong, including without limitation, the right to be free of discrimination and retaliation based upon disability, such as being terminated or segregated because of one's physical condition.

I request a "Skelly" hearing or pre-disciplinary due process conference. The SFDPH has already undertaken "disciplinary" measures and penalized me without first conducting any "pre-disciplinary due process conference" as required under the Skelly criteria. I have been placed on 60 days paid leave prior to wrongful termination.

I am also documenting that my employer is **regarding me as having a disability** (an impaired immune system and an impaired respiratory system) **without any diagnosis or individualized assessment** and has also made a **record of such disability** by misclassifying me as having, in ADA terms, a mental or physical impairment that substantially limits one or more major life activities.[1]

My employer is also coercing me to submit to medical examinations and interventions as accommodations ("mitigation measures") without any informed consent. It has been extremely difficult to perform my employment duties because of these interruptions and harassment.

Title I of the ADA prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c)

Regarding the mitigation measures such as vaccines and submitting to medical examinations, I am not required to accept these or any mitigation measures under Title I of the ADA. 29 CFR Part 1630.9(d). Moreover, I am not required to prove any "exemption" but the employer alone has the burden of proving that I am a direct threat. My employer is responding to me as if I have an actual or potential contagious disease. I demand to review the records the employer has relied upon to determine that I am a direct threat. If there is some legal authority that overrides my rights under the ADA, please provide me with a legal citation.

My employer is also threatening adverse employment actions if I do not submit to mitigation measures.

Because my employer is regarding me as disabled, I am invoking my rights under the Americans with Disabilities Act as a qualified individual with a disability. I also want to speak confidentially to the SFDPH designated employee or representative for matters involving Title I of the Americans with Disabilities Act and grievances. **Please identify this employee to me and give me their contact information.**

I am notifying my employer at this time that I am claiming my rights under the ADA, and I do not need to file a "medical" or "religious" exemption--- I am already "exempt" from the new policy by claiming informed consent and by claiming my rights under the ADA. I am already "exempt" because my employer is not relying on any individualized assessment or diagnosis of any condition of impairment. I do not have an impairment rather I am being regarded as impaired. The fact that my employer has not acknowledged informed consent or ADA-based reasons for not using "mitigation measures" on the forms offering "exemptions" is interference with my rights under the ADA.

From the EEOC website, number 19, "Interference":

"Examples of interference include: issuing a policy or requirement that purports to limit an employee's rights to invoke ADA protections (e.g., a fixed leave policy that states 'no exceptions will be made for any reason');"[2]

_____

2 https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-retaliation-and-related-

**Questions for the SFDPH Legal Department or Risk Management Department to respond to:**

I have several questions that I would like answered by my employer and I request Human Resources to incorporate getting them answered as part of its discrimination investigation.

1. Why does SFDPH regard me as having a disability of an impaired immune system and an impaired respiratory system and what records have you made of this?

2. An actual diagnosis must precede any prescription or treatment. What medical records and complaint made by a physician to a health officer, and "orders of isolation and quarantine" does SFDPH rely upon for regarding me as having an impaired immune system and an impaired respiratory system? Please include all evidence, court records and records from the individualized assessment used in making this determination or diagnosis as required under Title I of the Americans with Disabilities Act.[3]

3. When did SFDPH conspicuously disclose that complying with a COVID-19 vaccine requirement, testing requirement, or masking requirement is an essential function of my job?

4. Please identify the statute and regulation imposing SFDPH's legal duty of care to protect me and others from any contagious disease and the commissioner's pertinent "hazard assessments".

5. Please provide a copy of documentary evidence from the departments of health or labor establishing the existence of a disease that has been isolated by modern scientific standards and documentary evidence proving that such disease is airborne and contagious.

6. Please identify SFDPH's insurable risk with a copy of the insurance binder showing that SFDPH is insured for protecting employees from a contagious disease and for any adverse health consequences they may suffer as a result of SFDPH's mitigation measures.

