1  Hugo Torbet
   Attorney at Law, SBN 147650
2  1 Harbor Dr., Suite 300
   Sausalito, CA 94965
3  Telephone: (415) 986-9400
   email: steadyrolling@gmail.com
4
   Attorney for Plaintiff
5  Joseph Cook (22-07645)

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 In re:

12      CITY AND COUNTY OF SAN    )    No. 22-cv-01587-JSW
        FRANCISCO,                )
13                                )
              Contemnor.          )    DECLARATION OF HUGO TORBET IN
14 _____)   SUPPORT OF EX PARTE
                                  )    APPLICATION FOR AN ORDER TO
15 SELINA KEENE, et al.,          )    SHOW CAUSE re:  CONTEMPT
                                  )
16           Plaintiffs,          )
                                  )
17      v.                        )
                                  )
18 CITY AND COUNTY OF SAN         )
   FRANCISCO, et al.,             )
19                                )
             Defendants.          )
20 _____)
                                  )
21 AND CONSOLIDATED CASES.        )
   _____)
22

23      I, Hugo Torbet, declare that:

24      1.  I am Mr. Cook's lawyer, and I have personal knowledge of

25 the facts set forth herein and am competent to attest to them.

26      2.  On April 28, 2023, the court invoked General Order No.

27 71, and ordered the parties to comply with it within ninety days.

28      3.  A true copy of General Order No. 71 is attached hereto

1   as Exhibit A.

2      4.   General Order No. 71 requires the Contemnor to provide

3   specified documents and information.  It provides further in

4   pertinent part that:

5        The parties' responses to the Initial Discovery
        Protocols shall comply with the F.R.C.P. obligations to
6       certify and supplement discovery responses, as well as
        the form of production standards for documents and
7       electronically stored information.  As set forth in the
        Protocols, this Initial Discovery <u>is not subject to</u>
8       <u>objections,</u> except upon the grounds set forth in
        F.R.C.P. 26(b)(2)(B).

9

       The Initial Discovery Protocols are not intended to
10     preclude or to modify the rights of any party for
        discovery as provided by the F.R.C.P. and other
11     applicable local rules.

12        ...

13       The purpose of these protocols is to encourage parties
        and their counsel to exchange the most relevant
14     information and documents early in the case, to assist
        in framing the issues to be resolved and to plan for
15     more efficient and targeted discovery.  The Initial
        Discovery Protocols were prepared by a group of highly
16     experienced attorneys from across the country who
        regularly represent plaintiffs and/or defendants in
17     employment matters.  (Emphasis added.)

18   (Exhibit A, pp. 1-2.)

19      5.   Mr. Cook and the Contemnor agreed in writing to make the

20   disclosures required by General Order No. 71 on August 1, 2023.

21      6.   On August 1, 2023, Mr. Cook complied with General Order

22   No. 71 in good faith.

23      7.   The Contemnor did not comply with the order.  While the

24   Contemnor did provide a statement related to its clear and

25   unambiguous court-ordered obligations, (Exhibit B,) its statement

26   is disingenuously incomplete with respect to the information the

27   Contemnor is required to supply, (Id., 6:23-9:4,) and in bad

28   faith with respect to the documents the Contemnor is required to

1    supply.  (Id., 3:7-6:22.)  In addition, the Contemnor failed to

2    provide any of the required documents, and merely "promised" to

3    produce unspecified "non-privileged" documents at some

4    unspecified other time, and only upon various concessions from

5    Mr. Cook.  (Ibid.)

6        8.   Upon receipt of this statement, I demanded of the

7    government lawyer Mr. Taylor, who has been acting on behalf of

8    the City Attorney in Mr. Cook's case, that the Contemnor

9    immediately comply with the court order.  Exhibit C is a true

10   copy of my email to him in this regard.

11       9.   Mr. Taylor responded to my email.  A true copy of his

12   response is attached hereto as Exhibit D.  Therein, he asserts

13   (without foundation) that the Contemnor has "acted in good

14   faith."  He conspicuously fails to address directly the problem

15   that August 1, 2023, was the date on which compliance was

16   required.  This was not the date to promise some unspecified

17   partial compliance at some point in the future, and subject to

18   various objections, qualifications, and demanded concessions.

19       10.  Exhibit E attached hereto is a true copy of my effort

20   to persuade Mr. Taylor that I was serious that if his client did

21   not immediately comply with the court order, I would address the

22   violation to the court.

23       11.  After I thought about the problem over lunch, I wrote

24   again to Mr. Taylor that his client's misconduct appeared to

25   leave me with two choices:  (a) treating the violation as a

26   discovery dispute, or (b) treating the violation as a contempt of

27   court.  I invited Mr. Taylor to have a telephone call, if he

28   preferred to treat the violation as a resolvable discovery

1  dispute.  A true copy of this email is attached hereto as Exhibit
2  F.

