1  Hugo Torbet
   Attorney at Law, SBN 147650
2  1 Harbor Dr., Suite 300
   Sausalito, CA 94965
3  Telephone: (415) 986-9400
   email: steadyrolling@gmail.com
4
   Attorney for Plaintiff
5  Joseph Cook (22-07645)

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 In re:

12      CITY AND COUNTY OF SAN     )    No. 22-cv-01587-JSW
        FRANCISCO,                 )
13                                 )
             Contemnor.            )    MOTION FOR RELIEF FROM THE
14 _____ )    NON-DISPOSITIVE MAGISTRATE
                                   )    PRE-TRIAL ORDER DENYING EX
15 SELINA KEENE, et al.,           )    PARTE APPLICATION
                                   )
16           Plaintiffs,           )
                                   )    (Docket No. 109)
17      v.                         )
                                   )
18 CITY AND COUNTY OF SAN          )
   FRANCISCO, et al.,              )
19                                 )
             Defendants.           )
20 _____ )
                                   )
21 AND CONSOLIDATED CASES.         )
   _____ )
22

23      Mr. Cook hereby moves for relief from the non-dispositive

24 magistrate order denying his ex parte application for an order to

25 show cause re:  contempt, (Docket No. 109,) and the whole of it,

26 and avers as follows:

27      1(a)  The magistrate misapprehends Mr. Cook's application,

28 perhaps disingenuously, but in any event, exactly in line with

1  the government's increasingly intense interest in concealing the

2  truth relevant to this case.   Specifically, the magistrate holds

3  that the subject of Mr. Cook's application is "not a suitable

4  matter for filing ex parte."  (Id., 1:17-18.)

5       This is a mistake.

6       While the magistrate appears to misread Mr. Cook's

7  application as a request that the court FIND the Contemnor in

8  CONTEMPT of General Order No. 71, (see, Id., at 1:27-28,) Mr.

9  Cook quite obviously does not make that request.  (See, e.g.,

10 Docket No. 105, 4:22-25.)  Instead, as any experienced lawyer

11 would recognize immediately, Mr. Cook seeks nothing more than to

12 invoke the jurisdiction of the court to address a prima facie

13 case of contempt of court – to wit:  an indisputable violation of

14 General Order No. 71.  (Ibid.)  By this authorized application,

15 Mr. Cook seeks merely a ministerial act by the court akin to, if

16 not the functional equivalent of, the issuance of a summons at

17 the start of a lawsuit.

18      Indeed, this point of law is so axiomatic that hardly any

19 appellate courts have ever been required to address it.  (See,

20 e.g., State v. Miscellaneous Fireworks, 34 A.3d 992, 999, 132

21 Conn.App. 679 (2011).)

22      (b)  Further, the magistrate describes Mr. Cook's grievance

23 as a "run of the mill" discovery dispute, (Docket No. 109, 1:15,)

24 and holds that it should have first been brought "before the

25 court for adjudication."  (Id., 1:28-2:1.)

26      This is a mistake.

27      General Order No. 71 decrees that "Parties and counsel shall

28 comply with the Initial Discovery Protocols," (Docket No. 107,

he

1   Exhibit A, p. 1,) and that "This Initial Discovery is not subject

2   to objections," (Ibid.,) because these "Initial Discovery

3   Protocols were prepared by a group of highly experienced

4   attorneys from across the country."  (Id., pp. 1-2.)  In other

5   words, General Order No. 71 decrees what the parties must

6   produce.  It leaves nothing for the parties to dispute (or for a

7   magistrate judge to compromise or rewrite).

8        Thus, Mr. Cook's application does not grieve a "run of the

9   mill" "discovery dispute" between the parties.  Every such

10  possible dispute was resolved in the development and drafting of

11  General Order No. 71.  Instead, Mr. Cook pleads a prima facie

12  violation of a court order, according to established processes of

13  the law.

14       (c)  The magistrate also criticizes the application as

15  having been made "without the advance knowledge or

16  contemporaneous participation of the" Contemnor.  (Docket No.

17  109, 1:24-25.)

18       This is a mistake.

19       The indisputable facts are that the undersigned not only

20  informed the Contemnor's lawyer of the intended action, (Docket

21  No. 107, ¶¶ 11-13, and Exhibits F and G,) but also asked for his

22  position and promised that the court would be informed of any

23  such position.  (Ibid.)  Moreover, as to the unstated gist of the

24  magistrate's criticism, in no sense whatsoever will the Contemnor

25  be prejudiced if the application is granted.  As noted, the

26  application does not request that the Contemnor be found in

27  contempt of court.  It requests merely that the Contemnor be

28  ordered to appear before the court to answer the charges.

