1  DAVID CHIU, State Bar #189542
   City Attorney
2  JONATHAN C. ROLNICK, State Bar #151814
   Chief Labor Attorney
3  LAUREN E. WOOD, State Bar #280096
   ADAM M. SHAPIRO, State Bar #267429
4  Deputy City Attorneys
   Fox Plaza, 1390 Market Street, 7th Floor
5  San Francisco, California 94102-5408
   Telephone:      (415) 554-4261 (Wood)
6                  (415) 554-3830 (Shapiro)
   Facsimile:      (415) 554-4699
7  E-Mail:         lauren.wood@sfcityatty.org
                   adam.shapiro@sfcityatty.org
8
   Attorneys for Defendant
9  CITY AND COUNTY OF SAN FRANCISCO

10

11                 UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13

14  SELINA KEENE, MELODY FOUNTILA,        Case No. 22-cv-01587-JSW
    MARK MCCLURE,
15                                         **DEFENDANT'S RESPONSE TO MOTION TO**
            Plaintiffs,                     **ENTER ORDER PURSUANT TO THE NINTH**
16                                         **CIRCUIT'S MEMORANDUM**
        vs.
17                                         Judge:          Honorable Jeffrey White
    CITY and COUNTY OF SAN FRANCISCO
18                                         Filed:          March 14, 2022
            Defendant.                      Trial Date:     None set
19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................5

BACKGROUND ...................................................................................................................6

    A.    Plaintiffs delivered direct services that required in-person contact with vulnerable clients. ...........................................................................................6

    B.    In June 2021, the City enacts a COVID-19 vaccine mandate to protect employees and the public consistent with public health guidance. ............7

    C.    In Fall 2021, Plaintiffs sought exemption from the City's vaccine mandate based on secular beliefs about the safety and efficacy of the COVID-19 vaccines..................................................................................8

        1.    Plaintiff Keene's Exemption Request and objections to the COVID-19 vaccines.......................................................................8

        2.    Plaintiff Fountila's Exemption Request and objections to the COVID-19 vaccines.....................................................................11

    D.    Granting Plaintiffs' exemption requests would have posed an undue burden on the City's operations.............................................................13

    E.    Plaintiffs Delayed Seeking a Preliminary Injunction.................................13

    F.    The Ninth Circuit reversed and remanded the Court's Order denying Plaintiffs' PI Motion for further consideration of various issues. ............14

ARGUMENT .......................................................................................................................15

    I.    The Court may consider additional pleadings and evidence on remand. ..............15

    II.    Plaintiffs fail to demonstrate likelihood of irreparable harm................................15

        A.    Loss of employment does not constitute irreparable harm and Plaintiffs cannot show they lost their careers. ..........................................................16

        B.    Plaintiffs are not faced with a Hobson's choice because they already chose to retire from City employment, and irreparable harm cannot be presumed. ...................................................................................................18

        C.    Plaintiffs' delay in seeking a preliminary injunction further demonstrates a lack of irreparable harm. ..........................................................................19

    III.    Plaintiff failed to demonstrate likelihood of success on the merits. ......................19

        A.    Plaintiffs have not shown and cannot show they had a sincerely held religious belief that conflicted with the City's COVID-19 vaccine mandate....................................................................................................19

        B.    The City has demonstrated that exempting Plaintiffs from the vaccine mandate in the Fall of 2021 would have caused undue hardship. .............22

    IV.    The balance of equities and public interest also weigh against a preliminary injunction. .............................................................................................................24

CONCLUSION....................................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................................. 15

*Bauer v. Summey*, 568 F. Supp. 3d 573 (D.S.C. 2021) ..................................................................... 16

*Berndt v. California Dep't of Corr.*, No. C 03-3174 VRW, 2010 WL 11485028
    (N.D. Cal. June 3, 2010) ............................................................................................................. 18

*Berry v. Dep't of Soc. Servs.*, 447 F.3d 642 (9th Cir. 2006) ............................................................ 20

*Callahan v. Woods*, 658 F.2d 679 (9th Cir.1981) ........................................................................... 20

*Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701 (9th Cir. 1988) ...................................... 17

*Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal.App.4th 298 (2012) ..................... 17

*Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173 (9th Cir. 2021) .............................................. 24

*EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*,
    279 F.3d 49 (1st Cir. 2002) ........................................................................................................ 20

*Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011) ............................... 17

*Featherstone v. Pac. NW Univ. of Health Sciences*, No. 1:CV-14-3084-SMJ,
    2014 WL 3640803 (E.D. Wash. Jul. 22, 2014) .......................................................................... 17

*Gateway City Church v. Newsom*, 516 F. Supp. 3d 1004 (N.D. Cal. 2021) ................................... 23

*Groff v. DeJoy*, No. 22-174, 2023 WL 4239256 (U.S. June 29, 2023) .................................... 22, 23

*Heineke v. Santa Clara Univ.*, 736 Fed. Appx. 622 (9th Cir. 2018) ............................................... 17

*Keene v. City and County of San Francisco*, 2023 WL 3451687 (9th Cir. 2023) ...5, 14, 15, 16, 20

*McGinnis v. U.S. Postal Serv.*, 512 F. Supp. 517 (N.D. Cal. 1980) ............................................... 19

*Metoyer v. Chassman*, 504 F.3d 919 (9th Cir. 2007) ..................................................................... 19

*O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294 (D. Hawaii 2022) ........................... 16

*Oakland Trib., Inc. v. Chronicle. Pub. Co., Inc.*, 762 F.2d 1374 (9th Cir. 1985) .......................... 19

*Passarella v. Aspirus, Inc.*, No. 22-CV-287-JDP, 2023 WL 2455681
    (W.D. Wis. Mar. 10, 2023) .................................................................................................. 20, 21

*Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ....18

*Sampson v. Murray*, 415 U.S. 61 (1974) ........................................................................................ 16

*Stevens v. F/V Bonnie Doon*, 731 F.2d 1433 (9th Cir. 1984) ......................................................... 15

*Tandon v. Newsom*, 517 F. Supp. 3d 922 (N.D. Cal. 2021)..................................................24

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707 (1981)....................................20

*Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679 (9th Cir. 1998) ................................20

*Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82 (1st Cir. 2022) ..........................5, 16, 18

*Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585
   (E.D. Pa. Apr. 13, 2023) ........................................................................21

*UnifySCC v. Cody*, No. 22-CV-01019-BLF, 2022 WL 2357068 (N.D. Cal. June 30, 2022)........24

*Valdez v. Grisham*, 559 F. Supp. 3d 1161 (D.N.M. 2021) ............................................16

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)..........................15, 18, 24

**INTRODUCTION**

On May 15, 2022, the Ninth Circuit ordered this Court to reassess its prior order denying Plaintiffs Selina Keene and Melody Fountila's ("Plaintiffs") Motion for Preliminary Injunction ("PI Motion") in light of additional factors identified by the Court of Appeals.[1] *Keene v. City and County of San Francisco*, 2023 WL 3451687 (9th Cir. 2023). The Ninth Circuit did not tell the Court *how* to decide the PI Motion; rather, it instructed this Court to consider various issues, many of which the parties did not raise or substantively address in the underlying motion. Plaintiffs' current motion does not address any of these new issues, yet Plaintiffs ask this Court to summarily enter a preliminary injunction in their favor. *See* Dkt No. 82-1 (Plaintiffs' Proposed Order). A proper analysis of each of the issues raised by the Ninth Circuit demonstrates that Plaintiffs have not met their burden for the extraordinary relief of a preliminary injunction.

