1  DAVID CHIU, State Bar #189542
   City Attorney
2  JONATHAN C. ROLNICK, State Bar #151814
   Chief Labor Attorney
3  LAUREN E. WOOD, State Bar #280096
   ADAM M. SHAPIRO, State Bar #267429
4  Deputy City Attorneys
   Fox Plaza, 1390 Market Street, 7th Floor
5  San Francisco, California 94102-5408
   Telephone:      (415) 554-4261 (Wood)
6                  (415) 554-3830 (Shapiro)
   Facsimile:      (415) 554-4699
7  E-Mail:         lauren.wood@sfcityatty.org
                   adam.shapiro@sfcityatty.org
8
   Attorneys for Defendant
9  CITY AND COUNTY OF SAN FRANCISCO

10

11                     UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13

14  SELINA KEENE, MELODY FOUNTILA,        | **DECLARATION OF BART ELLISON**
    MARK MCCLURE,

15       Plaintiffs,
                                          | Judge:         Honorable Jeffrey S. White
16       vs.

17  CITY and COUNTY OF SAN FRANCISCO      | Filed:         March 14, 2022
                                          | Trial Date:    None set
18       Defendant.

19

20

21

22

23

24

25

26

27

28

BART ELLISON DECL                                      n:\labor\li2022\220836\01686095.docx

 CASE NO. 4:22-cv-01587-JSW                1

1    I, Bart Ellison, declare:

2         1.       I am currently employed by the City and County of San Francisco (the "City") at the

3    San Francisco Human Services Agency ("HSA").

4         2.       Except where stated otherwise, I have personal knowledge of the following facts and,

5    if called to testify, could and would testify competently thereto.

6         3.       I am currently employed as the Program Director for Workforce Development at HSA,

7    a position I have held since approximately 2017. In that role, I supervise the Workforce Development

8    Division ("WDD"), in which both Selina Keene and Melody Fountila worked, and I am familiar with

9    their work and job responsibilities.

10        4.       Ms. Keene worked for the HSA as 9704 Employment & Training Specialist III

11   ("9704") at WDD. Ms. Fountila held that same position.

12        5.       Under the direction of a supervisor, 9704's perform important, technical work in

13   specialized areas of employment and training, such as job development, training, vocational

14   assessment, program monitoring and program evaluation; and perform related duties as required.

15        6.       As 9704's, Ms. Keene and Ms. Fountila were front-line workers providing direct

16   services to some of the most vulnerable populations in San Francisco.

17        7.       At the beginning of the COVID-19 pandemic in March 2020, 9704's began to meet

18   with clients virtually. However, because 9704's served the most vulnerable populations in the City —

19   many of whom do not have access to computers, cellphones, or WiFi — 9704's continued to meet in-

20   person with many clients throughout the pandemic. In the beginning of the pandemic, HSA relied on

21   9704' to volunteer to come into the office to provide in-person services.

22        8.       On November 19, 2020, HSA reopened its campus at 3120 Mission Street, San

23   Francisco so that it could offer limited services to HSA clients and those wishing to apply for benefits.

24   At that time, staff assigned to one of the WDD satellite locations, 1800 Oakdale, where Ms. Keene and

25   Ms. Fountila formerly worked, was relocated to the 3120 Mission Street campus. The main purpose in

26   reopening was to assist HSA clients who had no access to internet, WiFi, or phone, and needed to

27   apply for benefits, apply for jobs, complete the online City application, or connect with HSA staff,

28   among other things.

BART ELLISON DECL.
CASE NO. 22-cv-01587-JSW

9.      In November 2020, WDD had enough volunteers for daily onsite staffing and the remainder of the staff continued full-time telecommuting. At that time, Ms. Keene and Ms. Fountila were allowed to full-time telecommute, unless a client needed to schedule an in-person meeting with one of them.

10.     On August 20, 2021, I sent an email to HSA staff, including Ms. Keene and Ms. Fountila, announcing that WDD staff would be returning to the office on September 13, 2021 on a rotational basis. Within that rotation, the City's Department of Human Resources ("DHR") mandated that staff work onsite at least two days per week. In September 2022, all WDD staff were required to come into the office in person at least three days per week.

11.     Starting in or around September 2021, approximately 20 to 30 WDD employees worked on the floor at 3120 Mission Street where Ms. Keene and Ms. Fountila would have worked. These WDD employees worked in cubicles, and frequently met in person with clients and members of the public in the lobby of 3120 Mission Street. Employees were instructed to wear masks and observe social distancing protocols while in the office.

12.     Between November 2021 and April 2023, there were approximately 11,244 in-person client appointments at 3120 Mission Street.

13.     Allowing Ms. Keene and Fountila to telecommute 100 percent of the time indefinitely would have posed an undue burden on HSA and also would have had an impact on WDD's ability to serve its clients. In late 2021 and early 2022, many WDD staff were out due to COVID infections and quarantine policies. Moreover, many employees also went out on leave on or around November 1, 2021, the deadline for many City employee to receive the COVID-19 vaccine. During this period and thereafter, HSA needed all hands-on-deck due to the large number of San Francisco citizens out of work and in need of HSA's services. HSA had expanded its eligibility for JobsNOW, one of its employment assistance services. WDD was also part of the Mayor's Economic and Employment Recovery Task Force. As a result, WDD pivoted its efforts to support the City's recovery.  This added to our all-hands-on-deck approach and we needed as much staff onsite to service our clients. As WDD employees were reporting to the office only two days per week between August 2021 and September

1   2022, our onsite staff availability was already spread thin. Accordingly, losing even 1 or 2 staff onsite

2   had a substantial impact on our ability to provide assistance to our clients.

3

4        I certify under penalty of perjury under the laws of the State of California and the United States

5   of America that the foregoing is true and correct.

6        Executed this 29th day of June 2023 at San Francisco, California.

7

8   By: _____
          BART ELLISON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BART ELLISON DECL.
CASE NO. 22-cv-01587-JSW

n:\labor\li2022\220836\01686095.docx