Hugo Torbet
Attorney at Law, SBN 147650
1 Harbor Dr., Suite 300
Sausalito, CA 94965
Telephone: (415) 986-9400
email: steadyrolling@gmail.com

Attorney for Plaintiff
Joseph Cook (22-07645)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SELINA KEENE, et al., | ) | No. 22-cv-01587-JSW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | PLAINTIFF COOK'S OBJECTIONS TO |
| v. | ) | DEFENDANT'S DISCOVERY PLAN |
| | ) | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AND CONSOLIDATED CASES. | ) | |

In response to the dictates in the minute report of the discovery conference, (Docket No. 126,) Mr. Cook argues that:

1.  The law must deal with known, provable facts.  With respect to the Covid-19 pantomime, the most fundamental fact is that while the United States only has 4.2% of the world's population, we had 16% of the alleged Covid-19 cases, and 16% of the alleged Covid-19 deaths.  This evidences a failure of public policy which is at a galactic level.  Indeed, it is difficult to imagine how much worse political power could have performed, particularly considering the aftermath, i.e., the utter

devastation of the economy, which, notably, has proven very, very profitable for the richest few.

A significant element in this indisputable failure of public policy is found in the results of the mRNA experiment.  Based on the government's own numbers, these products have injured more people than all other genuine "vaccines" combined, and have killed three times as many.  (Exhibit A.)  Aggravating this hard reality is the fact that vaccine injuries are under-reported by a factor of at least twenty.  The reason being that to report an injury, a physician must spend thirty to sixty minutes of uncompensated time inputting data to an online government database.  Not very many physicians will do this, and those who do, won't do it very often.  That's the proven anthropology of the matter; not a moral judgment.

In the end, the most frightening fact in the Covid-19 pantomime is that the people who are responsible for the disasterous results remain in control of the levers of the ggovernment.  Unfortunately, very few people in government service abide Colin Powell's recommendation for accountability in governance – to wit:  "You break it, you own it."  Instead, and again, this is not a moral judgment, this is anthropology, with nearly every failure, the government and its actors will actively evade responsibility for their decisions and actions.  This phenomenon often takes form of a so-called "cover-up."

The government's discovery proposal at Docket No. 125 is part and parcel of just such a failure by the government to own its mistakes – in this circumstance, as it relates to the Covid-19 pantomime, including, but not limited to, the oppression of

1  Mr. Cook's civil rights.
2      2.  First things first.
3          (a)  The government represents that "Plaintiff Cook and
4      Defendant exchanged General Order No. 71 disclosures."  (Id.
5      3:15-16.)
6          This is true only under the most liberal construction
7      of the word "exchanged."
8          The truth is that while Mr. Cook worked very hard to
9      provide complete disclosures in good faith, and while the
10     government did serve a document entitled "disclosures," the
11     government provided a mere fraction of the information
12     required by the order.  In addition, the government served
13     absolutely no responsive documents.  Instead, in its
14     "disclosures" document, it merely promised to provide
15     unspecified, "non-privileged" documents at some unspecified
16     time in the future.
17         (b)  In order to adequately prepare his case for
18     dispositive proceedings and for trial, Mr. Cook diligently
19     propounded proper discovery requests in conformance with all
20     applicable laws.  In requesting an extension of thirty days
21     to respond, the government promised not only that a response
22     would be made, but also that the responses would be
23     "complete."  Of course it is undisputed that the government
24     did not honor this promise in either regard.
25         The discovery requests remain outstanding, subject to a
26     stay imposed by the court without process.  This state of
27     affairs is all the more distressing, because the government
28     lawyer also tried to persuade the undersigned to withdraw

1    the requests altogether, because his General Order No. 71
2    disclosures would be so comprehensive, the discovery
3    requests would be redundant or moot.  As noted, those
4    disclosures were never made.
5         (c)  The government should be ordered immediately to
6    make full and complete disclosures as required by General
7    Order No. 71, and to respond completely and good faith to
8    the outstanding discovery requests.
9    3.  Mr. Cook has no objection to the government's use of one
10   or more questionnaires.  Fundamentally, these are just a stylized
11   framing of interrogatories, so that if the government wishes to
12   break traditional practice and propound discovery in this
13   fashion, it is probably harmless.  Not that it makes a lot of
14   sense; only that it is probably harmless.
15        However, if the enquiries in the government's first proposed
16   questionnaire are counted in the fashion in which interrogatories
17   are counted in federal court, they greatly exceed the allowed
18   number of twenty-five.  (Fed. R. Civ. P. 33(a)(1).)  Hence, an
19   inference could be made the real purpose of the questionnaire or
20   multiple questionnaires is to evade the limitations placed by the
21   legislature in the law.
22        Mr. Cook is prepared to agree to an increase in the
23   government's allotted interrogatories.  His proviso is that he
24   should enjoy leave to propound as many interrogatories as the
25   government is allowed.  Which is not to suggest that he will
26   propound thirty-eight, or fifty-seven, or sixty-seven, or however
27   many the government intends to propound.  Only that he ought not
28   be limited to twenty-five, if the government is not also

1 similarly limited.

2     4.  The government's proposal to limit Mr. Cook to ten
3 interrogatories, ten requests for admission, and ten inspection
4 demands is both ludicrous and devoid of good cause.  The fact is
5 that the Rules of Civil Procedure, and the discovery rules in
6 particular, have been refined over decades.  Obviously, they are
7 not perfect, and their development has been influenced by special
8 interests.  However, they are at least one set of goal posts to
9 which everyone, the parties and the court, can refer.  The idea
10 that a small group of lawyers in San Francisco are smarter than
11 the collective wisdom of the legislative process would be
12 laughable were it not such an alarming invitation to more abuse.