7. Regarding the mitigation measures , a) why has SFDPH refused to disclose the risks and benefits of the product, and also advised me of my right to either accept or refuse the product," and b) which of these mitigation measures has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having?

8. How are these requests for my medical information and my submitting to medical examinations and interventions necessary for the performance of my employment duties?

9. How can SFDPH assume my immune system and respiratory system is impaired, respond me to me as if I have a contagious disease, then impose restrictions and medical interventions without my informed consent, physician's oversight or judicial approval, yet I am somehow required to obtain written permission from my physician to exercise my rights to informed consent and medical privacy? Please explain this to me.

We can stipulate that I have never waived any of my rights to medical privacy which includes the right of informed consent as a condition for employment.

If you refuse to answer these questions, I will consider the matter closed and we can set it aside and continue with our business without further interruption.

**Be advised that if my employment is conditioned upon submitting to your mitigation measures of vaccination and/or stricter PPE, this constitutes discrimination based upon disability, a violation of state and federal law, and retaliation under the ADA, for which I would have a claim for employment discrimination based upon disability.

Sincerely,

12/13/2021

**April Monegas**

enclosures:

1. Aldrich David's Determination email and letter
2. My email requesting an appeal
3. Response from Amalia Martinez denying right to appeal

Exhibit No. A-8

Page 6 of 6

Gmail - (Revised) Contest of Department Determination on Your Vaccina...   https://mail.google.com/mail/u/0/?ik=58ec9f1058&view=pt&search=all...

 Gmail

A M <amonegas@gmail.com>

## (Revised) Contest of Department Determination on Your Vaccination Exemption Request
1 message

**Boyd, Deltrice (HRD)** <deltrice.boyd@sfgov.org>                    Fri, Dec 3, 2021 at 6:11 PM
To: "AMONEGAS@GMAIL.COM" <AMONEGAS@gmail.com>
Cc: "Colfax, Grant (DPH)" <grant.colfax@sfdph.org>, "Martinez, Amalia (HRD)" <amalia.martinez1@sfgov.org>

Dear Lovely April Monegas,

We have received your email communicating an intent to appeal your department's decision to deny your Vaccination Exemption Request. This is to advise you that there is no appeal process. Instead, please note that pursuant to the revised COVID-19 VACCINATION MEDICAL AND RELIGIOUS EXEMPTION REQUEST PROCEDURE (see, attached at p. 9), employees may file either an Equal Employment Opportunity (EEO) complaint or a grievance alleging discrimination regarding their department's decision to deny a request for a medical or religious exemption to the job-related vaccination requirement. This procedure is consistent with authority granted in the San Francisco Charter and in employee bargaining agreements.

The Department of Human Resources (DHR) will process your notice of intent to appeal as a complaint under the City's EEO Complaint procedures, unless you communicate in writing to DHR-EEO@sfgov.org that you wish to withdraw your complaint. DHR/EEO will expedite processing of complaints regarding determinations on medical and religious vaccination exemption requests. Therefore, you must communicate your intent to withdraw from the DHR/EEO complaint process no later than close of business on **Monday, December 13, 2021.** If you do not withdraw, DHR/EEO will continue processing your complaint.

**Union Grievance**

Please be advised that should you elect to pursue your discrimination complaint through the grievance process you are precluded from filing a complaint on the same issues using the City's EEO Complaint process. The Memorandum of Understanding agreed to by your union states that employees may elect only one administrative remedy available through the City, and that such election is irrevocable.

While your complaint or grievance is pending, you remain subject to the City's vaccination requirement and your department can proceed with adverse employment actions for noncompliance.  You may contact the undersigned at (415) 557-4932, or via email at amalia.martinez1@sfgov.org should you have any questions.