3      12.  Not having heard from Mr. Taylor either by telephone or
4  by further email, at the end of his usual working day, I wrote to
5  Mr. Taylor that I would seek an order to show cause by ex parte
6  application to be filed first thing on August 4, 2023.  I wrote
7  to him to him that I would not be seeking any monetary relief or
8  penalties in the contempt proceeding.  I also informed him that I
9  would inform the court of his position if he chose to provide one
10 to me.  A true copy of this email is attached hereto as Exhibit
11 G.

12     13.  Mr. Taylor did not provide me with his position on this
13 matter, or any of it, except as otherwise set out in the email
14 communications attached as exhibits hereto.  He merely exclaimed
15 that "The City will oppose any ex parte application or other
16 motion you submit."

17     14.  Under ordinary circumstances, and considering how
18 things are done best, I would have conducted all, or almost all,
19 of these communications on the telephone.  Unfortunately, Mr.
20 Taylor appears to have an aversion to telephone conversations.  I
21 have called him several times since this case began, and have
22 only ever been transferred to a voicemail service.  Then, it
23 generally takes him several days to respond, and when he does, it
24 is usually by email.

25     15.  My impression and supposition is that email is both the
26 best way to communicate with Mr. Taylor and also his preferred
27 means of communication.

28     16.  Mr. Taylor reports that his telephone number is (415)

1  554-4208.

2      I certify under penalty of perjury that the foregoing is

3  true and correct.

4      Executed at San Francisco.

5  Dated:  August 4, 2023

6                                    _____
                                     Hugo Torbet
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

GENERAL ORDER No. 71

INITIAL DISCOVERY PROTOCOLS FOR
EMPLOYMENT CASES ALLEGING ADVERSE ACTION

This Court undertook a Pilot Program for Initial Discovery Protocols for Employment
Cases Alleging Adverse Action, initiated by the Advisory Committee on Federal Rules of
Civil Procedure. On January 21, 2020, the Court voted to make these protocols permanent,
effective February 1, 2020.

This General Order applies to all employment cases filed in this court after February 1, 2018,
that challenge one or more actions alleged to be adverse, except:

1. Class actions;

2. Cases in which the allegations involve <u>only</u> the following:

    a. Discrimination in hiring;

    b. Harassment/hostile work environment;

    c. Violations of wage and hour laws under the Fair Labor Standards Act (FLSA);

    d. Failure to provide reasonable accommodations under the Americans with
       Disabilities Act (ADA);

    e. Violations of the Family Medical Leave Act (FMLA);

    f. Violations of the Employee Retirement Income Security Act (ERISA).

In any action falling within this General Order, the Court ORDERS the following shall apply:

Parties and counsel shall comply with the Initial Discovery Protocols set forth below. If any
party believes that there is good cause why a particular case should be exempted from the
Initial Discovery Protocols, in whole or in part, that party may raise the issue with the judge to
whom the case is assigned.

Within 30 days following the defendant's submission of a responsive pleading or motion, the
parties shall provide to one another the documents and information described in the Initial
Discovery Protocols for the relevant time period. This obligation supersedes the parties'
obligations to provide initial disclosures pursuant to Federal Rule of Civil Procedure
("F.R.C.P.") 26(a)(1). The parties shall use the documents and information exchanged in
accordance with the Initial Discovery Protocols to prepare the F.R.C.P. 26(f) discovery plan.

The parties' responses to the Initial Discovery Protocols shall comply with the F.R.C.P.
obligations to certify and supplement discovery responses, as well as the form of
production standards for documents and electronically stored information. As set forth in the
Protocols, this Initial Discovery is not subject to objections, except upon the grounds set
forth in F.R.C.P. 26(b)(2)(B).

The Initial Discovery Protocols are not intended to preclude or to modify the rights of any party
for discovery as provided by the F.R.C.P. and other applicable local rules, but they are intended
to supersede the parties' obligations to make initial disclosures pursuant to F.R.C.P. 26(a)(1).
The purpose of these protocols is to encourage parties and their counsel to exchange the most
relevant information and documents early in the case, to assist in framing the issues to be
resolved and to plan for more efficient and targeted discovery.

The Initial Discovery Protocols were prepared by a group of highly experienced attorneys from
across the country who regularly represent plaintiffs and/or defendants in employment

554-4208

matters. The information and documents identified are those most likely to be requested automatically by experienced counsel in any similar case. They are unlike initial disclosures pursuant to F.R.C.P. 26(a)(1) because they focus on the type of information most likely to be useful in narrowing the issues for employment discrimination cases.