1    In passing, the purpose of a civil contempt proceeding is

2    compliance with the order.  (<u>Food Lion, Inc., v. United Food &</u>

3    <u>Commercial Workers, Int'l Union</u>, 103 F.3d 1007, 1016-1018 (DC

4    Cir. 1997).)  Once the alleged contemnor "purges" his contempt,

5    i.e., by complying with the order, the contempt proceeding is

6    dissolved.  (<u>Gompers v. Buck's Stove & Range Company</u>, 221 U.S.

7    418, 449 (1911).)

8    (d)  The magistrate holds that it is "improper" that Mr.

9    Cook requests "contempt sanctions" at "the outset" of what the

10   magistrate characterizes as a "discovery dispute."  (Docket No.

11   109, 1:27-2:1.)

12   This is a mistake.

13   Mr. Cook's grievance is not subject to the graduated

14   approach typically applicable in "run of the mill" discovery

15   disputes, because Mr. Cook's grievance does not concern a

16   "discovery dispute."  Instead, as noted, Mr. Cook pleads a

17   violation of General Order No. 71.  Moreover, Federal Rule of

18   Civil Procedure 37(b)(2)(A)(vii) expressly authorizes the use of

19   the contempt process in these circumstances.  (See also, 18

20   U.S.C. § 401(3).)

21   (e)  Finally, the magistrate holds that Mr. Cook must comply

22   with his multi-step standing order in order to enjoy even the

23   possibility of some relief for his grievance.  (Docket No. 109,

24   2:3-7.)

25   This is a mistake.

26   Not only is Mr. Cook's initiation of a contempt proceeding

27   expressly authorized by statute, but also the magistrate does not

28   have the authority to abridge or abrogate express rights accorded

1   to litigants by statute with a standing order.  (<u>Commercial</u>

2   <u>Cleaning Services, LLC v. Colin Servo Systems, Inc.</u>, 271 F.3d

3   374, 386 (2nd Cir. 2001).)  Standing orders do serve many

4   legitimate interests of the court, (see, e.g., Exhibit A,) but

5   they may not be inconsistent with statutes or national rules.

6        2.  The court should vacate the magistrate's order and

7   perform the ministerial act of issuing the order to show cause

8   which Mr. Cook has properly requested.

9        In the alternative, if the court is unwilling to accord Mr.

10  Cook his statutory rights arising from the contempt of court at

11  issue, the court should certify this matter for appeal under 28

12  U.S.C. § 1292(b) on the following issues:

13           (a)  The issuance of an order to show cause re:

14           contempt is a ministerial act of the court.

15           (b)  The ex parte procedure is a proper process by

16           which a party may request an order to show cause re:

17           contempt.

18           (c)  A standing order related to discovery disputes may

19           not abridge or abrogate a litigant's statutory rights.

20       3.  The reasons and authority supporting this motion are set

21  out in the discussion above of those portions of the magistrate's

22  order which are mistakes.  In summary, Mr. Cook presents the

23  court with clear and convincing evidence of a violation of

24  General Order No. 71, (Docket No. 107,) and properly requests by

25  ex parte application that the court perform the ministerial act

26  of issuing an order to show cause under Federal Rule of Civil

27  Procedure 37(b)(2)(A)(vii).  (Docket No. 105.)

28  ///

Conclusion

This affair, in all of its dimensions, is extraordinarily disrespectful of Mr. Cook, his rights, and his counsel, the undersigned.  Nevertheless, at this stage only an adumbration is present, so that no further inferences are warranted.

It is important to remember, however, that a contempt of court is above everything else, an affront to the dignity of the court.  When a court enters an order, the intent generally is not that the order be treated as a suggestion, but this is how General Order No. 71 is being viewed, at least in regards to Mr. Cook's rights thereunder.

A citizen is owed better from his government.

Dated:  August 9, 2023

                                        Respectfully submitted,

                                        s/ Hugo Torbet

                                        Attorney for Joseph Cook

Exhibit A

COMMITTEE ON RULES OF PRACTICE AND PROCEDURE

OF THE

JUDICIAL CONFERENCE OF THE UNITED STATES

WASHINGTON, D.C. 20544

**LEE H. ROSENTHAL**
CHAIR

**PETER G. McCABE**
SECRETARY

**CHAIRS OF ADVISORY COMMITTEES**

**JEFFREY S. SUTTON**
APPELLATE RULES

**LAURA TAYLOR SWAIN**
BANKRUPTCY RULES

**MARK R. KRAVITZ**
CIVIL RULES

**RICHARD C. TALLMAN**
CRIMINAL RULES

**ROBERT L. HINKLE**
EVIDENCE RULES

## Report and Recommended Guidelines on Standing Orders in District and Bankruptcy Courts

### I.    Executive Summary

For years, judges and lawyers have been concerned about the proliferation of "standing orders," "administrative orders," and "general orders" in the federal district courts. The term "standing orders" describes orders — including "administrative orders" or "general orders" — adopted by district courts or bankruptcy courts as district-wide or division-wide orders, without an opportunity for notice or public comment. The term includes individual-judge orders that are intended to apply generally. Individual-judge standing orders are not the focus of this report but are included in the guidelines for posting orders so they can be easily located and accessed.