*First*, Plaintiffs shown—and cannot show—that they suffered irreparable harm. Loss of a job is not irreparable harm. The Ninth Circuit instructed the Court to consider whether Plaintiffs lost their careers, but they presented no evidence that they did or that they are otherwise unable to find similar work with an employer other than the City. To the contrary, Plaintiffs now have both admitted that other Bay Area public entities afford similar employment opportunities that they elected not to pursue. The cases that Plaintiffs rely upon are readily distinguishable as they involve special circumstances not present here, and Plaintiffs admit that their career aspirations can be fulfilled through other employment. As to Plaintiffs' purported "Hobson's Choice" between their faith and their jobs, a preliminary injunction would not spare Plaintiffs from this supposed dilemma, since they already made their choice by refusing vaccination and retiring from City employment. *See Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 87 (1st Cir. 2022) (rejecting an indistinguishable Hobson's choice argument).

*Second*, Plaintiffs cannot demonstrate a likelihood of success on the merits. The Ninth Circuit found insufficient evidence in the record to show that Plaintiffs' purported religious beliefs regarding the COVID-19 vaccines were insincere. *Keene*, 2023 WL 3451687, at *1. The City now offers additional evidence — specifically, documents Plaintiffs submitted in connection with their religious

---

[1] Plaintiff Mark McClure did not join the PI Motion or appeal the Court's order.

exemption requests and deposition testimony — which show that Plaintiffs' objections to the COVID-19 vaccine were rooted in secular anxieties regarding the safety and efficacy of the vaccines, not any religious belief. Plaintiffs' secular beliefs need not be accommodated under Title VII of the 1964 Civil Rights Act ("Title VII") or the Fair Employment and Housing Act ("FEHA"). And, even if Plaintiffs could show a conflict between a religious belief and the City's vaccine mandate, accommodating Plaintiffs' exemption requests would pose an undue hardship on the City. Plaintiffs' unvaccinated status threatened the health and safety of co-workers and clients at the City's Human Services Agency ("HSA"), where Plaintiffs worked. Allowing Plaintiffs to telecommute full-time would have substantially interfered with HSA's operations and mission to deliver critical services to the City's most vulnerable residents.

*Third*, the balance of the equities and the public interest also weigh against a preliminary injunction. The balance of equities tips decidedly in the City's favor when weighing the critical public interest in preventing the spread of COVID-19 outbreaks that would endanger public safety and hamper the City's ability to deliver critical services to its residents against Plaintiffs' alleged harms that can be remedied with damages.

## BACKGROUND

### A.     Plaintiffs delivered direct services that required in-person contact with vulnerable clients.

Plaintiffs previously held civil service classification 9704 Employment and Training Specialist III positions in the Workforce Development Division ("WDD") at HSA. Declaration of Bart Ellison ("Ellison Decl.") ¶ 4. The 9704 employees are front-line workers who provide direct services, including job development, training, and vocational assessment to some of the most vulnerable populations in San Francisco. *Id.* ¶ 5-6; *see also* Declaration of Lauren E. Wood ("Wood Decl.") Ex. 1 [Fountila Dep.] at 23:12-24:6; *id*. Ex. 2 [Keene Dep.] at 22:21-23:9.

Early in the COVID-19 pandemic, 9704s began to meet with clients virtually. Ellison Decl. ¶ 7. But because 9704s serve vulnerable populations, many of whom do not have access to cellphones or computers, 9704s continued to meet in-person with many clients throughout the pandemic. *Id.*; *see also* Wood Decl. Ex. 2 [Keene Dep.] at 57:9-24.

On November 19, 2020, eight months after the City issued its shelter-in-place order relating to the COVID-19 pandemic, HSA reopened its campus at 3120 Mission Street and relocated the WDD offices to that address, so that the agency could offer limited services to HSA clients. Ellison Decl. ¶ 8. The main purpose in reopening was to assist HSA clients who had no access to internet, Wi-Fi, or phone, and needed to apply for benefits, apply for jobs, complete the online City application, or connect with HSA staff. *Id.*

As of September 2021, WDD required all staff to work out of 3120 Mission Street at least two days per week. Ellison Decl. ¶ 11; *see also* Wood Decl. Ex. 1 [Fountila Dep.] at 115:6-116:2; *id.*, Ex. 2 [Keene Dep.] at 60:21-61:5. At that time, on any given day, approximately 20 to 30 WDD employees worked in cubicles on a single floor at the 3120 Mission Street campus. *Id.* ¶ 11. WDD employees frequently met in person with clients and members of the public in the lobby of the building. *Id.* The City instructed employees to wear masks and observe social distancing protocols while in the office. *Id.* Between November 2021 and April 2023, there were approximately 11,244 in-person client appointments at 3120 Mission Street. *Id.* ¶ 12.

**B.     In June 2021, the City enacts a COVID-19 vaccine mandate to protect employees and the public consistent with public health guidance.**

San Francisco issued its COVID-19 Vaccination Policy on June 2021.[2] Dkt No. 21-1 Ex. F. The City's policy sought to "provide a safe and healthy workplace, consistent with COVID-19 public health guidance and legal requirements," and "to protect its employees and the public as [the City] reopens services and returns more employees to workplaces." *Id.* at p. 1. Consistent with public health guidance from the federal, state, and local health agencies, the City generally required all employees to be vaccinated against COVID-19 as a minimum qualification of employment. *Id.* at pp. 2-3. The initial deadline for employees to comply with the vaccine mandate was November 1, 2021. Declaration of Fiona Wilson ("Wilson Decl.") ¶ 8. Employees with a medical restriction or a sincerely held religious belief that prohibits them from receiving a vaccine have the opportunity to request an exemption from the vaccination requirement and, if granted, seek a reasonable accommodation that may permit them to

---

[2] The City's COVID-19 Vaccination Policy ended effective August 23, 2023. Wood Decl. ¶ 6; *see also* https://sfdhr.org/covid-19 (last visited August 24, 2023).

perform their jobs without being vaccinated. Dkt No. 21-1 Ex. F at p. 6  Those who failed to comply with the vaccine policy could face disciplinary action or non-disciplinary separation from City employment. *Id.*

    **C.**    **In Fall 2021, Plaintiffs sought exemption from the City's vaccine mandate based on secular beliefs about the safety and efficacy of the COVID-19 vaccines.**

        **1.**    **Plaintiff Keene's Exemption Request and objections to the COVID-19 vaccines.**

On October 12, 2021, Keene submitted a request for a religious exemption from the City's vaccine mandate. Declaration of Brenden Lim ("Lim Decl.") Ex. 1. After engaging in the interactive process, the City denied Keene's exemption request on the grounds that (1) her documentation was insufficient to show a conflict between the vaccine requirement and a sincerely held religious belief; (2) the requested accommodation would pose a direct threat to the health and safety of others; and (3) the accommodation would result in undue hardship for the City. Lim Decl. Ex.3.