13     The bottom line is that the rules provide the parties with
14 specific tools to prepare their cases, so that Due Process and
15 fundamental fairness are served.  No good cause has been shown,
16 or exists, why the rules should be abridged in any manner in this
17 case.  Mr. Cook's rights to discovery in this case are at least
18 equal to the government's rights.

19     5.  The government has not articulated any specific facts
20 how the potentiality of duplicative discovery requests from the
21 plaintiffs is any sort of a problem.  For example, if two
22 plaintiffs ask the same interrogatory, or ask for the same
23 document, the government could simply respond to the request made
24 later in time that the discovery has already been made.  Further,
25 the plaintiffs' lawyers are all experienced.  And they can all
26 read, so that if one lawyer asks a question which one of the
27 others has been contemplating, the latter most likely will forego
28 re-asking the question, assuming that the first lawyer put the

matter correctly.

In any event, without some specifics about how this unarticulated potentiality is such a risk to the fair administration of justice, it does not constitute good cause to impose any restrictions on the plaintiffs' lawyers beyond the restrictions already in place in statutes.

6. Mr. Cook is opposed to the opaque concept of a "liason counsel," (Docket No. 125, 5:12-14,) or to any proposal that his rights and interests, including those related to discovery, be corralled with, or sublimated to, the rights and interests of any or all of the other aggrieved employees.

District Judge White did not order the consolidation of these cases for the sake of discovery and trial preparation.  He ordered merely that "Written discovery exchanged ... in any case shall be treated as if the discovery ... had been exchanged or taken originally in each case."  (Docket No. 90, 3:17-19.)

District Judge White's order is consistent with precedent, which provides that the consolidation of cases does not join the cases.  (Enterprise Bank v. Saettele, 21 F.2d 233, 235 (8th Cir. 1994).)  Each case remains separate from the others, (J.G. Link & Co. v. Continental Casualty Co., 470 F.2d 1133, 1138 (9th Cir. 1974); and see, Johnson v. Manhattan Railway. Co., 289 U.S. 479, 496-497 (1933),) with plaintiff's counsel in each case remaining ethically obligated to prepare his or her case for the benefit of his or her client(s).

For better or worse, Mr. Cook retained the undersigned.  He did not retain any of the other lawyers to work on his case or to otherwise represent his rights and interests.  His decision is

worthy of respect.

7. It is probably unwise to set an arbitrary limit of two days of examination for plaintiffs' depositions. As noted, because each of the consolidated cases retains its independence, each plaintiff or plaintiffs' group is entitled to seven hours of examination of any one witness. (Fed. R. Civ. P. 30(d)(1).)

Probably the best thing to do at this point is to wait and see how things go. It is probably true that many of the plaintiffs will have similar enquiries of various witnesses, so that each may not require a full seven hours. However, depositions do not always proceed smoothly, and a particular witness may have a lot of discoverable information which a government lawyer may be keen to obstruct.

What the court could order as a compromise is that if the government believes that a witness' testimony is exhausted after two days, the deposition will be suspended so that the government may seek either the agreement to terminate it or a court order setting other limits. Such a court order could be upon a phone call after short briefs outlining the problems, including the additional subjects of enquiry which are warranted.

8. Last. The government's true interest in the discovery proceedings is not to provide any discovery, and failing this, to provide as little as possible. Towards this end, it would be naive not to expect more of the obstruction and false promises which the government has already displayed.

Mr. Cook is deeply concerned that there will be an active effort to run out the clock on discovery, as there always is, and that without sufficient time to prepare, and sufficient, fair,

and prompt enforcement of rights from the court, his case will suffer prejudice.  As a result, he requests that the court allow for at least a full year of discovery proceedings once the stay is lifted.

Dated:   August 30, 3023

                                        Respectfully submitted,

                                        s/ Hugo Torbet

                                        Attorney for Joseph Cook

Exhibit A

# VAERS Summary for COVID-19 Vaccines through 8/18/2023

All charts and tables below reflect the data release on 8/25/2023 from the VAERS website, which includes U.S. and foreign data, and is updated through: **8/18/2023**.

| High-Level Summary | COVID19 vaccines (Dec'2020 - present) | All other vaccines 1990-present | US Data Only COVID19 vaccines (Dec'2020 - present) | US Data Only All other vaccines 1990-present |
|---|---|---|---|---|
| Number of Adverse Reactions | 1,587,565 | 944,991 | 982,087 | 818,690 |
| Number of Life-Threatening Events | 38,292 | 15,285 | 14,642 | 10,338 |
| Number of Hospitalizations | 208,676 | 89,241 | 86,628 | 40,855 |
| Number of Deaths | 35,980* | 10,395* | 17,948 | 5,587 |
| # of Permanent Disabilities after vaccination | 67,466 | 22,282 | 17,297 | 13,705 |
| Number of Office Visits | 238,281 | 61,467 | 195,697 | 58,527 |
| # of Emergency Room/Department Visits | 152,128 | 217,818 | 116,999 | 207,683 |
| # of Birth Defects after vaccination | 1,286 | 225 | 596 | 120 |

*Note that the total number of deaths associated with the COVID-19 vaccines is more than TRIPLE the number of deaths associated with **all other vaccines combined** since the year 1990.

## Deaths



[Unknowns separated from All Other Vaccines for greater clarity; in a majority of cases the Unknowns are actually Covid-19]