Sincerely,

*Amalia Martínez*

Amalia Martinez

April Monegas
2104 East Anderson Lane, Apt. 1513
Austin, Texas 78752
email: amonegas@gmail.com

| | |
|---|---|
| Aldrich David, Human Resources Analyst<br>2789 25th Street<br>San Francisco, CA 94110<br>email: Aldrich.david@sfdph.org | Luenna Kim, Director of Human Resources<br>Human Resources Office<br>101 Grove St.<br>San Francisco, CA 94102<br>email: luenna.kim@sfdph.org |
| Wilson Ng, ADA Coordinator<br>1 Dr. Carlton B. Goodlett Place, City Hall,<br>Room 244<br>San Francisco, CA 94102<br>email: Wilson.L.Ng@sfgov.org | Office of the City Attorney<br>City Hall, Room 234<br>1 Dr. Carlton B. Goodlett Pl.<br>San Francisco, CA 94102<br>email: cityattorney@sfcityatty.org |
| Amalia Martinez, EEO HR<br>City & Co. SF, DHR<br>1 South Van Ness Ave., 4th Floor<br>San Francisco, CA 94103<br>email: amalia.martinez1@sfgov.org | Kate Howard, Deputy Director<br>City & Co. SF, DHR<br>1 South Van Ness Ave., 4th Floor<br>San Francisco, CA 94103<br>email: Kate.Howard@sfgov.org |

December 21, 2021.

RE: **Second Notice of Discrimination and Retaliation Based Upon Disability**

**Second Notice of Request for Review of Aldrich David's Determination**

**Second Notice of Requesting Wilson Ng to identify employee who can open an ADA Discrimination Case**

Greetings,

A quick review:

On November 1, 2021, based upon my employer's information, I sent in a request for a religious exemption. On November 11, 2021, I received a determination email from Aldrich David and an unsigned determination letter (Enclosure 1 a & b) which listed both:

Exhibit A-9

    a. a pre-request date of September 20, 2021 in the Approval box as the date my approval would be subject to re-approval; and

    b. it checked 3 boxes in the denied area; stating that accommodation would be:

        1.) a hardship for the City,

        2.) that I would be a danger to co-workers, and

        3.) that an accommodation would prevent me from performing essential functions of my job.

However, I work remotely and have no physical contact with co-workers. There is no individualized assessment that Aldrich David is relying upon to consider me a direct threat. There is no hardship for the City because I have already been working this way for a few months, at the request of the City, and performing all functions of my job.

In addition, there was no determination that my documentation was insufficient. Further, no "effective date" was given for the 60 days of paid leave I am under prior to being wrongfully terminated.

When I asked for an appeal of this decision (Enclosure 2), I was told by Amalia Martinez, EEO by email (Enclosure 3) that no appeal was allowed.

On December 15, I received, in response to the letter I sent you all disclosing these facts, an email from Amalia Martinez who has suddenly learned that there is a complaint process for reviewing an incorrect determination. However, she asked me to file a new exemption request. I clearly asked for a review of the work papers Aldrich David used to determine that I am a direct threat and to provide the individualized assessment he is relying upon to make this determination. If he is not able to provide the individualized assessment he relied upon to make his determination, then he should "make whole" the situation and provide a corrected determination.

As a matter of record, Aldrich David failed to allege any facts in his determination:

He failed to allege any facts that would constitute an undue burden for my refusal to accept your accommodations.

He failed to allege any fact that would establish any fundamental alteration in the manner in which SFDPH business operates. In fact, SFDPH policies themselves have created a fundamental alteration in the manner in which its business operates.

He failed to allege facts that the disability SFDPH is, in fact, regarding me as having, is not transitory and minor.

SFDPH policies have created a disability for me. Please be advised of the law:

29 CFR Part 1630.2(r):

"Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a 'direct threat' shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:

(1) The duration of the risk;

(2) The nature and severity of the potential harm;

(3) The likelihood that the potential harm will occur; and

(4) The imminence of the potential harm."