## DEFINITIONS

The following definitions apply to cases proceeding under the Initial Discovery Protocols.

    a. *Concerning.* The term "concerning" means referring to, describing, evidencing, or constituting.

    b. *Document.* The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the terms "documents" and "electronically stored information" as used in F.R.C.P. 34(a).

    c. *Identify (Documents).* When referring to documents, to "identify" means to give, to the extent known: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent; or, alternatively, to produce the document.

    d. *Identify (Persons).* When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) present or last known place of employment; (iv) present or last known job title; and (v) relationship, if any, to the plaintiff or defendant. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

## INSTRUCTIONS

    a. For this Initial Discovery, the relevant time period begins three years before the date of the adverse action, unless otherwise specified.

    b. This Initial Discovery is not subject to objections except upon the grounds set forth in F.R.C.P. 26(b)(2)(B).

    c. If a partial or incomplete answer or production is provided, the responding party shall state the reason that the answer or production is partial or incomplete.

    d. This Initial Discovery is subject to F.R.C.P. 26(e) regarding supplementation and F.R.C.P. 26(g) regarding certification of responses.

    e. This Initial Discovery is subject to F.R.C.P. 34(b)(2)(E) regarding form of production.

## PART 1: PRODUCTION BY PLAINTIFF

    (1) **Timing.**

The plaintiff's Initial Discovery shall be provided within 30 days after the defendant has submitted a responsive pleading or motion, unless the assigned judge rules otherwise.

    (2) **Documents that Plaintiff must produce to Defendant.**

        a. All communications concerning the factual allegations or claims at issue in this lawsuit between the plaintiff and the defendant.

2

    b. Claims, lawsuits, administrative charges, and complaints by the plaintiff that rely upon any of the same factual allegations or claims as those at issue in this lawsuit.

    c. Documents concerning the formation and termination, if any, of the employment relationship at issue in this lawsuit, irrespective of the relevant time period.

    d. Documents concerning the terms and conditions of the employment relationship at issue in this lawsuit.

    e. Diary, journal, and calendar entries maintained by the plaintiff concerning the factual allegations or claims at issue in this lawsuit.

    f. The plaintiff's current resume(s).

    g. Documents in the possession of the plaintiff concerning claims for unemployment benefits, unless production is prohibited by applicable law.

    h. Documents concerning: (i) communications with potential employers; (ii) job search efforts; and (iii) offer(s) of employment, job description(s), and income and benefits of subsequent employment. The defendant shall not contact or subpoena a prospective or current employer to discover information about the plaintiff's claims without first providing the plaintiff 30 days' notice and an opportunity to file a motion for a protective order or a motion to quash such subpoena. If such a motion is filed, contact will not be initiated or the subpoena will not be served until the motion is ruled upon.

    i. Documents concerning the termination of any subsequent employment.

    j. Any other document(s) upon which the plaintiff relies to support the plaintiff's claims.

**(3) Information that Plaintiff must produce to Defendant.**

    a. Identify persons the plaintiff believes to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit, and a brief description of that knowledge.

    b. Describe the categories of damages the plaintiff claims.

    c. State whether the plaintiff has applied for disability benefits and/or social security disability benefits after the adverse action, whether any application has been granted, and the nature of the award, if any. Identify any document concerning any such application.

## PART 2: PRODUCTION BY DEFENDANT

**(1) Timing.**

The defendant's Initial Discovery shall be provided within 30 days after the defendant has submitted a responsive pleading or motion, unless the assigned judge rules otherwise.

**(2) Documents that Defendant must produce to Plaintiff.**

    a. All communications concerning the factual allegations or claims at issue in this lawsuit among or between:

        i. The plaintiff and the defendant;

        ii. The plaintiff's manager(s), and/or supervisor(s), and/or the defendant's human resources representative(s).

3

b. Responses to claims, lawsuits, administrative charges, and complaints by the plaintiff that rely upon any of the same factual allegations or claims as those at issue in this lawsuit.

c. Documents concerning the formation and termination, if any, of the employment relationship at issue in this lawsuit, irrespective of the relevant time period.

d. The plaintiff's personnel file, in any form, maintained by the defendant, including files concerning the plaintiff maintained by the plaintiff's supervisor(s), manager(s), or the defendant's human resources representative(s), irrespective of the relevant time period.

e. The plaintiff's performance evaluations and formal discipline.

f. Documents relied upon to make the employment decision(s) at issue in this lawsuit.

g. Workplace policies or guidelines relevant to the adverse action in effect at the time of the adverse action. Depending upon the case, those may include policies or guidelines that address:

　　i. Discipline;

　　ii. Termination of employment;

　　iii. Promotion;

　　iv. Discrimination;

　　v. Performance reviews or evaluations;

　　vi. Misconduct;

　　vii. Retaliation; and

　　viii. Nature of the employment relationship.

h. The table of contents and index of any employee handbook, code of conduct, or policies and procedures manual in effect at the time of the adverse action.

i. Job description(s) for the position(s) that the plaintiff held.

j. Documents showing the plaintiff's compensation and benefits. Those normally include retirement plan benefits, fringe benefits, employee benefit summary plan descriptions, and summaries of compensation.

k. Agreements between the plaintiff and the defendant to waive jury trial rights or to arbitrate disputes.

l. Documents concerning investigation(s) of any complaint(s) about the plaintiff or made by the plaintiff, if relevant to the plaintiff's factual allegations or claims at issue in this lawsuit and not otherwise privileged.

m. Documents in the possession of the defendant and/or the defendant's agent(s) concerning claims for unemployment benefits unless production is prohibited by applicable law.

n. Any other document(s) upon which the defendant relies to support the defenses, affirmative defenses, and counterclaims, including any other document(s) describing the reasons for the adverse action.