The concerns raised by the proliferation of standing orders are similar to the concerns over local rules that led to congressional attention and launched earlier studies by the Judicial Conference. Like local rules, standing orders are meant to apply generally. Like local rules, standing orders can lead to a lack of uniformity in federal practice, undermining consistency in areas where the national rules were meant to provide it and creating traps for the unwary and even for the wary. But standing orders can raise even more serious problems than local rules for several reasons. First, standing orders are promulgated without the benefit of public comment. Second, standing orders are often harder to find and retrieve than local rules. Third, because standing orders may be entered by individual judges as well as by a division or district, there is significant variation even within the same district or division. Standing orders may raise these and other problems to such a degree as to risk invalidity and to invite congressional scrutiny.

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 2

There is some case law guidance on the limits of using standing orders as opposed to local rules. But no national standards, and very few local standards, define what subjects are appropriately addressed by standing orders and what subjects are best addressed by local rule. The Standing Committee received requests from judges on circuit councils for guidance on delineating between standing orders and local rules. In response, the Committee asked for research on standing orders and asked the Administrative Office to survey the district courts to learn how they were actually using such orders. The Committee also surveyed chief district judges to learn what information and guidance might be most helpful.

The research and survey into the use of standing orders in the district courts showed wide variance in the number of orders and topics addressed and in how lawyers and the public receive notice. The research produced some general criteria for delineating between when standing orders are appropriate and when local rules should be used. Standing orders are most appropriate to address matters that: 1) are of no direct concern to practicing attorneys or litigants; 2) require action for too short a time period to make the use of a local rule practical; or 3) require prompt action to address an emergency. In general, three categories of subjects — internal administration, temporary problems, and emergencies — are the most appropriate for standing orders. Standing orders addressing matters outside these subjects are likely to be in tension with the interest of members of the public in commenting on matters that affect them and risk creating rules that are unnecessarily difficult or even unworkable.

Standing orders are most problematic when they: 1) cover matters in which lawyers and litigants have a substantial interest but are issued without the notice and public comment that accompanies local rules; 2) modify or abrogate local rules; and, of course, 3) conflict with national or local rules. Efforts to modify or abrogate local rules should only be made through local rule, with notice and comment. The research showed that while the majority of courts use local rules, rather than standing orders, to regulate matters that directly affect the public, a small number of courts are using standing orders to address such matters.

The research also showed a wide variation in how district- or division-wide and individual-judge standing orders are made available to the public. In many districts, standing orders are easily retrievable on the district court's web site. But in other districts, it is not easy to find standing orders. It is particularly difficult to search for a standing order on a specific topic. Many standing orders are not indexed and most are not searchable by subject or topic.

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 3

Finally, the survey showed that courts would find it useful to have guidelines on delineating between matters appropriately addressed in standing orders and those that should be addressed in local rules and on the most effective and consistent way to post standing orders on court web sites. Specific guidelines have been developed as to when it is appropriate to use district-wide or division-wide standing orders and when local rules should be used. The guidelines also recommend a consistent approach to posting standing orders on the web sites of the district courts and in making such orders searchable.

## II.    The Use of Standing Orders

The Standing Committee became aware of the increasing use of standing orders through several avenues. The Standing Committee's Local Rules Project, which ended in 2005, uncovered standing orders that addressed the same topics as local rules. The Standing Committee's work on the model rules for electronic filing, approved by the Judicial Conference in 2004, showed that although many districts were regulating electronic filing through local rules, other districts were using standing orders. Work by the Civil Rules Committee to monitor developments in electronic discovery after the December 2006 Civil Rules amendments indicated that in some districts, standing orders are being used for detailed electronic discovery "protocols," while in other districts, local rules address electronic discovery.

The Administrative Office investigated the use of standing orders in eleven district courts. The research involved collecting and reviewing the standing orders in these districts, as well as receiving information directly from clerks and judges. Thereafter the Administrative Office sent a survey to chief judges in all district and bankruptcy courts asking for input in developing guidelines on what matters are appropriately addressed in local rules and those that should be addressed in standing orders. Responses were submitted by 49 district courts and 37 bankruptcy courts. The results of this and related research are summarized below.

### 1.    *Varying number of standing orders among the districts*

The districts vary widely in their use of standing orders. Some districts have very few standing orders issued by the district or division. Others have standing orders in the hundreds.

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 4

### 2.    *Varying subject matters treated by standing orders*

There is no standard approach to whether a particular subject matter is to be treated by standing order or local rule.  For every district treating a matter by standing order, there are others treating the same matter by local rule.   Examples of subjects that are addressed in local rules in some districts and standing orders in others include:

- regulation of use of electronic devices in the courthouse;
- procedure for filing documents under seal;
- rules governing applications for attorneys' fees;
- redaction of personal identifiers to comply with the E-Government Act;[1]
- attorney admissions matters;
- rules governing electronic filing;[2]
- rules on court appearances by legal interns or law students; and
- rules governing ADR, settlement, or mediation.