Keene's exemption request form states that her religious beliefs precluded her from "us[ing] any product that takes its origin in abortion," including vaccines that were produced with "aborted fetal cell lines." *Id.* at p. 2. The language in Keene's exemption request form is taken word-for-word from an August 24, 2021 form letter signed by Pastor Jesse Gistand of Grace Bible Church in Hayward, California, which was attached to Keene's exemption request. Lim Decl. Ex. 1 at pp. 4-5. Gistand's letter also avers that "My Body is the ' . . . . Temple of the Living GOD," and that the COVID-19 vaccines caused "significant harm, injury and death." *Id.* at pp. 4-5.[3] Contrary to this assertion, however, federal, state, and local health agencies have all concluded that  the COVID-19 vaccines are safe. Dkt No. 21-1 Ex. C. Keene relied heavily on information received from Pastor Gistand regarding the COVID-19 vaccines, but admitted that the information shared by Gistand was ***not*** religious information:

    Q:    And so was, generally, the type of information that Pastor Jesse [Gistand] was sharing, was it scientific or medical information related to COVID-19 and the vaccine?
    A:    Correct.
    Q:    Was he sharing information from politicians as well?

---

[3] Gistand also hosts a radio program in which he disseminates political conspiracy theories and false and inaccurate information concerning the safety and efficacy of the COVID-19 vaccines. Declaration of Adam Shapiro Ex. 1 at 3,4, Ex. 2 at 2-3,4,5,10,11,15,22, Ex. 3 at 4,5,6,7,10 23,24.

n:\labor\li2022\220836\01686499.docx

A:      There was occasionally a politician, I think, but, generally it was scientists and –
and doctors.

Wood Decl. Ex. 2 [Keene Dep.] at 77:25-78:7; *see also id.* at 74:8-22, 77:9-24.

After receiving Keene's exemption request, the City initiated the interactive process by asking Keene several follow-up questions about how her religious views influenced her vaccine hesitancy. Lim Decl. Ex. 2 at pp. 3-4. Keene's written responses show that she had secular concerns about the COVID-19 vaccine based on inaccurate information regarding the vaccine's safety. *See id.* p. 9 ("My body is not to be subjected to coercive experiments with clear danger and harm"); p. 9 (vaccine "has been proven to alter a human's genetic structure as well as spread to the rest of the body"). During her deposition, Keene repeatedly confirmed that she believed that the COVID-19 vaccines were unsafe, had caused numerous deaths, that vaccine safety information was withheld from the public, and that the vaccines were developed too rapidly, rendering them inherently untrustworthy. *E.g.*, Wood Decl. Ex. 2 [Keene Dep.] at 36:24-40:12, 40:14-41:12, 43:22-45:25, 46:11-15, 48:4-16, 86:2-89:12, 100:14-102:22, 107:15-108:23. Despite claiming that she objected to the vaccines because they "involved" fetal cells, Keene admitted that her safety concerns were of such great importance to her that, even if the COVID-19 vaccines had ***not*** utilized fetal cell lines in development or production, she still would have refused to get vaccinated. *Id.* at 39:22-40:12, 40:14-41:12, 45:10-16, 46:11-15, 48:4-16.  For example, when specifically asked whether she would "still object to getting the COVID-19 vaccine because of the number of adverse reactions, deaths, [and] injuries [from] the vaccine" even if, hypothetically, the vaccines had not used any fetal cell lines in production or development, Keene responded:

> So let me just say that it is my right – my constitutional right whether or not to take something that is appropriate or not into my body. And without enough information, as well as the adverse effects that has happened, no, I would not have jumped up and took the jab for that – for those vaccines. Because it was – they are endanger – they are endangering lives and causing harm, so I would not want to put myself into that situation. Especially with my own medical history, I do not need help to die, so there you are.

*Id.* at 46:11-15, 48:4-16; *see also id.* at 45:11-16 ("Did you feel that if you were to take the COVID-19 vaccine, that the risk of physical harm or death or injury would be too great? A. Yes. Because I already had preexisting conditions that could do that anyway, so I didn't need any help).

In her vaccine exemption request, Keene claimed that she "cannot use **any** product that takes its origin in abortion." Lim Decl. Ex. 1 p. 2 (emphasis added).  Both Keene's written responses to the City during the interactive process and her deposition testimony, however, plainly contradict that assertion. During the interactive process, in response to a question about whether she had used or would use other common medications, including Tylenol and Tums, which were also tested using fetal cell lines,[4] Keene responded:

> I do not utilize many of the medicines mentioned but have always had the choice of whether to take them or not. They have never been forced on me or affected my livelihood. I see a clear difference between helping a body in crisis and addressing a healthy body with medical help or intervention. If my body were in crisis, I would consider all the options and discuss what to do with my trusted physician/healer, while praying for GOD's help, guidance and healing for longevity to my life.

Lim Decl. Ex. 2 p. 11. When asked about this response at her deposition, Keene testified that she has taken Tylenol and even recently purchased it for a family member who had a fever and admitted that if Tylenol was in fact developed using fetal cell lines (which it was), that it would "violate" her religious beliefs to have purchased it. Wood Decl. Ex. 2 [Keene Dep.] at 110:17-111:18, 112:6-113:6. Keene also testified that she last took Tums approximately "three months ago" despite knowing that Tums was developed using fetal cell lines. *Id.* at 113:16-114:23. Keene called taking Tums three months ago a "mistake" and confessed that she believes "it was a mistake to take Tums because [she] understood that it may have used fetal cell lines in its development." *Id.* at 122:18-21; *see also id.* at 119:19-120:15, 121:19-122:13.

At deposition, Keene talked in circles attempting to get around the dissonance between her views and behavior. That testimony ultimately revealed that she views the COVID-19 vaccines differently than other medications that were similarly developed using fetal cells because "one is a choice" and the "other was not." *Id.* at 120:6-11; *see also id.* at 119:4-6 ("The City – the mayor, she decided to be a bully. Everybody needs to be vaccinated."); *id.* at 54:8-10 (the City is "trying to coerce people to do something that's going to harm them"). Moreover, Keene clearly takes issue with the COVID-19 vaccines because, in her view, they are wholly ineffective. *E.g. id.* at 120:20-121:3 ("the COVID, so-called vaccines, never helped anybody" and are "a clear falsehood that [the City is] trying

---

[4] Wilson Decl. ¶ 15.

to push on people, in comparison to something that's been out for years"); *id.* at 118:21-23 "You know, the bottom line is this so-called vaccine didn't prevent anything. People still caught COVID-19, started spreading COVID, transmitted COVID."); *id.* at 119:6-8 ("No, everybody doesn't need to be vaccinated, because the vaccination doesn't work. The COVID shot does not work.").