SFPHD policies have nothing to do with anyone's safety, in fact, its policies violate the safety of its employees and violates its actual duty of care toward those employees. Safety requirements must be based on actual risks (not "guidelines" published on a website) and not on mere speculation, stereotypes, or generalizations about individuals with disabilities. All my employer's forms which only offer medical or religious exemption as the only "opt-out" choices interfere with my ADA rights because they limit an employee's right to invoke ADA protections of the 'Regarded As" prong, including without limitation, the right to be free of discrimination and retaliation based upon disability, such as being terminated or segregated because of one's physical condition.

Please provide a review of the determination made and a review of Aldrich David's work-papers and if my determination is not **immediately approved** then I request a "Skelly" hearing or pre-disciplinary due process conference. The SFDPH has already undertaken "disciplinary" measures and penalized me without first conducting any "pre-disciplinary due

process conference" as required under the Skelly criteria.  I have been placed on 60 days paid leave prior to wrongful termination.

I am also documenting that my employer is **regarding me as having a disability** (an impaired immune system and an impaired respiratory system) **without any diagnosis or individualized assessment** and has also made a **record of such disability by mis-classifying me** as having, in ADA terms, a mental or physical impairment that substantially limits one or more major life activities.[1]

My employer is also coercing me to submit to medical examinations and interventions as accommodations ("mitigation measures") without any informed consent.  It has been extremely difficult to perform my employment duties because of these interruptions and harassment.

Title I of the ADA prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c)

Regarding the mitigation measures such as vaccines and submitting to medical examinations, I am not required to accept these or any mitigation measures under Title I of the ADA, 29 CFR Part 1630.9(d).  Moreover, I am not required to prove any "exemption" but the employer alone has the burden of proving that I am a direct threat. My employer is responding to me as if I have an actual or potential contagious disease. I demand to review the records the employer has relied upon to determine that I am a direct threat.  If there is some legal authority that overrides my rights under the ADA, please provide me with a legal citation.

My employer is also threatening adverse employment actions if I do not submit to mitigation measures.

Because my employer is regarding me as disabled, I am invoking my rights under the Americans with Disabilities Act as a qualified individual with a disability. I also want to speak confidentially to the SFDPH designated employee or representative for matters involving Title I of the Americans with Disabilities Act and grievances.  **This is my second request to Wilson Ng asking him to please identify this employee to me and give me their contact information.**

1   This behavior is also symptomatic of a mental illness known as Factitious Disorder by Proxy (DSM, 5th Ed.)

I am notifying my employer at this time that I am claiming my rights under the ADA, and I do not need to file a "medical" or "religious" exemption--- I am already "exempt" from the new policy by claiming informed consent and by claiming my rights under the ADA. I am already "exempt" because my employer is not relying on any individualized assessment or diagnosis of any condition of impairment. I do not have an impairment rather I am being regarded as impaired. The fact that my employer has not acknowledged informed consent or ADA-based reasons for not using "mitigation measures" on the forms offering "exemptions" is interference with my rights under the ADA.

From the EEOC website, number 19, "Interference":

"Examples of interference include: issuing a policy or requirement that purports to limit an employee's rights to invoke ADA protections (e.g., a fixed leave policy that states 'no exceptions will be made for any reason');"[2]

**Questions for the SFDPH Legal Department or Risk Management Department to respond to:**

I have several questions that I would like answered by my employer and I request Human Resources to incorporate getting them answered as part of its discrimination investigation.

1. Why does SFDPH regard me as having a disability of an impaired immune system and an impaired respiratory system and what records have you made of this?

2. An actual diagnosis must precede any prescription or treatment. What medical records and complaint made by a physician to a health officer, and "orders of isolation and quarantine" does SFDPH rely upon for regarding me as having an impaired immune system and an impaired respiratory system? Please include all evidence, court records and records from the individualized assessment used in making this determination or diagnosis as required under Title I of the Americans with Disabilities Act.[3]

3. When did SFDPH conspicuously disclose that complying with a COVID-19 vaccine requirement, testing requirement, or masking requirement is an essential function of my job?