**(3) Information that Defendant must produce to Plaintiff.**

    a.  Identify the plaintiff's supervisor(s) and/or manager(s).

    b.  Identify person(s) presently known to the defendant who were involved in making the decision to take the adverse action.

    c.  Identify persons the defendant believes to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit, and a brief description of that knowledge.

    d.  State whether the plaintiff has applied for disability benefits and/or social security disability benefits after the adverse action. State whether the defendant has provided information to any third party concerning the application(s). Identify any documents concerning any such application or any such information provided to a third party.

ADOPTED:    February 1, 2018  
AMENDED:  February 1, 2020

FOR THE COURT:

PHYLLIS J. HAMILTON  
CHIEF JUDGE

Exhibit B

1   DAVID CHIU, State Bar #189542
    City Attorney
2   JONATHAN C. ROLNICK, State Bar #151814
    Chief Labor Attorney
3   AMY SUPER, State Bar #274617
    LAUREN E. WOOD, State Bar # 280096
4   DANTÉ R. TAYLOR, State Bar # 303391
    Deputy City Attorneys
5   Fox Plaza
    1390 Market Street, 5th Floor
6   San Francisco, California 94102-5408
    Telephone:    (415) 554-3931 / (415) 554-4261
7   E-Mail:       amy.super@sfcityatty.org
    E-Mail:       lauren.wood@sfcityatty.org
8   E-Mail:       dante.taylor@sfcityatty.org

9   Attorneys for Defendant
    CITY AND COUNTY OF SAN FRANCISCO

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13
    JOSEPH COOK,                         Case No. 4:22-cv-07645-JSW
14
            Plaintiff,                   **DEFENDANT'S INITIAL DISCOVERY**
15                                       **UNDER GENERAL ORDER No. 71**
            vs.
16
    CITY AND COUNTY OF SAN
17  FRANCISCO, and DOES 1 through 20,
    inclusive,
18
            Defendants.
19

20

21

22

23

24

25

26

27

28

---

CCSF INITIAL DISCLOSURES                        1              n:\labor\li2023\220410\01673295.docx
Cook v. CCSF; CASE NO. 4:22-cv-07645-JSW

1   **TO PLAINTIFF JOSEPH COOK AND HIS ATTORNEYS OF RECORD:**

2   PLEASE TAKE NOTICE THAT, pursuant to General Order No. 71 of the above-captioned

3   court, Defendant City and County of San Francisco (the "City") hereby submits its Initial Disclosures,

4   while noting the investigation of this action remains in its infancy, and that discovery has not yet

5   occurred. As such, these disclosures are based solely upon the information, documents, and

6   contentions presently and reasonably available to and known by the City at this time, and following a

7   diligent search and reasonable inquiry into the allegations into Plaintiff's Complaint. It is anticipated

8   that these disclosures will be supplemented in the near future. It is also anticipated that discovery,

9   further independent investigation, legal research, and analysis will lead to the uncovering of additional

10  facts and documents, or the relevance thereof, and thus may lead to additions, changes, and/or

11  variations from the information provided herein. The City expressly reserves the right to supplement

12  these disclosures in the future to change any and all responses herein as additional information is

13  discovered, facts are ascertained, witnesses identified, documents located, and legal research is

14  completed. The information below is provided in a good faith attempt to supply such non-privileged

15  items as are presently known to and in the custody of the City, and should in no way prejudice the City

16  in relation to further discovery and proceedings.

17  **DEFINITIONS**

18  The following definitions apply to cases proceeding under the Initial Discovery Protocols.

19  a. Concerning. The term "concerning" means referring to, describing, evidencing, or

20  constituting.

21  b. Document. The terms "document" and "documents" are defined to be synonymous in

22  meaning and equal in scope to the terms "documents" and "electronically stored information" as used

23  in F.R.C.P. 34(a).

24  c. Identify (Documents). When referring to documents, to "identify" means to give, to the

25  extent known: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of

26  the document; (iv) the author(s), according to the document; and (v) the person(s) to whom, according

27  to the document, the document (or a copy) was to have been sent; or, alternatively, to produce the

28  document.