### 3.    *Subject matters most likely to be treated by standing orders*

While there is no uniformity in the use of standing orders, certain matters are more likely to be handled by standing orders rather than by local rules.  These include rules on:

- court security;
- internal personnel matters such as appointments, EEO procedures, etc.;
- referrals to magistrate judges;
- case allocations between judges and/or divisions;

---

[1] In one district reviewed, the standing order on redaction of personal identifiers "supersedes and vacates" the local rule on the subject, to the extent the local rule is inconsistent.  This report recommends that standing orders not be used to vacate local rules.

[2] One concern with electronic filing rules is that technological developments may require constant amendment.  This concern might lead a court to think about dispensing with the procedural requirements of local rulemaking in favor of using standing orders.  As discussed in this memo, the better approach — used in several districts — is to post a user manual on the court's web site that can be changed to accommodate technological developments and other electronic filing problems.

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 5

- juror pools and selection;
- use of nonappropriated funds;
- Criminal Justice Act plans;
- schedules for forfeiture of collateral;
- conditions of probation and supervised release;
- Speedy Trial Act implementation;
- criteria for waiver of PACER fees;
- court reporters and transcripts;
- attorney admissions and discipline matters; and
- naturalization ceremonies.

### 4.   *Attempts by some districts to delineate the proper use of standing orders*

Some districts have, by local rule, defined the type of matters to be covered by standing orders. For example, Local Civil Rule 1.1 of the Northern District of Oklahoma states in part as follows:

> General Orders, which are available on the Court's web site, are issued by the Court to establish procedures on administrative matters and less routine matters which do not affect the majority of practitioners before this Court.

As another example, Local Rule 83.1.2(a) of the District of Kansas provides that the court may issue "standing orders dealing with administrative concerns or with matters of temporary or local significance." Like Oklahoma's local rule, this rule identifies administrative matters as the most appropriate use of standing orders. But the Kansas local rule also allows standing orders on "matters of temporary or local significance" and does not include "less routine matters which do not affect the majority of practitioners before the court" in the topics that standing orders should address.

The Eastern District of California, in Local Rule 1-102(a), carefully distinguishes between the content of local rules and standing orders:

> Outside the scope of these Rules are matters relating to internal court administration that, in the discretion of the Court en banc, may be accomplished through the use of General Orders, provided, however, that no

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 6

> matter appropriate for inclusion in these Rules shall be treated by General
> Order. No litigant shall be bound by any General Order.

The Eastern District of California rule is the most limited of the three examples. Its approach
restricts standing orders to matters such as funding, PACER fees, evacuation plans, case
assignment, personnel appointments, and the like. This local rule specifically states that
nothing in the court's standing orders may directly affect a litigant.

### 5.      *Finding standing orders on a court's web site*

The AO reports that in the 11 districts reviewed, there was considerable variance in
locating general or standing orders on the court's web site. A review of a number of other
district web sites also found a widespread variance in the manner and web location for
posting standing orders. Some districts have a link for "general orders" or "standing orders";
others do not. One district has a link entitled "local documents" that then has a sub-link to
"administrative orders." Another district has a link entitled "rules." Another district locates
standing orders under "general information" but a separate link to "rules" leads only to the
local rules.

Once the link to standing orders is found, the question is how to find a particular order
or all orders that might be relevant to a case or topic. In many courts, it is not very difficult
to review the standing orders for relevance. For example, in one district, there are five
standing orders on the web site, and they are listed by topic:

> * 06-01 Extending Suspension of Some Requirements of Local Civil Rules
>   10.1(b); 81.2(b); 501.1
> * 05-04 Suspension of Some Requirements of Local Civil Rule 10.1(b)
> * 05-03 Adoption and Implementation of the Model Third Circuit Electronic
>   Device Policy
> * 05-02 Multiple, Unrelated Defendants in Matters
> * 05-01 Mandatory Electronic Filing
> * Guideline Sentencing

But some districts simply list their standing orders chronologically or by number, with no
indication of subject matter. This requires the practitioner to open and review every standing

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 7

order to see if it is relevant and to be sure that all relevant orders have been located. Few
districts provide a search function for standing orders.

Because one of the major concerns about standing orders is lack of notice, it is
particularly important that a practitioner be able to find standing orders and review them for
relevance. Those judges responding to the AO survey widely agreed that standing orders
should be posted on the same locations on each court's Internet home page (87%, 74 out of
85 respondents). There was even stronger agreement that standing orders should be listed,
indexed, and made searchable so that orders on particular topics are easy to locate (94%, 79
out of 84 respondents).