Keene's objections to the COVID-19 vaccine due to a lack of efficacy are also closely tied to her belief that the "natural immunity" she claims to have due to prior COVID-19 infection is superior to vaccination. *See* Dkt. 19-3 ¶ 12; Wood Decl. Ex. 2 [Keene Dep.] at 51:5-17, 53:3-7. Keene testified that she requested a medical exemption from the COVID-19 vaccination policy based upon her "natural immunity to COVID due to prior infection" and the City's policy "didn't make sense" because the City could not produce any data showing that it was "safe and effective." Wood Decl. Ex. 2 [Keene Dep.] at 54:16-55:13. Keene also testified that she "definitely thought it was unfair" for the City to require her to get vaccinated after she had already been infected with COVID-19. *Id.* 53:20-24.

### 2.    Plaintiff Fountila's Exemption Request and objections to the COVID-19 vaccines.

In late September 2021, Fountila submitted an exemption request  nearly identical to Keene's. Lim Decl. Ex. 4. The City denied Fountila's request for a religious exemption for the same reasons it denied Keene's request. Lim Decl. Ex. 6.

In support of her request, Fountila also submitted a form letter from Pastor Jesse Gistand. Lim Decl. Ex. 4. at pp. 4-5. Like Keene, the language in Fountila's exemption request form is taken word-for-word from Gistand's letter. *Id*. Fountila likewise confirmed that information she received from Gistand regarding COVID-19 was ***not*** religious information, but that he was passing along "[s]cientific-type information" from secular sources such as doctors, scientists, attorneys, and politicians. Wood Decl. Ex. 1 [Fountila Dep.] at 57:5-17.

In response to Fountila's exemption request, the City asked her to respond to several questions regarding her request. Lim Decl. Ex. 5 at p. 11. Fountila's written responses are virtually identical to Keene's. *Compare* Lim Decl. Ex. 2 at pp. 9-11 *with* Ex. 5 at pp. 15-17. Like Keene, Fountila asserted she refused "to be subjected to coercive experiments with clear danger and harm." Lim Decl. Ex. 5 at p. 15; *see also* Wood Decl. Ex. 1 [Fountila Dep.] at 89:3-90:1. At her deposition, Fountila testified that

she believes the COVID-19 vaccines are unsafe and their safety had not been proven because they were "put together really quickly, when most vaccines take 10, 15, 20 years." Wood Decl. Ex. 1 [Fountila Dep.] at 45:23-46:19. According to Fountila, she "wasn't going to jump into something that [she] knew very little about." *Id.* at 46:19-20. Fountila was concerned that getting vaccinated would be harmful to her health. *Id.* at 46:22-25. Fountila testified that upon seeing VAERS data for the COVID-19 vaccines, which according to her, indicated that hundreds of people had died and "hundreds of thousands" had been injured, "just seeing that alone, [she] said, no" to getting vaccinated. *Id.* at 47:6-22.

When asked by the City during the interactive process to respond to a question about whether she had used or would use other common medications, including Tylenol, that were also tested using fetal cell lines, Fountila was evasive:

> Let me say, I have been making healthier choices for myself to better my health and longevity to my life. If what you are saying is true then society, as a whole should know this to make wiser choices. The difference is that these products are not being forced upon us at threat of our livelihoods. This vaccine mandate is an act of unconstitutional coercion. And violation of my privacy and basic human rights.

*Id.* at p. 17. In response to follow-up questions, Fountila stated: "I have never take [sic] the flu shot and today I choose not to take any medications because they have adversely affected my body and cause harm." *Id.* at p. 6. At her deposition, Fountila confirmed that she objects to taking ***all*** medications and vaccinations, but that this is ***not*** a religious choice; rather, this is purely part of the "new healthy lifestyle changes" she began making 10 to 15 years ago, that also included changing her diet and joining a gym, in addition to giving up medications. Wood Decl. Ex. 1 [Fountila Dep.] at 93:24-96:12, 100:5-101:22.

In addition to making a religious exemption request, Fountila requested a medical exemption from the vaccine mandate, claiming that she had immunity to COVID-19 because she had been infected by the virus in July 2021. Lim Decl. ¶ 9; Dkt. No. 19-4 ¶ 7; Wood Decl. Ex. 1 [Fountila Dep.] at 58:16-59:2. The City also denied that request. Lim Decl. ¶ 9. Like Keene, Fountila also believes that the City's vaccination policy was unfair as applied to her because she has "natural immunity." Wood Decl. Ex. 1 [Fountila Dep.] at 57:18-23; *see also id.* at 58:5-8 ("So do you think that they should have

1   exempted you from getting the vaccine because of your natural immunity? A. Certainly.").

2       **D.**    **Granting Plaintiffs' exemption requests would have posed an undue burden on the**
3                 **City's operations.**

4       In the Fall of 2021, when Plaintiffs requested exemptions from the City's vaccine mandate,

5   allowing Plaintiffs to forgo the vaccine and instead telecommute 100 percent of the time would have

6   posed an undue burden on the City. Ellison Decl. ¶ 13. In late 2021 and early 2022, many WDD staff

7   were out sick due to COVID-19 infections and quarantine policies. *Id.* WDD was further short-staffed

8   because many employees went out on leave on or around November 1, 2021, the deadline for many

9   City employees to receive the COVID-19 vaccine. *Id.* As a result, HSA needed all hands-on-deck due

10   to the large number of San Francisco citizens out of work and in need of HSA's services, and because

11   WDD had expanded its mission to support the City's recovery. *Id.* As WDD employees were reporting

12   to the office only two days per week between August 2021 and September 2022, WDD's onsite staff

13   availability was already spread thin. *Id.* Losing even one or two staff onsite had a substantial impact on

14   WDD's ability to serve its vulnerable clientele, many of whom did not have access to video

15   conferencing tools or reliable internet access. *Id.*

16       Nor could the City allow Plaintiffs to report to HSA's office unvaccinated. *See* Wilson Decl. ¶¶

17   9-11. Doing so would have posed a health and safety risk to Plaintiffs' co-workers and HSA's clients.

18   *Id.* Because they were unvaccinated, Plaintiffs were also more likely to contract COVID-19 and spread

19   the disease to their co-workers and HSA's clients, even if they had previously contracted COVID-19.

20   *Id.* ¶¶ 9-10. Masking and social distancing, though helpful, would have been insufficient to offset the

21   risk that Plaintiffs posed to their co-workers and HSA's clients. *Id.* ¶ 11.

22       **E.**    **Plaintiffs Delayed Seeking a Preliminary Injunction.**

23       Plaintiffs allege two claims against the City for religious discrimination under Title VII and

24   FEHA. *See* Dkt. 1. Both Plaintiffs acknowledge they have been aware of the City's Vaccination Policy

25   since at least June 2021, and understood by no later than October 2021 that they faced separation from

26   employment as a result of being unvaccinated. Dkt. No. 19-3 ¶¶ 7, 19; Dkt. No. 19-4 ¶¶ 6, 10-12.