---

2 https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-retaliation-and-related-issues

3 29 CFR 1630.2 et seq.

4. Please identify the statute <u>and regulation</u> imposing SFDPH's <u>legal duty of care</u> to protect me and others from any contagious disease and the commissioner's pertinent "hazard assessments".

5. Please provide a copy of documentary evidence from the departments of health or labor establishing the existence of a disease that has been isolated by modern scientific standards and documentary evidence proving that such disease is airborne and contagious.

6. Please identify SFDPH's insurable risk with a copy of the insurance binder showing that SFDPH is insured for protecting employees from a contagious disease and for any adverse health consequences they may suffer as a result of SFDPH's mitigation measures.

7. Regarding the mitigation measures which are under emergency use authorization: a) why has SFDPH refused to include a disclosure notice of the <u>risks and benefits</u> of the injection product, the testing product and the mask product; and also advised me of my right to either <u>accept or refuse</u> the products,[4] and b) which of these mitigation measures has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having?

8. How are these requests for my medical information and my submitting to medical examinations and interventions necessary for the performance of my employment duties?

9. How can SFDPH assume my immune system and respiratory system is impaired; respond me to me as if I have a contagious disease, then impose restrictions and medical interventions without my informed consent, physician's oversight or judicial approval; yet I am somehow required to obtain written permission from my physician to exercise my rights to informed consent and medical privacy? Please explain this to me.

We can stipulate that I have never waived any of my rights to medical privacy which includes the right of informed consent as a condition for employment.

If you refuse to answer these questions, I will consider the matter closed and we can set it aside and continue with our business without further interruption.

\*\*Be advised that if my employment is conditioned upon submitting to your mitigation measures of vaccination and/or stricter PPE, this constitutes discrimination based upon disability, a violation of state and federal law, and retaliation under the ADA, for which I would have a claim for employment discrimination based upon disability.

---

4  21 USC 360bbb-3

Sincerely,

*[signature]* 12/21/21

**April Monegas**

enclosures

1. Aldrich David's Determination email and letter

2. My email requesting an appeal

3. Response from Amalia Martinez denying right to appeal

4. Response from Amalia Martinez asking me to resubmit my initial paperwork rather than performing a review of Aldrich David's incorrect determination.

Exhibit A-9

Lovely April F. Monegas
2104 East Anderson Lane, Apt. 1513
Austin, Texas 78752
email: amonegas@gmail.com

| | |
|---|---|
| Katherine Perez, ADR<br>San Antonio Field Office EEOC<br>Legacy Oaks, Building A<br>5410 Fredericksburg Rd., Suite 200<br>San Antonio, TX 78229<br>email: katherine.perez@eeoc.gov | CRTIU Supervisor<br>San Antonio Field Office EEOC<br>Legacy Oaks, Building A<br>5410 Fredericksburg Rd., Suite 200<br>San Antonio, TX 78229 |
| Norma Guzman, Acting Director<br>San Antonio Field Office EEOC<br>Legacy Oaks, Building A<br>5410 Fredericksburg Rd., Suite 200<br>San Antonio, TX 78229<br>email: Norma.Guzman@eeoc.gov | Jessica Comes, SFDHR EEO<br>Department of Human Resources<br>One South Van Ness Avenue, 4th Floor<br>San Francisco, CA 94103 |

February 22, 2022

## For San Antonio Field Office EEOC

## Charge of Discrimination

### Request for Protected Opposition Status

Re: San Francisco Department of Public Health
101 Grove Street
San Francisco, CA 94102

### STATEMENT IN SUPPORT OF COMPLAINT

I am making this complaint against my employer for its discrimination against me based upon disability. The EEOC has the authority and legal duty to investigate this complaint.

My employer regards me as having a disability. My employer regards me as having an impairment of my immune system and an impairment of my respiratory system and responds to me as if I have a contagious disease.