1    d. Identify (Persons). When referring to natural persons, to "identify" means to give the

2    person's: (i) full name; (ii) present or last known address and telephone number; (iii) present or last

3    known place of employment; (iv) present or last known job title; and (v) relationship, if any, to the

4    plaintiff or defendant. Once a person has been identified in accordance with this subparagraph, only

5    the name of that person need be listed in response to subsequent discovery requesting the identification

6    of that person.

7                    **THE CITY'S INITIAL DISCLOSURES -- PART 2, SUBSECTION (2)**

8        **1.      GO 71, PART 2, (2)(a) – "All communications concerning the factual allegations**

9    **or claims at issue in this lawsuit among or between:**

10       **i. The plaintiff and the defendant;**

11       **ii. The plaintiff's manager(s), and/or supervisor(s), and/or the defendant's human**

12       **resources representative(s)."**

13       As an initial matter, the City notes this General Order category appears ill-suited for this case.

14   Nonetheless, and following a diligent search and reasonable inquiry and after entry of an appropriate

15   protective order governing production of confidential information, the City will produce the non-

16   privileged communications that are relevant to the causes of action in Plaintiff's First Amended

17   Complaint, as those claims are currently understood by the City, and responsive to the remainder of

18   the categories in this General Order. Investigation and discovery are continuing.

19       **2.      GO 71, PART 2, (2)(b) – "Responses to claims, lawsuits, administrative charges,**

20   **and complaints by the plaintiff that rely upon any of the same factual allegations or claims as**

21   **those at issue in this lawsuit."**

22       Following a diligent search and reasonable inquiry, and after entry of an appropriate

23   protective order governing production of confidential information, the City will produce the relevant,

24   non-privileged documents in its custody and control that are responsive to this category.

25       **3.      GO 71, PART 2, (2)(c) – "Documents concerning the formation and termination, if**

26   **any, of the employment relationship at issue in this lawsuit, irrespective of the relevant time**

27   **period."**

28

1       Following a diligent search and reasonable inquiry, and after entry of an appropriate

2 protective order governing production of confidential information, the City will produce the relevant,

3 non-privileged documents in its custody and control that are responsive to this category.

4      **4.**     **GO 71, PART 2, (2)(d) – "The plaintiff's personnel file, in any form, maintained**

5 **by the defendant, including files concerning the plaintiff maintained by the plaintiff's**

6 **supervisor(s), manager(s), or the defendant's human resources representative(s), irrespective of**

7 **the relevant time period."**

8       Following a diligent search and reasonable inquiry, and after entry of an appropriate

9 protective order governing production of confidential information, the City will produce the relevant,

10 non-privileged documents in its custody and control that are responsive to this category.

11      **5.**     **GO 71, PART 2, (2)(e) – "The plaintiff's performance evaluations and formal**

12 **discipline"**

13      Following a diligent search and reasonable inquiry, and after entry of an appropriate protective

14 order governing production of confidential information, the City will produce the relevant, non-

15 privileged documents in its custody and control that are responsive to this category.

16      **6.**     **GO 71, PART 2, (2)(f) – "Documents relied upon to make the employment**

17 **decision(s) at issue in this lawsuit."**

18       Following a diligent search and reasonable inquiry, and after entry of an appropriate protective

19 order governing production of confidential information, the City will produce the relevant, non-

20 privileged documents in its custody and control that are responsive to this category.

21      **7.**     **GO 71, PART 2, (2)(g) – "Workplace policies or guidelines relevant to the adverse**

22 **action in effect at the time of the adverse action. Depending upon the case, those may include**

23 **policies or guidelines that address: i. Discipline; ii. Termination of employment; iii. Promotion;**

24 **iv. Discrimination; v. Performance reviews or evaluations; vi. Misconduct; vii. Retaliation; and**

25 **viii. Nature of the employment relationship."**

26       Following a diligent search and reasonable inquiry, the City will produce the relevant, non-

27 privileged documents in its custody and control that are responsive to this category. Further

28 responding, the City directs Plaintiff to the following documents which are equally available to

1  Plaintiff: Employee Handbook for the City and County of San Francisco (available online); the City's
2  Charter (available online); the City's Administrative Code (available online); the City's Civil Service
3  Commission Rules (available online); the Memoranda of Understanding between the City and Unions
4  representing City employees (available online); various policies, procedures, and manuals relating to
5  Plaintiff's employment with the City, including manuals, instructions, and/or guidelines regarding
6  payroll policies and procedures (available online); various policies, procedures, and manuals relating
7  to how the City calculates, pays, and cashes out compensatory time off; and documents from the
8  Unions representing the City's employees relating to compensatory time off and the City's payroll
9  practices (if any).