### 6. *Standing orders of individual judges*

In addition to standing or general orders of the district or division, many judges also
issue standing or general orders to apply only to cases in their courts. Under section 205(a)
of the E-Government Act of 2002, all such orders must be posted on the court's web site.
Nonetheless, in some districts, these individual-judge standing orders are not posted on the
court's web site. In other districts, the individual-judge standing orders are posted as
separate documents for each judge; the link is found next to the judge's name, after "Judges"
is clicked on the main web page. These individual-judge standing orders are usually long —
up to 50 pages — and are in a .pdf format that is not easily searchable. These documents
often repeat much of what is also in the district's or division's standing orders or local rules.
But these documents also include variations from the district or division standing orders or
local rules and from other judges' individual orders, ranging from significant to minor.
These variations are usually not highlighted or readily identifiable. Individual-judge orders
are also supplemented or revised from time to time, so that a review on one day does not
assure complete familiarity on a later day. The results of the research and survey highlighted
the importance of consistent posting of individual-judge standing orders as well as district-
or division-wide standing orders, and of making orders on particular topics easier to find.

### III. Analysis of the Case Law

The case law reviewing the content of standing orders is relatively sparse, but four
basic principles can be derived:

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 8

1) Standing orders (both by the district and by an individual judge) can be an appropriate exercise of a court's inherent authority over management of its cases and control of the courtroom. *See, e.g.*, *United States v. Ray*, 375 F.3d 980, 993 (9th Cir. 2004) (standing order requiring U.S. Attorney to assemble information required by PROTECT Act to be submitted to the Sentencing Commission was upheld as a proper exercise of "the court's inherent authority to regulate the practice of litigants before it").

2) Standing orders may be found improper if they impose requirements beyond those imposed by (or in some other way conflict with) national rules or statutes. *See, e.g.*, *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) (application of standing order on Civil RICO pleading found to be improper because it imposed requirements "in excess of the essential elements of a RICO claim"); *United States v. Zingsheim*, 384 F.3d 867, 871 (7th Cir. 2004) (application of standing order found to be improper because it was used to defer downward departure decisions when deferral was not authorized by Rule 35).

3) Appellate courts have expressed concern about the lack of notice and public participation in the implementation of standing orders and have on occasion suggested that matters addressed in standing orders would be better placed in local rules. *See, e.g.*, *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 n.1 (1st Cir. 1999) (In response to appellants' claim that they were not aware of the district court's standing order on cost allocation, the court stated: "[W]e urge the district courts to avoid incipient problems of this type by incorporating standing orders into local rules or, at least, making them readily available in the office of the Clerk of the district court."). Judge Easterbrook emphasized the difference between standing orders and local rules in *In re Dorner*:

> Adopting local rules through the device of standing orders contravenes the Rules Enabling Act in several ways beyond the vice of inconsistency. First, rules must be reviewed by an advisory committee. Second, rules may be adopted only after public notice and opportunity for comment. Third, rules adopted by district courts must be submitted to the council of the circuit for review. Finally, all local rules must be sent to the Director of the Administrative Office, who ensures their public availability. The [court] violated all of these requirements when

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 9

> it used a nonpublic standing order to contradict [Bankruptcy]
> Rules 8006 and 8007....

*In re Dorner*, 343 F.3d 910, 913 (7th Cir. 2003) (internal citations omitted).

4) Standing orders may be improper to the extent they impose inflexible standards that do not accommodate the particular circumstances of a case. *See, e.g., In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) (concluding that district court's standing order on allocation of costs "raises a core concern: it does not leave sufficient room for individualized consideration of expense requests").

## IV. Results of the Research and Surveys

Too many standing orders raise many of the same concerns as too many local rules, as well as problems of lack of notice to, and comment from, the public. These problems are exacerbated by difficulties in finding standing orders on particular topics. The fact that individual judges as well as districts and divisions issue standing orders leads to a large number of orders. These problems can be reduced by using standing orders, as most courts do, to address only a narrow range of topics and by ensuring that the orders are easy to find.

As a general matter, standing orders are most appropriate to address matters that are of no direct concern to practicing attorneys or litigants (internal administration); that require action for too short a time period to make the use of a local rule practical (temporary problems); or that require prompt action to address an emergency (emergencies). When standing orders are appropriate, whether district-wide, division-wide, or individual-judge, they should be easy to find and search. Standing orders should be posted on web sites in a consistent way from court to court and have indexes or other features that make it easier for lawyers and litigants to find and retrieve orders on particular topics.

Attached to this report are specific guidelines on distinguishing between matters that are most appropriately addressed by standing orders and those that should be addressed by local rules, and on posting standing orders on web sites to make them easier to locate.[3] The

---

[3]This distinction does not present a problem for using a local rule rather than a standing order when a statutory or national rule provision applies "unless the court orders otherwise." In such a case, judges or districts may use a local rule to comply with the requirement that a court "order otherwise." Local

Report and Recommended Guidelines
on Standing Orders in District and Bankruptcy Courts
Page 10

Standing Committee can provide guidance, on request, on questions about the appropriate placement of subject matters in standing orders or local rules. In addition, the Standing Committee or AO staff can provide, on request, general advice on posting standing orders on each district's web site and making it easier to find orders addressing specific topics.