27   Nevertheless, Plaintiffs waited until December 21, 2021 to file their initial lawsuit against the City.

28   *See* Shapiro Decl. Ex. 4.

Even then, Plaintiffs did not seek emergency relief. Instead, in February 2022, Plaintiffs voluntarily dismissed their original lawsuit, Shapiro Decl. Ex. 5, and refiled this narrower action on March 14, 2022. They then waited more than two months to bring their motion for a preliminary injunction. During that period, both moving Plaintiffs – Keene and Fountila – retired from employment with the City, effective March 30 and April 1, 2022, respectively. (Dkt. No. 19-3 ¶ 19; Dkt. No. 19-4 ¶ 12).

**F.    The Ninth Circuit reversed and remanded the Court's Order denying Plaintiffs' PI Motion for further consideration of various issues.**

On September 23, 2022, the Court denied the PI Motion, finding Plaintiffs had not demonstrated they were likely to prevail on the merits or would suffer irreparable harm absent a PI, and that the balance of equities and public interest weighed in favor of denial. Dkt. No. 31 ("September 23 Order") at 3-5. Plaintiffs appealed that order. Dkt. No. 38. On May 15, 2023, the Ninth Circuit issued a Memorandum, reversing and remanding the Court's order denying the PI Motion, with instructions to reevaluate various issues. *Keene*, 2023 WL 3451687 at 2-3.

As to likelihood of success on the merits, the Ninth Circuit questioned the Court's finding that there are "no grounds upon which to assert the mistaken conclusion that the FDA-approved vaccines contain fetal cells or are otherwise derived from murdered babies," as there was evidence that "the COVID-19 vaccines are, albeit remotely, 'derived' from aborted fetal cell lines." *Keene*, 2023 WL 3451687 at *2. The Ninth Circuit also noted that Plaintiffs' religious beliefs need not be "scientifically accurate" to be sincere and that there was insufficient evidence in the record to find Plaintiffs' stated beliefs were insincere. *Id.* The Ninth Circuit did **not** find that Plaintiffs had established they were likely to succeed on the merits or that they could otherwise show that their alleged beliefs were sincere and religious.

The Ninth Circuit did not challenge the Court's conclusion that loss of employment does not constitute irreparable harm. *Id.* Instead, it directed the Court to consider several other arguments concerning irreparable harm, including "Appellants' argument that they lost the opportunity to pursue their 'chosen profession,'" and their argument that the City "'g[ave] [Plaintiffs] a Hobson's choice:

lose your faith and keep your job, or keep your faith and lose your job.'" *Id.* The Ninth Circuit remanded for further consideration, but did not otherwise address the merits of these arguments. *Id.*

Finally, as to the balance of the equities, the Ninth Circuit found "there is no indication that the district court considered the public interest in enforcement of civil rights statutes" and remanded for "the district court to extend its analysis" so that it could consider this issue. *Keene*, 2023 WL 3451687, at \*3. Again, the Ninth Circuit expressed no opinion on how this balance of equities tipped. *Id.*

**ARGUMENT**

**I.    The Court may consider additional pleadings and evidence on remand.**

Plaintiffs appear to have taken the erroneous position that the parties may not augment the record on remand. But it is well settled that, "[o]n remand, a district court may permit a party to 'file additional pleadings, [and] vary or expand issues." Chris Goelz, Peder K. Batalden, John F. Querio, Rutter Group Prac. Guide Fed. Ninth Cir. Civ. App. Prac. Postappeal Proceedings, Ch. 12-E (2023). Likewise, this Court may consider new evidence on remand so long as such evidence does not include material that the Ninth Circuit's mandate forbid the Court from considering. *See id.* (citing *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1436 (9th Cir. 1984).

**II.    Plaintiffs fail to demonstrate likelihood of irreparable harm.**

On remand, the Court may not grant Plaintiffs' PI motion absent a showing that Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief, even if Plaintiff prevails on the other *Winter*[5] factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In the September 23 Order, the Court held "[i]t is well-settled law that loss of employment does not constitute irreparable harm" and rejected Plaintiffs' argument that they suffered irreparable harm because "they have been forced to choose between maintaining their employment or taking a vaccine that they do not want." Dkt. No. 31 at 6. The Ninth Circuit did not take issue with either of these findings, but nevertheless remanded because the Court "never considered [Plaintiffs'] argument that they lost the opportunity to pursue their "'chosen profession,'" or Plaintiff's argument that the City "''gave [Plaintiffs] a Hobson's choice: lose your faith and keep your job or keep your faith and lose

---

[5] *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) (setting forth standard for preliminary injunction).

RESPONSE TO MOTION TO ENTER ORDER
CASE NO. 22-cv-01587-JSW

n:\labor\li2022\220836\01686499.docx

your job.'" *Keene*, 2023 WL 3451687, at *2. Neither of Plaintiffs' argument is availing here.

**A.   Loss of employment does not constitute irreparable harm and Plaintiffs cannot show they lost their careers.**

"It is black letter law that 'money damages ordinarily provide an appropriate remedy' for unlawful termination of employment." *Together Employees*, 32 F.4th at 86 "[I]nsufficiency of savings or difficulties in immediately obtaining other employment – external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself – will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). Accordingly, numerous courts have denied preliminary injunctions sought by plaintiffs who were terminated for failure to comply with employers' COVID-19 vaccination policies.[6]

Plaintiffs attempt to recast their harm as loss of "career" in contrast to loss of "employment." This tactic has been tried, and rightfully rejected, in another recent case challenging an employer's COVID-19 vaccination policy. *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1182 (D.N.M. 2021), aff'd, No. 21-2105, 2022 WL 2129071 (10th Cir. June 14, 2022) (no irreparable harm despite assertion the vaccine policy prevented plaintiffs "from engaging in their chosen profession" of nursing).

Plaintiffs' argument is also belied by their own deposition testimony. In support of the PI Motion, both Keene and Fountila characterized their "careers" in amorphous terms that boil down to a desire to help people "in need" and work with underserved and underrepresented populations. Dkt. 19-3 ¶ 2; Dkt. 19-4 ¶ 3; *see also* Wood Decl. Ex. 1 [Fountila Dep.] at 24:8-25:11; Ex. 2 [Keene Dep.] at 18:17-19:4. Keene and Fountila's testimony confirms that their ability to fulfill their desires to "help people" and serve those in need was not tied to employment with the City's Human Services Agency.

---

[6] See *Together Employees v. Mass Gen. Brigham Inc.*, 32 F.4th 86 (affirming denial of preliminary injunction  to employees who opposed employer's vaccination policy on religious ground because money damages would resolve alleged harms); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1303 (D. Hawaii 2022) (harms alleged by plaintiffs challenging vaccination policy under Title VII and the ADA "are common to loss of employment cases and are not extraordinary, or are reparable" thus "injunctive relief is unwarranted"); *Bauer v. Summey*, 568 F. Supp. 3d 573, 604-05 (D.S.C. 2021) ("plaintiffs fail to make a clear showing of irreparable harm based on their loss of employment under the [COVID-19 vaccination] Policies" because such loss is "fully compensable by monetary damages").