My employer has made a record of such disability.

My employer has failed to conduct any individualized assessment to determine if I am a direct threat to anyone. My employer has failed to engage in any interactive process with me concerning disability rights or resolutions.

- 1 -

1        I have asked to speak confidentially with my employer's designated employee or representative that is responsible for resolving matters involving the Americans with
2    Disabilities Act and grievances thereunder, but my employer refuses to provide me access
3    to such a person.

4        I sent a Notice to several agents of my employer titled "Notice of Discrimination and Harassment Based Upon Disability" as a way of putting on the record that I am being
5    regarded as disabled with an impaired immune system and an impaired respiratory system
6    and responded to as if I am a contagious direct threat. I have asked my employer to
7    produce the individualized assessment it is relying upon and it has refused.

    Instead, my employer has only offered injections of certain types of suspensions
8    which are being called "vaccinations" yet do not prevent infection or transmission of any
9    contagious disease and in fact create more disabilities by altering the normal function of my
     immune system and other cellular functions. My employer has not merely "offered" such
10   accommodation measures, but threatened me with penalties including those described
11   herein for refusing such accommodations in violation of 29 CFR Part 1630.9(d). My
     employer refused to allow me to work unless I was injected with these substances.
12
    I have informed my employer that I am a qualified individual with a disability that
13   substantially limits my ability to engage in one or more major life activities with a "Notice of
14   Discrimination and Harassment Based Upon Disability"; a copy is enclosed.

15       My employer never conspicuously disclosed that complying with a COVID-19 vaccine requirement is an essential function of the job.
16
    I have requested information regarding the risks and benefits of my employer's
17   accommodation measures and in response, my employer has retaliated against me by
18   reprimanding me and has threatened or intimidated or coerced me with the threat of
     suspension of my pay, reduced hours or pay or the termination of my employment for
19   refusing such accommodation measures instead of providing me with the information I
20   requested so that I could make an informed decision.

21       I have exercised my right to refuse such accommodation measures and proposed instead that I be permitted to perform my employment duties without harassment,
22   retaliation, coercion or intimidation as a result of my exercise of such rights, and my
23   employer has prevented and interfered with this occurring.

24       I have not requested reasonable modifications but only that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation.
25
    My employer has instead retaliated against me for exercising my rights under the
26   Americans with Disabilities Act by threatening me with disciplinary measures and penalties
27   for refusing such accommodation measures, including but not limited to suspension or
     reduction of pay, limiting my access to the premises where I work, segregation, isolation,
28   termination of employment, exclusion from programs or services that would permit me to

improve my employment skills or become eligible for advancement, and denied me the possibility for promotion even when I was eligible or would become eligible.

Each day my employer permits and encourages other employees, including my supervisor and managers to harass and intimidate me and ask me for medical, health and other personal information that does not pertain to. or is not necessary for, the performance of my employment duties.

I am thereby being denied equal access to the same programs, activities, benefits, jobs or other opportunities for which I am otherwise qualified, while other employees are not. I am being segregated, excluded and relegated to lesser services by my employer based solely upon disability.

My employer has written and adopted policies that exacerbate my disabilities and create disabilities while also encouraging others to retaliate against me for exercising my rights under the Americans with Disabilities Act.

My employer has failed or refused to fulfill its duty to aid and encourage me in the exercise of my rights which are protected under the Americans with Disabilities Act.

My employer has demonstrated by the actions of its employees and by its own written policies that it intends to continue such violations and failures to comply with the law and violation my rights.

### REQUEST FOR INVESTIGATION AND/OR RIGHT TO SUE LETTER

By filing this Charge, I am formally requesting an investigation or an immediate Right to Sue letter if no meaningful investigation will be done by the EEOC. I request that my Charge be entered manually by a CRTIU Supervisor as I do not find the online portal acceptable or accessible for entering my actual Charge. I request a written response from the CRTIU Supervisor confirming that my Charge has been filed within 14 business days of receipt of this Notice.