10  **8.     GO 71, PART 2, (2)(h) – "The table of contents and index of any employee**
11  **handbook, code of conduct, or policies and procedures manual in effect at the time of the**
12  **adverse action."**

13  See response to No. 7 (Category (2)(g)) above. Further responding, following a diligent search
14  and reasonable inquiry, the City will produce the relevant, non-privileged documents in its custody
15  and control that are responsive to this category.

16  **9.     GO 71, PART 2, (2)(i) – "Job description(s) for the position(s) that the plaintiff**
17  **held."**

18  Following a diligent search and reasonable inquiry, and after entry of an appropriate protective
19  order governing production of confidential information, the City will produce the relevant, non-
20  privileged documents in its custody and control that are responsive to this category.

21  **10.    GO 71, PART 2, (2)(j) – "Documents showing the plaintiff's compensation and**
22  **benefits. Those normally include retirement plan benefits, fringe benefits, employee benefit**
23  **summary plan descriptions, and summaries of compensation."**

24  See response to No. 7 (Category (2)(g)) above. Further responding, following a diligent search
25  and reasonable inquiry, and after entry of an appropriate protective order governing production of
26  confidential information, the City will produce the relevant, non-privileged documents in its custody
27  and control that are responsive to this category.

28

**11.     GO 71, PART 2, (2)(k) – "Agreements between the plaintiff and the defendant to waive jury trial rights or to arbitrate disputes."**

See response to No. 7 (Category (2)(g)) above. Further responding, following a diligent search and reasonable inquiry, the City is not aware of any documents that are responsive to this category.

**12.     GO 71, PART 2, (2)(l) – "Documents concerning investigation(s) of any complaint(s) about the plaintiff or made by the plaintiff, if relevant to the plaintiff's factual allegations or claims at issue in this lawsuit and not otherwise privileged."**

Following a diligent search and reasonable inquiry, and after entry of an appropriate protective order governing production of confidential information, the City will produce the relevant, non-privileged documents in its custody and control that are responsive to this category.

**13.     GO 71, PART 2, (2)(m) – "Documents in the possession of the defendant and/or the defendant's agent(s) concerning claims for unemployment benefits unless production is prohibited by applicable law."**

Following a diligent search and reasonable inquiry, and after entry of an appropriate protective order governing production of confidential information, the City will produce the relevant, non-privileged documents in its custody and control that are responsive to this category, if any.

**14.     GO 71, PART 2, (2)(n) – "Any other document(s) upon which the defendant relies to support the defenses, affirmative defenses, and counterclaims, including any other document(s) describing the reasons for the adverse action."**

Following a diligent search and reasonable inquiry, and after entry of an appropriate protective order governing production of confidential information, the City will produce the relevant, non-privileged documents in its custody and control that are responsive to this category.

### THE CITY'S INITIAL DISCLOSURES – PART 2, SUBSECTION (3)

**1.     GO 71, PART 2, (2)(a) – "Identify the plaintiff's supervisor(s) and/or manager(s)."**

As this request and Plaintiff's First Amended Complaint are currently understood by the City, the most recent (former) supervisor/manager was Serene Chu.

**2.     GO 71, PART 2, (2)(b) – "Identify person(s) presently known to the defendant who were involved in making the decision to take the adverse action."**

1    Without admitting to – and expressly denying – the occurrence of an "adverse action," and as

2    this request and Plaintiff's First Amended Complaint are currently understood by the City, the City

3    responds as follows: Karen Roye, Executive Director, San Francisco Department of Child Support

4    Services (CSS); Harry Bullock, Senior Human Resources Analyst, CSS; and Rich David, Principal

5    Human Resources Analyst, San Francisco Recreation and Park Department were involved in the

6    decision to release Plaintiff Joseph Cook due to his non-compliance with the City's COVID-19

7    Vaccination Policy.

8    **3.      GO 71, PART 2, (2)(c) – "Identify persons the defendant believes to have**

9    **knowledge of the facts concerning the claims or defenses at issue in this lawsuit, and a brief**

10   **description of that knowledge."**

11    To the extent Plaintiff has named a person in the Complaint in connection with his claims, all

12   such persons are witnesses with respect to the allegation made by the Plaintiff. In addition, the City

13   has identified the following persons who have knowledge concerning the claims or defenses at issue:

| # | WITNESS | SUBJECT MATTER |
|---|---------|----------------|
| 1. | Harry Bullock<br>Senior Human Resources Analyst,<br>San Francisco Department of<br>Child Support Services (CSS) | Information related to Plaintiff's vaccine<br>exemption request |
| 2. | Karen Roye<br>Executive Director, CSS | Information related to Plaintiff's release<br>from employment |
| 3. | Rich David<br>Principal Human Resources<br>Analyst, San Francisco Recreation<br>and Park Department | Information related to Plaintiff's release<br>from employment |
| 4. | Carol Beckett<br>Assistant Director, CSS | Information related to Plaintiff's vaccine<br>exemption request |
| 5. | Janie White<br>Medical Leave Program Manager,<br>San Francisco Department of<br>Human Resources (DHR) | Information related to Plaintiff's vaccine<br>exemption request |