---

rules—which are adopted by court order—have been held to meet the requirement that a court "order otherwise." *See, e.g.*, *Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 259–61 (3rd Cir. 2002) (holding that a local rule could extend the deadline under Rule 54(d) of the Federal Rules of Civil Procedure, which required motions for attorneys' fees to be filed no later than 14 days after entry of judgment "'[u]nless otherwise provided by statute or an order of the court . . . ,'" and noting that "[e]very Court of Appeals to have addressed the issue has decided that a local rule extending the time to file a motion for fees is a 'standing order,' and, therefore, not inconsistent with the federal rules") (citations and emphasis omitted); *cf. United States v. Herrera*, 252 F.3d 1356, No. 00-50356, 2001 WL 422627, at *3 (5th Cir. Mar. 30, 2001) (unpublished) (per curiam) (upholding criminal contempt conviction under 18 U.S.C. § 401(3), which required that the defendant have violated a court order, and rejecting the defendant's contention that a local rule is not a court order as without merit, explaining that "[a] local rule is the equivalent of a standing order of the district court, and a standing order is an order for § 401(3) purposes") (internal citations omitted).

**GUIDELINES FOR DISTINGUISHING BETWEEN MATTERS APPROPRIATE
FOR STANDING ORDERS AND MATTERS APPROPRIATE FOR LOCAL
RULES AND FOR POSTING STANDING ORDERS ON A COURT'S WEB SITE**

## I.     Guidelines for Using Standing Orders

### 1.     *Standing Orders May Be Used for Internal Administration.*

Standing orders are most useful and appropriate to address matters of internal administration. For such matters, notice and public comment are not necessary and in some cases not justified.  Examples of matters of internal administration properly covered by standing orders include the following:

- Court security[1]
- Planning for emergencies[2]
- Using nonappropriated funds[3]
- General procedures for funds in court registry[4]
- Directives to court personnel[5]
- Division of workload[6]
- Referral to magistrate judges[7]
- Using resources[8]
- Juror wheels[9]
- Setting dates for naturalization hearings[10]
- Court implementation of judicial resources for initial appearances[11]
- General scheduling of motions, such as on a particular day of the week[12]
- Appointments, such as to Criminal Justice Act Panel[13]
- PACER fee exemptions[14]
- Closing or staffing courts on or after holidays[15]

### 2.     *Standing Orders Are Appropriate to Address Problems and Issues That Are Unlikely to Exist Beyond the Time Necessary to Implement a Local Rule.*

Because of the procedural requirements for local rulemaking, a standing order may be necessary to address a problem that is anticipated to be of such short duration that it will be resolved by the time a local rule can be implemented.  For example, some courts briefly suspended sentencing proceedings until the impact of *Blakely v. Washington* could be

1

analyzed, which was completed before a local rule suspending proceedings could have been implemented.[16]

### 3.      Standing Orders Are Appropriate to Address Emergencies, During the Time Necessary to Implement a Local Rule.

A third appropriate use for a standing order as opposed to a local rule is to address what amounts to an emergency.  For example, some district courts entered a standing order adopting the Interim Rules to Implement the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  Other courts have used standing orders to deal with unanticipated issues arising from particular kinds of cases, such as cases involving terrorism charges.  If, however, the matter addressed is a continuing rather than a temporary one — and it affects members of the public — then a local rule should be developed to address it.[17]

### 4.      Standing Orders May Be Appropriate to Address Rules of Courtroom Conduct as Opposed to Substantive Rules of Practice.

There are many standing orders that concern conduct in the courtroom.  These can be district- or division-wide standing orders or individual-judge standing orders.  Standing orders often set rules for "purely" courtroom conduct, such as eating and drinking in the courtroom, courtroom hours, whether lawyers should question witnesses from a podium or from counsel table, and whether lawyers must deliver courtesy copies to chambers.

Each judge of course has the authority to control his or her courtroom in the way that works best for that judge.  Individual-judge standing orders may be appropriate if the judge has courtroom-conduct requirements that the local rules do not cover and the requirements govern purely courtroom conduct as opposed to more substantive matters.  These Guidelines do not address a judge responding to case-management problems presented in a specific case by issuing orders in that case as opposed to issuing a standing order that applies generally.

An individual-judge standing order should not repeat the provisions of the local rules or district- or division-wide standing orders.  To avoid confusion, where an individual-judge standing order does deviate from district- or division-wide standing orders or local rules that generally apply, the judge's standing order should clearly identify the deviation and what different approach is required.

Any standing order should be easy to find.  The fact that many of the same topics or matters are inconsistently addressed — in local rules in some courts, in district- or division-wide standing orders in other courts, in individual-judge orders in yet other courts, or repeated with variations in some or all of these categories in some courts — adds to the

difficulty lawyers face in figuring out what standards apply and where to look for those standards.