Both Plaintiffs testified that those desires were fully realized in the positions they held with other employers prior to working for the HSA. Wood Decl. Ex. 1 [Fountila Dep.] at 25:14-27:1, 27:15-28:1; Ex. 2 [Keene Dep.] at 23:18-25:23. Fountila also testified that this spring she held a "rewarding" position with a non-profit through which she provided training and mentoring to individuals working in afterschool programs. Wood Decl. Ex. 1 [Fountila Dep.] at 35:8-36:3, 36:6-37:17. Both Keene and Fountila also acknowledged that the county in which they live – Contra Costa County – has a Human Services Agency that engages in the same kind of outreach that they engaged in while working for the City. Wood Decl. Ex. 1 [Fountila Dep.] at 39:13-25, 40:12-41:3; Ex. 2 [Keene Dep.] at 34:9-25. Despite knowing this, Keene admitted that she has not been looking for employment elsewhere since leaving the City. *Id.* Fountila admitted that she had looked into a position with "human services out here in Pittsburg, but [she] didn't apply for any positions or anything like that." Wood Decl. Ex. 1 [Fountila Dep.] at 40:25-41:2. Based on this record, Plaintiffs cannot credibly claim that they will be irreparably harmed and "lose their careers" absent an injunction.[7]

The cases Plaintiffs cited on appeal are easily distinguishable because they do not involve challenges to employer vaccine policies, and they allege harms based on unique circumstances not present in this case: reinstatement of a teacher suffering from AIDS with a few "precious" months to live (*Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701 (9th Cir. 1988)), reputational harm flowing from the suspension of a long-serving tenured professor pending the outcome of a former student's sexual harassment complaint (*Heineke v. Santa Clara Univ.*, 736 Fed. Appx. 622 (9th Cir. 2018)), denial of accommodations for the California bar exam precluding plaintiff from practicing law altogether (*Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011)), denial of accommodations that would permit a deaf student to attend medical school, (*Featherstone v. Pac. NW Univ. of Health Sciences*, No. 1:CV-14-3084-SMJ, 2014 WL 3640803 (E.D. Wash. Jul. 22, 2014)), and the preparation of bids to outsource the work of over 100 employees (*Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal.App.4th 298 (2012)). These inapposite cases cannot override the

---

[7] Keene also testified that she has a pending union grievance challenging the City's vaccination policy in which her religious exemption is at issue. In her grievance, Keene is seeking reinstatement to her prior position with backpay. Wood Decl. Ex. 2 [Keene Dep.] at 91:24-92:10, 93:5-16.

overwhelming authority holding that loss of employment is not irreparable harm.

**B.    Plaintiffs are not faced with a Hobson's choice because they already chose to retire from City employment, and irreparable harm cannot be presumed.**

Plaintiffs' "Hobson's choice" argument also misses the mark. Even if Plaintiffs had been forced to choose between their faith and their job (a point the City contests), a preliminary injunction would not relieve them of that decision, because they have already retired. The First Circuit rejected an indistinguishable argument in *Together Employees*, 32 F.4th at 82. In that case, the plaintiffs, who had been fired for failing to comply with a vaccine mandate, argued that "their alleged injuries are of constitutional magnitude because any chilling of their free exercise rights constitutes irreparable harm." *Id.* at 86-87. The court disagreed, holding: "MGB is not requiring appellants to be vaccinated involuntarily. Instead, "because appellants have refused to get vaccinated, they have been fired. The resulting loss of income undoubtedly harms them, but that harm is not irreparable." *Id.* at 87 (cleaned up). Moreover, as the deadline for being vaccinated had already passed, "the appellants cannot point to an 'impossible choice' as a special factor here; they have already made their choices."[8] *Id.* at *8. Likewise, here, Plaintiffs have already made their choice — they chose to retire rather than comply with the City's vaccine requirement.

Moreover, even if Title VII was violated, irreparable harm is not presumed. *Berndt v. California Dep't of Corr.*, No. C 03-3174 VRW, 2010 WL 11485028, at *5 (N.D. Cal. June 3, 2010), Plaintiffs raised a contrary argument on appeal based on *Smallwood v. National Can Co.*, 583 F.2d 419 (9th Cir. 1978), but that case is no longer good law after *Winter*. *Id.* Even if the irreparable harm presumption survived *Winter*, "plaintiffs' extremely long delay in filing their preliminary injunction motion rebuts the presumption of irreparable injury." *Id.* at *6.

---

[8] The Fifth Circuit's non-precedential decision *Sambrano v. United Airlines, Inc.,* No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022), also does not help Plaintiffs. That case involved United Airlines employees given the choice of receiving a COVID vaccine or being placed on unpaid leave. The court held there was an irreparable harm because "[the employees] are actively being coerced to violate their religious convictions." *Id.* at *6. However, the Court recognized that if United had simply fired the plaintiffs, as is the case here, it would preclude injunctive relief. *Id*. at *7.

**C.**   **Plaintiffs' delay in seeking a preliminary injunction further demonstrates a lack of irreparable harm.**

"Plaintiff's long delay before seeking a preliminary injunction implies a lack of . . . irreparable harm." *Oakland Trib., Inc. v. Chronicle. Pub. Co., Inc*., 762 F.2d 1374, 1377 (9th Cir. 1985). Plaintiffs learned of the City's vaccination policy on June 23, 2021 and understood that they must be vaccinated by November 1, 2021. Dkt. No. 19-3 ¶ 7; Dkt. No. 19-4 at ¶¶ 6, 8. Yet they waited until December 2021 to bring an action challenging the City's vaccine mandate. Shapiro Decl. Ex. 4. Then they dismissed their first action, refiled their Title VII and FEHA claims on March 14, 2022, *id.* Ex. 5, and then waited more than two months to seek a preliminary injunction. Dkt No.1; Dkt No. 19. Plaintiffs' maneuvering and long-delayed preliminary injunction motion are inconsistent with irreparable harm. Moreover, contrary to Plaintiffs' arguments, they could have sought preliminary relief before they retired and before they exhausted administrative remedies. *See McGinnis v. U.S. Postal Serv.,* 512 F. Supp. 517, 520-21 (N.D. Cal. 1980) (district court had jurisdiction to prohibit postal service from terminating employee despite plaintiff's failure to await the running of the 180-day conciliation period provided for under Title VII.)

**III.**   **Plaintiff failed to demonstrate likelihood of success on the merits.**

As Plaintiffs have failed to demonstrate irreparable harm, the Court need not reach the issue of whether Plaintiffs are likely to succeed on the merits of religious discrimination claims under Title VII and FEHA.  *All. for the Wild Rockies*, 632 F.3d at 1135. Nevertheless, Plaintiffs cannot prevail on this factor either because (1) Plaintiffs' objections to the vaccines were not rooted in religion; and (2) accommodating Plaintiffs' requests would have posed an undue burden to the City.