_(signature)_ 2/22/22

Lovely April F. Monegas          Date

Enclosure Copies:

　1.) Notice of Employment Discrimination & Harassment Based on Disability

- 3 -



U.S. Department of Justice

Civil Rights Division

*Disability Rights Section -- 4 Con*
*950 Pennsylvania Ave, NW*
*Washington, DC 20530*

May 10, 2022

<u>VIA EMAIL</u>:amonegas@gmail.com

April F. Monegas
2104 East Andersen Lane, Apt 1513
Austin, TX 78752

|       |                       |                                              |
|-------|-----------------------|----------------------------------------------|
| Re:   | EEOC Charge Against:  | San Francisco Department of Public Health     |
|       | EEOC No.:             | 451-2022-01334                                |

Dear Ms. Monegas:

### NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

Because you filed the above charge with the Equal Employment Opportunity
Commission, and the Commission has determined that it will not be able to investigate and
conciliate that charge within 180 days of the date the Commission assumed jurisdiction over
the charge, and the Department has determined that it will not file any lawsuit(s) based thereon
within that time, and because you or your attorney has specifically requested this Notice, <u>you
are hereby notified that you have the right to institute a civil action against the above-named
respondent under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et
seq.  If you choose to commence a civil action, such suit must be filed in the appropriate court
within 90 days of your receipt of this Notice.</u>  This should not be taken to mean that the
Department has made a judgment as to whether or not your charge is meritorious.

If you or your attorney has any questions concerning this matter or wish to inspect the
investigative file, please address your inquiry to: San Antonio Field Office, U.S. Equal
Employment Opportunity Commission.  Please note, due to COVID-19 there may be a delay in
obtaining copies of the case file.

Exhibit A-11

Enclosed you will find a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA). We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case.

Sincerely,
Kristen Clarke
Assistant Attorney General
Civil Rights Division

BY: *Celeste A. Adams-Simmons*
Celeste A. Adams-Simmons
Senior Investigator
Disability Rights Section

Enclosures:
Notice of Rights under the ADAAA

cc:     San Francisco Department of Public Health
        EEOC- San Antonio Field Office

April Monegas
Plaintiff in *Propria Persona*
2104 East Anderson Lane, Apt. 1513
Austin, Texas 78752
amonegas@gmail.com
(415) 802-9276

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue, San Francisco, CA 94102

APRIL MONEGAS
PLAINTIFF

v.

CASE NO. 3:22-cv-04633(JD)

CITY AND COUNTY OF SAN FRANCISCO
DEPARTMENT OF PUBLIC HEALTH
DEFENDANT

_____/

## CERTIFICATE OF SERVICE

I, April Monegas, hereby certify that a true and correct copy of the foregoing was duly served upon the defendant's attorney, Peter A. Cownan, at the address of 1390 Market Street, 5th Floor, San Francisco, CA 94102 via first class mail on this 5th day of October, 2022.

By: _____

# EXHIBIT B

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

APRIL MONEGAS,

        Plaintiff,

    v.

CITY AND COUNTY OF SAN
FRANCISCO DEPARTMENT OF PUBLIC
HEALTH,

        Defendant.

Case No. 22-cv-04633-JD

**ORDER RE MOTION TO DISMISS**

      Pro se plaintiff April Monegas has sued her former employer, the City and County of San Francisco (CCSF). Dkt. No. 9. In a first amended complaint (FAC), Monegas says that CCSF fired her as a Senior Administrative Analyst because she declined COVID-19 vaccination without a medical or religious exemption. *Id.* ¶¶ 28-35. Monegas alleges that this constituted disability discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.* Dkt. No. 9 ¶¶ 43-151.

      CCSF has asked to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 13. The parties' familiarity with the record is assumed, and the FAC is dismissed with leave to amend.