| # | WITNESS | SUBJECT MATTER |
|---|---------|----------------|
| 6. | Carol Isen<br>Human Resources Director, DHR | Information related to the formulation of the City's COVID-19 Vaccination Policy |
| 7. | Peggy Sugarman<br>Director of Workers'<br>Compensation, DHR | Information related to the formulation of the City's COVID-19 Vaccination Policy |
| 8. | Dr. Fiona Wilson<br>Chief Physician, City and County of San Francisco | Information related to the formulation of the City's COVID-19 Vaccination Policy |
| 9. | Mawuli Tugbenyoh<br>Policy and External Affairs<br>Director, DHR | Information related to the formulation of the City's COVID-19 Vaccination Policy |
| 10. | Amalia Martinez<br>Equal Employment Opportunity<br>(EEO) and Leave Programs<br>Director, DHR | Information related to the formulation of the City's COVID-19 Vaccination Policy |
| 11. | Serene Chu<br>Senior Clerk, CSS | Information related to the essential functions of Plaintiff's position |

The City reserves the right to amend and/or supplement this list as discovery continues.

**4.      GO 71, PART 2, (2)(d) – "State whether the plaintiff has applied for disability benefits and/or social security disability benefits after the adverse action. State whether the defendant has provided information to any third party concerning the application(s).  Identify any documents concerning any such application or any such information provided to a third party."**

CCSF INITIAL DISCLOSURES
Cook v. CCSF; CASE NO. 4:22-cv-07645-JSW
8
n:\labor\li2023\220410\01673295.docx

1       The City has no evidence that Plaintiff has applied for, or received, disability benefits through

2  the State of California, or social security disability benefits through the federal government.

3  Consequently, the City has not produced information to any third party concerning any such

4  application.

August 1, 2023

DAVID CHIU
City Attorney
JONATHAN C. ROLNICK
Chief Labor Attorney
AMY D. SUPER
LAUREN E. WOOD
DANTÉ R. TAYLOR
Deputy City Attorneys

By: /s/ Danté R. Taylor
DANTÉ R. TAYLOR

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

Exhibit C

 **Gmail**

H. Torbet <steadyrolling@gmail.com>

---

## Keene v. San Francisco

---

**H. Torbet** <steadyrolling@gmail.com>
To: "Taylor, Dante (CAT)" <Dante.Taylor@sfcityatty.org>

Wed, Aug 2, 2023 at 9:43 AM

Dante, yesterday was the day for you to comply with General Order No. 71. It was not the day on which you would promise to comply with it, and then only in the manner in which you chose to.

This is to demand that you immediately produce all documents required by General Order No. 71. Moreover, this is to demand that if you are asserting privileges as to any of the order's requirements, you produce a privilege log in sufficient specificity for review of your objections by the Magistrate.

I note finally that this behavior undermines your argument that I should withdraw my first set of discovery requests, because your compliance with General Order No. 71 would provide much of the requested information. Indeed, it validates my pessimism/ cynicism that you could not be relied on to respond to the discovery process in good faith.

Hugo Torbet
Lawyer
Sausalito
(415) 986-9400

Exhibit D

 **Gmail**

H. Torbet <steadyrolling@gmail.com>

---

## RE: Keene v. San Francisco (Cook; 220410)

**Taylor, Dante (CAT)** <Dante.Taylor@sfcityatty.org>                    Wed, Aug 2, 2023 at 11:46 AM
To: "H. Torbet" <steadyrolling@gmail.com>
Cc: "Spiers, Victoria (CAT)" <Victoria.Spiers@sfcityatty.org>, "Kelley, Maura (CAT)" <Maura.Kelley@sfcityatty.org>,
"Wood, Lauren (CAT)" <Lauren.Wood@sfcityatty.org>, "Shapiro, Adam (CAT)" <Adam.Shapiro@sfcityatty.org>, "Super,
Amy (CAT)" <Amy.Super@sfcityatty.org>

Hugo,

I and the City have acted in good faith throughout this litigation and in all of our interactions with
you.

Our office served documents responsive to General Order 71's initial disclosure requirements to
all counsel in the consolidated cases, including you, on July 28, 2023. Please see attached for
that email communication showing that your email address (steadyrolling@gmail.com) is
copied. Pursuant to Plaintiff Cook and the City's agreement, the City then served its written
responses to G.O. 71 to you and all counsel yesterday. See attached for that email which also
shows you were copied. In our written responses, the City explicitly stated we will supplement
our disclosures and serve confidential information, particularly personnel information and
documents, after entry of an appropriate protective order.