The case law makes one outer limit clear. Whether issued by a district, a division, or an individual judge, a standing order that is inflexible or idiosyncratic may be found improper by an appellate court, particularly if there is a question as to adequate notice of the order. For example, in *In re Contempt Order of Petersen*, 441 F.3d 1266 (10th Cir. 2006), the magistrate judge entered an order of criminal contempt against a government lawyer who was five minutes late to a pretrial detention hearing. The lawyer had violated the judge's "standing policy" that any lateness would be sanctioned in the amount of $50, payable to the court — no excuses permitted. The court of appeals vacated the order, reasoning that it failed to take account of the circumstances of a particular case. It noted that the lawyer was in time to argue the motion, and that the judge made no effort to inquire into the reasons for the lawyer's tardiness. Moreover, the court was concerned that the lawyer had no notice of the "standing policy."

### 5.     *Rules on Filing, Pretrial Practice, Motion Practice, and Other Matters That Litigants Must Comply with Should Be Placed in Local Rules.*

There are many standing orders — both district- and division-wide and individual-judge orders — that control such matters as electronic filing; special pleading requirements (such as in civil RICO cases); sealing criteria and procedures; electronic discovery protocols; filing and litigating motions, including summary judgment motions; limits on counsels' questions during voir dire; time limits on opening statements; transcribing audio recordings entered as evidence; applications for attorney fees; and filing memoranda of law. Many of these orders differ from local or national rules and some are in tension with or even contradict those rules. Issues relating to such matters as filing pleadings and motions, litigating motions, and developing criteria for sealing documents, are so important to the practicing bar that notice and public comment are essential.[18]

With respect to electronic filing, the argument is sometimes made that technology develops so quickly that by the time a local rule can be implemented, it is outmoded and a new local rule is needed. But the prospect of technological development does not justify the placement of all electronic filing rules in standing orders. The model local rules developed by the Judicial Conference are flexible enough to accommodate technological change. It is notable that a number of districts have mandated electronic filing by standing order rather than local rule; but a standing order on such an important (and unchanging) matter is difficult to justify as necessary to accommodate constant changes in electronic filing. Filing requirements have a significant impact on lawyers and litigants and the local-rules comment process is important to developing workable and effective procedures. It is true, of course,

that the details of implementation of electronic filing may need fairly frequent updating, but that can be done by promulgating general local rules that cross reference a user's manual on the court's web site, as is the practice in many districts.

### 6.      *Rules for Mediation and Other Forms of ADR, Sentencing, and Related Proceedings Should Be Placed in Local Rules.*

Some districts have standing orders that essentially provide a complete set of rules for such proceedings as ADR (including arbitration and mediation), sentencing (especially standards for probation and supervised release), and attorney disciplinary proceedings. Most districts have implemented such procedures in local rules, showing that standing orders are not necessary for these kinds of proceedings. It is recommended that courts operating under such district-wide standing orders consider transferring these procedures to their local rules. Placing these subject matters in local rules would provide the lawyers and litigants participating in these proceedings an opportunity to comment on them before they are promulgated.

### 7.      *Standing Orders Should Not Duplicate a National or Local Rule.*

Under Civil Rule 83, Criminal Rule 57, and Bankruptcy Rule 9029, standing orders are not supposed to duplicate a national rule. Duplication must be distinguished from simply referring to a national rule, which is of course permissible. But if a standing order actually duplicates a national rule, it is both unnecessary and improper.

There is no similar prohibition on a standing order duplicating a local rule, but such duplication is problematic. Including the same subject matter in both a local rule and in a standing order is in itself confusing. The potential for confusion increases if one changes and the other does not, or if the standing order is close but not identical to the local rule. Minor variations, poor paraphrasing, or selective duplication will introduce even more confusion. It could be argued that duplicating some local rules in standing orders might increase the likelihood that the lawyers know of the requirements; but the risks of "incomplete" duplication, or a change in one rule but not the other, caution strongly against attempting to duplicate the terms of a local rule in a standing order.

### 8.      *Standing Orders Must Not Abrogate or Modify a Local Rule.*

Some district courts have abrogated or modified a local rule by issuing a standing order, even without the justification of an emergency. Under Civil Rule 83, Criminal Rule 57, and Bankruptcy Rule 9029, a court may only regulate practice in a manner consistent with the district's local rules. The use of standing orders to abrogate or modify a local rule

is problematic, moreover, because it requires the practitioner to master both the local rule and the standing order and then to determine how they interact. The transaction costs outweigh whatever benefit might be argued to exist from changing a local rule by way of standing order.

## II. Guidelines for Posting and Providing Access to Standing Orders

Given the lack of notice and public comment before standing orders are entered, it is critical that members of the public have a ready way to find and access them. Under current practice, members of the public can find this difficult because there is no consistent, predictable approach to posting standing orders on court web sites, and most courts do not have indexing or search functions that allow members of the public readily or reliably to find what they are looking for among all the posted standing orders.