**A.**   **Plaintiffs have not shown and cannot show they had a sincerely held religious belief that conflicted with the City's COVID-19 vaccine mandate.**

To meet their burden of establishing likelihood of success on their Title VII and FEHA[9] claims, Plaintiffs must demonstrate, inter alia, that they had "a bona fide religious belief, the practice of which conflicts with an employment duty." *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th

---

[9] "California courts apply the Title VII framework to claims brought under FEHA." *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007).

Cir. 2006). The Ninth Circuit held that the record was insufficient to support the Court's conclusion that Plaintiffs did not have a sincerely held religious belief that conflicted with receiving the COVID-19 vaccine because Plaintiffs had submitted declarations that stating they could not receive a vaccine "'derived from murdered children,'" and there was evidence that "the COVID-19 vaccines are, albeit remotely, 'derived' from aborted fetal cell lines." *Keene*, 2023 WL 3451687, at *2. The documents that Plaintiffs submitted with their religious exemption requests and their deposition testimony--which were not part of the appellate record--casts serious doubt on Plaintiffs' claim that their objections to the COVID-19 vaccines were rooted in sincerely held religious beliefs.

To qualify as a bona fide religious belief, a plaintiff must show "both that the belief or practice is religious and that it is sincerely held." *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R.*, 279 F.3d 49, 56 (1st Cir. 2002). Likewise, a proffered belief must be rooted in religious belief, not purely secular or philosophical concerns. *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir.1981). Beliefs need not be "acceptable, logical, consistent, or comprehensible to others" to qualify as religious. *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981).

In *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679 (9th Cir. 1998), the Ninth Circuit found that the timing of a department store employee's religious pilgrimage was a matter of personal preference rather than a bona fide religious belief. The plaintiff was a devout Roman Catholic who requested unpaid leave so that she could make a pilgrimage in October 1983. The Ninth Circuit held that the plaintiff's religious beliefs did not include a temporal mandate, which would have required her to go on the pilgrimage in October 1983. *Id.* at 682. The record was replete with evidence that contradicted her claim that a temporal mandate was part of her bona fide religious belief. For example, the plaintiff went to the EEOC with a complaint of religious discrimination only after she found out her plane ticket was non-refundable. *Id.*

Likewise, in *Passarella v. Aspirus, Inc.*, No. 22-CV-287-JDP, 2023 WL 2455681, at *1 (W.D. Wis. Mar. 10, 2023), which is currently on appeal, the court granted a motion to dismiss the plaintiffs' Title VII claims because plaintiffs' objections to the COVID-19 vaccines were not rooted in religion. The plaintiffs claimed that they could not receive the vaccine because their "body is a temple," but neither articulated a religious belief that would have prevented them from taking a vaccine if they

believed it was safe. *Id.* at *5. Moreover, one of the plaintiffs only refused those vaccines she believed posed an undue risk." *Id.*; *see also Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023) (finding that "body is a temple" objection to COVID-19 vaccine does not create a blanket privilege that the employer must unfailingly respect).

Here, Plaintiffs' assertion that their objections to the COVID-19 vaccine were predicated on a sincerely held religious belief are not credible in light of the documentation they provided to support their exemption requests and their deposition testimony regarding their requests — evidence that was not available to the Ninth Circuit. The language used in Plaintiffs' exemption requests are taken word-for-word from the same form letter. *See* Lim Dec. Exs. 1, 4.  As in *Passarella* and *Ulrich*, Plaintiffs claimed that they could not receive the vaccine because their "body is a temple," and because they had secular concerns about the efficacy and safety of the COVID-19 vaccines. Lim Decl. Ex. 1 at 5, Ex. 4 at 5. When faced with further questions about the nature of their religious beliefs during the interactive process, Plaintiffs provided answers that further undermined the credibility of their assertion that their objections were rooted in religion, as opposed to secular concerns. Plaintiffs both testified that the information they received from Pastor Gistand and relied upon to form their beliefs about the COVID-19 vaccines was "scientific" information that he passed on from secular sources, including doctors, scientists, and politicians. Wood Decl. Ex. 1 [Fountila Dep.] at 57:5-17; Ex. 2 [Keene Dep.] at 74:8-22, 77:9-78:7. Both repeatedly testified that they believed the COVID-19 vaccines were ineffective and unsafe, posing grave threats to their health and safety, including death. *E.g.*, Wood Decl., Ex. 2 [Keene Dep.] at 36:24-40:12, 40:14-41:12, 43:22-45:25, 46:11-15, 48:4-16, 86:24-89:12, 100:14-102:22, 107:15-108:23; Ex. 1 [Fountila Dep.] at 45:23-46:25, 47:6-22. Keene also expressly admitted that even if the COVID-19 vaccines had not been developed using fetal cell lines, she still would not get vaccinated due to the health risks because, in her words, "with my own medical history, I do not need help to die."  Wood Decl. Ex. 2 [Keene Dep.] at 46:11-15, 48:4-16.

Plaintiffs averred they could not receive the COVID-19 vaccines because they were tested using fetal cell lines. Yet Keene admitted to using other medications tested with fetal cell lines, including taking Tums as recently as three months ago despite knowing it utilized fetal cell lines in development, and could not provide a coherent explanation as to why her religion allowed her to take

those medications but not the COVID-19 vaccine. Lim Decl. Ex. 2 at 11, Wilson Decl. ¶ 15, Wood Decl. Ex. 2 [Keene Dep.] at 110:17-111:18, 112:6-113:6, 113:16-114:23, 119:19-120:15, 121:19-122:21. Fountila initially refused to provide a straight answer about whether she used other medications that were tested with fetal cell lines. Lim Decl. Ex. 5 at 17, Wilson Decl. ¶ 15. When pressed on the issue, Fountila said she refused to take any medications, not because of religious concerns, but because "they have adversely affected my body and cause harm." *Id.* at 6. In her deposition, she confirmed that her desire to forego medications, including vaccinations, of any kind was based upon nothing more than a decision she made more than a decade ago to pursue a "healthy lifestyle" that included giving up fast-food and going to the gym. Wood Decl. Ex. 1 [Fountila Dep.] at 93:24-96:12, 100:5-101:22. And both referred to the vaccines as "coercive experiments with clear danger and harm." Lim Decl. Ex. 2 at 9-10, Ex. 5 at 15. Finally, both Plaintiffs believe that they have "natural immunity" due to prior COVID-19 infection, which they believe is more effective than vaccination and renders the City's vaccination policy irrational and unfair as applied to them. Wood Decl. Ex. 2 [Keene Dep.] at 51:5-17, 53:3-7, 53:20-24, 54:16-55:13, Ex. 1 [Fountila Dep.] at 57:18-23, 58:5-8, 58:16-59:2.