## LEGAL STANDARDS

      Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

1 | 550 U.S. 544, 570 (2007). This calls for enough "factual content that allows the court to draw the

2 | reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

3 | 556 U.S. 662, 678 (2009). While Monegas, as a pro se plaintiff, is entitled to a generous reading

4 | of her complaint, she is required to meet these standards, just like every other plaintiff. *See*

5 | *Choudhuri v. Specialized Loan Servicing*, No. 3:19-cv-04198-JD, 2019 WL 3323088, at *1 (N.D.

6 | Cal. July 24, 2019).

## DISCUSSION

The FAC, as it currently stands, does not meet these standards. To state a claim under the ADA, Monegas must allege that she is a qualified individual with a disability and that CCSF discriminated against her on the basis of that disability. *See* 42 U.S.C. § 12112(a); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001) (elements for claim of discrimination under Title I of the ADA). A disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Arreola v. Cal. Dep't of Corr. & Rehab.*, No. 16-cv-03133-JD, 2017 WL 1196802, at *2 (N.D. Cal. Mar. 31, 2017).

Monegas has not plausibly alleged a disability. The FAC suggests only that CCSF may have regarded unvaccinated employees as a potential infection risk to others. *See, e.g.*, Dkt. No. 9 ¶¶ 13, 69, 101. That is not within the established understanding of a disability for ADA purposes. Nothing in the FAC indicates that Monegas had any physical or mental conditions of concern, or that CCSF discriminated against her on the basis of a physical or mental disability. This is not enough to maintain an ADA claim.

In addition, the claims are untimely on their face. The federal limitations period for bringing an ADA claim is 90 days from receipt of a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC). *See* 42 U.S.C. §§ 12117(a), 2000e–5(f)(l); *Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1245 (9th Cir. 2010). The 90-day deadline functions as a statute of limitations for an ADA claim. *Stiefel*, 624 F.3d at 1245. The start of the limitations period is

*United States District Court*
*Northern District of California*

2

measured "from the date on which a right-to-sue notice letter arrived at the claimant's address of record." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007).

The parties agree, and the exhibit attached to the FAC establishes, that Monegas received a right-to-sue letter from the EEOC via email on May 10, 2022. *See* Dkt. No. 9 at ECF pp. 84-85; Dkt. No. 13 at 4; Dkt. No. 14 at 2. The letter instructs that "[i]f you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice." Dkt. No. 9 at ECF pp. 84-85 (emphasis in original). The day that Monegas received the EEOC letter is excluded from the 90-day period under Rule 6. Fed. R. Civ. P. 6(a)(1)(A). Consequently, the 90-day period began on May 11, 2022, and expired on August 9, 2022.

Monegas says her suit is timely because she mailed her initial complaint on August 9, 2022. *See* Dkt. No. 14 at ECF pp. 11-13. But the rule is, "[w]hen papers are mailed to the clerk's office, filing is complete when the papers are received by the clerk." *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989) (per curiam); *see also* Fed. R. Civ. P 5(d)(2) ("A paper not filed electronically is filed by delivering it: (A) to the clerk; or (B) to a judge who agrees to accept it for filing."). The complaint was received by the clerk and filed on the docket on August 10, 2022, and so is untimely under 42 U.S.C. § 2000e–5(f)(l). Dkt. No. 1; Dkt. No. 14 at ECF p. 11. If Monegas chooses to amend, she should allege facts that might explain why the limitations period should be tolled, or that otherwise establish timely claims. *See Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174 (9th Cir. 1986) (90-day filing period is "subject to equitable tolling in appropriate circumstances").

## CONCLUSION

The FAC is dismissed. Monegas may file an amended complaint by May 22, 2023. Failure to meet that deadline will result in dismissal with prejudice under Rule 41(b).

**IT IS SO ORDERED.**

Dated: May 1, 2023

JAMES DONATO
United States District Judge

United States District Court
Northern District of California

3