We have attempted to meet and confer with you about entering into a stipulated protective
order, but you have refused to enter into a protective order. Our co-defense counsel from
Seyfarth Shaw sent a calendar invitation to all counsel in the consolidated cases for a Zoom
meeting on August 4, 2023 at 11:00am to discuss a discovery plan and a protective order prior
to production of personnel information. You responded to that invitation by stating "I usually go
to the golf course on Fridays, so it is unlikely that I will take the time for this meeting." However,
I encourage you to participate in this meeting with all other counsel to attempt to reach an
agreement on the discovery issues in the consolidated cases.

Kind Regards,

Danté

 **Danté R. Taylor**

Exhibit E

 Gmail

H. Torbet <steadyrolling@gmail.com>

---

**RE: Keene v. San Francisco (Cook; 220410)**

---

**H. Torbet** <steadyrolling@gmail.com>
To: "Taylor, Dante (CAT)" <Dante.Taylor@sfcityatty.org>

Wed, Aug 2, 2023 at 12:33 PM

Dante, General Order No. 71 is an order of the court.  Furthermore, Judge White ordered you to comply with it.

You do not have a lawful basis for refusing to comply.

I looked at that junk you provided.  It's nothing relevant, or even responsive.  Just random computer code and ancient documents.  It's as if you have genuine contempt for the process.  Very much like your client's contempt for the rights of its employees.

Nevertheless, as far as I can tell, this is rational behavior on your part.  You know that the court will take your side on just about everything, if not everything.  Hence, you are encouraged to break the rules, since there's never any consequence.  However, my formal protest, as devoid of power as it is, is that this is not fair play.  I state it with the abiding conviction that over time, this kind of shit catches up with a lawyer and his client.

If you do not rectify this delinquency immediately, I will bring it to the attention of the court, whether or not it does any good.

As far as that meeting goes, I have no optimism that an agreement with you would be worth the paper it's written on.  Worse, I expect that if you have even the slightest opportunity to abuse the system, you will, and not that you're a bad person, but because you are a rational person.  You use the system in the manner in which it benefits your client.  As such, I won't be entering into any agreement of the sort proposed, so there is no benefit in wasting time on the meeting.

Hugo Torbet
Lawyer
Sausalito
[Quoted text hidden]

Exhibit F

 Gmail

**H. Torbet <steadyrolling@gmail.com>**

---

## Keene v. San Francisco

---

**H. Torbet <steadyrolling@gmail.com>**
To: "Taylor, Dante (CAT)" <Dante.Taylor@sfcityatty.org>

Wed, Aug 2, 2023 at 1:03 PM

Dante, it appears that I have a choice upon your flagrant refusal to comply with a lawful order of the court. I can raise this matter as a discovery dispute, or I can file papers to have your client held in contempt.

I'm leaning towards the latter. However, if you prefer to address the matter to the Magistrate as a discovery dispute, we should have a telephone call to try to resolve the delinquency and to make arrangements for the preparation of a joint letter.

If you do not respond to this invitation, I will ask the court for a contempt citation.

Hugo Torbet
Lawyer
Sausalito
(415) 986-9400

Exhibit G

 Gmail                                    H. Torbet <steadyrolling@gmail.com>

---

**Keene v. San Francisco**

---

**H. Torbet <steadyrolling@gmail.com>**                                    Wed, Aug 2, 2023 at 5:17 PM
To: "Taylor, Dante (CAT)" <Dante.Taylor@sfcityatty.org>

Dante, not having heard from you after I invited a meet and confer related to your client's wilful contempt of General Order No. 71, I will proceed with the institution of a contempt proceeding.

I will do this by ex parte application filed on Friday morning. The evidence, i.e., the probable cause for issuance of process, will consist of my affidavit verifying that General Order No. 71 was expressly invoked by the district judge, that you had notice of the order, and that you failed to comply with the order. The affidavit will further verify that I promptly contacted you to persuade you to comply, and that you both refused to do so and also rejected (by not accepting) my proposal to discuss the matter.

The ex parte procedure is not very clear in federal court; however, I do believe that it is the best practice is to solicit your response or objection to this proposed action, and to include any such in my affidavit. Accordingly, please let me know your position by the close of business tomorrow, if you'd like me to inform the court of it.

The application will request that the court issue an order to show cause to your client why it should not be held in contempt for wilful disobedience of General Order No. 71. The application will be accompanied by both the aforedescribed affidavit and a short brief with the relevant authority for the proposed action.

The proceeding will not seek any monetary relief or penalties. It will seek only compliance with General Order No. 71. I will also be reserving the right to delay the trial and any dispositive proceedings to the extent required by your intentional abuse of the discovery processes. However, you should be aware that the court retains the inherent authority to fine your client quite a bit of money on a daily basis.

Again, this application will be filed first thing Friday morning.

Hugo Torbet
Lawyer
Sausalito
(415) 986-9400