In posting standing orders on court web sites, the following guidelines should be followed:

1. The home page for each court's web site should have a link entitled "Standing Orders."
2. The link should direct the user to a page with a further link to the court's general standing orders, and individual links for the standing orders of each judge on the court.
3. Notice of a new standing order, or a change to a standing order, should be on the court's web site for a reasonable period.
4. The posted standing orders for the court and for each individual judge should contain an index and a word-search function that allows the user to locate and access orders on particular topics or subjects and ensure that all relevant orders have been found.

---

1. *See* Southern District of Texas, Order 2001-05, In Re: Weapon Possession in Court Facilities (limits individuals who can possess a firearm in courthouses).

2. *See* Northern District of Oklahoma, General Order 01-05 (adopting Occupant Emergency Plan for occupants of the courthouse).

3. *See* Southern District of Texas, Order 1995-13, In the Matter of Operations Without Appropriations for Fiscal Year 1996.

4. *See* Southern District of Texas, Order 1992-10, Authorizing Withdrawal of Excess Securities.

5.    *See* Southern District of Texas, Order 1992-22, Order for Docketing Priority (directive to court personnel re importance of prompt docketing).

6.    *See* Southern District of Texas, Order 2006-1, In the Matter of the Division of Work Calendar Year 2006.

7.    *See* Northern District of Florida, Order dated 5/31/2000, Referral of Civil Cases to Full-time Magistrate Judges (ordering that all new social security cases be randomly assigned, on a rotating basis, to the division's full-time magistrate judges).

8.    *See* Northern District of Florida, Order dated 10/2/2006, Authorization for In-District Travel for Clerk of Court and Chief Probation Officer (also authorizing agency-financed travel to FJC or AO training sessions).

9.    *See* Southern District of Texas, Order 2005-09, In Re: Refilling the Master Jury Wheels.

10.   *See* Southern District of Texas, Order 1990-44, Order Setting Naturalization Hearing Date.

11.   *See* Southern District of Texas Order 1991-26, In the Matter of Guidelines for Coordination of Criminal Procedures (guidelines for coordinating criminal procedures in Houston Division to ensure that an apprehended defendant is brought before a magistrate judge as quickly as possible).

12.   *See* District of South Carolina, Order of Judge Anderson (providing that civil motions are heard on Mondays at 1:30 p.m., and if Monday is a holiday, the next motion day is the following Monday).

13.   *See* Northern District of Florida, Order dated 12/14/2006, Criminal Justice Act Panel (appointing a new member).

14.   *See* Northern District of Florida, Order dated 4/7/2006, Exemption from Fees to PACER (authorizing fee exemption for academic researcher).

15.   *See* Northern District of Oklahoma, General Order 06-19 (announcing closing of court on Friday, November 24, 2006).

16.   *See* Northern District of Oklahoma, General Order 04-07 (stating that it was considering a moratorium on sentencing proceedings until it could study *Blakely*, and directing the U.S. Attorney to identify any case in which a delay might violate the Speedy Trial Act).

6

17.  It could be argued that any "emergency" should be handled by an interim local rule rather than a standing order. *See* 28 U.S.C. § 2071(e) ("If the prescribing court determines that there is an immediate need for a rule, such court may proceed under this section without public notice and opportunity for comment, but such court shall promptly thereafter afford such notice and opportunity for comment."). But so long as there is ultimately a local (or national) rule implemented within a reasonably short time period to deal with the problem on a permanent basis, there is no real distinction between a standing order and an interim local rule — because both are implemented without a period for public comment.

18.  This distinction does not present a problem for using a local rule rather than a standing order when a statutory or national rule provision applies "unless the court orders otherwise." In such a case, judges or districts may use a local rule to comply with the requirement that a court "order otherwise." Local rules—which are adopted by court order—have been held to meet the requirement that a court "order otherwise." *See, e.g., Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 259–61 (3rd Cir. 2002) (holding that a local rule could extend the deadline under Rule 54(d) of the Federal Rules of Civil Procedure, which required motions for attorneys' fees to be filed no later than 14 days after entry of judgment "'[u]nless otherwise provided by statute or an order of the court . . . ,'" and noting that "[e]very Court of Appeals to have addressed the issue has decided that a local rule extending the time to file a motion for fees is a 'standing order,' and, therefore, not inconsistent with the federal rules") (citations and emphasis omitted); *cf. United States v. Herrera*, 252 F.3d 1356, No. 00-50356, 2001 WL 422627, at \*3 (5th Cir. Mar. 30, 2001) (unpublished) (per curiam) (upholding criminal contempt conviction under 18 U.S.C. § 401(3), which required that the defendant have violated a court order, and rejecting the defendant's contention that a local rule is not a court order as without merit, explaining that "[a] local rule is the equivalent of a standing order of the district court, and a standing order is an order for § 401(3) purposes") (internal citations omitted).