Plaintiffs' own documentation and sworn testimony shows that their objections to the COVID-19 vaccines were in fact rooted in secular beliefs concerning the safety and efficacy of the vaccines, not sincerely held religious beliefs. Accordingly, Plaintiffs cannot make out a prima facie case for religious discrimination under Title VII or FEHA.

**B.    The City has demonstrated that exempting Plaintiffs from the vaccine mandate in the Fall of 2021 would have caused undue hardship.**

Even if Plaintiffs could meet their burden to show that they had sincerely held religious beliefs that conflicted with receiving the vaccine, the City can show that exempting Plaintiffs from the City's vaccine mandate in the Fall of 2021 would have caused the City undue hardship.

In late June 2023, the Supreme Court clarified the standard for assessing undue hardship in *Groff v. DeJoy*, No. 22-174, 2023 WL 4239256 (U.S. June 29, 2023). Previously, courts interpreted undue hardship to mean any effort or cost that is more than "de minimis." *Id.* at *4. Under the *Groff* standard, "an employer must show that the burden of granting an accommodation would result in

substantial increased costs in relation to the conduct of its particular business." *Id.* at \*11. "What matters more than a favored synonym for 'undue hardship' . . . is that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact" *Id.* While the Supreme Court clarified the standard, it had "no reservations in saying that a good deal of the EEOC's [preexisting] guidance in this area is sensible and will, in all likelihood, be unaffected by our clarifying decision today." *Id.*

The EEOC has provided guidance on the undue hardship standard in the context of the COVID-19 pandemic which predates *Groff* but is nonetheless consistent with that decision:

> Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business—including, in this instance, the risk of the spread of COVID-19 to other employees or to the public.
>
> Certain common and relevant considerations during the COVID-19 pandemic include, for example, whether the employee requesting a religious accommodation to a COVID-19 vaccination requirement works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public (especially medically vulnerable individuals).  Another relevant consideration is . . . the cumulative cost or burden on the employer.[10]

Here, when Plaintiffs  submitted their exemption requests in the fall of 2021, their job duties required them to work in indoor cubicles near other employees and to be in close contact with clients from vulnerable populations, as well as other members of the public. Ellison Decl. ¶¶ 8-13. In this work environment, had they been permitted to report to work unvaccinated, Plaintiffs would have posed a health and safety risk to their co-workers and HSA's clients. This risk would have existed even if Plaintiffs had observed masking and social distancing protocols and even if they had previously contracted COVID-19. Wilson Decl. ¶¶ 9-11.[11] And, allowing Plaintiffs to work 100%

---

[10] EEOC Guidelines, § L: "Vaccinations – Title VII and Religious Objections to COVID-19 Vaccine Mandates": https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery&utm_term=# (last accessed July 3, 2023).

[11] Plaintiffs submitted a declaration from Dr. Jayanta Bhattacharya in which he expresses certain opinions concerning "the adoption by the Belmont Public School District and the Cambridge Public School District of mandates requiring students to receive one of the COVID-19 vaccines." Dkt. No. 19-5 ¶ 6. Bhattacharya did not consider the City's vaccine mandate or Plaintiffs' particular work environment.  Notably, several other judges in this District have concluded that Bhattacharya's opinions concerning COVID-19 are flawed and unpersuasive. *See Gateway City Church v. Newsom*, 516 F. Supp. 3d 1004, 1021 (N.D. Cal. 2021), appeal dismissed, No. 21-15189, 2022 WL 3031598 (9th Cir. Feb. 16, 2022) ("The Court is not persuaded by Dr. Bhattacharya's focus on infection

1   remotely would have also posed an undue burden on HSA and its ability to service its clients, many of

2   whom did not have access to phones, computers, or Wi-Fi. Ellison Decl. ¶ 13.

3   **IV.    The balance of equities and public interest also weigh against a preliminary injunction.**

4           Absent a showing on the other *Winter* factors, the Court need not reach the balance of the

5   equities and the public interest. *All for the Wild Rockies*, 632 F.3d at 1135. But these factors also

6   weigh against a preliminary injunction. The Court previously held that "[e]ven considering the specific

7   harm of the individual plaintiffs in this matter who were compelled to retire early, 'when balancing the

8   harm against the legitimate and critical public interest in preventing the spread of COVID-19 by

9   increasing the vaccination rate . . . the Court finds the balance weighs in favor of the broader public

10  interests.'" Dkt. No. 31 (quoting *Mass. Corr. Officers*, 567 F. Supp. 3d at 327). The Ninth Circuit

11  remanded for the Court to "extend its analysis" to "consider[] the public interest in enforcement of

12  civil rights statutes." *Keene*, 2023 WL 3451687, at *3. Here, since Plaintiffs cannot show a likelihood

13  of prevailing on the merits of their Title VII or FEHA claims, the public interest in enforcement of

14  civil rights statutes does not weigh in favor of granting a preliminary injunction. Nor are Plaintiffs'

15  purported religious interests "beyond regulation in the public interest," including regulation aimed at

16  reducing the risk of " 'expos[ing] the community . . . to communicable disease.' " *Doe v. San Diego*

17  *Unified Sch. Dist*., 19 F.4th 1173, 1182 (9th Cir. 2021).

18          / / /

19          / / /

20          / / /

21          / / /

22          / / /

23          / / /

---

24  survival rates, considering that many individuals who survive COVID-19 suffer serious long-term side
    effects and many others experience significant suffering before recovering."); *Tandon v. Newsom*, 517
25  F. Supp. 3d 922, 957 (N.D. Cal. 2021), appeal dismissed, No. 21-15228, 2021 WL 3507736 (9th Cir.
    July 7, 2021) ("Additionally, Dr. Bhattacharya's declaration, which focuses on mortality, ignores the
26  serious long-term effects that plague many non-vulnerable people who have recovered from COVID-
    19."). In any event, Wilson disagrees with Bhattacharya, and "at most, the conflicting opinions of Dr.
27  Bhattacharya and Dr. [Wilson] create a battle of the experts precluding a finding that Plaintiffs are
    likely to succeed on the merits on the basis of Dr. Bhattacharya's opinions." *UnifySCC v. Cody*, No.
28  22-CV-01019-BLF, 2022 WL 2357068, at *9 (N.D. Cal. June 30, 2022).

RESPONSE TO MOTION TO ENTER ORDER                                    n:\labor\li2022\220836\01686499.docx
CASE NO. 22-cv-01587-JSW

1

## CONCLUSION

2

      For the foregoing reasons, the Court should issue an order consistent with the Ninth Circuit's

3

decision and deny Plaintiffs' motion for a preliminary injunction.

4

5

Dated: August 25, 2023

6

                          DAVID CHIU
                          City Attorney

7

                          LAUREN E. WOOD

8

                          ADAM SHAPIRO
                          Deputy City Attorneys

9

10

                   By: */s/ Lauren E. Wood*
                        LAUREN E. WOOD

11

12

                        Attorneys for Defendant
                        CITY AND COUNTY OF SAN FRANCISCO

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28