UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELINA KEENE, MELODY FOUNTILA, MARK MCCLURE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO<br><br>Defendant.<br><br>CONSOLIDATED ACTIONS | Lead Case No. 22-cv-01587-JSW<br>Case No. 22-cv-07455-JSW<br><br>**JOINT STIPULATION FOR FILING FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 15(a)(2)**<br><br>**Debrunner Action Filed: Nov. 23, 2022** |

Whereas, Plaintiffs Denise Angelina Debrunner, et al. ("Debrunner Plaintiffs") and the Defendant City and County of San Francisco ("City") have met and conferred regarding the filing by the Debrunner Plaintiffs of a First Amended Complaint to update the prayer for relief to include a new paragraph No. 10 making a request for an award of reinstatement.

IT IS HEREBY STIPULATED by and between the parties hereto through their respective attorneys of record that the Debrunner Plaintiffs may file a First Amended Complaint, a copy of which is attached hereto as **Exhibit "A."**

IT IS FURTHER STIPULATED that the defendant waives notice and service of the amended complaint and shall not be required to answer the amended complaint, and that all denials, responses

1    and affirmative defenses contained in the answer filed by defendant to the original complaint

2    [Docket No. 157] shall be responsive to the amended complaint.

3              IT IS SO STIPULATED.

4

5                                        LiMANDRI & JONNA LLP
                                         S|L LAW PLLC
6

7    Dated: March 7, 2024          By:  ___/s/ Robert Weisenburger___

8                                        Charles S. LiMandri
                                         Paul M. Jonna
9                                        Robert E. Weisenburger
                                         John C. Sullivan
10                                       *Attorneys for Plaintiffs Debrunner et. al.*
                                         in Case No. 4:22-cv-07455-JSW
11

12                                       CITY AND COUNTY OF SAN FRANCISCO

13

14   Dated: March 7, 2024          By:  _/s/ Pamela Ng_____.
                                         Michael Bruno
15                                       Alyson Cabrera
                                         Rachel Wintterle
16                                       Pamela Ng
                                         Mana Koleini
17                                       *Attorneys for Defendant*
                                         *City and County of San Francisco*
18

19

20   / / /

21   / / /

22   / / /

23

24

25

26

27

28

JOINT STIPULATION FOR FILING FIRST AMENDED COMPLAINT AND ORDER

1

## ATTESTATION OF E-FILED SIGNATURE

2

I, Robert E. Weisenburger, am the ECF User whose ID and password are being used to file

3

this Stipulation and [Proposed] Order Granting the filing of Plaintiffs' First Amended Complaint

4

and Reinstatement Filed By Plaintiffs Denise Angelina Debrunner, et al.  In compliance with Local

5

Rule 5-1(i)(3), I attest that Pamela Ng has read and approved this pleading and consented to its filing

6

in this action.

7

8                                          LiMANDRI & JONNA LLP
                                           S|L LAW PLLC
9

10   Dated: March 7, 2024            By:    ___/s/ Robert Weisenburger_____

11                                          Charles S. LiMandri
                                           Paul M. Jonna
12                                          Robert E. Weisenburger
                                           John C. Sullivan
13                                          *Attorneys for Plaintiffs Debrunner et. al.*
                                           in Case No. 4:22-cv-07455-JSW
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION FOR FILING FIRST AMENDED COMPLAINT AND ORDER

**EXHIBIT A**

Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
Robert E. Weisenburger, SBN 305682
  rweisenburger@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, California 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Counsel for Plaintiffs

John C. Sullivan, Texas Bar No. 24083920
  john.sullivan@the-sl-lawfirm.com
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX  75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891

Counsel for Plaintiffs
* Pro hac vice

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

DENISE ANGELINA DEBRUNNER; GREGORY EDWARD LATUS; PHILIP CHARLES HELMER; GERALD BURTON NEWBECK; JOHN LEONG; JONATHAN SHIROI TONG; ALICIA ANN WORTHINGTON; MIGUEL GONZALEZ; JOSEPH JOHN PORTA; ROGER CORMIER MORSE; NICHOLAS ALEXANDER SUSLOW; CHRISTOPHER SMITH; MICHAEL DAVID VANNUCCHI; ANTONIO LANDI; MATTHEW BRIAN ORTEGA; BRENDAN THOMAS ARISTOTLE CARAWAY; MICAH ALEXANDER NORRIS; CHRISTOPHER ROBERT SALAZAR, JR.; GORDON LEE SHYY; CHRISTOPHER JOHN COSTA; SHYRLE MARINA HAWES; JOHN BRANDON HOGE; JOEL EVAN AYLWORTH; JOHN PAYTON QUINLAN; ANTHONY SRINIVAS; ADDYSON JAMES AGUIRRE; RUBEN ANTONIO AGUIRRE; JUAN DANIEL GUSTILO III; PAUL BRICE LUJANO; RANDALL M. SOOHOO; CHRISTOPHER THOMAS SABELLA; MYKAEL S. THOMPSON; ROBBY WINSTON WILLKOM; KRYSTEL FORTIE; STEPHANIE FUJIHARA; JAMES KENNETH LEWIS III; VIOLA CHRISTINA MOLANO MCCALL; DENNIS CHARLES TUPPER, JR.; JOSHUA COLLIN TUPPER;

Case No.:

**FIRST AMENDED COMPLAINT FOR:**

**CAUSES OF ACTION:**
1. **COUNT ONE - TITLE VII – RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE (42 U.S.C. § 2000e-2(a)(1));**
2. **COUNT TWO - TITLE VII – RELIGIOUS DISCRIMINATION – DISPARATE TREATMENT (42 U.S.C. § 2000e-2(a)(1))**
3. **COUNT THREE - TITLE VII – RETALIATION FOR RELIGIOUS CLAIMS (42 U.S.C. §2000e-3(a))**
4. **COUNT FOUR – CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT RELIGIOUS DISCRIMINATION – FAILURE TO ENGAGE IN INTERACTIVE PROCESS (Cal. Gov. Code § 12900 et seq.)**
5. **COUNT FIVE - CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE (Cal. Gov. Code § 12940(l))**

1 HERSCHEL JULIAN TICZON; CARSON
ROBERT SCHILLING; SARAH BADR;
2 KIERA NOELLE O'SHEA; MARYLIN
TAYLOR; DR. SUSAN RUTH DOWNS;
3 ROBERT SETH GELLER; NOVIA
CHANDRA-MADEJSKI; RUNJOHNYA
4 BURGESS; KATRINA ANN MEIER;
MONICA LISSETTE GUTIERREZ;
5 ORCHID ZOE SOH; KRISTIN C.
LAVELLE; LUSIANA BARAJAS; ABBY
6 MARA THRASHER; DHEYANIRA E.
CALAHORRANO; LEONIDAS ROSALES
7 ESCALANTE; MEI MEI ZHU; NICOLE
BOWMAN; MEAGEN CAROLYN
8 CLENDENEN; CORA HERMOSO;
JESSICA LYNN JOHNSON; KARLYNE
9 MICHELLE KONCZAL; JUAN PABLO
PONCIA; NUBIA VARGAS; KAITLYN
10 MICHELLE VALENCIA; JOSEPH JOHN
CASTEEL; JOHN JOSEPH MULLEN;
11 RONALD MICHAEL TOLENTINO; OWEN
GLEN BRANTLEY; KEVIN RUSSELL
12 GUSTAFSON; MICHAEL ANTHONY
SORINI; MARTIN JOSEPH WALSH;
13 PATRICK GERARD DALY; REFUGIO J.
GARCIA; RANDAL RAY GERHART;
14 PATRICK FRANCIS MULLEN; TINA
LOUISE SANCHEZ; WALTER SANTO
15 VARO; SCOTT PEPITO; JAMES R.
SUTHERLIN; RICHARD DAVID FIELDS;
16 WILLIAM DANIEL BRENNAN; EUGENIA
MARIE CASTEEL; HECTOR MANUEL
17 RODRIGUEZ; NORMA ANNE
SEPULVEDA; HECTOR RODRIGUEZ;
18 CHRISTOPHER JOSEPH KROL;
MICHAEL JOHN BOUVIER; VALERIO
19 JOSIF; JEFFREY STEVEN MILLER;
MICHAEL GLISSON, JR.; GLEN RYAN
20 IDETA; DEREK WRAY; PAUL GABRIEL
JACOWITZ; ROBERT T. KRUGER III;
21 MARIA MARCELA HODGERS;
MATTHEW VINCENT JUAN; ERIC M.
22 PRADO; NATHAN SABLAN; JOSEPH
STEPHEN JACOWITZ; KEVIN ZAPANTA
23 CONTRERAS; VICKI LYNN SOLLS
DAVIS; ATTILA MICHAEL FOTI;
24 REGINALD BERNARD SNELGRO;
ALEXANDER LAVROV; JOAQUIN
25 VALLE; KEVIN BRESTON; LEROY L.
VANCE; LENARD MORRIS; DICKMAR
26 NOVA RODAS; RACHID AMGHAR;
BHANU VIKRAM; MICHAEL PATRICK
27

28

**6.** **COUNT SIX** - **CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT RETALIATION FOR RELIGIOUS CLAIMS (Cal. Gov. Code § 12940(h) et seq.)**

**7.** **COUNT SEVEN** - **AMERICANS WITH DISABILITIES ACT DISCRIMINATION BASED ON PERCEIVED DISABILITY (42 U.S.C. § 12101, et seq.)**

**8.** **COUNT EIGHT** - **AMERICANS WITH DISABILITIES ACT DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE (42 U.S.C. § 12101, et seq.)**

**9.** **COUNT NINE** - **AMERICANS WITH DISABILITIES ACT RETALIATION FOR DISABILITY CLAIMS (42 U.S.C. § 12101, et seq.)**

**10.** **COUNT TEN** - **CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT DISABILITY DISCRIMINATION – FAILURE TO ENGAGE IN INTERACTIVE PROCESS (Cal. Gov. Code § 12900 et seq.)**

**11.** **COUNT ELEVEN** - **CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT FAILURE TO ACCOMMODATE (Cal. Gov. Code § 12900 et seq.)**

**12.** **COUNT TWELVE** - **CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT RETALIATION FOR DISABILITY CLAIMS (Cal. Gov. Code § 12900 et seq.)**

**13.** **COUNT THIRTEEN** - **CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT FAILURE TO ACCOMMODATE PERCEIVED DISABILITY (Cal. Gov. Code § 12900 et seq.)**

**14.** **COUNT FOURTEEN** - **HOSTILE WORK ENVIRONMENT / WORK ENVIRONMENT HARASSMENT (Gov. Code §§ 12923, 12940(j))**

**15.** **COUNT FIFTEEN** - **VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION (42 U.S.C. § 1983)**

1  BOURNE; DERELL RUTHERFORD;
   SUZANNE BORG; DENISE AREVALO;
2  MEGAN BOYLE; ELIZABETH NG; SASA
   GALUEGA; PRISCILLA SAU LENH;
3  ANDREA SALFITI; DORIS NAUER;
   VIVIAN HYUN; ALDEN FRANCISCO
4  BELLO; YOHEI KAKUDA; HEATHER
   SUSAN TYKS; VINCE BRYANT-
5  TEASDALE; OLIVER SAMPSON
   HUGHES; JOHANNA JOSEPHA COBLE;
6  JERRY WAYNE SCHULZE; ZHANGRUI
   NIE; MARCOS PALACIO; GENTA
7  YOSHIKAWA; KENT NISHIMURA;
   SIMON CAN HUI YEP,
8
9              Plaintiffs,
10
   v.
11
   THE CITY AND COUNTY OF SAN
12 FRANCISCO, a municipal corporation and
   administrative division of the State of
13 California; LONDON BREED in her
   individual capacity and in her official capacity
14 as Mayor of San Francisco; CAROL ISEN, in
   her individual capacity and in her official
15 capacity as the Human Resources Director of
   the City and County of San Francisco; KATE
16 HOWARD, in her individual capacity and in
   her official capacity as the Deputy Director of
17 Human Resources for the City and County of
   San Francisco; MAWULI TUGBENYOH, in
18 his individual capacity and in his official
   capacity as Chief of Policy for the City and
19 County of San Francisco; JANIE WHITE, in
   her individual capacity and in her official
20 capacity as the Medical Leave Program
   Manager for the City and County of San
21 Francisco; and JESSICA COMES, in her
   individual capacity and in her official capacity
22 as the Citywide Reasonable Accommodation
   Coordinator for the City and County of San
23 Francisco, and DOES 1 through 100,
   inclusive,
24              Defendants.
25
26
27
28 / / /

16. **COUNT SIXTEEN – VIOLATION OF THE FREE EXERCISE CLAUSE OF THE CALIFORNIA CONSTITUTION (Article 1, Section 4)**

**DEMAND FOR JURY TRIAL**

Plaintiffs DENISE ANGELINA DEBRUNNER; GREGORY EDWARD LATUS; PHILIP CHARLES HELMER; GERALD BURTON NEWBECK; JOHN LEONG; JONATHAN SHIROI TONG; ALICIA ANN WORTHINGTON; MIGUEL GONZALEZ; JOSEPH JOHN PORTA; ROGER CORMIER MORSE; NICHOLAS ALEXANDER SUSLOW; CHRISTOPHER SMITH; MICHAEL DAVID VANNUCCHI; ANTONIO LANDI; MATTHEW BRIAN ORTEGA; BRENDAN THOMAS ARISTOTLE CARAWAY; MICAH ALEXANDER NORRIS; CHRISTOPHER ROBERT SALAZAR, JR.; GORDON LEE SHYY; CHRISTOPHER JOHN COSTA; SHYRLE MARINA HAWES; JOHN BRANDON HOGE; JOEL EVAN AYLWORTH; JOHN PAYTON QUINLAN; ANTHONY SRINIVAS; ADDYSON JAMES AGUIRRE; RUBEN ANTONIO AGUIRRE; JUAN DANIEL GUSTILO III; PAUL BRICE LUJANO; RANDALL M. SOOHOO; CHRISTOPHER THOMAS SABELLA; MYKAEL S. THOMPSON; ROBBY WINSTON WILLKOM; KRYSTEL FORTIE; STEPHANIE FUJIHARA; JAMES KENNETH LEWIS III; VIOLA CHRISTINA MOLANO MCCALL; DENNIS CHARLES TUPPER, JR.; JOSHUA COLLIN TUPPER; HERSCHEL JULIAN TICZON; CARSON ROBERT SCHILLING; SARAH BADR; KIERA NOELLE O'SHEA; MARYLIN TAYLOR; DR. SUSAN RUTH DOWNS; ROBERT SETH GELLER; NOVIA CHANDRA-MADEJSKI; RUNJOHNYA BURGESS; KATRINA ANN MEIER; MONICA LISSETTE GUTIERREZ; ORCHID ZOE SOH; KRISTIN C. LAVELLE; LUSIANA BARAJAS; ABBY MARA THRASHER; DHEYANIRA E. CALAHORRANO; LEONIDAS ROSALES ESCALANTE; MEI MEI ZHU; NICOLE BOWMAN; MEAGEN CAROLYN CLENDENEN; CORA HERMOSO; JESSICA LYNN JOHNSON; KARLYNE MICHELLE KONCZAL; JUAN PABLO PONCIA; NUBIA VARGAS; KAITLYN MICHELLE VALENCIA; JOSEPH JOHN CASTEEL; JOHN JOSEPH MULLEN; RONALD MICHAEL TOLENTINO; OWEN GLEN BRANTLEY; KEVIN RUSSELL GUSTAFSON; MICHAEL ANTHONY SORINI; MARTIN JOSEPH WALSH; PATRICK GERARD DALY; REFUGIO J. GARCIA; RANDAL RAY GERHART; PATRICK FRANCIS MULLEN; TINA LOUISE SANCHEZ; WALTER SANTO VARO; SCOTT PEPITO; JAMES R. SUTHERLIN; RICHARD DAVID FIELDS; WILLIAM DANIEL BRENNAN; EUGENIA MARIE CASTEEL; HECTOR MANUEL RODRIGUEZ; NORMA ANNE SEPULVEDA; HECTOR RODRIGUEZ;

FIRST AMENDED COMPLAINT

CHRISTOPHER JOSEPH KROL; MICHAEL JOHN BOUVIER; VALERIO JOSIF; JEFFREY STEVEN MILLER; MICHAEL GLISSON, JR.; GLEN RYAN IDETA; DEREK WRAY; PAUL GABRIEL JACOWITZ; ROBERT T. KRUGER III; MARIA MARCELA HODGERS; MATTHEW VINCENT JUAN; ERIC M. PRADO; NATHAN SABLAN; JOSEPH STEPHEN JACOWITZ; KEVIN ZAPANTA CONTRERAS; VICKI LYNN SOLLS DAVIS; ATTILA MICHAEL FOTI; REGINALD BERNARD SNELGRO; ALEXANDER LAVROV; JOAQUIN VALLE; KEVIN BRESTON; LEROY L. VANCE; LENARD MORRIS; DICKMAR NOVA RODAS; RACHID AMGHAR; BHANU VIKRAM; MICHAEL PATRICK BOURNE; DERELL RUTHERFORD; SUZANNE BORG; DENISE AREVALO; MEGAN BOYLE; ELIZABETH NG; SASA GALUEGA; PRISCILLA SAU LENH; ANDREA SALFITI; DORIS NAUER; VIVIAN HYUN; ALDEN FRANCISCO BELLO; YOHEI KAKUDA; HEATHER SUSAN TYKS; VINCE BRYANT-TEASDALE; OLIVER SAMPSON HUGHES; JOHANNA JOSEPHA COBLE; JERRY WAYNE SCHULZE; ZHANGRUI NIE; MARCOS PALACIO; GENTA YOSHIKAWA; KENT NISHIMURA; SIMON CAN HUI YEP (hereinafter collectively referred to as "Plaintiffs") allege:

1.     Plaintiffs are a group of 135 employees and former employees of the City and County of San Francisco ("CCSF" or "San Francisco" or "City") who were denied reasonable accommodations from the City's mandate that all workers receive the COVID-19 vaccine.

2.     The group is comprised of workers from every area of San Francisco: from police officers and sheriff's deputies to hospital workers, from employees of the Public Utilities Commission to transit and parks/recreation workers, from airport workers to IT support staff.

3.     Each sought a reasonable accommodation from CCSF based on either their religious beliefs or a medical condition (or both) requiring an exemption from the vaccine mandate.

4.     Rather than complying with its obligations under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA")—or corresponding state law— CCSF responded by issuing blanket denials of requests for accommodation. San Francisco granted a mere 11/125 medical requests (8.8%) while only granting 8/943 religious requests (0.84%). Even those employees working entirely remote were denied reasonable accommodations. By contrast, neighboring Marin County California had a 95.65% approval rate for requested accommodations.

5.      San Francisco valued 100% vaccination over its employees' religious and medical rights.   The problem was that the City not only believed that "***COVID-19*** [wa]s a DIRECT THREAT," it also thought that unvaccinated employees automatically had a "***condition***[] that pose[d] a direct threat to their own health and safety or that of others in the workplace."[1]   In other words, CCSF equated the *condition* of being unvaccinated with *having* COVID-19, the actual threat. This is a direct violation of the ADA.

6.      But the City was uninterested in the facts—acknowledged by the CDC—that the primary use of COVID vaccines is to alleviate the symptoms of those who get the virus, that the vaccines do not stop transmission of the virus (especially the Omicron variant), and that natural immunity from a prior infection is both robust and durable (much more so than the outdated primary series of vaccines that CCSF continues to force on employees).   Indeed, as discussed in more detail below, the CDC published statements and information as early as March, July, and August 2021, noting that the vaccine did not stop transmission of the virus.   (See Footnotes 39-41 below.) Effectively, by August 2021, CCSF knew or should have known that testing was the best and really the only way to ensure that an individual was not infected and, therefore, was not capable of transmitting the virus.   Yet, instead of instituting a mandatory testing requirement, the City chose to implement and strictly enforce a discriminatory vaccination policy.   Furthermore, the City chose to willfully reject the very reasonable accommodation option of regular testing, which would have harmoniously and safely resolved Plaintiffs' objections.   In sum, before the City took adverse employment actions against Plaintiffs, the City had competent medical information to determine that there were no legitimate non-discriminatory reasons for taking adverse employment action against Plaintiffs.

7.      It is clear the only thing that mattered to San Francisco was being able to say that each of its employees had taken a COVID-19 vaccine at some point—the actual effects of the vaccines were not the driving concern.

/ / /

---

[1] Medical & Religious Exemptions to COVID-19 Vaccination PowerPoint Presentation (Sept. 1, 2021), Exhibit 1 at 12.

8.      And so, to combat its unvaccinated employees who required an exemption from the vaccine mandate, CCSF developed a system to deny all accommodation requests without any good-faith interactive process.

9.      CCSF's obvious pretext was on display from the beginning when the City began *revoking already-granted* accommodation requests.  After determining that permanent, reasonable accommodations could be made for numerous employees, the City suddenly reneged on its promises. In doing so, CCSF sought to provide *ex post* justifications for changing course that contradicted what the City said before and ignored the facts of those individual situations.

10.     Anti-discrimination law prohibits employers from engaging in such improper gamesmanship, playing with people's livelihoods and faith.

11.     CCSF began its quest to deny all requests with an accommodation evaluation form that allowed evaluators simply to check a box to dismiss a request for an accommodation rather than performing individualized assessments that addressed the needs of its employees.[2]  This allowed the City to dispose of the accommodation requests in bulk without wasting time on a genuine back and forth with the employee to evaluate their situation.

12.     The City simultaneously provided its evaluators with faulty information about how they could and should reject requests for accommodation.  Turning the entire procedure on its head, the City manipulated the process to have its evaluators look for possible ways to deny accommodation requests rather than assist with them.

13.     When combined with training purposefully calculated to truncate employee rights, the predictable result of the "Easy Button" denials was an 8% acceptance of medical accommodation requests and a mere 0.8% acceptance of religious requests.

14.     The lack of individualized process becomes apparent when examining the false "process" provided by the City.  Some employees were denied the same day they submitted their requests for not having proven a sincere religious belief even though they had outlined just such a belief in their request.

/ / /

---

[2] *See* Determination on COVID-19 Vaccination Exemption Request, Exhibit 2.

15.     And even when the City sat on a request for some time before denying it, comparing the returned denial forms against what was actually submitted by employees reveals a disconnect between what CCSF claimed and reality.  For example, some individuals presented detailed letters (up to 20 pages, with accompanying clergy letters in many cases) about how their religious beliefs concerning abortion prevent them from taking a drug that either contains *or* was tested on fetal stem cell lines, only to be told they had provided insufficient documentation to show a sincerely held religious belief.

16.     This argument involving fetal cell lines has been recognized time and again as one involving a sincere religious belief.[3]  But the City somehow decided it was not (or that it was allowed to claim that this was not) a sincere religious belief.  Evaluators denied countless requests for allegedly failing to prove a sincere religious belief that conflicted with the vaccine mandate despite the evidence offered.  This disconnect with reality was hardly accidental.

17.     What employees didn't know at the time was that CCSF had coached evaluators to deny virtually any religious request containing the fetal stem cell argument.  First, the City told its request evaluators that they could deny these requests because the Pfizer and Moderna vaccines do not ***contain fetal cells***.[4]  Going further, the City instructed that concerns about the use of stem cell lines in development of the COVID-19 vaccines were likely not legitimate since those same lines were used to develop other vaccines and, if the employee had ever received one of the other vaccines, there would need to be further inquiry into their beliefs.  Moreover, CCSF was especially clear in its message that Catholic believers should be estopped from using this argument—after all, the Vatican itself had stated that receipt of a COVID-19 vaccine was acceptable.

18.     This entire enterprise by CCSF was illegitimate.  Courts have recognized that one need not belong to a specific faith or have a specific tradition that agrees with their sincerely held religious belief.  Additionally, inconsistent actions by religious adherents do not negate their

---

[3] *See, e.g.*, *Does 1-3 v. Mills*, 142 S. Ct. 17, 18–19 (2021) (Gorsuch, J., dissenting from denial of application for injunctive relief).

[4] *See* "Tips for Processing Religious Accommodation-Vaccine Exemption Requests," Exhibit 3 at 2 ("With respect to the COVID-19 vaccine specifically, a statement that the employee is refusing the vaccine due to concerns about the use of stem or fetal cells may not be a qualifying religious belief because neither the Pfizer nor Moderna vaccines contain fetal cells.").

1    sincerely held religious beliefs.  Nevertheless, San Francisco wanted to make sure that anyone with

2    even *potential* inconsistencies had those count against them in the process.

3        19.    Those evaluating the request forms got the message.  The strawman created by the

4    City's directions for rejecting religious requests caused evaluators routinely to check the first box

5    indicating that the employee had not shown a sincere religious belief even when the employee had

6    easily made such a showing.[5]

7        20.    Highlighting the City's campaign of discrimination was the specific training

8    documents provided to workers assigned to evaluate religious exemption claims.  CCSF provided

9    "Tips" for how those evaluators could find a way to deny accommodations.  These directions on how

10   to combat religious beliefs are a far cry from the EEOC's prescribed method of addressing religious

11   accommodations.[6]  With no objective basis for questioning the religious nature of the requests, the

12   City had investigators delve into personal questions about people's faith and work to develop

13   inconsistencies in prior behavior.[7]

14       21.    Then, even for those deemed to have a worthy (or potentially worthy) belief, CCSF

15   provided yet another "Tip" to ensure that its evaluators would reject the accommodation request.

16   That "Tip" stated that if the employee would come into contact with others while doing their job,

17   allowing them to continue working unvaccinated would automatically cause the City an "undue

18   hardship."  No evidence was offered for this assumption and no interactive process was used to search

19

20   _____

[5] *See* Exhibit 2.

21   [6] EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO

22   Laws*, Part K.12 ("[T]he employer should ordinarily assume that an employee's request for religious
     accommodation is based on a sincerely held religious belief, practice, or observance.  However, if an employee

23   requests a religious accommodation, and an employer is aware of facts that provide an objective basis for
     questioning either the religious nature or the sincerity of a particular belief, practice, or observance, the

24   employer would be justified in requesting additional supporting information."), *available at*
     https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-

25   eeo-laws#A.

     [7] One example was asking individuals who have a religious objection to the ties between COVID-19 vaccines

26   and abortion if they had ever taken medicine such as Tylenol.  Though Tylenol has been tested on fetal stem
     cell lines, those tests came long after Tylenol's invention in the 1800s and thus creates a different issue.  San

27   Francisco had learned somewhere, however, that this technique might be successful in dissuading religious
     objectors from persisting in their sincerely held beliefs and was thus willing to try it against employees seeking

28   an accommodation.  City leadership purposefully sought out these types of arguments and included them in
     the training to its HR workers in order to prevent religious accommodations from being granted.

for a solution; merely the City's *ipse dixit* pronouncement that it would be a hardship—a pronouncement based on the erroneous belief that the condition of being unvaccinated would constantly provide the direct threat equivalent of someone infected with COVID-19.

22.     These errors on the part of CCSF might have been remedied had the City followed the "interactive process" set out in employment law.  But CCSF was hardly interested in that.  San Francisco's sham process not only failed to provide reasonable accommodations for exempt employees, it completely ignored California law that requires an employer to engage with an employee in a good-faith interactive process in order to determine an accommodation that allows an exempt employee to continue working.

23.     Instead, CCSF purposefully provided multiple pieces of wrong information to its evaluators so that evaluators would check a box denying the request and the City could then claim that an interactive process had taken place.

24.     One simple proof that the process was a sham is the fact that the denials would often blindly check every possible box for a reason to deny the request.  This includes designating the employee a "threat" to others even if they could work from home or all by themselves.  Far from an interactive process, a cursory evaluation of the City's denials shows the telltale signs of pretext.

25.     This all highlights CCSF's orchestrated effort both to coerce employees to take the vaccine and to try and justify the across-the-board denials the City was planning to issue.

26.     Other examples of the City's coercion abound.  Many Plaintiffs were left on unpaid leave pending termination for months.  Dangling over the individuals the entire time, of course, was their livelihood—if only they would acquiesce to San Francisco's outdated vaccine mandate in violation of their faith or health needs, they could make the pain stop.

27.     Further evidence of the City's coercion and discrimination can be seen in accommodations that were "granted" by CCSF.  A good number of employees from the San Francisco Police Department who submitted a request early in the process were given exemptions from the mandate.  Then, the San Francisco Health Officer suddenly amended the local public health order, and the Staff Services at the SFPD notified those with accommodations that their applications for exemption were inexplicably "undergoing a secondary review."  Evidently it had become known

1  to others in leadership at the City that accommodations were actually being granted by the Police

2  Department and complaints had been raised.    Thus, those employees initially granted an

3  accommodation by their department *had their accommodations revoked*.

4          28.      Underscoring the fact that the *sua sponte* re-evaluations were pretextual, the new

5  denials would check every possible box for a reason to deny the request—*directly contradicting what*

6  *the City had said earlier* and undermining any legitimate claim of a good-faith attempt at

7  accommodating employees.    Even if the previous accommodation had truly somehow become

8  unworkable—a dubious proposition to say the least given the known science at the time—it would

9  have still been incumbent on the City to have an interactive process to see if other accommodations

10  might be available.    Instead, CCSF had its evaluators rig the process against its employees by

11  suddenly changing course on every aspect of the request and issuing denials across the board.

12          29.      As the issue became more politicized, CCSF evidently determined that it could not

13  make due with anything less than complete compliance with its edict and started trying to undo as

14  many granted accommodations as it could, including those of numerous Plaintiffs here, especially if

15  the basis for the accommodation was a religious ground.    But by throwing everything at the wall to

16  see what sticks, CCSF just highlighted its sham process.

17          30.      Thereafter, the closest thing to an "accommodation" that was provided by the City

18  was an offer of 60 days of unpaid leave for the employee to find their own job somewhere else in the

19  City—a fool's errand given the fact that CCSF was determined not to provide accommodations by

20  that point.    Of all the employees placed on a 60-day job search, only two were *temporarily*

21  accommodated before subsequently having those accommodations removed as well.

22          31.      CCSF was so intent on preventing religious exemptions from its mandate that it went

23  against EEOC Guidance and coached supervisors/evaluators (with false information) to look for any

24  possible reason to deny an accommodation.    If an evaluator had any question at all afterward or could

25  squint and see the evidence through CCSF's lens, all they needed to do was check box one and reject

26  the claim on the grounds that it was not a sincere religious belief.    And if anyone could make it past

27  that step, CCSF informed its evaluators that any accommodation would be an undue burden—so just

28  check the last box for good measure.

32.     But discriminating against employees entitled to an exemption from the mandate was improper (and illegal) when the costs of accommodating them safely was nothing more than a *de minimus* burden, at most.  As seen with countless other municipalities—*including ones bordering CCSF*—accommodations for exempt employees (including some Plaintiffs here) can be easily accomplished.  As examples, Marin County, in complying with applicable federal and state vaccine mandates, had 19 religious and 4 medical requests for exemption.  All of the religious and three of the medical requests were granted—a 96% approval rate.  Additionally, neighboring Daly City—which is difficult to distinguish in areas from San Francisco itself—did not even force a COVID-19 vaccination on its employees at all.

33.     All this is unsurprising.  Remember, CCSF—like other municipalities—had sent its employees into the workplace for the previous year and a half, telling them it was safe to work as long as the employees abided by mitigation measures such as masking, social distancing when possible, and testing/quarantine when appropriate.  The existence of vaccines did not transform the virus into something worse.  If the same measures could not still be deployed, the City was lying previously about workers being at their jobs safely.  It seems more likely that CCSF began lying about the state of danger when it wanted to promote 100% vaccination at the expense of employees' faith and health.

34.     Even when the vaccination policy itself was first rolled out, the City noted that periodic testing and masking would be used for employees exempt from the mandate.  That all changed, though, based on a policy decision from City leadership sometime around August of 2021 that favored vaccination for all over people's religious beliefs or medical needs—a decision divorced from scientific evidence.  Indeed, as discussed in more detail below, the CDC acknowledge as early as March 2021 that vaccination did not stop transmission of the virus, and in July/August 2021 published additional statements and studies finding that the vaccines did not stop transmission.

35.     While no one doubts the seriousness of the pandemic for a moment, safety concerns do not relieve San Francisco of its duties under both federal and state law.  Setting aside the fact that forced vaccinations did not prevent employees from spreading COVID-19, unvaccinated employees who do not have the virus certainly cannot spread it.  Therefore, widespread testing was likely the

FIRST AMENDED COMPLAINT

safest option at the time—and Plaintiffs would have gladly taken on that burden, even paying for it themselves in order to keep working.

36.    Alternatively, the City failed even to consider other costless options such as allowing natural immunity to substitute for its vaccine requirement. When San Francisco was putting employees out of work, the science consistently showed that prior COVID-19 infections provided at least as much protection from the virus as the primary vaccine series (which is all that was ever required for employees).[8] It was thus at least as safe to have naturally immune but unvaccinated employees working as it was to have those who had taken a vaccine but who had never contracted COVID-19. Moreover, when San Francisco began discipling employees for not having the vaccine, the evidence indicated that the primary series of COVID-19 vaccines was ineffective—and, indeed, perhaps negatively effective—against subsequent variants such as Delta.

37.    As it turns out, when safety is the goal—and not discrimination and coercion—easy solutions to the problem present themselves.

38.    These facts were never considered by the City, though, as it forged ahead with terminations throughout the Spring of 2022 when other companies, municipalities, and countries were lifting vaccine mandates entirely. CCSF even disregarded scientific observations made by Dr. Jeanne Noble, Director of COVID Response, UCSF, which were published in popular San Francisco news outlets. To the extent it was ever in doubt that the City's stated rationale was pretextual, it became clear that CCSF was far less interested in "safety" than it was in administering punishment to those employees who refused to acquiesce to the City's demand that one prioritize an outdated vaccine over one's faith.

39.    Even assuming that CCSF is allowed to make a COVID-19 vaccination a condition of employment (with reasonable accommodation permitted)—a questionable proposition being challenged in multiple cases—the City may not use claims of "safety" as a pretextual basis for violating the law. The fact that CCSF's safety arguments were pretextual is only underscored by the

---

[8] CDC, *COVID-19 Cases and Hospitalizations by COVID-19 Diagnosis—California and New York, May–November 2021* ("CDC Report"), https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1_w (noting that "[b]y October [of 2021], persons who survived a previous infection had lower case rates than persons who were vaccinated alone").

1  numerous Plaintiffs who could have been easily accommodated by telework but who were rejected

2  by the sham accommodation process that did not provide an individualized assessment of their

3  situation.

4      40.    Even after CCSF's initial mistake of placing employees on leave, it had the

5  opportunity to remedy its error when it became apparent throughout the Spring of 2022 that COVID-

6  19 vaccine mandates were improper and completely pointless against the Omicron variant.  The CDC

7  itself recognized the impotency of primary series vaccines and began suggesting boosters in the face

8  of overwhelming evidence that the original vaccines were not able to stop infection—especially not

9  as well as natural immunity.

10     41.    To be sure, CCSF cannot credibly claim to have just been following the CDC's

11  guidance on vaccines.  The CDC never told employers to terminate unvaccinated employees because

12  they were a greater threat and, tellingly, did not fire any of its own unvaccinated employees.

13     42.    But the City continued to bury its head in the sand, determined to force vaccines on

14  its exempt employees without justification.

15     43.    The lack of support for the City's unscientific approach is underscored by considering

16  how vaccine manufacturer Janssen (J&J) treated requests for religious and medically exempt

17  employees.  Even though those employees were traveling to doctors' offices on a daily basis, coming

18  into contact with patients and office staff alike, they were allowed to wear masks and test for COVID

19  if they showed symptoms.[9]  If the vaccine manufacturers can provide reasonable accommodations

20  during a pandemic, CCSF could have done so as well.

21     44.    San Francisco's vaccine mandate wasn't about safety, though.  It was about virtue

22  signaling, fear, and control.  In CCSF's estimation, everyone should be vaccinated—and those who

23  pushed back against the City's demands deserved to be punished.  This became even more evident

24  as some Plaintiffs were terminated even after taking the shot in violation of their faith.  And it can

25  ///

26  ///

27  ///

28
_____

[9] *See* Exhibit 4, Declaration of Donn Arizumi.

FIRST AMENDED COMPLAINT

1   still be seen in the City's more recent terminations—terminations taking place even after the CDC

2   advised that unvaccinated individuals are no more of a threat than vaccinated individuals.**10**

3          45.    CCSF began with a campaign of coercion, determined to purge the ranks of its

4   employees of the unvaccinated.  And for those unwilling to acquiesce, the City thought punishment

5   was only appropriate.

6          46.    This religious and medical discrimination by San Francisco has taken its toll.

7   Individuals put to this illegal choice have agonized over it for months while losing their jobs, been

8   forced into mental health treatment in some cases, compelled to move out of state to find work in

9   other cases, and—worst of all—coerced into violating their faith in some instances just to put food

10  on the table.  It could have all been avoided if CCSF had followed federal and state employment law,

11  just like the other municipalities in California and the other employers across the country who

12  imposed vaccine mandates while still granting accommodations for employees to continue working.

13         47.    As a part of the City's enforcement of its mandatory vaccination policy, the City

14  obtained private confidential medical information from Plaintiffs.  The City had an obligation to take

15  measures to prevent disclosure of such information to non-essential personnel and/or to the public.

16  Here the City breached these obligations by intentionally and maliciously publishing this private

17  medical information to non-essential personnel and to the public.  This included publishing the

18  information to the Transit Department Station's public message board.  This was an egregious act

19  that could have no other purpose than to humiliate Plaintiffs and coerce them into violating their

20  religious beliefs and receiving the vaccine.  These acts were willful and malicious and represent a

21  clear breach of the City's obligations to protect this private medical information.

22                              **JURISDICTION AND VENUE**

23         48.    This Court has original jurisdiction over this case pursuant to 28 U.S.C. §§ 1331,

24  1343, and 42 U.S.C. § 2000e-5(f)(3).

25  ///

26  ///

27  ───────────────────────

28  **10** It can also be seen in CCSF's treatment of individuals who work for private employers.  For example, the City is still mandating testing for unvaccinated workers employed by the airlines who work at the airport—months after the CDC's announcement that unvaccinated individuals should not be treated differently.

49.     This Court has jurisdiction over the related state law claims under 28 U.S.C. § 1367(a).

50.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

51.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all defendants reside in this District and because a substantial part of the events complained of herein occurred in this District and Division.

## BACKGROUND FACTS

**A.      The COVID-19 Pandemic and Vaccine Treatments.**

52.     By Spring 2020, the novel coronavirus SARS-CoV-2, which can cause the disease COVID-19, spread rapidly around the world.

53.     Over the past two years, at least four separate COVID-19 vaccines have been developed and authorized or licensed for use in the United States.  The Food and Drug Administration ("**FDA**") issued an Emergency Use Authorization ("**EUA**") for the Pfizer-BioNTech vaccine on December 1, 2020.  One week later, the FDA issued a second EUA for the Moderna COVID-19 vaccine.  The FDA issued an EUA for the Johnson & Johnson ("**Janssen**") COVID-19 vaccine on February 27, 2021.  More recently, the FDA issued an EUA for the Novavax COVID-19 vaccine on July 13, 2022.  The Pfizer-BioNTech vaccine received FDA approval for use in a slightly altered form on August 23, 2021, and is said to be produced as Comirnaty—a form legally distinct from the EUA version (and still not available in the United States).  The Moderna vaccine, Spikevax, has also since received FDA approval.

54.     Subsequent to the development of the vaccines, the Delta and Omicron variants of COVID-19 spread around the world.  In light of those variants, the accompanying increases in transmissibility of the virus, and the significant waning of the vaccines' efficacy, the FDA began recommending booster shots in addition to the initial vaccine regimens proposed.

/ / /

/ / /

/ / /

55.     Studies have shown that the COVID-19 vaccines forced on San Francisco employees wane significantly over time.[11]  Not only has this been confirmed by the CDC, one study showed Pfizer and Moderna primary vaccination series efficacy dropping from 6% effectiveness against the Omicron variant in the first two months to -39% at 4 months and -42% at 6 months.[12]  Another study showed a -76.5% efficacy for Pfizer and a -39.3% efficacy for Moderna against the Omicron variant.[13]  In other words, vaccinated individuals were more susceptible to Omicron unless they had also contracted COVID-19 and had natural immunity as well.  Omicron booster shots have just recently been introduced.[14]

56.     Currently, to be "Up to Date" or current with COVID-19 vaccinations, an individual must have completed "a COVID-19 vaccine primary series and received the most recent booster dose recommended . . . by the CDC."[15]  For adults, this is a two-shot regimen of the Pfizer or Moderna vaccine or a one-shot dosage of the Janssen or Novavax vaccine, followed by a first booster after the primary series and—for adults over 50 years old—a second booster at least 4 months after the first booster.[16]

57.     All CCSF employees not terminated or forced to resign because of the City's mandate were vaccinated with either the Pfizer, Moderna, or Janssen vaccine.  Some of these individuals have not received a COVID-19 vaccine in a year or more.

/ / /

---

[11] *See* CDC Report, *supra* note 8.

[12] Sarah A. Buchan, *et al.*, *Effectiveness of COVID-19 vaccines against Omicron or Delta infection*, MEDRXIV [preprint] (Jan. 1, 2022),  https://www.medrxiv.org/content/10.1101/2021.12.30.21268565v1 (Table 2) (later published at https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2796615).

[13] Christian Holm Hansen, *et al.*, *Vaccine effectiveness against SARS-CoV-2 infection with the Omicron or Delta variants following a two-dose or booster BNT 162b2 or mRNA-1273 vaccination series: A Danish cohort study*, MEDRXIV [preprint] (Dec. 23, 2021), https://www.medrxiv.org/content/10.1101/2021.12.20.21267966v3 (Table) (later published at https://journals.plos.org/plosmedicine/article?id=10.1371/journal.pmed.1003992#pmed.1003992.s002).

[14] Carrie Macmillan, *The Omicron Booster: Your Questions Answered*, Yale Medicine (Oct. 12, 2022), available at https://www.yalemedicine.org/news/omicron-booster-covid-19.

[15] *Stay Up to Date with Your COVID-19 Vaccines*, CDC (July 19, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html?s_cid=11305:%2Bmoderna%20%2B%20%2Bcovid%20%2Bvaccine:sem.b:p:RG:GM:gen:PTN:FY21#footnote02.

[16] The recently developed Novavax vaccine has a two-dose initial regime and no recommended booster shots at this time.  It was not approved for use during the implementation of CCSF's vaccine mandate.

58.     Booster shots have not been required by San Francisco, despite the CDC's strong recommendation that individuals take boosters in most circumstances.  CCSF employees are thus not mandated to be "up to date" on vaccines (as defined by the CDC).  It appears that San Francisco only follows CDC guidance when it can be used to purge large groups of certain disfavored employees. CCSF conveniently decided to stop "following the science" after it had rid itself of those disfavored employees.

59.     Unboosted CCSF employees are at a greater risk of contracting and transmitting COVID-19 than the unvaccinated but naturally immune employees CCSF terminated over the past 13 months—a fact widely known since at least January of 2022.

60.     On August 11, 2022, the CDC updated its guidance for the prevention of COVID-19.[17]  The updated guidance: (1) recognizes the immunity and protection provided to those who have previously recovered from a COVID-19 infection: "The risk for medically significant illness increases with age, disability status, and underlying medical conditions but is considerably reduced by immunity derived from vaccination, previous infection, or both, as well as timely access to effective biomedical prevention measures and treatments."; (2) notes that "[h]igh levels of immunity and availability of effective COVID-19 prevention and management tools have reduced the risk for medically significant illness and death" ; and (3) confirms that "receipt of a primary series alone, in the absence of being up to date with vaccination through receipt of all recommended booster doses, provides minimal protection against infection and transmission."

**B.     San Francisco's Vaccine Mandate and Sham Accommodation Process.**

61.     CCSF issued a series of health orders throughout the Summer and Fall of 2021.  To "protect the community from COVID-19 and to increase vaccination rates to reduce transmission of COVID-19," the order encouraged vaccination for those living in the City and made it a job requirement for employees of San Francisco.

/ / /

/ / /

---

[17] *See Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems—United States*, CDC MMWR (August 19, 2022)*, available at* https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm.

62.     To prepare for enforcement of its vaccine mandate, CCSF tasked each of the departments within the City with addressing the requests for exemptions that came in through their employees.  As became apparent, though, there was a coordinated effort—driven by policy decisions from City-wide leadership—to deny any accommodation request possible, especially religious requests.

63.     Rather than assuming that employee requests for accommodation were sincere, the City planned to cut off as many employees as possible, crafting factually wrong arguments and offering unsupported assumptions in materials given to evaluators that would cause virtually every request to be denied.

64.     Even those with beliefs the City deemed worthy or with medical conditions prohibiting their receipt of the vaccine, accommodations were denied based on reasons such as the unsupported claims that an accommodation would be an "undue hardship" or that the unvaccinated person would be a threat to others.  These claims were made based in either unsubstantiated fear of COVID-19 that did not account for the available scientific evidence or rank animus that cared more for indiscriminate enforcement of the City's policy than the religious beliefs and medical needs of its employees.

### 1.     The Initial Reasonable Accommodation Determination Form.

65.     CCSF's sham process began with creating a new form to address the requests for accommodation from the COVID-19 vaccine mandate that would be forthcoming.[18]

66.     On that form, the City indicated three separate reasons for a denial: (1) documentation insufficient to show a conflict with vaccination requirement and a religious belief, practice or observance; (2) accommodation would pose a direct threat to the health and safety of others and/or the employee; (3) accommodation would require the removal of essential functions of the employee's job.

67.     The form made it easy for the evaluators—trained to look for any and every reason to issue a denial (especially for incorrect reasons)—to simply check a box (sometimes all of the boxes, just for good measure) and move along.

---

[18] *See* Exhibit 2.

68.     As seen below, the accommodation form (especially later, once revised) was especially lethal when combined with the training and documents provided to those who would be evaluating accommodation requests.

69.     Nevertheless, reading those requirements in good faith, accommodations were initially granted to many employees who applied in August of 2021.

### 2.    Additional Steps Taken to Ensure Denials.

70.     After it became known that accommodation requests were being granted, the CCSF took a series of steps designed to ensure that the approvals would not continue (including revising the Form).  Indeed, the new system would be deployed even against the requests already granted in order to rescind them from those with accommodations.

71.     This new protocol was rolled out throughout the month of September in 2021.

72.     It included (1) a memorandum sent to all departments containing "Tips" for denying requests; (2) a PowerPoint presentation made to evaluators via Microsoft Teams that provided further examples and training on looking for any possible ways to deny employee requests for accommodation; (3) a revised evaluation form that would ensure denials based on an "undue hardship" catch-all that the City told evaluators would virtually always be applicable (even though there was no support for that claim); and (4) a series of follow-up questions, both provided in the documents and separately as a list later on, that evaluators could use to create possible inconsistencies in employees' beliefs and coerce them into taking the vaccine.

### a.    The "Tips" Sheet Used to Deny All Accommodation Requests.

73.     CCSF first created a "Tips for Processing Religious Accommodation-Vaccine Exemption Requests."[19]  The "Tips" Guide goes through a series of questions that the evaluator can use to knock out a request for a religious exemption.  Indeed, the document should have been titled: "Tips for *Denying* Religious Accommodation-Vaccine Exemption Requests."

74.     Issued on September 1, 2021—after many accommodation requests had been granted—the "Tips" were issued to streamline and standardize denials of requests for

---

[19] *See* Exhibit 3.

accommodation. CCSF recognized it needed the façade of an individualized process but also wanted to ensure that no more accommodations were granted that would then have to be walked back.

75.    The document starts off by noting that any decision should be made by "the department's assigned labor attorney," thus ensuring that the City would have control over the decisions of the individual departments. Additionally, the "Tips" for denial created an additional obstacle for any approvals, instructing that those decisions must be sent to HR's Medical Leave Program Manager for approval before being sent to an employee. That would ensure that the HR department could head off any approvals before they went out to employees again.[20]

76.    One of the first tasks of the "Tips" for denial was to ensure that the evaluator asked about "prior vaccinations" since, in CCSF's estimation, a previous vaccination evidently disqualifies someone from having a sincerely held religious belief about the COVID-19 vaccines.[21]

77.    The City next warned its evaluators to make sure that the belief espoused is "religious." While that is a qualification, of course, CCSF purposefully confused its evaluators with the information it supplied about religious views. The City began by explaining that most organized religions do not prohibit vaccinations (offering an irrelevant statement that also falsely equates other vaccinations with the COVID-19 vaccines in an effort to color the evaluations being made). While that may be true, there are a number of organized religions that have major tenets of faith that could be seen to conflict with the COVID-19 vaccines. Then, the City cautioned that secular views being included with religious views called for increased scrutiny of the belief.[22]

78.    Going further, CCSF instructed that "[w]ith respect to the COVID-19 vaccine specifically, a statement that the employee is refusing the vaccine due to concerns about the use of stem or fetal cells may not be a qualifying religious belief because neither the Pfizer nor Moderna vaccines contain fetal cells."[23] Going further, the City said that "concerns about the use of fetal cell lines in researching the COVID-19 vaccines may not qualify since those same cell lines were used

---

[20] *Id.* at 1.
[21] *Id.* at 1.
[22] *Id.* at 2.
[23] *Id.* at 2.

to develop many other vaccines . . . . If the employee has previously received other vaccines without concern, the claimed belief may not be religious, and you may need to inquire further about the basis for the employee's objection to vaccination."[24]

79.    Later, the "Tips" sheet provides other questions that an evaluator could use if the accommodation request looked like it might be legitimate.  These questions were designed to trick, confuse, embarrass, or otherwise coerce employees out of claiming a religious belief.[25]  This included asking the employee to identify their specific religious tenet against COVID-19 vaccination (which, of course, wouldn't exist); asking how often the person went to church (and where people that would share such an extreme view would go to church); and even pointing out that the Vatican or other religious authorities were not against the COVID-19 vaccine (directly implying that the employee should thus not have a problem with the vaccines either).[26]

80.    Finally, at the end of the "Tips" sheet was a small section on "Determining Whether an Accommodation Can Be Offered."[27]  If one had managed to survive the gauntlet of invasive questions, purposeful traps, and tactics designed to weed out religious requestors, the final section renders all that a moot point.  It instructs the departments to consider whether the employee's job requires them to come into contact with others.  If so, CCSF made the unsupported claim that "it would pose an 'undue hardship'" to accommodate the employee and the department should not grant the request.  At the same time, CCSF made the accusation that the unvaccinated employee also likely poses a "direct threat" to others and can be denied for that reason, too.

81.    The "Tips" were designed to ensure failure, especially when combined with the fact that the evaluators were not engaging in a good-faith interactive process with the employee to figure out what accommodations might be available.

/ / /

/ / /

---

[24] *Id.* at 2.

[25] *Id.* at 3.

[26] *Id.* at 3.

[27] *Id.* at 5.

**b.    PowerPoint Training on Denying Reasonable Accommodations.**

82.    Along with the "Tips" sheet, HR leadership at the City sought to ensure that there were no more approvals taking place and issued a PowerPoint presentation on how to deny accommodation requests.[28]

83.    The City's HR Department—under the leadership of Director Carol Isen—hosted a Teams Meeting on September 1, 2021, to coach evaluators through this process.

84.    Regarding medical requests, the City was quick to point out that the Medical Board of California had recently threatened doctors who provided exemptions with disciplinary actions.[29]

85.    CCSF informed its evaluators that the "EEOC has determined that COVID-19 poses a direct threat to the health and safety of an individual and the public" but then made the false equivalence that an unvaccinated employee poses the same threat as COVID-19 (treating unvaccinated individuals as though they were perpetually infected with COVID-19).[30]

86.    Finally, the PowerPoint told evaluators that employees must either be vaccinated, wear a mask, or be tested.[31]  The City ignored natural immunity entirely even though the science was already indicating that it was at least as strong as primary series vaccinations.

87.    Regarding the religious requests, HR wanted the evaluators to focus on two things: (1) whether the belief was actually "religious"; and (2) whether the belief was "sincerely held."[32]

88.    On the first question, the City was sure to point out that evaluators should reject anything that appeared to be a personal choice cloaked in religion and quoted a California case noting that "the very concept of ordered liberty precludes allowing every person to make his own standards

/ / /

/ / /

/ / /

/ / /

---

[28] *See* Exhibit 1.

[29] *Id.* at 4.

[30] *Id.* at 5.

[31] *Id.* at 5.

[32] *Id.* at 6.

1   on matters of conduct in which society as a whole has important interests."[33]  The City thus implied

2   that those seeking religious requests were trying to make their own standards on matters of conduct.

3         89.    The PowerPoint then coached evaluators to seek information about the religious

4   nature of the employee's beliefs and the sincerity of those beliefs.  This included "get[ting]" the

5   specific belief that conflicts with the vaccine requirement and "look[ing] for factual inaccuracies in

6   the beliefs."  CCSF gave the examples of someone saying "the vaccines contain aborted fetal cells,

7   contained microchips, or caused sterility."[34]  The City continued its assault on the common religious

8   objection to the vaccines that they could not be taken because they either contain or were tested on

9   aborted fetal stem cell lines—this time by equating a similar-sounding statement about fetal cells to

10  microchips (a known conspiracy theory).  It is doubtful that the evaluators would have been able to

11  tell these statements apart.  It is also clear that CCSF had no right to take away anyone's religious

12  beliefs simply because they were incorrect.

13        90.    Finally, CCSF pointed out that "COVID-19 is a DIRECT THREAT" but then falsely

14  equated that threat with being unvaccinated.[35]

15        91.    In a statement that reveals the City's discrimination, the PowerPoint asserted that

16  "[e]mployers are not required to accommodate employees with conditions that pose a direct threat to

17  their own health and safety or that of others in the workplace."[36]

18        92.    CCSF plainly equated the "condition" of being unvaccinated with having COVID-19,

19  the actual "direct threat" at issue.

20               c.    Revised Request Determination Form.

21        93.    As part of the process taken to ensure blanket denials of accommodation, the City also

22  revised its "Determination on COVID-19 Vaccination Exemption Request" Form around the same

23  time.

24        94.    The new form now provided four separate reasons for a denial: 1) documentation

25

26  [33] Id. at 7 (quoting Friedman v. S. Cal. Permanente Medical Group (2002) 102 Cal.App.4th 39).

27  [34] Id. at 8.

28  [35] Id. at 12.

    [36] Id. at 12.

1    insufficient to show a conflict with vaccination requirement and a religious belief, practice or

2    observance; 2) accommodation would pose a direct threat to the health and safety of other and/or

3    yourself; 3) accommodation would prevent employee from performing essential function(s); and

4    4) accommodation would result in Undue Hardship for the City.

5        95.    The last box now added to the Form was essential for CCSF since it had just instructed

6    request evaluators across the City that this box could be checked as a catch-all for any job in which

7    the employee would come into contact with others.

### d.    Additional Follow-Up Questions.

9        96.    Along with the new form and new training offered to its departments, CCSF provided

10   specific questions that the departments could ask of anyone applying for a religious exemption.[37]

11   These were also sent to the Police Officers who had previously received accommodations in an

12   attempt to help justify taking those exemptions away.[38]

13       97.    Like the inquiries first set out in the "Tips" document, the follow-up questions were

14   a fishing expedition calculated to gain information that the City could use against the employee.  The

15   questions included things such as "Have you received vaccines as an adult against any other

16   diseases?" and "Have you used any of the following over-the-counter medications as an adult:

17   Tylenol, Advil, Asprin, Sudafed, Tums, Maalox, or Pepto-Bismol?"  These were used in an attempt

18   to show alleged inconsistencies in the employee's beliefs to coerce the individual to take the vaccine

19   or else provide an argument against their belief being sincerely held.

20       98.    Without any true interactive process or attempt to understand the employee's position

21   and belief, the City erred in relying on such questions that could not account for things such as

22   individuals learning things about the COVID vaccines that they previously unaware of or even

23   changing their beliefs.

24   _____

25   [37] Questions from SFDPH to Kristie Lavelle, Exhibit 5; Questions from SFMTA Human Resources to Bhanu Vikram, Exhibit 6.

26   [38] *See, e.g.*, Questions from CCSF to Alicia Worthington, Exhibit 7; *see also* Exhibit 3 at 3 (listing
27   loaded questions departments could ask such as "The [Vatican/insert religious authoritative or
     governing body] has endorsed the COVID-19 vaccines and pronounced that the connection between
     the fetal cell lines used in vaccine testing and actual abortion is sufficiently remote and the pandemic
28   sufficiently serious to allow members to receive the vaccine in good conscience.  Are your beliefs
     contrary to this pronouncement?").

99. CCSF also asked about whether the person had a "community or group of believers" supporting their request or if they had a "spiritual/religious leader, scholar, or other knowledgeable person" supporting their request.

100. Rather than having an objective reason to ask employees these questions, CCSF inverted the EEOC's directions and looked to generate objective reasons to doubt the sincerely held religious beliefs of its workers.

### 3.    The Results of San Francisco's Purposeful Strategy Against Exemptions.

101. The results of CCSF's purposeful undermining of the interactive process speak for themselves.

102. Virtually 100% of religious requests were denied while just a handful of medical requests were granted.

103. Such numbers are indicative of a pattern and practice violation of antidiscrimination law. *See Obrey v. Johnson*, 400 F.3d 691, 694–95 (9th Cir. 2005).

104. CCSF's strategy was made pellucidly clear when the San Francisco Police Department began revoking exemptions a month after granting them. The reason appears to be that other leadership in the City found out that the Police Department was granting exemptions when their departments were following CCSF policy and were not granting exemptions. On information and belief, employees of the Fire Department complained to the Former Chief of Administration for the SFFD, Jose Vela (who has since retired). Chief Vela then contacted the Police Department to prevent accommodations from being issued to prevent Fire Department employees from having a claim that they, too, should be accommodated.

105. SFPD thus began pretending to engage in a continuing interactive process. Officers were informed that the City had *sua sponte* begun a "secondary review" never envisioned in the process—a review just happened to result in revoking all of the exemptions previously given. Officers' previously recognized beliefs were now categorically dismissed by HR workers while at least half a dozen police chaplains that could have been involved in determining the sincerity of religious belief were never involved in the process. But CCSF was not interested in actual evaluations, just uniform denials. That is why all of the boxes would be checked for each request

1   denial with no thought given to the substance—a sure sign of the City's pretext.

2   106.    Employees in other departments experienced the same thing.  Almost half of the

3   Plaintiffs here had every box from the new denial form checked even though some worked remotely

4   or alone, some gave detailed explanations of religious beliefs, and none were a direct threat to anyone

5   because (contrary to San Francisco's misconception) they were not continually infected with

6   COVID-19.   In fact, a good number of them were naturally immune and could have been

7   accommodated.  CCSF was not interested in a good faith process, though, as seen by the rubber-

8   stamp denials.

9   **C.    Reasonable Accommodation Options Unjustifiably Ignored by CCSF.**

10   107.    Apparent in all of this was the fact that CCSF could have accommodated Plaintiffs'

11   religious beliefs or medical needs without undue hardship (indeed, with no cost whatsoever).  But

12   the City failed to engage in the interactive process to legitimately consider reasonable

13   accommodations.  This caused CCSF to overlook accommodations posing less than a *de minimis*

14   burden including: (1) telework arrangements already widely used among Plaintiff groups;

15   (2) acknowledging that Plaintiffs with natural immunity satisfied the immunization requirements

16   (because natural immunity provided medically significant protection from COVID-19 and provided

17   immunity similar to or superior to vaccine-induced immunity); (3) weekly testing for COVID-19

18   (which Plaintiffs were willing to pay for and which is a more reliable indication of safety than

19   vaccination); (4) testing/masking; or (5) any combination of the above.

20   108.    At the time of the adverse employment actions taken here—from denial of

21   accommodations to terminations—the CDC had conclusively stated that individuals vaccinated for

22   COVID-19 could nevertheless contract and spread COVID-19, which CCSF has yet to dispute.  On

23   March 29, 2021, the Director of the CDC Rochelle Walensky publicly stated that the CDC's own

24   data "suggests, you know, that vaccinated people do not carry the virus, don't get sick, and that it's

25   not just in the clinical trials but it's also in real world data."[39]  However, because the real-world data

26

27   [39] *Statement from CDC Director Rochelle P. Walensky, MD, MPH on* Rachel Maddow Show (March 29, 2021), *transcript available at* https://www.msnbc.com/transcripts/transcript-rachel-maddow-show-3-29-21-

28   n1262442?utm_content=buffer7fb12&utm_medium=Arianna&utm_source=LinkedIn&utm_campaign=Buffer.

1    already demonstrated breakthrough infections in the vaccinated just three months after the Pfizer-

2    BioNTech vaccine received FDA approval, the CDC *immediately* thereafter clarified Director

3    Walensky's statements and confirmed that vaccinated individuals do in fact become infected and

4    spread the virus to others.[40]

5        109.    Before instituting the Policy, San Francisco knew or should have known that the

6    vaccines were largely ineffective at controlling the spread of COVID-19.  As early as July 2021,

7    CDC Director Walensky admitted that the vaccinated had similarly high viral loads of SARS-CoV-

8    2 as the unvaccinated and thus could still contract and spread the Delta variant.[41]  In August 2021, a

9    joint study by CDC and the Wisconsin Department of Health services further confirmed Director

10   Walensky's admission; the study indicated that vaccinated individuals had a 5% higher viral load

11   than the unvaccinated and were not only just as likely to transmit the virus as the unvaccinated, but

12   posed a greater contagion risk due to the increased likelihood of asymptomatic infection.[42]

13       110.    Underscoring the irrationality of CCSF's continued enforcement of its mandate

14   against religious employees, the City refused to recognize natural immunity as satisfying its

15   immunization requirement.  This is despite the fact that, not only was it already known to be true

16   with COVID vaccines, the international scientific community has conclusively established through

17   centuries of research that natural immunity is superior to vaccine-elicited immunity.[43]  Even Dr.

18   ///

19   ///

---

20   [40] *See CDC Reverses Statement by Director*, (April 2, 2021), *available at* https://thehill.com/changing-
21   america/well-being/546234-cdc-reverses-statement-by-director-that-vaccinated-people-are-no/.

     [41] *Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR*, CDC News Room
22   (July 30, 2021), *available at* https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html
     [https://perma.cc/VR5V-E67A] ("Today, some of those data were published in CDC's Morbidity and
23   Mortality Weekly Report (MMWR), demonstrating that Delta infection resulted in similarly high SARS-CoV-
24   2 viral loads in vaccinated and unvaccinated people.  High viral loads suggest an increased risk of transmission
     and raised concern that, unlike with other variants, vaccinated people infected with Delta can transmit the
25   virus.").

     [42] *See* CDC Morbidity and Mortality Weekly Report (August 6, 2021) https://www.cdc.gov/mmwr/volumes
26   /70/wr/mm7031e2.htm?s_cid=mm7031e2_w.; Kasen Riemersma, *et. al*, *Shedding of Infectious SARS-CoV-2
     Despite Vaccination*, medRxiv (August 24, 2021), *available at* https://www.medrxiv.org/content/10.1101
27   /2021.07.31.21261387v4.full.pdf (later published at https://journals.plos.org/plospathogens/article?id=10.
     1371/journal.ppat.1010876).

28   [43] *See Plotkin's Vaccines*, 7th Edition, at Section 2.

Anthony Fauci previously stated that prior infection is the most effective means of immunization.[44] That should be unsurprising given that vaccine-based immunization is an artificial attempt to emulate the mechanisms of natural immunity. This is a fundamental premise of immunological research, which CCSF was undoubtedly aware of when it denied its employees accommodations. In short, the City's decision to ignore the possibility of natural immunity as satisfying its immunization requirement can hardly be attributed to benign incompetence—it must be attributed to ulterior motives such as virtue signaling or rank religious discrimination.

111.    The City has not and cannot provide evidence that unvaccinated workers with natural immunity posed a greater contagion hazard to its employees or clients than its vaccinated workers. In fact, it is likely—as discovery will confirm—that the City's internal employee data regarding health-related absences will demonstrate that vaccinated employees were contracting and spreading COVID-19 at high rates, particularly relative to unvaccinated employees who possessed natural immunity. On information and belief, hundreds of CCSF employees contracted COVID-19 after all unvaccinated employees were either dismissed or banned from entering all workplaces.

112.    CCSF knew or should have known it was wrong to tell its evaluators that unvaccinated employees had a "condition" that was a direct threat, falsely equating employees' unvaccinated status with having a COVID-19 infection.

113.    In what should have been an unsurprising revelation, global data demonstrates that COVID-19 infection rates are higher among vaccinated individuals who do not possess natural immunity than unvaccinated individuals with natural immunity.[45] This follows previous studies such as a Cleveland Clinic study published June 2021 that measured the cumulative incidence of SARS-CoV-2 infection among 52,238 vaccinated and unvaccinated health care workers over a five-month period, and found that none of the 1,359 previously infected who remained unvaccinated contracted SARS-CoV-2 over the course of the research, despite a high background rate of COVID-19 in the

/ / /

---

[44] *See* https://www.youtube.com/watch?v=s8c_Py1wgGc (explaining that "the best vaccination is to get infected yourself") (last accessed October 8, 2022).

[45] CDC Report, supra note 2 (noting that "[b]y October [of 2021], persons who survived a previous infection had lower case rates than persons who were vaccinated alone").

hospital.[46]  In a May 2021 study from Ireland, researchers conducted a review of 11 cohort studies involving over 600,000 total recovered COVID-19 patients who were followed up with for over 10 months and found that reinfection in all studies was "an uncommon event" and explained that there was "no study reporting an increase in the risk of reinfection over time."[47]

114.    These facts relating to vaccinated persons and overall infection rates were available and known to CCSF.  At the least, San Francisco should have made itself aware of such information prior to creating a forced medical treatment regime for its employees, particularly when it knew that the Policy was going to conflict with the religious beliefs of a large number of individuals in its workforce.

115.    At the time CCSF imposed its mandate and took adverse actions against its employees, the COVID-19 vaccines were designed with the genetic sequencing of the original Wuhan strain of the SARS-CoV-2 virus, not the subsequent variants.  COVID-19 vaccines containing the genetic sequencing for variants did not become available until September 1, 2022.[48]

116.    But at the time of CCSF's mandate, the SARS-CoV-2 virus had mutated drastically from the original Wuhan strain (upon which the COVID-19 vaccines were designed) resulting in the B.1.617.2 variant ("**Delta**") becoming the globally dominant strain in June 2021, and later the B.1.1.529 variant ("**Omicron**") in December of 2021.[49]

/ / /

/ / /

---

[46] Nabin K. Shrestha, *et al.*, *Necessity of COVID-19 vaccination in previously infected individuals*, medRxiv (Jun. 19, 2021), *available at*  https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v3  (later published at https://academic.oup.com/cid/article/75/1/e662/6507165).

[47] Eamon Murchu, *et al.*, *Quantifying the risk of SARS-CoV-2 reinfection over time*, Reviews of Medical Virology (May 27, 2021), *available at* https://pubmed.ncbi.nlm.nih.gov/34043841/.

[48]  *See* CDC, *CDC Recommends the First Updated COVID-19 Booster*, *available at* https://www.cdc.gov/media/releases/2022/s0901-covid-19-booster.html (last accessed October 8, 2022).

[49] Berkely Lovelace, Jr., *WHO says delta is becoming the dominant Covid variant globally*, CNBC (June 18, 2021)  https://www.cnbc.com/2021/06/18/who-says-delta-is-becoming-the-dominant-covid-variant-globally.html; Jorge Quarleri et al., *Omicron variant of the SARS-CoV-2: a quest to define the consequences of its high mutational load*, GeroScience at 53-56 (Feb. 2022) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8683309/; *U.S. CDC estimates Omicron variant to be 58.6% of cases, revises projection*, Reuters (Dec. 28, 2021) https://www.reuters.com/world/us/omicron-estimated-be-586-coronavirus-variants-us-cdc-2021-12-28/.

117.    Delta has at least 13 mutations from the original Wuhan strain of SARS-CoV-2, impacting the ability for antibodies from prior SARS-CoV-2 variants, such as the Wuhan strain used in the COVID-19 vaccines, from neutralizing infection.[50]

118.    On information and belief, CCSF's vaccinated employees contracted Delta at the same or greater rates than its unvaccinated employees during Delta's dominant period from June 2021 through November 2021.   Thus, San Francisco's continued pursuit of its compulsory vaccination policy for a vaccine that was already demonstrating dramatic inefficacy, shows that the enforcement of its policy was pretext to remove certain disfavored religious and disabled employees.

119.    On November 26, 2021, the WHO designated the B.1.1.529 variant ("Omicron") as a variant of concern, and by December 25, 2021, had become the dominant strain in the United States, accounting for 58.6% of all cases according to CDC data.[51]  This was long before almost any Plaintiff had been terminated and it was early on in the unpaid leaves on which the City placed unvaccinated, exempt employees.

120.    Omicron has 50 mutations from the original Wuhan strain, 32 of which pertain to the spike protein, the very mechanism relied upon by the COVID-19 vaccines to neutralize the virus.[52]

121.    Thus, as recognized by the CDC, San Francisco was imposing an obsolete vaccine that did not prevent the dominant variant at the time (Omicron) and was particularly inferior to the protection conferred by natural immunity.[53]

---

[50] *Expert reaction to cases of variant B.1.617 (the 'Indian variant') being investigated in the UK*, Science Media Centre (Apr. 19, 2021); https://www.sciencemediacentre.org/expert-reaction-to-cases-of-variant-b-1-617-the-indian-variant-being-investigated-in-the-uk/; *SARS-CoV-2 variants of concern as of 24 May 2021*, European Centre for Disease Prevention and Control, (Aug. 6, 2021) https://www.ecdc.europa.eu/en/covid-19/variants-concern.

[51] Jorge Quarleri et al., *Omicron variant of the SARS-CoV-2: a quest to define the consequences of its high mutational load*, GeroScience at 53-56 (Feb. 2022) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8683309/; *U.S. CDC estimates Omicron variant to be 58.6% of cases, revises projection*, Reuters (Dec. 28, 2021), https://www.reuters.com/world/us/omicron-estimated-be-586-coronavirus-variants-us-cdc-2021-12-28/.

[52] Rekha Khandia et al., "*Emergence of SARS-CoV-2 Omicron (B.1.1.529) variant, salient features, high global health concerns and strategies to counter it amid ongoing COVID-19 pandemic*, Environmental Research (Jun. 2022), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8798788/.

[53] CDC Report, *supra* note 2 (noting that "[b]y October [of 2021], persons who survived a previous infection had lower case rates than persons who were vaccinated alone").

122.    And it had been known for some time that vaccine efficacy significantly wanes over time.  Indeed, the odds of an infection for individuals only vaccinated with a primary series was 13 times greater than for individuals with natural immunity.[54]

123.    Again, these findings should not have been surprising given that vaccines, by design, are an artificial attempt to emulate the immunity created by a natural infection.[55]  That is why vaccines have never been able to achieve the same level of protection afforded by natural infection from a virus.[56]  Again, through centuries of research, the scientific community has confirmed that vaccines universally confer inferior immunity to having had the actual virus, and even the best vaccines do not confer immunity to all recipients.[57]  In those who do obtain simulated immunity from vaccination, the immunity created wanes over time,[58] as has been repeatedly demonstrated in the case of the COVID-19 vaccines.

124.    While San Francisco may assert it was only "following the science," as relayed by the CDC, the evidence shows otherwise.  As further evidence of this, the City never followed through on a booster requirement for its employees, despite the CDC's recommendation that individuals receive booster shots.[59]

125.    CCSF never required booster shots for its employees and thus did not force them to receive the additional vaccines that the CDC was *recommending* (not mandating) at the time.  The City was thus only requiring the outdated primary series of each vaccine—a poor substitute for natural immunity.  Given the poor efficacy of un-boosted primary series vaccination as compared with natural immunity, the vaccinated-but-unboosted employees that CCSF allowed to stay at work were arguably *more* likely to contract and transmit COVID-19 than individuals such as the naturally immune Plaintiffs here.

---

[54] Sivan Gazit, *et al.*, *Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections*, MEDRXIV [preprint] (Aug. 25, 2021), https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1.

[55] *See* Plotkin's Vaccines, 7th Edition, at Section 2.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *See* CDC Guidance on COVID-19 Boosters, *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html.

126.    Centuries of biomedical science conclusively prove the superiority of natural acquired immunity to that of vaccine-induced immunity.  CCSF has yet to refute this fact, but only cites to statements from the CDC saying that vaccination is still preferred.  The CDC has issued a comprehensive set of guidance related to the pandemic, and it is apparent that CCSF is not strictly adhering to this guidance.  Rather, it is clear the City only selectively follows CDC guidance when doing so furthers its discriminatory policies.

127.    Recognizing natural immunity to COVID-19 as an alternative to vaccination would have required no cost or action of CCSF and would have imposed no logistical or administrative burden on the City.  Furthermore, it would have been a reasonable position to take based on the scientific evidence available at the time.

128.    Alternatively, periodic COVID-19 testing would also have been a costless accommodation.  It also would have been the safest.  As the CDC recognized in August of 2021, COVID-19 vaccines work "with regard to severe illness and death—they prevent it.  But what they can't do anymore is prevent transmission."[60]  Because vaccinated individuals may also contract and transmit COVID-19, *a negative COVID-19 test is a more reliable indication of safety from spreading the virus than a vaccination at some earlier time*.  This fact was also well-known at the time CCSF failed to accommodate Plaintiffs and should have been considered as a reasonable accommodation to the vaccine mandate.

129.    Having exempt employees wear masks was another possible reasonable accommodation.  This was done by vaccine manufacturer Janssen (J&J) for its religiously exempt employees who were traveling to doctors' offices on a daily basis, coming into contact with patients and office staff alike.[61]  If the vaccine manufacturers can provide reasonable accommodations during a pandemic, it is certain that it would have been no burden for the City to do so as well.

/ / /

---

[60] Statement by Rochelle Walensky, U.S. Centers for Disease Control, CNN Interview (Aug. 5, 2021), *available at* https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html; *see also* CDC Morbidity and Mortality Weekly Report (August 6, 2021) https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w.

[61] *See* Exhibit 4.

130.   All this is confirmed by San Francisco's neighboring counties.  While many had vaccine mandates in place, they allowed reasonable accommodations for employees unable to take the vaccination.  Plaintiffs provide multiple examples of finding employment after being driven out by San Francisco and their new employer—another municipality in the area—offering them a reasonable accommodation.

131.   If "safety" had been the true goal—and not discrimination, coercion, and a predetermined commitment to forced compliance—the solutions were numerous.

**D.   Federal and State law prohibiting religious/disability discrimination and retaliation.**

132.   Title VII prohibits CCSF from discriminating against employees based on their religion.  42 U.S.C. § 2000e-2(a).  This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

133.   In other words, it is "unlawful 'for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.'"  *Opuku-Boateng v. State of Cal.,* 95 F.3d 1461, 1467 (9th Cir. 1996) (quoting *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 74 (1977)).

134.   Title VII also prohibits Defendants from retaliating against an employee for engaging in protected activity.  *See Pardi v. Kaiser Foundation Hospitals,* 389 F.3d 840, 850 (9th Cir. 2004).

135.   Similarly, under the ADA, Defendants may not "discriminate against a qualified individual on the basis of disability."  *Humphrey v. Memorial Hospitals Ass'n,* 238 F.3d 1128, 1133 (9th Cir. 2001).  The point of the ADA is that "people with disabilities ought to be judged on the basis of their abilities; they should not be judged nor discriminated against based on unfounded fear, prejudice, ignorance, or mythologies; people ought to be judged on the relevant medical evidence and the abilities they have."  *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998 (quoting 136 Cong. Rec. S 7422–03, 7347 (daily ed. June 6, 1990)).

136.   Moreover, the ADA prevents discrimination on even the basis of a perceived

disability and "a person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 521–22 (1999).  In other words, "[u]nder the Americans with Disabilities Act, your employer can't fire you because they *think* you are disabled, even if, in fact, you are *not* disabled." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 310–11 (6th Cir. 2019).

137.    The ADA also requires employers to make "reasonable accommodations" for the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

138.    "To determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3).  The purpose of this process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.*  Accordingly, "[t]he interactive process requires communication and good-faith exploration of possible accommodations." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *judgment vacated on other grounds*, 535 U.S. 391 (2002).  Even though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith. *Id.* at 1116.  When a party obstructs the process or otherwise fails to participate in good faith, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Bultemeyer v. Ft. Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996).

139.    Additionally, the ADA makes it unlawful to retaliate against an employee for seeking an accommodation.  *See* 42 U.S.C. § 12203(a).

140.    California law also prohibits discrimination on the basis of both religion and disability, or to retaliate against those who seek accommodations.  Cal. Gov't Code § 12900, *et. seq*.

141.    Going further, it is a violation of state law to fail to engage in a good-faith interactive process to find a possible reasonable accommodation for an employee that needs one.  Indeed, to avail itself of any undue hardship defense, the employer must demonstrate "that it explored *any*

available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of *excusing the person from those duties that conflict with the person's religious belief* or observance *or permitting those duties to be performed* at another time or *by another person*, but is unable to reasonably accommodate the religious belief or observance without undue hardship, as defined in subdivision (u) of Section 12926…"  Gov.Code § 12940(l).

142.    Contrary to CCSF's belief, these statutes are applicable at all times, especially during a pandemic situation like this where employees with disabilities and who hold sincerely held religious beliefs are particularly vulnerable to employment discrimination.

## PARTIES

**Plaintiffs**

143.    Plaintiffs were all employed by or otherwise subject to CCSF's vaccine policy and suffered adverse employment actions as a result of the City's illegal actions toward employees exempt from the vaccine mandate.

144.    127 of the 135 Plaintiffs made only religious requests for exemption from the vaccine mandate; 6 made both religious and medical requests; and 2 made medical requests only.  Plaintiffs making religious exemption requests are sometimes referred to herein as "religious Plaintiffs" and Plaintiffs making medical/disability exemption requests are sometimes referred to herein as "medical Plaintiffs."

145.    None were provided accommodations or allowed to engage in a genuine interactive process—all were treated as if they perpetually were infected with COVID-19.

146.    The discriminatory policy enforced by the City was imposed on all unvaccinated workers, no matter their department, but for ease of reference Plaintiffs are broken down here by seniority in the departments in which they worked:

### *San Francisco Police Department (43 Plaintiffs)*

147.    Plaintiff Denise Angelina Debrunner worked for CCSF for over 27 years, most recently as an IS Programmer Analyst-Senior at the San Francisco Police Department.  Ms. Debrunner submitted an exemption request on October 13, 2021, seeking an accommodation from the vaccine mandate on the basis of her sincerely held religious beliefs.  She had been teleworking

from home 100% of the time since March 2020 due to the pandemic and could have continued to do so. Her request was denied, however, around October 28, 2021. Unwilling to engage in a true interactive process, the City checked all four boxes on its form, claiming that: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police department employees, CCSF's treatment of Ms. Debrunner only underscores the pretext of the City's religious accommodation denials. The denial blindly checked every box even though her attorney sent a letter to the City detailing her sincerely held religious beliefs and why they conflicted with the vaccine mandate, and even though she worked completely remote for the Police Department. Additionally, Ms. Debrunner was never offered or provided any "interactive process" to assess reasonable accommodations such as testing, consideration of natural immunity, or continued teleworking. Instead, she endured harassment and coercion from management regarding the vaccine mandate. On November 1, 2021, she was placed on paid leave until she was terminated effective December 4, 2021. She was taken off payroll on December 11, 2021 and denied vacation and other pay accruals. On January 5, 2022, she was placed back on payroll only to collect pay accruals but was still denied any opportunity to work. She was placed on unpaid leave until her second termination on April 1, 2022. Ms. Debrunner was forced to retire early losing retirement income for the rest of her life after over 27 years of being a dedicated employee with numerous accolades including a Chief of Police Commendation. The City's unlawful and harassing actions have caused severe strain on Ms. Debrunner's finances, mental health, and marriage.

148.    Plaintiff Gregory Edward Latus has worked for the San Francisco Police Department for over 25 years, most recently as a Police Sergeant. On August 15, 2021, he submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production. On August 25, 2021, his request was granted and he received a permanent exemption. On September 23, 2021 Sergeant Latus was taken off work by his doctor due to an injury

1  sustained while arresting a dangerous felon with a loaded firearm. While receiving treatment and
2  awaiting surgery for his injury, Sergeant Latus was the subject of Police Commission Specifications
3  regarding his vaccination status. Violating procedure and the law, the City did not notify Sergeant
4  Latus of this action. He was also mocked and ridiculed by his supervisors for following his religious
5  beliefs. His exemption was rescinded on September 29, 2021 after future review. Unlike the prior
6  approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a
7  sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would
8  prevent employee from performing essential functions; and (4) an accommodation would be an
9  undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a
10 danger to themselves, co-workers, and the public.

11      As with other police officers, CCSF's treatment of Sergeant Latus evidences the pretext of
12 the City's religious accommodation denials. The denial—blindly checking every box as a possible
13 reason—was now directly contradicting what had been implied earlier when his accommodation
14 request was granted. He was never offered or provided any "interactive process" to assess reasonable
15 accommodations such as testing or consideration of natural immunity (even though he had previously
16 contracted COVID-19). While still on medical leave, Sergeant Latus is currently applying for other
17 jobs since the City has indicated he will be subject to termination upon his doctor releasing him back
18 to full duty. This is shameful treatment for a police officer with a 25-year-long unblemished record
19 who was awarded the Silver Medal of Valor for being stabbed during an arrest of a dangerous felon.
20 The threat looming over Sergeant Latus' head has understandably caused him significant stress for
21 which he has had to utilize counseling services from members of the Critical Incident Response
22 Team, and he has been in contact with the SFPD Behavioral Science Unit.

23      149.    Plaintiff Philip Charles Helmer was a Police Officer 3 in the San Francisco Police
24 Department and had worked there for over 23 years. During his tenure at the SFPD, he taught at the
25 academy for over 10 years, served as a Subject Matter Expert, was a member of the Department's
26 SWAT Team, and was decorated numerous times with awards and commendations. On August 19,
27 2021, Officer Helmer submitted a timely request for an exemption from the vaccine mandate based
28 on his sincerely held religious beliefs. On August 20, 2021, his request was approved, and he

received a permanent exemption. After further review, however, his exemption was rescinded a month later on September 24, 2021.

During the month Officer Helmer had his "permanent" exemption, he did not receive a single communication from the Department. Officer Helmer was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. (He previously contracted COVID-19 prior to leaving the force.) Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Helmer underscores the pretext of the City's actions. The denial—blindly checking every box as a possible reason—directly contradicted what had been implied earlier when his accommodation request was granted. As a result of the City's actions, Officer Helmer was forced to resign under duress on May 4, 2022. Officer Helmer sustained serious and long-lasting injuries as a result of the City's actions and his forced early retirement. The most tangible injuries suffered by Officer Helmer as a result of the City's actions were the loss of his employment, the loss of 7 years of future wages, and most importantly the loss of Officer Helmer's full 30-year retirement. Due to the loss of his employment and his forced early retirement, Officer Helmer's resulting retirement salary dropped to approximately 50% of what he was previously receiving as salaried pay. As a result of this substantial loss in earnings capacity, Officer Helmer could no longer afford to live in the Bay area and had to move out of California to a state with a lower cost of living—despite Officer Helmer being born and raised in San Francisco and having planned on retiring in San Francisco as well. What cannot be monetized is the fact that Officer Helmer's loss of employment, resulting loss in earnings capacity, and being forced to move out of state caused Officer Helmer to move away from his closest friends and family.

150. Plaintiff Gerald Burton Newbeck is Lieutenant of Police at the San Francisco Police Department, where he has worked for over 23 years. On August 14, 2021, Lieutenant Newbeck

submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production.  Because it was prior to the City learning that accommodations were being granted by some of its departments, his request was approved on August 17, 2021, and he received permanent exemption.  After further review, however, his exemption was rescinded on September 29, 2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Lieutenant Newbeck only underscores the pretext of the City's religious accommodation denials.  The denial—blindly checking every box as a possible reason—contradicted what had been implied earlier when his accommodation request was granted.  Lieutenant Newbeck was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or (like a different department employee) wearing a respirator in a no-public contact position, or consideration of natural immunity.  He was coerced by the City into taking the vaccine on September 30, 2021 in order to keep his job, and he was still forced to use his personal vacation time from October 13, 2021 to November 11, 2021.  Lieutenant Newbeck was also served with an Internal Affairs complaint for not being fully vaccinated by October 13, 2021—an investigation that could have career-long consequences.  The City's actions have caused Lieutenant to suffer tremendous stress, insomnia, high-blood pressure, and headaches.

151.    Plaintiff John Leong worked for CCSF for over 22 years, most recently as a Police Officer at the San Francisco Police Department.  On August 20, 2021, Officer Leong submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout adherent of ancestral Chinese worship, he could not take the vaccine since he must rely on "natural earth" to stay healthy and must not consume any unnatural drugs (including the COVID-19 vaccines) as taught to him by his grandmother.  After answering a follow-up question regarding the name of his mentor or worship leader—questions listed in the "Tips" that evaluators

1    were supposed to use to probe employees' religious beliefs—Officer Leong never heard back
2    regarding his request.  There was never any "interactive process" to assess reasonable
3    accommodations such as testing or consideration of natural immunity (even though he had COVID
4    in November of 2020).  On October 14, 2021, he was placed on administrative leave.  Unable to
5    continue in the job he loved, Officer Leong resigned under duress on October 15, 2022.

6          152.    Plaintiff Jonathan Shiroi Tong has worked as a Police Officer at the San Francisco
7    Police Department for over 22 years.  On September 8, 2021, he submitted a timely request for an
8    exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout
9    Christian, he opposed the vaccines' use of fetal stem cell lines in their development or
10   production.  That request was denied on September 29, 2021.  Unlike the prior approval, the City
11   now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief;
12   (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from
13   performing essential functions; and (4) an accommodation would be an undue hardship because of
14   the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-
15   workers, and the public.

16          As with other police officers, CCSF's treatment of Officer Tong underscores the pretext of
17   the City's religious accommodation denials.  The denial—blindly checking every box as a possible
18   reason—directly contradicts what had been implied earlier when his accommodation request was
19   granted.  He was never offered an "interactive process" to assess reasonable accommodations such
20   as testing or consideration of natural immunity, though.  Officer Tong had begun workers'
21   compensation leave on July 8, 2021; that ended on July 7, 2021.  Officer Tong continued on state
22   disability from July 8, 2021; that ended on July 7, 2022.  He went on FMLA leave, upon which he
23   remains, which has been paid time to time from his sick bank and time balance.  The entire process
24   has caused Officer Tong an enormous amount of stress and anxiety, emotional pain, suffering,
25   inconvenience, loss of enjoyment of life, and humiliation.  Indeed, he has likely not healed well
26   because he is afraid of returning to active status only to be suspended and terminated for failing to
27   take a medical treatment.

28          153.    Plaintiff Alicia Ann Worthington worked for CCSF for over 20 years, most recently

---

38

as a Sergeant 3 at the San Francisco Police Department.  On August 21, 2021, Sergeant Worthington submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a faithful Catholic, she opposed the vaccines' use of fetal stem cell lines in their development or production.  That request was approved on August 24, 2021, and she received a permanent exemption.  After a subsequent review, however, her exemption was rescinded on September 29, 2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Sergeant Worthington only underscores the pretext of the City's religious accommodation denials.  The denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when her accommodation request was granted.  It is, of course, indefensible to begin arguing (a month after granting her accommodation) that she had not shown a sincerely held religious belief when, in fact, she submitted a detailed explanation of Catholic doctrine regarding abortion and how the vaccines conflicted with her religious beliefs on the subject.  Additionally, she was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity, though.  Sergeant Worthington contracted COVID-19 earlier in the pandemic, and tested positive for antibodies on August 12, 2021, thus demonstrating natural immunity—a superior form of immunity to vaccination, according to the CDC.  She was placed on paid leave on October 14, 2021, and unpaid leave on November 14, 2021.  The City terminated Sergeant Worthington on July 13, 2022.  Due to the City's actions, Sergeant Worthington was forced to relocate out of state as well as sell assets and prematurely tap into her retirement savings.  She has suffered an enormous amount of stress and anxiety in trying to rebuild her life and acclimate to living outside California, where she had spent her entire life.

154.    Plaintiff Miguel Gonzalez has worked for CCSF for over 17 years, most recently as a Police Officer 3 at the San Francisco Police Department.  On August 18, 2021, he submitted a timely

request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production. His request was approved on August 24, 2021, and he received a permanent exemption. As with others who applied early, however, his exemption was rescinded on September 30, 2021. Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Gonzalez demonstrates the pretext of the City's religious accommodation denials. The denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when his accommodation request was granted. Officer Gonzalez was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. Given his vaccination status, the City will not allow him to return to full time work and so he has remained on disability leave. Additionally, he tested positive for COVID-19 on February 3, 2022, thus giving him natural immunity to the virus.

155. Plaintiff Joseph John Porta worked for CCSF for over 17 years, most recently as a Police Officer at the San Francisco Police Department. On August 30, 2021, Officer Porta submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production. On September 1, 2021, his request was approved, and he received a permanent exemption. After a subsequent review, however, his exemption was rescinded on September 29, 2021. Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Porta underscores the pretext of the City's denials. The denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when his accommodation request was granted. He was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. On November 12, 2021, Officer Porta was placed on unpaid leave. From January 5, 2022 to May 5, 2022, due to the birth of his child, he went on FMLA leave paid from his sick bank. He returned to unpaid leave, on which he remains. The hardship of being on unpaid leave has caused significant financial suffering for him and his family due to his need to deplete his savings to pay bills and support his family. Additionally, being on forced unpaid leave caused great hardship while expecting and having a child. As a consequence of the stress on the family, his partner had to be placed on modified duty at work due to pre-term labor during her pregnancy. To measure the amount of hardship financially, emotionally, and mentally is incomprehensible.

156.   Plaintiff Roger Cormier Morse worked for CCSF for over 16 years, most recently as a Police Officer at the San Francisco Police Department. On August 19, 2021, Officer Morse submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As someone whose devout religious belief—started at a young age with being introduced to the Bahá'í Faith by his parents and Christianity by close family and friends—he opposed the vaccines' use of fetal stem cell lines in their development or production. An early applicant, his request was approved on August 23, 2021, and he received a permanent exemption. After further review, however, his exemption was rescinded on September 10, 2021. Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Morse underscores the pretext of the City's religious accommodation denials. The denial—blindly checking every box as a possible

1    reason—was now directly contradicting what had been implied earlier when his accommodation

2    request was granted.  Additionally, he was never offered or provided any "interactive process" to

3    assess reasonable accommodations such as testing or consideration of natural immunity (even

4    though he had COVID-19 just prior to the mandate and tested positive for COVID-19 antibodies on

5    September 13, 2021, thus demonstrating natural immunity).  On October 14, 2021, Officer Morse

6    was placed on paid leave.  On November 20, 2021, he was placed on unpaid leave until his

7    termination on March 17, 2022.  As a result of how the City treated him, other police departments

8    have not been willing to hire him.

9         157.    Plaintiff Nicholas Alexander Suslow worked for the San Francisco Police Department

10    for over 15 years, most recently as a Police Officer.  On August 19, 2021, Officer Suslow submitted

11    a timely request for an exemption from the vaccine mandate based on his sincerely held religious

12    beliefs.  As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their

13    development or production.  On August 20, 2021, his request was approved, and he received a

14    permanent exemption.  After further review, his exemption was rescinded on October 5,

15    2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was

16    a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat;

17    (3) accommodation would prevent employee from performing essential functions; and (4) an

18    accommodation would be an undue hardship because of the unsubstantiated belief that an

19    unvaccinated employee presents a danger to themselves, co-workers, and the public.

20         As with other police officers, CCSF's treatment of Officer Suslow underscores the pretext

21    of the City's religious accommodation denials.  The denial—blindly checking every box as a

22    possible reason—was now directly contradicting what had been implied earlier when his

23    accommodation request was granted.  Moreover, he was never offered an "interactive process" to

24    assess reasonable accommodations such as testing or consideration of natural immunity,

25    though.  After being placed on leave, Officer Suslow was terminated on March 17, 2022.

26         The City's unlawful actions have caused Officer Suslow to have to sell his home and pull his

27    children out of their school in order to find a job to provide for his family.  The situation has caused

28    strain on both his mental health and his marriage.  As just a snapshot of the culture created by CCSF's

1  dogmatic adherence to a no-accommodation policy, a man who recently received a Gold Medal of

2  Valor for his efforts in a hostage rescue was ridiculed and mocked by supervisors and co-workers for

3  getting terminated rather than violating his faith.  Officer Suslow was even served with a stay away

4  order from all City and County property and listed as a "danger to the public and his coworkers."

5  This was a humiliating experience for a fourth-generation police officer in San Francisco whose

6  family has served the City and County honorably since 1957.

7      158.    Plaintiff Christopher Smith has worked for CCSF for approximately 14 years, most

8  recently as a Sergeant 3 at the San Francisco Police Department.  As a devout Christian, he opposed

9  the vaccines' use of fetal stem cell lines in their development or production.  On August 22, 2021,

10  Sergeant Smith submitted a reasonable accommodation request to be exempt from reporting his

11  vaccination status to the department based on his sincerely held religious beliefs.  The religious and

12  moral conflict of choosing between keeping his neighbor safe and injecting a vaccine that was

13  developed using fetal stem cell lines into his body was a difficult choice that Sergeant Smith wanted

14  to keep private.  On August 23, 2021, Sergeant Smith submitted a timely request for an exemption

15  from the vaccine mandate based and his request was approved on August 25, 2021.  He received a

16  permanent exemption.

17      On September 4, 2021, Sergeant Smith was served disciplinary action paperwork based

18  partially on false allegations, including that he did not explain why he failed to report his vaccination

19  status and that he failed to follow the directive of a superior to report the same.  Tentative guilt and

20  punishment were imposed on him, and the Department, failing to follow its own protocols for Internal

21  Affairs investigations, continued to retaliate against Sergeant Smith over the next six months.  On

22  September 8, 2021, he went on workers' compensation leave for work-related stress caused in part

23  by the disciplinary action (his claim was denied without him ever being evaluated by a mental health

24  professional until March 3, 2022, when the denial was overturned on appeal after an independent

25  medical examination found he sustained a psychiatric injury as a result of the September 4, 2021

26  incident).  He also submitted a separate request for an exemption on September 18, 2021, based on

27  his medical condition.    On October 4, 2021, Sergeant Smith's religious exemption was

28  rescinded.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there

was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Sergeant Smith underscores the pretext of the City's religious accommodation denials.  The denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when his accommodation request was granted.  His medical exemption request was denied on October 14, 2021 for the same reason—he had now supposedly become a danger to himself, co-workers, and the public.  Sergeant Smith was never offered an "interactive process," though, to assess reasonable accommodations such as testing or consideration of natural immunity (even though he tested positive for COVID-19 in August of 2021 and the department—including the duty evaluation committee reviewing accommodation—was made aware of that fact in writing).  He was referred to the 60-day Citywide Job Search, a pointless search because the City was not offering unvaccinated employees reasonable accommodations.  He was placed on unpaid leave around December 2021 or January 2022.  Sergeant Smith's workers' compensation leave ended on September 8, 2022, and he has been using approximately 25 hours per week of his own time bank, which is set to expire in the next few months, at which time Sergeant Smith will be unpaid and will likely seek retirement.  In addition to the stress, strain, insomnia, and physical symptoms caused by the Department's harassment, retaliation, and unfounded allegations against him (which still cloud his record), the City's unlawful actions have caused a severe financial burden on Sergeant Smith, who was forced to refinance his home, and which he will likely need to sell.

159.   Plaintiff Michael David Vannucchi worked for CCSF for over 13 years, most recently as a Police Officer 3 in the San Francisco Police Department.  On August 20, 2021, Officer Vannucchi submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production.  That request was approved a week later and he received a permanent exemption.  After a subsequent review, however, his exemption was rescinded on

September 29, 2021. Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Vannucchi only underscores the pretext of the City's religious accommodation denials. His denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when his accommodation request was granted. He was never offered or provided any "interactive process" to assess reasonable accommodations, though. Officer Vannucchi was placed on paid leave on October 13, 2021, and then unpaid administrative leave on November 13, 2021. He was terminated on March 17, 2022 (even though he had just contracted COVID-19 a few months earlier and possessed natural immunity that rendered the City's mandated vaccines pointless). The stress caused by the City's actions caused him to gain weight and lose sleep, and harmed his relationship with his family.

160.    Plaintiff Antonio Landi has worked for CCSF for over 12 years, most recently as a Police Officer at the San Francisco Police Department. On June 19, 2021, he went on medical leave due to an on-duty injury. On August 22, 2021, he submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Christian, he could not take the vaccine since the body is the temple of the Holy Spirit and it would be a violation of the Scripture to take the vaccine that would violate that temple. On August 24, 2021, his request was approved, and he received a permanent exemption. After further review, however, his exemption was rescinded along with many others on September 30, 2021. Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Landi demonstrates the pretext of

1  the City's religious accommodation denials.  The denial—blindly checking every box as a possible

2  reason—was now directly contradicting what had been implied earlier when his accommodation

3  request was granted.  Officer Landi was never offered or provided any "interactive process" to assess

4  reasonable accommodations such as testing or consideration of natural immunity.  On September 4,

5  2021, Officer Landi received a positive test result for COVID-19 antibodies, thus demonstrating

6  natural immunity that he would have been able to show to the City.  He currently remains out of

7  work and under treatment for his on-duty injury.  As Officer Landi's treatment continues, he is under

8  the imminent threat that the moment his condition improves enough to be medically cleared for

9  modified/light duties he will be terminated from employment without consideration of the ongoing

10 hardships that have accompanied the treatment and injury he has sustained.  Consequently, Officer

11 Landi is unable to return to work because of the vaccine mandate and the lack of a reasonable

12 accommodation from the City. Due to the City's unlawful actions, Officer Landi has developed a

13 clinically diagnosed case of acute anxiety that negatively affects his personal and family life.  He is

14 currently undergoing psychotherapy counseling for his increased stress.

15      161.    Plaintiff Matthew Brian Ortega has worked for CCSF for over 13 years and is

16 currently a Sergeant 3 at the San Francisco Police Department.  On August 17, 2021, Sergeant Ortega

17 submitted a timely request for an exemption from the vaccine mandate based on his sincerely held

18 religious beliefs.  As an adherent of Native American Indian Spirituality, he opposed the vaccines'

19 use of fetal stem cell lines in their development and/or production; he also opposed putting an

20 unnatural substance in his body.  That request was approved on August 24, 2021, and he received a

21 permanent exemption.  On September 16, 2021, Sergeant Ortega was informed that his exemption

22 had been rescinded and was under secondary review.  Furthermore, CCSF informed Sergeant Ortega

23 that he needed to receive the single dose of the vaccine no later than September 29, 2021 to meet the

24 October 13, 2021, deadline.  As requested, Sergeant Ortega submitted additional information

25 demonstrating his sincerely held religious belief on September 24, 2021.  This information included

26 the fact that Sergeant Ortega had tested positive for COVID-19 on August 20, 2021 and had

27 successfully recovered from his illness.  Indeed, on September 14, 2021, his Department accepted

28 his disability claim regarding this illness.

1    By September 29, 2021, CCSF had failed to notify Sergeant Ortega of the status of his
2    exemption request.  CCSF's failure to notify Sergeant Ortega by the deadline was deliberate,
3    inexcusable, and caused him substantial stress and anxiety.  Under the pressure of the City's coercive
4    actions, Sergeant Ortega acquiesced and took the vaccine on September 29, 2021—the final day of
5    the deadline—to save his job, career, and livelihood.  (He fell ill from the vaccination and has
6    suffered chest pain ever since.)  Predictably, on October 5, 2021, Sergeant Ortega was notified by
7    CCSF that his exemption was denied.  Unlike the prior approval, the City now checked all four boxes
8    on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would
9    pose a direct threat; (3) accommodation would prevent employee from performing essential
10    functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated
11    belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

12    As with other police officers, CCSF's treatment of Sergeant Ortega underscores the pretext
13    of the City's religious accommodation denials.  The denial—blindly checking every box as a
14    possible reason—was now directly contradicting what had been implied earlier when his
15    accommodation request was granted.  He was never offered or provided any "interactive process"
16    to assess reasonable accommodations such as testing or consideration of his natural immunity.

17    162.    Plaintiff Brendan Thomas Aristotle Caraway has worked for CCSF for over 11 years,
18    most recently as a Sergeant 3 at the San Francisco Police Department.  On August 12, 2021, Sergeant
19    Caraway submitted a timely request for an exemption from the vaccine mandate based on his
20    sincerely held religious beliefs.  As a devout Christian, he believes, through his translation of the
21    word of God, that immunizations are prohibited.  That request was approved soon after, and he
22    received a permanent exemption.  After further review, however, his exemption was rescinded on
23    October 11, 2021.  Unlike the prior approval, the City checked all four boxes on its form: (1) there
24    was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3)
25    accommodation would prevent employee from performing essential functions; and (4) an
26    accommodation would be an undue hardship because of the unsubstantiated belief that an
27    unvaccinated employee presents a danger to themselves, co-workers, and the public.

28    As with other police officers, CCSF's treatment of Sergeant Caraway only underscores the

pretext of the City's religious accommodation denials. The denial blindly checked every box as a possible reason, contradicting the previous approval without reason. Moreover, Sergeant Caraway was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. He was subsequently placed on unpaid leave until, on October 11, 2021, he took the vaccine under duress. He tested positive for COVID-19 in March 2022 and again in September 2022.

163.    Plaintiff Micah Alexander Norris has worked for CCSF for over 20 years, most recently as a Police Officer 2 at the San Francisco Police Department. On August 18, 2021, Officer Norris submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production. As an early applicant, his request was approved on August 20, 2021, and he received a permanent exemption. After further review, however, his exemption was rescinded on September 29. 2021. Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Norris only underscores the pretext of the City's religious accommodation denials. The denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when his accommodation request was granted. Officer Norris was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. He was placed on administrative leave on October 13, 2021 and was terminated on April 20, 2022. Due to the City's actions Officer Norris suffered financial strain that required him to move out of the San Francisco area and relocate to Texas.

164.    Plaintiff Christopher Robert Salazar, Jr. worked as a Police Officer for the San Francisco Police Department for over five years. On September 1, 2021, Officer Salazar submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious

beliefs. As a devout Christian, he believes that his body is a temple of the Holy Spirit that shall not be destroyed by immunizations. He also opposed the vaccines' use of fetal stem cell lines in their development or production. That request was denied on September 29, 2021. In its denial, the City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Salazar demonstrates the pretext of the City's religious accommodation denials. His denial blindly checked every box as a possible reason. Additionally, he was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. Officer Salazar was placed on paid leave on October 13, 2021. He was then placed on unpaid leave on November 12, 2021. He tested positive for COVID-19 in November 2021, thus giving him natural immunity from the virus. Nevertheless, he was terminated on March 9, 2022. Due to the City's actions, he lost his income and was forced to move from San Francisco and spend down his retirement savings. He also suffered depression, isolation, and a feeling of being unheard.

165. Plaintiff Gordon Lee Shyy worked for CCSF for almost 11 years as a Police Officer in the San Francisco Police Department. On August 13, 2021, he submitted a timely request for an exemption to the vaccine mandate due to an existing medical condition related to severe allergies—including severe reactions to vaccines. On August 20, 2021, his request was granted, and he received a permanent exemption. On October 1, 2021, he also submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Christian, Officer Shyy opposed the vaccines' use of fetal stem cell lines in their development or production. His religious request was denied on October 13, 2021. The City checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an

1    unvaccinated employee presents a danger to themselves, co-workers, and the public.

2        As with other police officers, CCSF's treatment of Officer Shyy only underscores the pretext

3    of the City's religious accommodation denials.  The denial blindly checked every box as a possible

4    reason.  Officer Shyy's medical accommodation was revoked the same day, also with the City's new-

5    found argument that an accommodation would be an undue hardship because of the unsubstantiated

6    belief that an unvaccinated employee presents a danger to themselves, co-workers, and the

7    public.  Officer Shyy was never offered an "interactive process" to assess reasonable

8    accommodations such as testing or consideration of natural immunity.  On October 21, 2021, he was

9    then referred to the 60-day Citywide Job Search, during which time he was forced to use his accrued

10    sick, vacation, and comp time.  Unable to find a job in CCSF that would accommodate his medical

11    need or religious beliefs—and unable to continue on unpaid leave—Officer Shyy resigned under

12    duress on January 21, 2022.  He moved out of state, finding employment as a police officer in a

13    department that did not have a vaccine mandate.

14        166.    Plaintiff Christopher John Costa worked for CCSF for over nine years, most recently

15    as a Sergeant 3 at the San Francisco Police Department.  On or about August 16, 2021, Sergeant

16    Costa submitted a timely request for an exemption from the vaccine mandate based on his sincerely

17    held religious beliefs, which oppose the vaccines' use of fetal stem cell lines in their development or

18    production.  The following day, his request was approved, and he received a permanent exemption

19    from taking the vaccine.  After further review, however, his exemption was rescinded on September

20    29, 2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there

21    was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3)

22    accommodation would prevent employee from performing essential functions; and (4) an

23    accommodation would be an undue hardship because of the unsubstantiated belief that an

24    unvaccinated employee presents a danger to themselves, co-workers, and the public.

25        As with other police officers, CCSF's treatment of Sergeant Costa underscores the pretext of

26    the City's religious accommodation denials.  The new denial—blindly checking every box as a

27    possible reason—was now directly contradicting what had been implied earlier when his

28    accommodation request was granted.  He was never offered or provided any "interactive process" to

1    assess reasonable accommodations such as testing or consideration of natural immunity. He had

2    contracted COVID-19 early on in the pandemic and could have taken an antibody test for the City if

3    required. Sergeant Costa was placed on unpaid administrative leave on November 13, 2021 and

4    resigned under duress from the lack of a job or income on December 4, 2021. The City's actions

5    caused Sergeant Costa hardship physically, emotionally, and financially, strains in his relationships

6    with his spouse and children, feelings of shame and abandonment from the City he had sworn to

7    protect, and a huge financial loss of annual income resulting from having to find new employment

8    to support his family and continue their medical coverage. He also lost the rank as a Sergeant and

9    the associated retirement benefits based on the salary of an SFPD Sergeant.

10       167.    Plaintiff Shyrle Marina Hawes was employed by the City of San Francisco for over

11   nine years, most recently as a Police Officer 4 at the San Francisco Police Department. On August

12   13, 2021, Officer Hawes submitted a timely request for an exemption from the vaccine mandate

13   based on her sincerely held religious beliefs. Her request was approved on August 17, 2021, and she

14   was told she would remain in her current position and the exemption was permanent and would

15   remain effective for the duration of the vaccine requirement. As with others who applied early,

16   however, she was subsequently told her exemption was undergoing a "secondary review" and was

17   then rescinded on September 30, 2021. Unlike the prior approval, the City now checked all four

18   boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation

19   would pose a direct threat; (3) accommodation would prevent employee from performing essential

20   functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated

21   belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

22       As with other police officers, CCSF's treatment of Officer Hawes only underscores the

23   pretext of the City's religious accommodation denials. Her denial—blindly checking every box as a

24   possible reason—was now directly contradicting what had been implied earlier when her

25   accommodation request was granted. Officer Hawes was never offered or provided any "interactive

26   process" to assess reasonable accommodations such as testing or consideration of natural

27   immunity. On October 14, 2021, she was placed on paid administrative leave. Then, on November

28   12, 2021, she was placed on unpaid leave until her termination on March 17, 2022.

During this process, Officer Hawes was under an enormous amount of stress and lost a tremendous amount of sleep.  The stress carried over to her family as well and her parents went into debt trying to help Officer Hawes with her mortgage and monthly bills.  She was eventually forced to sell her home she bought almost 10 years ago and move to Texas.  This was traumatic as she not only had to leave her family but was also forced to leave the SFPD where her grandfather, father, mother had each retired from, and where her brother worked.  The immense stress continued as she had to go through a lateral police academy and the training process of learning Texas law.  She currently works the midnight shift having lost all of her seniority from SFPD.  The injuries Officer Hawes has sustained from CCSF will be with her for the rest of her career and life.

168.  Plaintiff John Brandon Hoge has been a Police Officer in the San Francisco Police Department for over nine years.  On September 17, 2021, Officer Hoge submitted a timely request for an exemption to the City's vaccine mandate based on his sincerely held religious beliefs.  As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their development or production.  That request was denied on September 29, 2021.  The City checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Hoge only underscores the pretext of the City's religious accommodation denials.  Rather than engage with the request in good faith, the denial has every box checked as a possible reason for denial.  Yet he was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  On October 15, 2021, Officer Hoge took the vaccine under duress, causing an adverse reaction in his nerve endings according to his doctor.

169.  Plaintiff Joel Evan Aylworth was employed by CCSF for over eight years, most recently as a Police Officer 3 at the San Francisco Police Department.  On August 19, 2021, Officer Aylworth submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Christian, he could not take the vaccine since the body

1  is the temple of the Holy Spirit and should not be used for medical experimentation.  On August 20,

2  2021, his request was approved, and he received a permanent exemption.  As with others who applied

3  early, however, his exemption was rescinded on September 29, 2021.  Unlike the prior approval, the

4  City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious

5  belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee

6  from performing essential functions; and (4) an accommodation would be an undue hardship because

7  of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-

8  workers, and the public.

9         As with other police officers, CCSF's treatment of Officer Aylworth shows the pretext of the

10  City's religious accommodation denials.  The new denial—blindly checking every box as a possible

11  reason—now directly contradicted what had been implied earlier when his accommodation request

12  was granted.  Additionally, Officer Aylworth was never offered or provided any "interactive process"

13  to assess reasonable accommodations such as testing or consideration of natural immunity.  He was

14  placed on paid administrative leave in October of 2021 and then unpaid leave on November 14,

15  2021.  Officer Aylworth was terminated on April 1, 2022.  The City's actions caused him significant

16  stress since he had to liquidate his savings and pull money out of his pension, while at the same time

17  being behind on bills.

18         170.    Plaintiff John Payton Quinlan worked for CCSF for over nine years, most recently as

19  a Police Officer 3 at the San Francisco Police Department.  On August 21, 2021, Officer Quinlan

20  submitted a timely request for an exemption from the vaccine mandate based on his sincerely held

21  religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their

22  development or production.  On August 24, 2021, his request was approved, and he received a

23  permanent exemption (because the City had not yet realized some of its departments were granting

24  accommodations).  After a subsequent review, however, his exemption was rescinded on September

25  16, 2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there

26  was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3)

27  accommodation would prevent employee from performing essential functions; and (4) an

28  accommodation would be an undue hardship because of the unsubstantiated belief that an

1    unvaccinated employee presents a danger to themselves, co-workers, and the public.

2         As with other police officers, CCSF's treatment of Officer Quinlan underscores the pretext

3    of the City's religious accommodation denials. The new denial—blindly checking every box as a

4    possible reason—was now directly contradicting what had been implied earlier when his

5    accommodation request was granted. Moreover, he was never offered or provided any "interactive

6    process" to assess reasonable accommodations such as testing or consideration of natural

7    immunity. On October 13, 2021, Officer Quinlan was placed on paid leave. He was then placed on

8    unpaid administrative leave on November 13, 2021 until he resigned under duress on March 4, 2022.

9    He had been forced to dwindle through nearly all of his savings. On March 7, 2022, he was hired by

10   a neighboring law enforcement agency that had neither a vaccine or testing mandate.

11        171.    Plaintiff Anthony Srinivas worked for CCSF for over eight years, most recently as a

12   Police Officer 3 at the San Francisco Police Department. On August 12, 2021, Officer Srinivas

13   submitted a timely request for an exemption from the vaccine mandate based on his sincerely held

14   religious beliefs. As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their

15   development or production. His request was granted on August 13, 2021, and he received a

16   permanent exemption. Nevertheless, after further review, his exemption was rescinded on

17   September 29, 2021. Unlike the prior approval, the City now checked all four boxes on its new form:

18   (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct

19   threat; (3) accommodation would prevent employee from performing essential functions; and (4) an

20   accommodation would be an undue hardship because of the unsubstantiated belief that an

21   unvaccinated employee presents a danger to themselves, co-workers, and the public.

22        As with other police officers, CCSF's treatment of Officer Srinivas only underscores the

23   pretext of the City's religious accommodation denials. The new denial—blindly checking every box

24   as a possible reason—was now directly contradicting what had been implied earlier when his

25   accommodation request was granted. He had gone so far as to include a letter and signed declaration

26   from a member of his church outlining his religious beliefs—the City's claim that he failed to prove

27   a sincere religious belief is indefensible. Officer Srinivas was never offered an "interactive process"

28   to assess reasonable accommodations such as testing or consideration of natural immunity. On

1   October 14, 2021, the Chief of Police recommended that Officer Srinivas be terminated.  He was

2   then placed on unpaid leave on November 13, 2021.  Unable to provide for his family of five and

3   stressed regarding the uncertainty of his future with the City, Officer Srinivas resigned under duress

4   on January 9, 2022.

5       172.    Plaintiff Addyson James Aguirre worked for CCSF for over seven years, most

6   recently as a Police Officer Q4 at the San Francisco Police Department.  On August 15, 2021, Officer

7   Aguirre submitted a timely request for an exemption from the vaccine mandate based on her sincerely

8   held religious beliefs.  As a devout Christian, she believes that her body is a temple of God that must

9   be kept clear of foreign substances.  Additionally, she opposed the vaccines' use of fetal stem cell

10  lines in their development or production.  On August 24, 2021, Officer Aguirre's request was

11  approved and she received a permanent exemption from taking the vaccine.  That request was later

12  rescinded.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there

13  was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3)

14  accommodation would prevent employee from performing essential functions; and (4) an

15  accommodation would be an undue hardship because of the unsubstantiated belief that an

16  unvaccinated employee presents a danger to themselves, co-workers, and the public.

17      As with other police officers, CCSF's treatment of Officer Aguirre underscores the pretext of

18  the City's religious accommodation denials.  The new denial—blindly checking every box as a

19  possible reason—was now directly contradicting what had been implied earlier when her

20  accommodation request was granted.  She was never offered an "interactive process" to assess

21  reasonable accommodations such as testing or consideration of natural immunity.  On November 22,

22  2021, she received disciplinary action and was placed on paid leave; she was moved to unpaid leave

23  four days before Christmas.  Officer Aguirre resigned under duress from the lack of a job on January

24  3, 2022.  As a result of the City's actions, which included placing her on unpaid leave with no option

25  in sight to return to duty without violating her deeply held religious beliefs, she and her family,

26  including two children under the age of five, moved half-way across the country in order to find new

27  employment in South Dakota.  The stress of finding new employment after being well-established

28  with the San Francisco Police Department and starting over in an area with no friends and family

1    took a toll on her mental and emotional well-being.

2        173.    Plaintiff Ruben Antonio Aguirre worked for CCSF for over seven years, most recently

3    as a Police Officer Q4 at the San Francisco Police Department.  On September 4, 2021, Officer

4    Aguirre submitted a timely request for an exemption from the vaccine mandate based on his sincerely

5    held religious beliefs.  As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in

6    their development or production.  His request was denied on September 30, 2021.  In denying him,

7    the City checked all four boxes on its new form: (1) there was a failure to prove a sincere religious

8    belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee

9    from performing essential functions; and (4) an accommodation would be an undue hardship because

10   of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-

11   workers, and the public.

12       As with other police officers, CCSF's treatment of Officer Aguirre only underscores the

13   pretext of the City's religious accommodation denials.  The denial blindly checked every box as a

14   possible reason.  Officer Aguirre was never offered or provided any "interactive process" to assess

15   reasonable accommodations such as testing or consideration of natural immunity.  On February 4,

16   2022, he was placed on paid leave.  On March 7, 2022, he was placed on unpaid leave.  He resigned

17   under duress for lack of a job on March 11, 2022.  Officer Aguirre was on disability at the time he

18   requested his religious exemption.  The extra stress related to his emotional and mental well-being

19   greatly affected his ability to focus on taking care of his physical health.  After the City's actions,

20   Officer Aguirre and his family were forced to move half-way across the country to South Dakota in

21   order to seek a new start.

22       174.    Plaintiff Juan Daniel Gustilo III has worked for CCSF for over five years, most

23   recently as a Police Officer at the San Francisco Police Department.  On August 17, 2021, Officer

24   Gustilo submitted a timely request for an exemption from the vaccine mandate based on his sincerely

25   held religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in

26   their development or production.  His request was approved the same day and he received a

27   permanent exemption.  After a further review by the City, however, his exemption was rescinded on

28   September 17, 2021. Unlike the prior approval, the City now checked all four boxes on its new form:

1  (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct

2  threat; (3) accommodation would prevent employee from performing essential functions; and (4) an

3  accommodation would be an undue hardship because of the unsubstantiated belief that an

4  unvaccinated employee presents a danger to themselves, co-workers, and the public.

5       As with other police officers, CCSF's treatment of Officer Gustilo only underscores the

6  pretext of the City's religious accommodation denials. The new denial—blindly checking every box

7  as a possible reason—was now directly contradicting what had been implied earlier when his

8  accommodation request was granted. Officer Gustilo was never offered or provided any "interactive

9  process" to assess reasonable accommodations such as testing or consideration of natural

10 immunity. On November 26, 2021, he was placed on paid leave. Then, on December 26, 2021,

11 Officer Gustilo was placed on unpaid leave. Officer Gustilo has endured traumatic stress from the

12 suspension. He reached out to SFPD's Behavioral Services Unit seeking help, and was referred to a

13 therapist. Due to the loss of income, Officer Gustilo was forced to relocate his family to Texas. He

14 currently remains suspended on unpaid leave.

15      175.    Plaintiff Paul Brice Lujano worked for CCSF for over seven years, most recently as a

16 Police Officer 2 at the San Francisco Police Department. On August 16, 2021, Officer Lujano

17 submitted a timely request for an exemption from the vaccine mandate based on his sincerely held

18 religious beliefs. As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their

19 development or production. Additionally, he believed that taking the vaccine would violate his

20 body—which is a temple for the Holy Spirit—and thus he was Scripturally forbidden from taking

21 it. On August 17, 2021, his request was approved, and he received a permanent exemption. After

22 further review, however, his exemption was rescinded on September 16, 2021. Unlike the prior

23 approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a

24 sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would

25 prevent employee from performing essential functions; and (4) an accommodation would be an

26 undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a

27 danger to themselves, co-workers, and the public.

28      As with other police officers, CCSF's treatment of Officer Lujano underscores the pretext of

the City's religious accommodation denials. The new denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when his accommodation request was granted. He was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. He was placed on leave on October 13, 2021. Unable to do the job he loved, and facing unpaid leave followed by termination, Officer Lujano resigned under duress on November 14, 2021. He had suffered harassment from superiors and was passed over for special assignment due to his vaccine status. The City's action caused him significant stress and mental anguish, requiring him to spend $15,000 from his savings and move out of state to Texas, which meant separation from family and friends. His family was also forced to discontinue fertility treatment since it could not afford it without his income.

176. Plaintiff Randall M. SooHoo worked for the San Francisco Police Department for over 22 years, most recently as a Police Officer. On August 30, 2021, Officer SooHoo submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production. He never heard back regarding his request but was placed on leave on October 14, 2021. Unable to perform his job, and facing termination by the City, Officer SooHoo resigned under duress on October 25, 2021 since he feared losing his health benefits and pension— he had intended to work for the City for eight more years to complete 30 years of service. Due to the City's actions, Officer SooHoo has suffered significant stress, anxiety, insomnia, and depression.

177. Plaintiff Christopher Thomas Sabella worked for CCSF for over seven years, most recently as a Police Officer 3 for the San Francisco Police Department. On August 25, 2021, Officer Sabella submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production. That request was approved on August 27, 2021, and he received a permanent exemption. As with others, however, his exemption was rescinded September 25, 2021 (even though he was not notified until September 29). Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief;

(2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Sabella demonstrates the pretext of the City's religious accommodation denials. The new denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when his accommodation request was granted. He was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. Officer Sabella was subsequently placed on unpaid leave and then terminated on May 4, 2022.

178. Plaintiff Mykael S. Thompson worked for CCSF for over seven years, most recently as a Police Officer 4 at the San Francisco Police Department. On August 23, 2021, Officer Thompson submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs. As a devout Christian, she opposed the vaccines' use of fetal stem cell lines in their development or production. She also believes that taking the vaccine would violate her body that God created, which would be an abomination since her body is a temple for the Holy Spirit. On August 24, 2021, her request was approved, and she received a permanent exemption. After a subsequent review that made her feel bullied and harassed, however, her exemption was rescinded on September 29, 2021. Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Thompson underscores the pretext of the City's religious accommodation denials. The new denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when her accommodation request was granted. Additionally, she was never offered an "interactive process"

to assess reasonable accommodations such as testing or consideration of natural immunity. This is despite the fact that she notified the Police Department doctor that she had COVID-19 prior to the vaccine mandate. She also tested positive for COVID-19 antibodies on October 18, 2021, thus demonstrating natural immunity. On October 13, 2021, she was placed on paid leave. Officer Thompson was then placed on unpaid leave on November 13, 2021 and terminated on April 21, 2022. The City's unlawful actions caused Officer Thompson to have to liquidate all of her financial accounts in order to financially survive, thus rendering her financial future uncertain. She has also suffered a strain on her mental health, her family, and her ability to obtain future employment due to the stigma of termination. A snapshot of the culture created by CCSF's dogmatic adherence to a no-accommodation policy reveals that a hard-working Officer, who had recently been given Field Training Officer status, was ostracized and stigmatized by supervisors and co-workers for getting terminated rather than violating her faith.

179.    Plaintiff Robby Winston Willkom was a Police Officer 3 at the San Francisco Police Department for over eight years. On August 18, 2021, Officer Willkom submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines from an aborted fetus in their development or production. His request was approved the same day and he received a permanent exemption. After a subsequent review, however, his exemption was rescinded on September 29, 2021. Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Willkom proves the pretext of the City's religious accommodation denials. The new denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when his accommodation request was granted. Moreover, Officer Willkom was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. CCSF attempted

1   to place Officer Willkom on paid administrative leave on October 13, 2021 but stopped because he

2   was on FMLA leave.  Eventually, Officer Willkom was placed on administrative leave when he

3   returned from FMLA on November 20, 2021.  Two days after Christmas, he was placed on unpaid

4   leave.  He contracted COVID-19 in January 2022, thus giving him natural immunity, yet Officer

5   Willkom was subsequently terminated on April 20, 2022.  In June 2022, he got a job as a police

6   officer at the San Ramon Police Department in neighboring Contra Costa County (which did not

7   force vaccine mandates on exempt employees).  CCSF's actions caused undue stress on Officer

8   Willkom and his family; he and his wife had to sell their rental property to support the household's

9   income, and he had to scramble to find new work to support his growing family.

10      180.    Plaintiff Krystel Fortie has worked for CCSF for over six years, most recently as a

11   Police Officer 2 at the San Francisco Police Department.  On August 26, 2021, Officer Fortie

12   submitted a timely religious exemption request to taking the COVID-19 vaccine on the basis of her

13   sincerely held religious beliefs.  As a devout Christian, she believes her body is a temple of God that

14   must not be polluted by harmful or unknown substances.  Her request was approved on August 31,

15   2021, and she received a permanent exemption.  As with others who applied early, however, her

16   exemption was rescinded on September 30, 2021.  Unlike the prior approval, the City now checked

17   all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2)

18   accommodation would pose a direct threat; (3) accommodation would prevent employee from

19   performing essential functions; and (4) an accommodation would be an undue hardship because of

20   the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-

21   workers, and the public.

22      As with other police officers, CCSF's treatment of Officer Fortie only underscores the pretext

23   of the City's religious accommodation denials.  The new denial—blindly checking every box as a

24   possible reason—was now directly contradicting what had been implied earlier when her

25   accommodation request was granted.  She was never offered or provided any "interactive process"

26   to assess reasonable accommodations such as testing or consideration of natural immunity.  Around

27   October 1, 2021, Officer Fortie went on disability leave.  At the end of February 2022, she was placed

28   on nominal "modified duty."  This is not an accommodation but merely a status that employees, who

have been injured at work, are allowed to go on that provides them further time to heal while working in a less physical capacity; she did not work and was unpaid during that time.  She was then immediately placed on 30 day paid suspension Mar 4, 2022.  After only 22 days of paid suspension, the City tried to place Officer Fortie on unpaid suspension, causing her to reach out to the Police Officers Association to be paid for the additional week owed.  Officer Fortie was returned to nominal "full duty" in June or July of 2022, though the City failed to inform her of her status change.  Officer Fortie was scheduled for a hearing on July 12, 2022, which she was unable to attend.  Officer Fortie had no further correspondence with the City until she received a letter on October 20, 2022 with notice of her termination.  While waiting in limbo and being unpaid, Officer Fortie was forced to seek additional employment.  Unable to find anything in California, she began to search out of state, which required her to spend money on flights and further travel necessities to attend testing and interviews.  The City's actions caused her significant stress since she did not know when her next paycheck would come from.  The stress negatively affected Officer Fortie's health and relationships, causing strain on her and her family.  Officer Fortie was eventually able to secure employment out of state, causing her to uproot her life, leaving friends and her home behind, and move to a place where she knew no one.  She began her new job on May 11, 2022; her employer neither had a vaccine mandate nor required and exemption.  Her long-distance move caused additional stress for Officer Fortie and sent her into a depression she still struggles with daily.

181.    Plaintiff Stephanie Fujihara worked for the San Francisco Police Department for over six years, most recently as a Police Officer 3.  On August 25, 2021, Officer Fujihara submitted a timely request for an exemption from the vaccine mandate on the basis of her sincerely held religious beliefs.  As a devout Methodist Christian, she opposed the vaccines' use of fetal stem cell lines in their development or production.  Her request was approved two days later and she received a permanent exemption.  After further review, however, her accommodation was rescinded on September 30, 2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an

1   unvaccinated employee presents a danger to themselves, co-workers, and the public.

2      As with other police officers, CCSF's treatment of Officer Fujihara underscores the pretext
3   of the City's religious accommodation denials.  The new denial—blindly checking every box as a
4   possible reason—was now directly contradicting what had been implied earlier when her
5   accommodation request was granted.  She was never offered or provided any "interactive process"
6   to assess reasonable accommodations such as testing or consideration of natural immunity.  On
7   October 13, 2021, Officer Fujihara was placed on administrative leave.  She was then placed on
8   unpaid leave on November 14, 2021, and terminated on March 16, 2022.  Due to the City's unlawful
9   actions, Officer Fujihara felt insulted and embarrassed, suffered significant stress from financial
10  instability, and had to spend down her savings just to afford to pay her rent.  She is currently working
11  two jobs and will likely move out of state since she can no longer afford the cost of living.

12      182.   Plaintiff James Kenneth Lewis III worked for the San Francisco Police Department
13  for over six years, most recently as a Police Officer.  On August 22, 2021, Officer Lewis welcomed
14  the birth of his first child and began taking his Family Medical Leave Act leave.  On October 12,
15  2021, Officer Lewis submitted a timely request for an exemption from the vaccine mandate based on
16  his sincerely held religious beliefs.  As a devout Christian, he opposed the vaccines' use of fetal stem
17  cell lines in their development or production.  Officer Lewis never heard back regarding his religious
18  exemption request.  There was never any "interactive process" to assess reasonable accommodations
19  such as testing or consideration of natural immunity.  His FMLA time expired in December 2021,
20  and in January 2022 he was placed on unpaid non-disciplinary leave.  He was terminated on May 4,
21  2022, even though he had tested positive twice for COVID-19 this year (thus giving him natural
22  immunity) prior to his release.

23      183.   Plaintiff Viola Christina Molano McCall worked for CCSF for over four years, most
24  recently as a Police Officer at the San Francisco Police Department.  On August 16, 2021, Officer
25  McCall submitted a timely request for an exemption from the vaccine mandate based on her sincerely
26  held religious beliefs.  As a devout Christian, she believes she must abstain from all vaccines since
27  she believes in the healing power of God and taking a vaccine would indicate she does not have
28  faith.  As with others who applied early, her request was approved on August 17, 2021, and she

received a permanent exemption.  After further review, however, her exemption was rescinded on September 29, 2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer McCall only underscores the pretext of the City's religious accommodation denials.  The new denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when her accommodation request was granted.  She was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  On October 15, 2021, Officer McCall was placed on paid leave.  On November 15, 2021, she was placed on unpaid leave.  She contracted COVID-19 in December 21, 2021, thus giving her natural immunity. Yet she was terminated on April 21, 2022.  Throughout the process Officer McCall was shamed by her co-workers for not getting the vaccine, and she was publicly humiliated when her and her colleagues' termination made the news.  She was forced to move out of state to seek new employment.  This City's actions caused her undue stress and insomnia.  Suffering financial strain, she was forced to liquidate her pension, deplete her savings, and seek loans from family members.

184.    Plaintiff Dennis Charles Tupper, Jr. worked as a Police Officer 2 at the San Francisco Police Department for over five years.  In December 2021, he contracted COVID-19, which he informed his manager of.  On August 16, 2021, Officer Tupper submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Christian, he believes that the best way to heal is through prayer and spiritual healing, and that taking the vaccine would result in his spiritual death.  On August 17, 2021, his request was approved, and he received a permanent exemption.  After further review, though, his exemption was rescinded in September of 2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an

accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer Tupper only underscores the pretext of the City's religious accommodation denials.  The new denial—blindly checking every box as a possible reason—was now directly contradicting what had been said earlier when his accommodation request was granted.  Officer Tupper was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  He was placed on unpaid administrative leave on October 13, 2021.  Unable to perform his job or support his family, Officer Tupper resigned under duress on November 14, 2021.  Officer Tupper had believed that he would be with SFPD until he retired. While unable to afford to pay his mortgage and other bills when being threatened with termination, he had to look for a new police department to work for.  With no income, Officer Tupper was forced to pull from his deferred compensation and use his savings to pay bills.  He had to sell his house and move out of state—causing him and his wife to uproot their lives, find a new job, and leave their family and friends behind—which put a great deal of stress on them and their marriage.  Officer Tupper had to further deplete his savings and deferred compensation in order to pay for the move.

185.    Plaintiff Joshua Collin Tupper worked for CCSF for over four years, most recently as a Police Officer in the San Francisco Police Department.  On August 17, 2021, Officer Tupper submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Christian, he believes that his body is a temple of the Holy Spirit that must be prevented from being violated by vaccines.  That request was granted the same day and he received a permanent exemption.  His exemption was subsequently placed under further review, though, and he was placed on paid administrative leave—all without an interactive process that could have considered reasonable accommodations such as testing or consideration of natural immunity.  He was placed on unpaid administrative leave on November 15, 2021.  Unable to continue without a job, Officer Tupper resigned under duress in January of 2022.  Throughout the ordeal caused by the vaccine mandate, he was shamed by co-workers, family, and friends for not getting the vaccine.  Despite the fact that San Francisco was place he was born and raised in, he had

1  no choice but to move out of state for an employment opportunity.  The City's actions caused him

2  significant stress, which led to sleepless nights and poor eating habits.  He also exhausted a large

3  portion of his savings and lived on credit cards.

4      186.    Plaintiff Herschel Julian Ticzon worked as a Police Officer at the San Francisco Police

5  Department for over three years.  On September 16, 2021, Officer Ticzon submitted a timely request

6  for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  That request

7  was denied on September 29, 2021.  The City checked all four boxes on its new form: (1) there was

8  a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3)

9  accommodation would prevent employee from performing essential functions; and (4) an

10  accommodation would be an undue hardship because of the unsubstantiated belief that an

11  unvaccinated employee presents a danger to themselves, co-workers, and the public.

12      As with other police officers, CCSF's treatment of Officer Ticzon only underscores the

13  pretext of the City's religious accommodation denials.  The denial blindly checked every box as a

14  possible reason.  Yet he was never even offered an "interactive process" to assess reasonable

15  accommodations such as testing or consideration of natural immunity.  He was placed on paid leave

16  on September 24, 2021, and then unpaid leave on December 16, 2021.  Officer Ticzon resigned under

17  duress on February 1, 2022.

18      187.    Plaintiff Carson Robert Schilling worked for CCSF for over two years, most recently

19  as a Police Officer at the San Francisco Police Department.  On August 26, 2021, he submitted a

20  timely request for an exemption from the vaccine mandate based on his sincerely held religious

21  beliefs.  As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their

22  development or production.  His request was granted on August 31, 2021, and he received a

23  permanent exemption.  After a subsequent review, however, his exemption was rescinded on

24  September 29, 2021.   Unlike the prior approval, the City now checked all four boxes on its new

25  form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a

26  direct threat; (3) accommodation would prevent employee from performing essential functions; and

27  (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an

28  unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with many other officers, CCSF's treatment of Officer Schilling underscores the pretext of the City's religious accommodation denials.  The new denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when his accommodation request was granted.  He was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  Officer Schilling was placed on administrative leave on October 14, 2021, and then placed on unpaid leave at the beginning of December 2021.  Unable to continue on an indefinite unpaid leave, he resigned under duress on January 10, 2022.  The City's actions caused Officer Schilling to suffer great financial strain.  He was forced to spend most of his life saving in order to pay his bill.  Not receiving a paycheck, he was under a great deal of stress, especially since he was supporting his then-pregnant fiancée.

188.    Plaintiff Sarah Badr worked as a Police Officer for over a year at the San Francisco Police Department.  On August 11, 2021, Officer Badr submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout Muslim, she could not take the vaccine since it would violate her belief that body modification is prohibited in Islam.  On August 13, 2021, her request was approved, and she received a permanent exemption.  Like the others who applied early, however, her exemption was rescinded on September 29, 2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other officers, CCSF's treatment of Officer Badr shows the pretext of the City's religious accommodation denials.  The new denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when her accommodation request was granted.  She was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  Officer Badr was placed on administrative leave on October 14, 2021, and then placed on unpaid leave on November

14, 2021.  Unable to withstand not being paid, she resigned under duress on January 13, 2022.  The City's actions caused her to prematurely withdraw cash from a retirement fund to be able to sustain and not lose her home that she recently purchased.  She also accrued debt when paying for bills, groceries, and her mortgage, as well as rent for the house in which her mother and brothers resided.

189.    Plaintiff Kiera Noelle O'Shea was employed by CCSF for over one year, most recently as a Police Officer at the San Francisco Police Department.  On August 29, 2021, Officer O'Shea submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout Christian, she believes that her body is a temple in the likeness of God that must not be desecrated by unnatural substances including immunizations.  On August 31, 2021, her request was approved, and she received a permanent exemption.  After further review, however, her exemption was rescinded September 24, 2021.  Unlike the prior approval, the City now checked all four boxes on its new form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other police officers, CCSF's treatment of Officer O'Shea highlights the pretext of the City's religious accommodation denials.  The new denial—blindly checking every box as a possible reason—was now directly contradicting what had been implied earlier when her accommodation request was granted.  She was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  This was the case even though she had contracted COVID-19 in August of 2020, which gave her natural immunity.  On October 13, 2021, Officer O'Shea was placed on paid administrative leave.  On November 12, 2021, she was placed on unpaid leave until her termination on April 25, 2022.  The City's actions have caused her to suffer stress and a feeling of isolation from friends, family, and co-workers.  As a result of being terminated, she had no income and was forced to drain her savings to pay for food, shelter, and bills.

///

***San Francisco Department of Public Health (22 Plaintiffs)***

190.    Plaintiff Marylin Taylor worked for CCSF for almost 30 years, most recently as a Nursing Staff Assistant at San Francisco General Hospital.  In July of 2021, Ms. Taylor submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs that prevent her from taking any vaccines.  She was informed during September of 2021 that she could not return to work due to her vaccination status.  Ms. Taylor's accommodation request was denied six months later, on January 7, 2022.  Without evidence, the City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

CCSF's treatment of Ms. Taylor underscores the pretext of the City's religious accommodation denials.  The denial blindly checked every box as a possible reason.  She was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity, though.  Ms. Taylor retired under duress on March 1, 2022—approximately two months after recovering from COVID-19 and earning an immunity superior to the employees San Francisco continues to allow to work who have been vaccinated but have not previously had COVID.

191.    Plaintiff Dr. Susan Ruth Downs was employed by the University of San Francisco (UCSF) and worked at the San Francisco General Hospital (run by CCSF) as a Psychiatrist for over 24 years.  On September 1, 2021, Dr. Downs submitted to UCSF a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout believer in Spiritual Science who believes in God and Jesus, she could not take a vaccine since doing so would be unholy and in violation of God's power.  Her request was *approved* by UCSF that same day.  On September 27, 2021, however, she was informed that the City would not recognize that same exemption.  Dr. Downs was banned from her workplace on October 1, 2021 without an interactive process to determine any reasonable accommodation that might be available.  On December 19, 2021, Dr. Downs submitted proof of her COVID-19 antibodies that provided her with natural

immunity but was still not accommodated.  On July 27, 2022 she received notification from her superior that SFGH valued her work and wished her to continue, but that she would be terminated on July 28, 2022 unless she was fully vaccinated.  Dr. Downs's superior e-mailed her with the clear, but unfortunate, reality: "the City does not provide any exemptions from this requirement."  She resigned under duress on July 28, 2022.

192.    Plaintiff Robert Seth Geller worked for CCSF for over 23 years, most recently as a Patient Accounts Supervisor at the Department of Public Health.  On September 27, 2021, Mr. Geller submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout believer in God, he believes that God has provided him with a perfect body that must not be defiled or spoiled by things such as vaccines.  That request was denied on November 29, 2021.  The City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other Department of Public Health employees, CCSF's treatment of Mr. Geller only underscores the pretext of the City's religious accommodation denials.  The denial blindly checked every box as a possible reason.  Mr. Geller was never offered an "interactive process" to assess reasonable accommodations such as telework—which he and two-thirds of the team he had been supervising had been doing 100% since March of 2020—testing, or consideration of natural immunity.  On November 14, 2021, he was placed on paid administrative leave.  That was changed to unpaid leave on January 18, 2022, and he retired under duress on April 1, 2022.  Due to the City's unlawful actions, Mr. Geller lost a recently attained supervisory position for which he had worked years to attain, and concomitantly lost the income that was slated for his youngest daughter's college tuition.

193.    Plaintiff Novia Chandra-Madejski worked for CCSF for over 18 years, most recently as an IS Business Analyst-Principal at the San Francisco Department of Public Health.  On September 2, 2021, Ms. Chandra-Madejski submitted a timely request for an exemption from the

1  vaccine mandate based on her sincerely held religious beliefs.  As a devout Christian and follower

2  of Christ, she believes that her body is a temple of the Holy Spirit that must be kept clear of unclean

3  products, and should not be used for medical experimentation.  Her request was denied on November

4  16, 2021.  The City checked all four boxes on its form: (1) there was a failure to prove a sincere

5  religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent

6  employee from performing essential functions; and (4) an accommodation would be an undue

7  hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to

8  themselves, co-workers, and the public.

9      As with other Department of Public Health employees, CCSF's treatment of Ms.Chandra-

10  Madejski only underscores the pretext of the City's religious accommodation denials.  The denial

11  blindly checked every box as a possible reason.  Ms. Chandra-Madejski was never offered an

12  "interactive process" to assess reasonable accommodations such as testing or consideration of natural

13  immunity.  Such accommodations would have been completely unnecessary in Ms. Chandra-

14  Madejski's case, though since she was already working 100% remotely and was replaced by someone

15  working 100% remotely from out of state.  She was terminated on April 22, 2022.  The City's

16  unlawful actions have caused strain on both Ms. Chandra-Madejski's mental health and physical

17  health, which has required her to seek medical treatment.  Her family lost the only source of income

18  and medical benefits, which forced them to use their life savings in order to cover her medical costs

19  and family daily expenses.  Additionally, CCSF's violations cost her an opportunity to realize a

20  substantial wage increase based on her latest performance appraisal indicating that she had

21  "exceed[ed] expectation[s]."  She is currently on disability due to the City's actions.

22      194.    Plaintiff Runjohnya Burgess worked for CCSF for over 14 years, most recently as a

23  Registered Nurse / Special Nurse at the Department of Public Health.  On September 27, 2021, Mr.

24  Burgess submitted a timely request for an exemption from the vaccine mandate based on his sincerely

25  held religious beliefs.  The City denied his request, checking all four boxes on its form: (1) there was

26  a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3)

27  accommodation would prevent employee from performing essential functions; and (4) an

28  accommodation would be an undue hardship because of the unsubstantiated belief that an

1   unvaccinated employee presents a danger to themselves, co-workers, and the public.  He had been

2   testing twice a week per work place protocol and had never tested positive because of his prior

3   infection at the outset of the pandemic.

4          As with other Department of Public Health employees, CCSF's treatment of Mr. Burgess

5   only underscores the pretext of the City's religious accommodation denials.  The denial blindly

6   checked every box as a possible reason.  Mr. Burgess was never offered an "interactive process" to

7   assess reasonable accommodations such as testing or consideration of natural immunity (stemming

8   from his prior infection and of which his manager and HR had both been informed).  He was placed

9   on unpaid leave and then terminated on April 1, 2022.  The extra stress inflicted on him by the City's

10  ostracization and termination led directly to a separation from his wife.  Mr. Burgess is now a single

11  father and has suffered tremendous emotional stress trying to provide food, clothing, and shelter for

12  himself and his baby daughter.  This has also let to Mr. Burgess exhausting his savings and being

13  forced to accumulate credit card debt that will hang over him indefinitely.

14         195.    Plaintiff Katrina Ann Meier worked for CCSF for over 13 years, most recently as a

15  Registered Nurse at the San Francisco Department of Public Health.  On September 29, 2021, Ms.

16  Meier submitted a timely request for an exemption from the vaccine mandate based on her sincerely

17  held religious beliefs.  As a devout Christian, she could not take the vaccine since it is a sin to violate

18  the will of God.  On November 17, 2021, her request was denied.  In denying her, the City checked

19  all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2)

20  accommodation would pose a direct threat; (3) accommodation would prevent employee from

21  performing essential functions; and (4) an accommodation would be an undue hardship because of

22  the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-

23  workers, and the public.

24         As with other Department of Public Health employees, CCSF's treatment of Ms. Meier only

25  underscores the pretext of the City's religious accommodation denials.  The denial blindly checked

26  every box as a possible reason.  Ms. Meier was never offered an "interactive process" to assess

27  reasonable accommodations such as testing or consideration of natural immunity.  Ms. Meier's

28  previous COVID infection—which she would have been willing to provide evidence of—was known

1   by her manager and provided greater protection from infection than a primary series of

2   vaccinations.  She was nevertheless terminated four days before Christmas for failure to receive a

3   medical treatment designed to induce artificial immunity for COVID variants that were no longer

4   prevalent.  Ms. Meier is a single mother and has suffered enormous emotional stress trying to pay

5   for food, bills, and rent for herself and her young son.  She was forced to exhaust her savings and to

6   accumulate credit card debt that she is still paying down today.

7        196.    Plaintiff Monica Lissette Gutierrez worked for CCSF for over 12 years, most recently

8   as a Registered Nurse at the San Francisco Department of Public Health.  On September 15, 2021,

9   Ms. Gutierrez submitted a timely request for an exemption from the vaccine mandate based on her

10  sincerely held religious beliefs.  As a devout Catholic, she opposed the vaccines' use of fetal stem

11  cell lines in their development or production.  She also believes that, in accordance with the Catholic

12  church catechism, God controls her life and body, so she must follow what her conscience and Holy

13  Spirit tells her to do in her heart and life.  Her request was denied on or about October 5,

14  2021.  Despite the fact that she submitted a 2-page letter detailing support for her beliefs in Catholic

15  doctrine, the City checked the boxes for (1) failure to prove religious belief sincere; and (2) that an

16  accommodation would be an undue hardship because of the unsubstantiated belief that an

17  unvaccinated employee presents a danger to themselves, co-workers, and the public.  Yet Ms.

18  Gutierrez was never offered an "interactive process" to assess reasonable accommodations such as

19  testing or consideration of natural immunity.  She previously contracted COVID-19 and had natural

20  immunity when she was terminated on April 1, 2022 for failure to receive a medical treatment

21  designed to induce artificial immunity for COVID variants that were no longer prevalent.  As a result

22  of the City's actions, Ms. Gutierrez suffered high levels of depression, psychological distress,

23  anxiety, insomnia, and financial hardship.  She was without pay from December 30, 2021 until May

24  25, 2022, when she began employment at Contra Costa County, which granted her a religious

25  exemption from the vaccine.

26       197.    Plaintiff Orchid Zoe Soh worked for CCSF for over 12 years, most recently as a

27  Registered Nurse at San Francisco General Hospital.  On August 31, 2021, Ms. Soh submitted a

28  timely request for an exemption from the vaccine mandate based on her sincerely held religious

beliefs.  As a devout Evangelical Christian, she believes her body is a temple of the Holy Spirit, and therefore she must honor and glorify God by keeping her body free from the vaccine.  Her exemption request was denied on September of 30, 2021.  Without evidence, the City asserted that (1) her claim of religious belief was insincere; and (2) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.  She was never offered an "interactive process" to assess reasonable accommodations such as regular testing, masking, or consideration of natural immunity, though.  Ms. Soh was placed on paid administrative leave on October 1, 2021, and then on unpaid leave on December 22, 2021 for up to 120 days due to an amnesty agreement between the City and her labor union.  She was terminated on April 1, 2022.  Due to the City's unlawful actions, Ms Soh has suffered insomnia and emotional stress, for which she was prescribed medication.  She spent down her life savings to pay bills, and she and her family had to uproot and move to another state for her to find a new job.

198.    Plaintiff Kristin C. Lavelle worked at the San Francisco Department of Public Health for over nine years as an Occupational Therapist.  On September 27, 2021, Ms. Lavelle submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout believer in the Divine Creator, she believes that her blood and body are sacred, and to intervene in her body's perfection and balance by taking the vaccine would be sacrilegious.  Her request was denied on November 22, 2021.  In denying her, the City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other Department of Public Health employees, CCSF's treatment of Ms. Lavelle underscores the pretext of the City's religious accommodation denials.  The denial blindly checked every box as a possible reason.  Ms. Lavelle was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  Additionally, Ms. Lavelle previously handled some appointments through telehealth and her department had someone

1  leaving who worked 100% remote two days a week that would need to be replaced.  Her immediate

2  supervisor and direct co-workers agreed that this would be a good solution to a severe backlog in

3  patient care.  Ms. Lavelle could have fulfilled her part-time duties completely remote as well but the

4  City refused to consider that option and, instead, placed her on unpaid leave just before Christmas of

5  2021.  Ms. Lavelle then contracted COVID-19 in January of 2022, and thus had natural immunity to

6  the virus when she was terminated on April 1, 2022 for failure to receive a medical treatment

7  designed to induce artificial immunity for COVID variants that were no longer prevalent.  The City's

8  unlawful actions caused Ms. Lavelle to suffer high stress, humiliation. and financial hardship.  She

9  felt isolated, attacked, coerced, bullied. and discriminated against, which caused her to begin

10  attending counseling sessions.

11         199.    Plaintiff Lusiana Barajas was a Hospital Eligibility Worker at San Francisco General

12  Hospital (SFGH) for over eight years.  On August 30, 2021, Ms. Barajas submitted a timely request

13  for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout

14  Catholic, she opposed the vaccines' use of fetal stem cell lines in their development or

15  production.  Her request was denied on October 12, 2021.  The City asserted that (1) her claim of

16  religious belief was insincere; and (2) an accommodation would be an undue hardship because of the

17  unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers,

18  and the public.  This was claimed by CCSF even though Ms. Barajas provided a detailed letter

19  outlining precisely why abortion violates her religious beliefs and that the vaccines' tainted origins

20  cause them to conflict with those beliefs about the value of human life.  She was never offered an

21  "interactive process" to assess reasonable accommodations such as testing or consideration of natural

22  immunity, though.  This was so even though occupational services at the hospital was aware she

23  previously had COVID-19 and thus possessed natural immunity.  On September 30, 2021, Ms.

24  Barajas was placed on administrative leave.  She was terminated on November 19, 2021.  She was

25  reinstated on the same day and placed on unpaid leave due to a 120-day amnesty agreement between

26  the City and her labor union.  Ms. Barajas was terminated a second time on April 1, 2022.  On June

27  10, 2022, after applying for a job at the University of California at San Francisco Medical Center,

28  she received a religious exemption from the institution's COVID-19 vaccine mandate.

200.    Plaintiff Abby Mara Thrasher worked for over eight years for CCSF as a Psychiatric Occupational Therapist with the Department of Public Health at Zuckerberg San Francisco General Hospital.  On September 15, 2021, Ms. Thrasher submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a Christian Scientist, she considers her life a gift from God and believes that her body is a temple of the Holy Spirit that must be kept clear of foreign substances.  Since becoming a Christian Scientist, she has never taken a vaccine.  Her request was denied on November 2, 2021.  While the City implicitly conceded that she was entitled to an exemption, CCSF claimed that an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public that cannot be mitigated.  Such a claim could not be supported by FDA, CDC, or other public health authorities.  Moreover, Ms. Thrasher was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  On December 30, 2021, she was placed on unpaid leave.  Ms. Thrasher previously recovered from COVID-19 in January 2022 and had natural immunity when she was terminated on April 1, 2022 for failure to take a vaccine that induces artificial immunity for COVID variants that were no longer prevalent.

201.    Plaintiff Dheyanira E. Calahorrano worked for over seven years for CCSF, most recently as a Health Worker II at the San Francisco Department of Public Health.  On September 24, 2021, Ms. Calahorrano submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout adherent of Native American religion observing the beliefs of her indigenous Ecuadorian background, she opposed the vaccines' use of fetal stem cell lines in their development or production.  Her request was denied on November 17, 2021.  The City asserted that an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.  Yet she had been teleworking since April 2020, only going to the office as needed.  Ms. Calahorrano was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity, though.  On December 6, 2021, she was referred to the 60-day Citywide Job Search.  Her job search expired without a vacancy suitable to CCSF.  On

June 21, 2022, the City issued a letter to her stating it is recommending that she be medically separated. She remains on unpaid leave. The City's actions, leaving her with no income, have caused severe financial strain and prevented her from being promoted. The risk of being evicted from her home forced her to apply for rent assistance programs and the stress caused by the City's actions is forcing her to seek therapy as soon as she can afford it.

202.   Plaintiff Leonidas Rosales Escalante worked for CCSF for over six years, most recently as an Institution Utility Worker at the San Francisco Department of Public Health. On September 29, 2021, Mr. Rosales submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their development or production. He was placed on paid leave at the beginning of October and then his request was denied on November 30, 2021. In denying him, The City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public. This is despite the fact that his attorney submitted a letter detailing precisely why abortion violates his religious beliefs and that the vaccines' tainted origins cause them to conflict with those beliefs about the value of human life.

As with other Department of Public Health employees, CCSF's treatment of Mr. Rosales only underscores the pretext of the City's religious accommodation denials. The denial blindly checked every box as a possible reason. Mr. Rosales was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. He was placed on unpaid leave on December 19, 2021, and then terminated on April 1, 2022.

203.   Plaintiff Mei Mei Zhu worked for over six years for CCSF, most recently as a Medical Evaluation Assistant at San Francisco General Hospital. On September 15, 2021, Ms. Zhu submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs. As a devout Christian, she opposed the vaccines' use of fetal stem cell lines in their development or production. She was placed on leave by the hospital on October 1, 2021, even though

her request was not denied until November 12, 2021. As with the others, the City asserted without evidence that (1) her claim of religious belief was insincere; and (2) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public. She was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. Ms. Zhu was placed on unpaid leave on December 10, 2021, and then terminated three days before Christmas. She was reinstated and placed on unpaid leave due to a 120-day amnesty agreement between the City and her labor union. Ms. Zhu was terminated a second time on April 1, 2022. In August 2022, she received an accommodation exempting her from taking the vaccine at her new job at Stanford Health Care, located less than an hour away from San Francisco.

204. Plaintiff Nicole Bowman was employed by CCSF for over four years, most recently as a Senior Clerk at the San Francisco Department of Public Health. On September 1, 2021, Ms. Bowman submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs. As a devout Catholic, she opposed the vaccines' use of fetal stem cell lines in their development or production. That request was denied on October 12, 2021. The City asserted that (1) Ms. Bowman's claim of religious belief was insincere; and (2) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public. This is despite the fact that her attorney sent a letter to the City detailing her sincerely held religious beliefs and why they conflicted with the vaccine mandate. She was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. She was terminated on November 22, 2021, and then reinstated the following day to unpaid leave. Ms. Bowman succumbed to the City's coercion and took the vaccine under duress on January 28, 2022.

205. Plaintiff Meagen Carolyn Clendenen has worked for CCSF for over four years, most recently as a Registered Nurse at the San Francisco Department of Public Health. On September 29, 2021, Ms. Clendenen submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs. As a devout Catholic, she opposed the vaccines' use of fetal stem cell lines in their development or production. She was placed on leave at the beginning of

October and her request was denied on November 22, 2021. The City asserted that an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public. Ms. Clendenen was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity, though (which she has from her prior COVID-19 infection). She was referred to the (futile) 60-day Citywide Job Search. Her job search expired without a vacancy suitable in CCSF's estimation. On December 1, 2021, Ms. Clendenen was placed on indefinite unpaid leave and has now lost a year's worth of wages in addition to being unable to access her 401k. Ms. Clendenen contracted COVID-19 in December of 2021, and has had natural immunity throughout her forced leave.

206.   Plaintiff Cora Hermoso worked as a Technology Expert I for the CCSF Department of Public Health for the past three years. On December 10, 2021, Ms. Hermoso submitted an affidavit of religious exemption explaining her need for an accommodation under the vaccine mandate based on her sincerely held religious beliefs. As a devout Catholic, she opposed the vaccines' use of fetal stem cell lines in their development or production. Her request was denied on Christmas Day, 2021. The City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other Department of Public Health employees, CCSF's treatment of Ms. Hermoso underscores the pretext of the City's religious accommodation denials. The denial blindly checked every box as a possible reason. Ms. Hermoso was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. Such accommodations would have been completely unnecessary in Ms. Hermoso's case, though—she was already working 100% remotely and replaced by someone working 100% remotely (from another state). CCSF was clearly motivated by coercion and punishment, not safety. Ms. Hermoso was terminated two days after Christmas. As a result of the City's actions, she suffered depression, anger,

1   and insomnia, and needed to see a psychiatrist and therapist.  She was also forced to use up her

2   retirement savings.

3       207.    Plaintiff Jessica Lynn Johnson worked for CCSF for over three years, most recently

4   as was a Vocational Nurse Team Leader at the Department of Public Health.  On September 1, 2021,

5   Ms. Johnson submitted a timely request for an exemption from the vaccine mandate based on her

6   sincerely held religious beliefs.  As a devout Christian, she opposed the vaccines' use of fetal stem

7   cell lines in their development or production.  Suffering harassment from her supervisor and

8   discrimination at work—which led to extreme health and emotional issues—knowing that she would

9   not be granted an accommodation, and threated with termination.  Ms. Johnson resigned under duress

10  on September 30, 2021.  She feared that if she did not resign, she would lose her retirement and any

11  benefits due to her.  The City's actions caused her to suffer rejection, ridicule, and psychological

12  abuse by her superiors and co-workers.  In addition, she had no choice but to relocate to Florida,

13  where she had no family or friends.

14      208.    Plaintiff Karlyne Michelle Konczal was a Behavioral Health Team Leader at the San

15  Francisco Department of Public Health for over three years.  On September 13, 2021, Ms. Konczal

16  submitted a timely request for an exemption from the vaccine mandate based on her sincerely held

17  religious beliefs.  As a devout Christian, she opposed the vaccines' use of fetal stem cell lines in their

18  development or production.  In September 2021, she was informed by her supervisor that her request

19  would be denied and that she would be placed on unpaid leave beginning October 1, 2021.  Ms.

20  Konczal resigned under duress on September 30, 2021.  She had been ostracized by supervisors and

21  co-workers for declining to take the vaccine.  Facing the loss of her career, the City's actions caused

22  Ms. Konczal to suffer from a severe panic and anxiety disorder.  She was forced to leave the San

23  Francisco Bay area in order to be employed.

24      209.    Plaintiff Juan Pablo Poncia worked for CCSF for over three years, most recently as a

25  Registered Nurse at San Francisco General Hospital.  On September 10, 2021, Mr. Poncia submitted

26  a timely request for an exemption from the vaccine mandate based on his sincerely held religious

27  beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their

28  development or production.  On October 21, 2021, his request was denied.  Without evidence, the

City asserted that (1) his claim of religious belief was insincere; and (2) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.  He was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity, though, even though the City knew he had recovered from COVID-19 already.  He was first terminated on December 1, 2021, but was reinstated and placed on unpaid leave later that month due to a 120-day amnesty agreement between the City and his labor union.  Mr. Poncia was terminated for a second time on April 1, 2022—after just recently being voted "Nurse of the Year" by the emergency medicine team at the hospital.

210.    Plaintiff Nubia Vargas has worked for CCSF for over three years, most recently as a Hospital Eligibility Worker at the San Francisco Department of Public Health.  On September 13, 2021, Ms. Vargas submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout practitioner of SGI Nichiren Buddhism, she believes that—given the use of and experimentation on animals and human beings in the vaccine's development—taking the vaccine would violate Buddhism's first precept against destroying life and the principle of non-harm to living beings.  That request was denied two days later.  In denying her, the City checked the box indicating that an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.  Ms. Vargas was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  She was subsequently referred to the 60-day Citywide Job Search which, predictably, expired without a vacancy suitable for CCSF.  Ms. Vargas was placed on unpaid administrative leave on January 8, 2022.  She was separated on August 31, 2022, even though she had COVID-19 while on leave and is naturally immune to the virus (the City is aware of both of those facts).  Underscoring CCSF's commitment to punish the unvaccinated, Ms. Vargas's separation comes after the CDC provided guidance that, even setting aside the issue of reasonable accommodations, unvaccinated individuals should not be treated differently than vaccinated individuals.  It is telling that Ms. Vargas was able to find employment with neighboring Contra Costa County, which hired her to begin working on February

1, 2022.  Ms. Vargas was able to be accommodated there, of course, because it has been shown time and again that municipalities can reasonably accommodate their employees who are exempt from COVID-19 vaccine mandates.  San Francisco just didn't want to.

211.    Plaintiff Kaitlyn Michelle Valencia worked for CCSF for over two years, most recently as a Registered Nurse at San Francisco General Hospital.  On September 9, 2021, Ms. Valencia submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout Christian, she believes God speaks through His Spirit and Word, giving her direction not to defile the Temple (body).  Her request was denied on October 20, 2021.  Without evidence, the City asserted that (1) her claim of religious belief was insincere; and (2) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.  This is despite the fact that she submitted a 4-page outline of her religious beliefs.  She was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  This was true even though Ms. Valencia had recovered from COVID-19 earlier in 2021—a fact known to her manager and HR.  Ms. Valencia was placed on unpaid leave just after Christmas of 2021, and was terminated on April 1, 2022.  The City's actions have cost Ms. Valencia over 11 months of income and health insurance for herself and her husband.  This has depleted her life savings entirely and forced her to move out of her apartment.  The stress she endured has also forced her to enter a therapy program.

### *San Francisco Public Utilities Commission (21 Plaintiffs)*

212.    Plaintiff Joseph John Casteel worked for CCSF for over 32 years, most recently as Water and Power Maintenance Supervisor at the Hetch Hetchy Water & Power facility, a division of the San Francisco Public Utilities Commission.  On September 23, 2021, Mr. Casteel submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Christian, he opposes the vaccines' use of fetal stem cell lines in their development or production.  His request was denied on October 19, 2021.  In denying him, the City checked the box indicating that Mr. Casteel had not proven that his religious beliefs were sincere.  This was so even though he provided a detailed letter outlining the vaccines' tainted origins

1  cause them to conflict with his beliefs about the value of human life, in addition to the 3-page

2  response to the questions he received challenging his initial religious beliefs response.  The responses

3  that Mr. Casteel submitted could not have been credibly deemed not to evidence a sincere religious

4  belief.  Because the City ignored his clearly documented sincere religious belief, it did not engage in

5  an "interactive process" to assess reasonable accommodations such as testing or consideration of

6  natural immunity.  After a period of administrative leave, he was terminated on April 1, 2022, but

7  then allowed to retire under duress effective in May 2022.  His family has been evicted from their

8  company-owned housing and the City's actions have caused him severe stress which he is still

9  seeking to address.

10      213.    Plaintiff John Joseph Mullen worked for CCSF for over 25 years, most recently as an

11  Operating Engineer at the San Francisco Public Utilities Commission.  On October 4, 2021, Mr.

12  Mullen submitted a timely request for an exemption from the vaccine mandate based on his sincerely

13  held religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in

14  their development or production.  His request was apparently denied the same day.  The City

15  embarrassingly claimed that Mr. Mullen's religious beliefs were insincere (with obviously no

16  consideration of his views) and thus never engaged in an "interactive process" to assess reasonable

17  accommodations such as testing or consideration of natural immunity.  Mr. Mullen was on paid leave

18  for November and December.  He was then placed on unpaid leave at the beginning of January of

19  2022.  After almost three months without work, Mr. Mullen took the vaccine under duress on March

20  28, 2022.  Nevertheless, the City persisted with its punishment for Mr. Mullen's failure to meet the

21  vaccination deadline and terminated him on April 1, 2022.

22      214.    Plaintiff Ronald Michael Tolentino worked for CCSF for over 24 years, most recently

23  as an Auto Machinist Assistant Supervisor at the San Francisco Public Utilities Commission.  On

24  September 28, 2021, Mr. Tolentino submitted a timely request for an exemption from the vaccine

25  mandate based on his sincerely held religious beliefs.  As a devout Christian, he believes that his

26  body is a temple of the Holy Spirit that must not be contaminated by threatening substances.  On

27  October 29, 2021, he also informed his department managers that he had a health condition that

28  warranted an exemption.  The City claimed that Mr. Tolentino's religious beliefs were insincere and

1  thus never engaged in an "interactive process" to assess reasonable accommodations such as testing
2  or consideration of natural immunity.  On November 30, 2021, he submitted a claim for worker's
3  compensation.  He was terminated on December 6, 2021.  Due to a 120-day amnesty agreement
4  between the City and his labor union, he was reinstated on unpaid leave.  He was terminated a second
5  time on April 1, 2022.  Mr. Tolentino retired under duress on May 3, 2022 in order to have a portion
6  of his income and to help pay for his health benefits.

7       215.    Plaintiff Owen Glen Brantley III worked as a Truck Driver at the San Francisco Public
8  Utilities Commission for over 22 years.  He contracted COVID-19 in December 2020, which he
9  notified HR of, and for which he was given approved leave.  On October 1, 2021, Mr. Brantley
10  submitted a timely request for an exemption from the vaccine mandate based on his sincerely held
11  religious beliefs.  As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their
12  development or production.  While his immediate supervisor had told him he could be
13  accommodated, Mr. Brantley's request was denied that same day.  Despite the fact that he submitted
14  a 3-page statement outlining his beliefs, which were detailed in a letter sent from his attorney, the
15  City claimed that Mr. Brantley's religious belief was insincere.  On October 27, 2021, he also
16  submitted a timely request for an exemption from the vaccine based on his existing medical
17  condition.  He has Graves disease, and previously had adverse reactions to other vaccines.  That
18  request was denied the following day.  Even though Mr. Brantley submitted a Health Care Provider
19  Certification Form signed by his care provider, the City pronounced that his documentation was
20  inadequate.  Moreover, despite the fact that he worked in a very remote area in Yosemite National
21  Park in a truck by himself, the City refused his request for accommodation even though his immediate
22  supervisor said he could be accommodated.  Mr. Brantley was placed on administrative leave on
23  November 1, 2021, and unpaid leave at the beginning of December.  He was terminated on April 1,
24  2022.  The City's actions have caused Mr. Brantley to suffer stress, anxiety, insomnia, and
25  depression.  His marriage has been strained, he felt humiliated at being terminated, and he has had
26  to spend down his savings to survive and pay his bills and mortgage.  Having invested over 22 years
27  at the City, while expecting to work 30, he is unable to start a new career at his advanced age.

28       216.    Plaintiff Kevin Russell Gustafson worked for CCSF for over 21 years, most recently

as a Senior Stationary Engineer for the Public Utilities Commission.  On September 24, 2021, Mr. Gustafson submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  His request was denied on October 19, 2021.  The City claimed that Mr. Gustafson's religious beliefs were insincere and thus never engaged in an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  This is despite the fact that he submitted a 6-page letter outlining precisely why abortion violates his religious beliefs and that the vaccines' tainted origins cause them to conflict with those beliefs about the value of human life.  In addition, given that members of Mr. Gustafson's department primarily work alone in the field and at remote locations, he could easily have been accommodated.  As he received no firm answer from HR on whether or not his retirement would be affected by any disciplinary actions taken by the City, and as he was unable to continue on an unpaid leave, Mr. Gustafson resigned under duress on October 28, 2021.  The City's actions caused him a great deal of mental anguish, stress, and financial hardship.  Mr. Gustafson's retirement benefits are significantly less than what he had planned on receiving and his ability to accumulate additional savings was decreased in an unforeseen manner.

217.    Plaintiff Michael Anthony Sorini has worked for CCSF for over 20 years, most recently as a Manager I at the San Francisco Public Utilities Commission.  On September 27, 2021, Mr. Sorini submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Christian, he believes that the Holy Spirit has moved his heart and conscience such that taking the vaccine would be a sin against God.  His request was denied on or about September 29, 2021.  Without evidence, the City asserted that an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.  He was referred to the 60-day Citywide Job Search at the beginning of November, during which time he worked remotely—a position in which he could have continued indefinitely without any undue hardship on the City.  On January 19, 2022, Mr. Sorini began an FMLA/CFRA-protected leave of absence, on which he remained through May 8, 2022.  He was then placed on unpaid leave on May 9, 2022, and was told that he would begin an interactive process that should take about two weeks.  After two months of no contact during the

1  interactive process to assess reasonable accommodations, such as testing or consideration of natural

2  immunity (even though he had a previous infection and thus possessed natural immunity to COVID,

3  a superior version of vaccine-induced immunity), he made contact with the City to inquire about the

4  process.  At a meeting on September 9, 2022, he was informed that none of his proposals for an

5  accommodation met the City's criteria.  He retired under duress on September 15, 2022 to avoid

6  losing his medical insurance.

7         218.    Plaintiff Martin Joseph Walsh has worked for CCSF for over 20 years, most recently

8  as a General Laborer at the Public Utilities Commission.  On October 18, 2021, Mr. Walsh submitted

9  a timely request for an exemption from the vaccine mandate based on his sincerely held religious

10 beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their

11 development or production.  On October 26, 2021, his request was denied.  The City asserted that

12 (1) his claim of religious belief was insincere; and (2) an accommodation would be an undue hardship

13 because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves,

14 co-workers, and the public.  He was never offered an "interactive process" to assess reasonable

15 accommodations such as testing or consideration of natural immunity.  Unable to be without a job,

16 Mr. Walsh acquiesced to the City's coercion and took the vaccine under duress on November 20,

17 2021.  The City's actions caused him to suffer insomnia and emotional torment since he betrayed his

18 religious beliefs.

19        219.    Plaintiff Patrick Gerard Daly worked for CCSF for over 17 years, most recently as a

20 General Laborer at the Public Utilities Commission.  On October 18, 2021, Mr. Daly submitted a

21 timely request for an exemption from the vaccine mandate based on his sincerely held religious

22 beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their

23 development or production.  His request was denied on October 28, 2021.  Without evidence, the

24 City asserted that (1) his claim of religious belief was insincere; and (2) an accommodation would

25 be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents

26 a danger to themselves, co-workers, and the public.  He was never offered an "interactive process"

27 to assess reasonable accommodations such as testing or consideration of natural immunity.  Mr. Daly

28 was terminated on December 6, 2022.  The City's actions caused him to lose a job promotion, and

1  his retirement wages suffered to pulling them out early, sending him into financial hardship.  He had
2  no choice but to cash out his deferred compensation, causing him to lose a significant amount of
3  money in taxes.  Mr. Daly also went the month of December 2021 without any medical insurance,
4  which was very stressful since he had a major risk of a heart attack, which indeed he had a few
5  months later.

6      220.    Plaintiff Refugio J. Garcia worked for CCSF for almost 18 years, most recently as an
7  Associate Mechanical Engineer at the Public Utilities Commission.  On October 18, 2021, Mr. Garcia
8  submitted a timely request for an exemption from the vaccine mandate based on his sincerely held
9  religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their
10 development or production.    The EEO Programs Manager e-mailed him confusing follow-up
11 questions, and before he could fully answer them (which he did in a three-page letter detailing his
12 beliefs and church doctrine), his request was denied on October 27, 2021.  Without evidence, the
13 City asserted that (1) his claim of religious belief was insincere; and (2) an accommodation would
14 be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents
15 a danger to themselves, co-workers, and the public.  The City's arguments were invalid, of course,
16 as Mr. Garcia was telecommuting 100% of the time since April of 2020 and his department was
17 allowed to telecommute well after he was placed on leave.  Nevertheless, he was never offered an
18 "interactive process" to assess reasonable accommodations such as testing or consideration of natural
19 immunity.  Mr. Garcia was placed on paid leave on November 1, 2021.  Due to stress and anxiety
20 caused by the vaccine mandate and subsequent City actions, Mr. Garcia requested workers
21 compensation on November 11, 2021 (seeing a doctor in December), which was later denied on
22 January 7, 2022.  The emotional distress caused by the City aggravated an existing heart condition;
23 he had difficulty concentrating, breathing, and sleeping, and he lost over 30 pounds in weight.  Mr.
24 Garcia was placed on unpaid leave at the beginning of December and was terminated on April 1,
25 2022.  He also suffered additional retaliation in the form of his e-mail and work access (including
26 access to digital personal property) being abruptly cut off after he spoke with the Employee Labor
27 Relations Division Manager.  Due to the City's actions, Mr. Garcia lost promotion opportunities and
28 career seniority.

1    221.   Plaintiff Randal Ray Gerhart worked for CCSF for over 17 years, most recently as a
2    Truck Driver at the Public Utilities Commission.  On September 30, 2021, Mr. Gerhart submitted a
3    timely request for an exemption from the vaccine mandate based on his sincerely held religious
4    beliefs.  As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their
5    development or production.  His request was denied on November 5, 2021.  The City claimed that
6    Mr. Gerhart's religious beliefs were insincere and thus never engaged in an "interactive process" to
7    assess reasonable accommodations such as testing or consideration of natural immunity.  He was
8    placed on paid leave on November 8, 2021.  Mr. Gerhart retired under duress on December 1, 2021.

9    222.   Plaintiff Patrick Francis Mullen has worked for CCSF for over 17 years, most recently
10   as a Sewer Repair Supervisor at the Public Utilities Commission.  On September 13, 2021, Mr.
11   Mullen submitted a timely request for an exemption from the vaccine mandate based on his sincerely
12   held religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in
13   their development or production.  His request was denied on October 27, 2021.  The City asserted
14   that (1) his claim of religious belief was insincere; and (2) an accommodation would be an undue
15   hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to
16   themselves, co-workers, and the public.  Unable to continue without a job, Mr. Mullen acquiesced to
17   the City's edict and took the vaccine under duress on November 4, 2021.

18   223.   Plaintiff Tina Louise Sanchez worked for CCSF for over 15 years, 8 of those years as
19   a Maintenance Scheduler-Estimator at the Public Utilities Commission.  On September 20, 2021,
20   Ms. Sanchez submitted a timely request for an exemption from the vaccine mandate based on her
21   sincerely held religious beliefs.  As a devout Christian, she opposed the vaccines' use of fetal stem
22   cell lines in their development or production.  Her request was denied on October 12, 2021.  Ms.
23   Sanchez provided the City with a letter outlining precisely why abortion violates her religious beliefs
24   and that the vaccines' tainted origins caused them to conflict with those beliefs about the value of
25   human life, but CCSF declined to engage with her explanation for her beliefs and placed her on
26   unpaid leave just after Christmas 2021.  The City claimed that Ms. Sanchez's religious beliefs were
27   insincere and thus never engaged in an "interactive process" to assess reasonable accommodations
28   such as telework, testing, or consideration of natural immunity.  In fact, she had been teleworking

1  100% of the time during the pandemic, which she could have continued to do. Ms. Sanchez had
2  planned to work until at least age 62 but was forced to resign under duress on April 1, 2022.

3       224.    Plaintiff Walter Santo Varo worked for CCSF for over 15 years, most recently as a
4  Truck Driver at the Public Utilities Commission. On October 12, 2021, Mr. Varo submitted a timely
5  request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As
6  a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or
7  production. His request was denied on November 3, 2021. The City asserted that (1) his claim of
8  religious belief was insincere; and (2) an accommodation would be an undue hardship because of the
9  unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers,
10  and the public. The City's actions caused him so much emotional distress, depression, and anxiety
11  that he received a letter from his physician removing him from work. Mr. Varo was never offered
12  an "interactive process" to assess reasonable accommodations such as testing or consideration of
13  natural immunity. Yet he could easily have been accommodated since he was a truck driver who
14  worked alone. He was placed on unpaid leave on October 29, 2021 and terminated on April 1, 2022.
15  In addition to the stress and emotional damages caused by the City's actions, Mr. Varo's job loss
16  caused him to lose more than 50% of his retirement.

17       225.    Plaintiff Scott Pepito worked for CCSF for over 11 years, most recently as a
18  Transmission Line Worker at the Public Utilities Commission. On August 30, 2021, Mr. Pepito
19  submitted a timely request for an exemption from the vaccine mandate based on his sincerely held
20  religious beliefs. As a devout Evangelical Christian, he opposed the vaccines' use of fetal stem cell
21  lines in their development or production. He received a denial letter in October dated the same day
22  he made his request. The City claimed that Mr. Pepito's religious beliefs were insincere and thus
23  never engaged in an "interactive process" to assess reasonable accommodations such as testing or
24  consideration of natural immunity. He was terminated on April 1, 2022.

25       226.    Plaintiff James R. Sutherlin worked for over 11 years for CCSF, most recently as an
26  Electrician at the Public Utilities Commission. In September of 2021, Sutherlin submitted a timely
27  request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. His
28  request was denied on September 30, 2021, without any "interactive process" to assess reasonable

accommodations such as testing or consideration of natural immunity. Mr. Sutherlin was terminated on November 1, 2021.

227.    Plaintiff Richard David Fields worked for CCSF for over 19 years, most recently as an Engineer Assistant at the Public Utilities Commission. On October 14, 2021, Mr. Fields submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout member of the Church of God, he opposed the vaccines' use of fetal stem cell lines in their development or production. On October 29, 2021, his request was denied. Without evidence, the City asserted that (1) his claim of religious belief was insincere; and (2) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public. This was despite the fact that he submitted three letters from church attesting to his longstanding religious beliefs. He was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. This was so even though his office was in a remote rural location where he was the only occupant, and he had no contact with the public. He was working 100% of the time from home when he was permanently locked out of his work computer on November 1, 2021. Mr. Fields was first terminated on December 6, 2021. The next day, however, he was temporarily reinstated. On December 29, 2021, he was placed on unpaid leave. Mr. Fields was terminated on April 1, 2022. Due to the City's actions, he took a vested retirement that pays just a fraction of what he was making. He has been forced to use all his savings to pay for his mortgage, bills, and costs of taking care of his family with two young daughters. He is now faced with selling his property and moving from the house in which he was born with the hope of finding other work.

228.    Plaintiff William Daniel Brennan worked for CCSF for over nine years as a Construction Inspection, most recently as a Senior Construction Inspector for the Public Utilities Commission. On August 22, 2021, Mr. Brennan submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their development or production. He also believes he must abstain from all vaccines since they are impure and are not aligned with Scripture. His request was denied on October 27, 2021. Without evidence, the City asserted that (1) his claim of religious

1   belief was insincere; and (2) an accommodation would be an undue hardship because of the

2   unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers,

3   and the public.  This was claimed by CCSF even though Mr. Brennan provided a 2-page letter and

4   testimony from his long-time pastor precisely outlining his religious beliefs.  He was never offered

5   an "interactive process" to assess reasonable accommodations such as testing or consideration of

6   natural immunity.  This was true even though Mr. Brennan had just tested positive for COVID-19 a

7   few weeks before his request was denied, a fact his manager knew.  Moreover, Mr. Brennan worked

8   outside San Francisco at an office in Moccasin, California.  He was part of the Hetch Hetchy Project

9   and was the sole occupant in his office (and in fact telecommuted from home during his last two

10  years of employment)—there was no threat of transmission from Mr. Brennan to anyone at

11  work.  Nevertheless, he was placed on unpaid leave on March 14, 2022, and terminated on April 19,

12  2022—even though he had natural immunity and it was widely known that the primary vaccine series

13  did nothing to prevent infection.  Mr. Brennan was terminated two months before reaching eligibility

14  for full retirement and benefits. He has had to use his personal retirement savings to pay for everyday

15  living expenses.

16      229.   Plaintiff Eugenia Marie Casteel worked for CCSF for over eight years, most recently

17  as a Senior Clerk at Hetch Hetchy Water & Power, a division within the Public Utilities

18  Commission.  On September 23, 2021, Ms. Casteel submitted a timely request for an exemption from

19  the vaccine mandate based on her sincerely held religious beliefs.  As a devout Christian, she opposed

20  the vaccines' use of fetal stem cell lines in their development or production.  That request was denied

21  on October 19, 2021.  In denying her, the City checked the box indicating that Ms. Casteel had not

22  proven that her religious beliefs were sincere.  This was claimed by CCSF even though Ms. Casteel

23  initially provided a 4-page letter outlining precisely why abortion violates her religious beliefs and

24  that the vaccines' tainted origins cause them to conflict with those beliefs about the value of human

25  life, in addition to the 3-page response to the questions she received challenging her initial religious

26  beliefs response.  The responses could not have been credibly deemed not to evidence a sincere

27  religious belief.  Because the City failed to account for Ms. Casteel's clearly demonstrated sincere

28  religious beliefs, it never engaged in an "interactive process" to assess reasonable accommodations

such as testing or consideration of natural immunity. But Ms. Casteel had previously been ordered to work completely remote and her co-workers were allowed to do the same job completely remote as well. There was thus absolutely no justification for her to not be accommodated as Hetch Hetchy had already mandated all non-essential employees to work completely remote. Ms. Casteel was placed on unpaid leave on November 8, 2021, and terminated on April 1, 2022. She has experienced severe stress from the City's actions, including not just the loss of her income but also her family being evicted from their company-owned housing.

230.    Plaintiff Hector Manuel Rodriguez worked for over eight years for CCSF, most recently as a General Laborer for the Public Utilities Commission. On October 1, 2021, Mr. Rodriguez submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout follower of God, he believes he is a spiritual being whose body is a Temple, and he could not take a vaccine that is not traditionally aligned with nature and how God created him. His request was denied on October 18, 2021. The City claimed that Mr. Rodriguez's religious beliefs were insincere and thus never engaged in an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. He was first terminated on December 6, 2021. Following a temporary reinstatement on unpaid leave, he was terminated a second time on April 1, 2022.

231.    Plaintiff Norma Anne Sepulveda has worked for CCSF for over eight years, most recently as a Junior Administrative Analyst at the Public Utilities Commission. On September 24, 2021, she submitted a timely request for an exemption from the vaccine mandate based on an existing medical condition. She also submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs a few weeks later. As a devout Christian, she believes that people are created in the image of God, and therefore she is not permitted to genetically alter her body. Her religious exemption request was denied on or about October 18, 2021. The City claimed that Ms. Sepulveda's religious beliefs were insincere. On October 29, 2021, her medical exemption request was also denied for inadequate documentation. She then submitted an exemption form from her doctor to remedy the problem but CCSF never responded to her submission except for a manager to say on a call with her that the City just wanted everyone to get the vaccine. CCSF never engaged

in an "interactive process" with Ms. Sepulveda to assess reasonable accommodations such as telework, testing, or consideration of natural immunity. Unable to afford the loss of her job, Ms. Sepulveda took the vaccine under duress on November 4, 2021. Since then, her health has declined as the vaccine predictably triggered the medical problems for which she should have received an exemption in the first place.

232.    Plaintiff Hector Rodriguez worked for CCSF for over 15 years, most recently as a Truck Driver at the San Francisco Public Utilities Commission. On October 18, 2021, Mr. Rodriguez submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout God-fearing man, he believes he is a spiritual being whose body is a Temple, and he could not take a vaccine that is not traditionally aligned with nature. His request was denied on October 21, 2021. The City claimed that Mr. Rodriguez's religious beliefs were insincere and thus never engaged in an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. He was placed on unpaid leave on December 29, 2021, and terminated on April 1, 2022. The City's actions caused him to suffer mental health problems, including insomnia, anxiety, and depression. Additionally, his pension was reduced substantially since he was dismissed 10 days shy of his 62nd birthday. Mr. Rodriguez had originally intended to work for City for 20 years, but his termination precluded that.

### *San Francisco Sheriff's Office (15 Plaintiffs)*

233.    Plaintiff Christopher Joseph Krol worked for CCSF for over 23 years, most recently as a Lieutenant at the San Francisco Sheriff's Office. He was placed on paid leave on October 14, 2021 due to his vaccination status. Lieutenant Krol submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs in October or November of 2021, and his request was denied soon after. The City claimed that Lieutenant Krol's religious beliefs were insincere and thus never engaged in an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. On or about November 15, 2022, he was placed on unpaid leave. Lieutenant Krol tested positive for COVID-19 on January 2, 2022, thus confirming that he had natural immunity when he was terminated on April 1, 2022. Due to the City's action, he had no choice but to deplete his savings, and had to take two security jobs,

working over 120 hours per two-week pay period for months. His work situation caused strain in his relationship with his wife and children.

234. Plaintiff Michael John Bouvier has worked for CCSF for over 22 years, currently serving as Deputy Sheriff at the San Francisco Sheriff's Office. On August 17, 2021, Deputy Bouvier submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their development or production. Learning that the City was not engaging in the interactive process with anyone and not granting any accommodations, he began his vaccine regimen in September to keep from being out of work at any time. His department's vaccination deadline was before any decision would be made regarding his exemption request. As predicted, his request was denied on September 28, 2021—the City argued that Deputy Bouvier's claim of religious belief was insincere.

235. Plaintiff Valerio Josif worked for CCSF for over 16 years, most recently as a Deputy Sherriff at the San Francisco Sheriff's Office. He contracted COVID-19 in August 2021, of which he informed his manager and HR. He was placed on worker's compensation due to his illness. On September 3, 2021, Deputy Josif submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Eastern Orthodox Christian, he opposed the vaccines' use of fetal stem cell lines in their development or production. His request was denied on October 19, 2021. The City claimed that his documentation was insufficient to demonstrate a sincere religious belief and thus never engaged in an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. CCSF's claim would be laughable if not for the real-life damage it has caused. Mr. Josif submitted over 20 pages of theological documents—including a signed letter from his priest—explaining the religious basis for his objection to the COVID-19 vaccine. Instead of legitimately evaluating his request, though, the same person at the department just went through making the same marks on each individual's accommodation request form—the City was treating the exemption requests as a group and just issuing blanket denials rather than providing actual individualized assessments. (Tellingly, CCSF did not ask for any additional documentation before denying the request because CCSF had no intention of providing accommodations—it just wanted to "check a box" to say that it had done

individual assessments, not actually go to the trouble of doing them.)  Mr. Josif was placed on unpaid leave on December 6, 2021 until his termination on April 1, 2022, even though he tested positive for the virus' antibodies, thus showing he had natural immunity, in the Fall of 2021 when San Francisco was demanding he take a vaccine to produce artificial antibodies.  The City's actions caused Mr. Josif and his family significant financial and emotional damage.  The City's harsh treatment of him reminded him of his childhood in oppressive Communist Romania.  At the time when the City undertook its actions, he was his family's sole breadwinner with a wife and two young children.  His family was forced to sell their house in order to survive.  The time during which he was on unpaid leave was especially devastating; he was unable to cash out his pension plan or use vacation or other time to access funds.

236.    Plaintiff Jeffrey Steven Miller worked for CCSF for over 16 years, most recently as a Sergeant at the San Francisco Sheriff's Office.  On August 22, 2021, Sergeant Miller submitted a timely request for an exemption from the vaccine mandate based on a severe allergy to chemicals in the COVID-19 vaccines.  Later, on October 8, 2021, Sergeant Miller also submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their development or production.  His religious exemption request was denied on October 28, 2021.  The City claimed that his religious beliefs were insincere and thus never engaged in an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  His medical request was also denied—three times, the last coming on November 2, 2021.  Even though Sergeant Miller had submitted the requested medical verification from his doctor, the City claimed that his documentation was somehow inadequate.  He was placed on unpaid administrative beginning on October 14, 2021.  Sergeant Miller was terminated on April 1, 2022.

237.    Plaintiff Michael Glisson, Jr. has worked for CCSF for over 15 years, most recently as a Deputy Sherriff at the San Francisco Sheriff's Office.  On September 9, 2021, Deputy Glisson submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production.  He was placed on administrative leave on October 14, 2021 because of

1   his vaccination status, even prior to his request being denied on October 18, 2021. Despite the fact

2   that he submitted a 3-page affidavit detailing Catholic doctrine and his beliefs, the City claimed that

3   Deputy Glisson's claim of religious belief was insincere and thus never engaged in an "interactive

4   process" to assess reasonable accommodations such as testing or consideration of natural

5   immunity. He took the vaccine under duress on October 26, 2021 in order to keep his job.

6          238.   Plaintiff Glen Ryan Ideta worked for CCSF for over 14 years, most recently as a

7   Deputy Sheriff at the San Francisco Sheriff's Office. On September 1, 2021, Deputy Ideta submitted

8   a timely request for an exemption from the vaccine mandate based on his sincerely held religious

9   beliefs. As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their

10  development or production. That request was denied on October 5, 2021. The City claimed that his

11  religious beliefs were insincere and thus never engaged in an "interactive process" to assess

12  reasonable accommodations such as testing or consideration of natural immunity. He tested positive

13  for COVID-19 on July 31, 2021—which he notified his manager and HR of—and thus had superior

14  immunity to that of the vaccines San Francisco was attempting to force him to take. Deputy Ideta

15  was terminated on April 1, 2022. Due to the City's actions, Deputy Ideta could no longer financially

16  support himself in the Bay area, he was forced to sell his home and relocate to Texas.

17         239.   Plaintiff Derek Wray worked for CCSF for over 14 years, most recently as Deputy

18  Sheriff at the San Francisco Sheriff's Office. On September 2, 2021, Deputy Wray submitted a

19  timely request for an exemption from the vaccine mandate based on his sincerely held religious

20  beliefs. As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their

21  development or production. On September 30, 2021, he received a temporary exemption, which he

22  received again on October 13, 2021. During his temporary exemption period Deputy Wray was

23  discriminated against by fellow employees and isolated in another position due to his vaccine status.

24  After accommodating Deputy Wray for a month, the City rescinded his exemption on November 1,

25  2021, and he was placed on unpaid leave. The City asserted that an accommodation would be an

26  undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a

27  danger to themselves, co-workers, and the public. Deputy Wray participated in a Zoom meeting with

28  his union representative and the CCSF Employee Relations Director Ardis Graham, during which

1   Ardis humiliated him and others. Among other things, Ardis said that deputies could not be trusted

2   to self-test for COVID-19 because so many of them have character issues. Deputy Wray was referred

3   to the 60-day Citywide Job Search, which predictably ended without him finding a suitable vacancy

4   (in San Francisco's estimation, at least). The City did not have an interactive process with Deputy

5   Wray to see what accommodations might be available, such as testing or consideration of natural

6   immunity. He had COVID-19 in January of 2022 and was thus immune from the virus when he was

7   forced to resign under duress on March 4, 2022 when the department would not bring him back. The

8   City's actions caused Deputy Wray to suffer high anxiety, which required medication. Both he and

9   family suffered major stress. When he was on unpaid leave, he was unable to collect unemployment

10  or any other benefits to help take care of his family. Deputy Wray was forced to burn through sick

11  pay, vacation time, and $40,000 savings in order to make ends meet. He was also forced to get a

12  night job in order to go through background hiring processes for other police departments that might

13  hire him. Deputy Wray lost seniority, vacation weeks, retirements, and other benefits when he began

14  employment with a new department in the neighboring county of Alameda, which did not have a

15  vaccine mandate.

16      240.    Plaintiff Paul Gabriel Jacowitz worked for CCSF for over 12 years, most recently as

17  a Sergeant at the San Francisco Sheriff's Office. On September 8, 2021, Sergeant Jacowitz submitted

18  a timely request for an exemption from the vaccine mandate based on his sincerely held religious

19  beliefs. His request was denied around October 14, 2021. The City claimed that his religious beliefs

20  were insincere and thus never engaged in an "interactive process" to assess reasonable

21  accommodations such as testing or consideration of natural immunity. Sergeant Jacowitz was placed

22  on paid leave on October 14, 2021, and then unpaid leave on November 14, 2021. He was terminated

23  on April 1, 2022.

24      Sergeant Jacowitz's story reveals even more about the City's approach to forcing vaccines

25  on those requesting exemptions. The discrimination went further than just the rubber-stamp denials

26  of employees' requests. In August of 2021—as the mandate was being rolled out—Sergeant

27  Jacowitz had COVID-19 symptoms (and took approximately one week of leave as a result) after

28  working closely with a vaccinated co-worker who tested positive for the virus. This event confirmed

1  that Sergeant Jacowitz had natural immunity when he was terminated and that vaccinated workers

2  had the ability to spread the virus.  As required by City policy, Sergeant Jacowitz submitted a

3  COVID-19 Leave Request Form in which he notified SFSO that he was experiencing COVID-19

4  symptoms and was seeking a diagnosis.  SFSO sent Sergeant Jacowitz a copy of the approved form.

5  Upon receipt of the form, he noticed that the box identifying that he had COVID-19 symptoms had

6  been "whited out" from the form, and his signature had been forged on two pages.  These alterations

7  were hardly accidental—they were made by leadership (or directed to be made by leadership) in an

8  attempt to hide the fact that a vaccinated person such as his co-worker could still contract and transmit

9  COVID-19.  The existence of such information would have undermined the City's arguments for

10  why it needed to compel vaccination on its workforce and especially on those entitled to an

11  exemption.  On information and belief, San Francisco has data indicating that vaccinated employees

12  consistently spread the virus at a rate that would have rendered its vaccine mandate useless, to the

13  extent such data has not already been purged as was done with Sergeant Jacowitz's COVID-19 Leave

14  Request Form.

15      The City's actions caused Sergeant Jacowitz and his family to suffer financial and emotional

16  stress.  For a time, he had no choice but to take a lower paying job as an armed security guard at a

17  dangerous restaurant and bar where he observed and participated in incidents—including a

18  shooting—that caused significant emotional trauma.  Later, Sergeant Jacowitz took a job at the

19  Alameda County Sheriff's Office (after going through a highly stressful hiring process), where he

20  was allowed to work without being vaccinated and just test for COVID-19.  Now, however, his

21  reduced seniority (compared to his SFSO job) forces him to work a 12-hour midnight shift in contrast

22  to his previous eight-hour day shifts at the SFSO.  Sergeant Jacowitz has lost rank, promotional

23  opportunities, retirement, savings, seniority, and medical benefits as a result of the City's actions, in

24  addition to taking a lower paying job with a worse schedule that disrupts his family life.

25      241.   Plaintiff Robert T. Kruger III has worked for CCSF for over 12 years, most recently

26  as a Deputy Sherriff at the San Francisco Sheriff's Office.  On August 13, 2021, Deputy Kruger

27  submitted a timely request for an exemption from the vaccine mandate based on his sincerely held

28  religious beliefs.  As a devout Christian, he believes his body is a temple of the Holy Spirit that must

be kept clear of unclean substances such as the vaccine, with its numerous additives and mechanism for altering his body.  That request was mishandled by the City and lost.  Deputy Kruger followed up about the status of the request on September 7, 2021 via email and was told that Chief Fisher would be doing follow-up.  In order to make the determination, Chief Fisher asked for more information on September 10, 2021, at which point Deputy Kruger provided it.  After that, no response was given.  After not hearing from his department for a month and a half, knowing that every request was being denied anyway, and under mounting pressure from the department (including in the workplace), Deputy Kruger began the vaccine regimen at the end of September under duress in order to remain employed.

242.   Plaintiff Maria Marcela Hodgers worked for CCSF for over 12 years, most recently as a Deputy Sheriff at the Sheriff's Office.  She believes she contracted COVID-19 in December of 2019 and should have been considered naturally immunized—it is not her fault the City preferred artificial immunization.  On August 28, 2021, Deputy Hodgers submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout Hebrew Israelite, she believes her body is a temple for, and of, the Holy Spirit, that must not be defiled by unclean substances.  She also opposed the vaccines' use of fetal stem cell lines in their development or production.  She was placed on leave on October 14, 2021 until her request was temporarily approved on October 26, 2021.  That approval was then rescinded on October 31, 2021.  The City changed its mind, claiming that an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.  She was never provided an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  Deputy Hodgers was referred to the 60-day Citywide Job Search, which predictably ended without her finding a suitable vacancy (in San Francisco's estimation, at least).  She contracted COVID-19 again on January 20, 2022.  She was terminated on April 1, 2022.  With the loss of her job, Deputy Hodgers was unable to afford to continue paying her mortgage and she was forced to sell her family home.  The City's actions caused her to need to see a therapist and seek counseling for depression and anxiety, which she had never suffered before.

243.    Plaintiff Matthew Vincent Juan worked for CCSF for over five years, most recently as a Deputy Sherriff at the San Francisco Sheriff's Office.  On September 21, 2021, Deputy Juan submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production.  Deputy Juan contracted COVID-19 while on duty on January 15, 2021. He informed his supervisors and HR, and was placed on workers compensation for exposure injury on duty.  He returned to work two months later.  He was placed on leave on October 13, 2021 due to his vaccination status.  His request for an accommodation was then denied on October 19, 2021.  The City claimed that his religious beliefs were insincere and thus never engaged in an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  He was then placed on unpaid leave in November.  In December he tested positive for COVID-19 antibodies, thus proving he had natural immunity Nonetheless, he was terminated on April 1, 2022.  The City's actions caused great pressure on Deputy Juan's personal and financial life. He was forced to use his life savings to pay his bills, and he has suffered anxiety feeling uncertain about future employment.

244.    Plaintiff Eric M. Prado worked for CCSF for over five years, most recently as a Deputy Sherriff at the San Francisco Sheriff's Office.  On August 20, 2021, Deputy Prado submitted a timely request for an exemption from the vaccine mandate based on his existing medical condition—severe allergies, including a bad response to a prior vaccination.  Deputy Prado did not submit a request for religious accommodation since he thought his medical one was sufficient.  He would, however, have requested such an accommodation since, as a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production.  His medical exemption request was denied on October 19, 2021.  Even though Deputy Prado had submitted the medical exemption request form and a letter from his physician, the City claimed that his documentation was somehow inadequate.  He was placed on paid leave for one month, and then unpaid after.  He was terminated on April 1, 2022.  Due to the City's action, Deputy Prado lost his salary and was forced to rely on unemployment benefits, which have run out while he is looking for other employment.

1 Background checks and other factors make it an inherently slow process to find a job in law
2 enforcement.

3      245.   Plaintiff Nathan Sablan worked as a Deputy Sheriff at the San Francisco Sheriff's
4 Office for over five years.  On September 2, 2021, Deputy Sablan submitted a timely request for an
5 exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout
6 Christian, he opposed the vaccines' use of fetal stem cell lines in their development or
7 production.  His request for an accommodation was denied on October 14, 2021.  The City claimed
8 that Deputy Sablan's religious beliefs were insincere and thus never engaged in an "interactive
9 process" to assess reasonable accommodations such as testing or consideration of natural
10 immunity.  Deputy Sablan had just recovered from COVID less than three months earlier.  He thus
11 offered to continue testing on his own personal time and at his expense to show that live antibodies
12 were still present in his body.

13      Deputy Sablan was placed on leave due to his vaccination status and then terminated on April
14 1, 2022.  Due to the City's actions, Deputy Sablan has suffered an estimated loss of more than
15 $120,000 in savings and income.  Out of necessity, Deputy Sablan traveled out of state to Arizona,
16 Texas, Oklahoma, Florida, and Arkansas looking for new job opportunities in a state that would not
17 discriminate against his religious rights.  Deputy Sablan sought counseling in October 2021 and
18 continued counseling into 2022 to help manage emotional stress caused by repeated threats of being
19 terminated if he did not get vaccinated.

20      246.   Plaintiff Joseph Stephen Jacowitz worked for CCSF for over three years, most
21 recently as a Deputy Sheriff at the San Francisco Sheriff's Office.  On September 8, 2021, Deputy
22 Jacowitz submitted a timely request for an exemption from the vaccine mandate based on his
23 sincerely held religious beliefs.  As a devout Christian, he believes that taking the vaccine would go
24 against his conscience, which would mean disobeying God.  His request was denied on or about
25 October 19, 2021.  Despite the fact that he submitted a letter from his pastor detailing his faith, the
26 City claimed that he had not proven he had a sincere religious belief preventing taking the vaccine
27 and thus never engaged in an "interactive process" to assess reasonable accommodations such as
28 testing or consideration of natural immunity.

Deputy Jacowitz was terminated on April 1, 2022. Due to the City's actions, Deputy Jacowitz suffered significant mental and emotional strain along with financial hardship; he had to exhaust his savings and withdraw his deferred compensation benefits. He was also forced to quickly find a job that paid significantly less than what he was earning at the Sheriff's office. During the period in which he was unemployed, Deputy Jacowitz did not have medical benefits. And during that time, he suffered from a medical issue that required him to go to the emergency room, the cost of which put a significant financial burden on him (due to lack of coverage). To regain his financial stability, and maintain his law enforcement credentials, Deputy Jacowitz has also had to go through a rigorous hiring process required by law enforcement agencies and will never be able to fully recover what CCSF took from him here.

247.    Plaintiff Kevin Zapanta Contreras worked for CCSF for over three years, most recently as Deputy Sherriff at the San Francisco Sheriff's Office. On September 23, 2021, Deputy Contreras submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Christian, he could not take the vaccine since doing so would violate his conscience, which is a sin, and his belief that God did not want him to take the vaccine. He was placed on administrative leave in October due to his vaccination status but was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. (He tested positive for COVID-19 on July 23, 2021, which he notified his manager and HR of in writing.) Deputy Contreras's request was denied on November 3, 2021 when the City claimed his religious beliefs were insincere. This is despite the fact that he submitted a letter from his pastor, who gave details about his faith, the congregation's beliefs, and Deputy Contreras' involvement in the church. He was subsequently terminated on April 1, 2022. Feeling abused and betrayed by the City he had sworn to serve and protect, the City's actions caused him to suffer emotional distress. He has been forced to exhaust his retirement and other savings in order to pay bills and support his mother, who was diagnosed with Alzheimer's disease.

### *San Francisco Municipal Transportation Agency (13 Plaintiffs)*

248.    Plaintiff Vicki Lynn Solls Davis has worked for CCSF for over 41 years, most recently as a Transit Operator at the San Francisco Municipal Transportation Agency. On September

23, 2021, Ms. Davis submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout spiritual being with a Christian worldview, she opposed the vaccines' use of fetal stem cell lines in their development or production.  She then went on medical leave on October 27, 2021.  Ms. Davis's request was denied on November 27, 2021.  The City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other Municipal Transportation Agency employees, CCSF's treatment of Ms. Davis only underscores the pretext of the City's religious accommodation denials.  The denial blindly checked every box as a possible reason.  But she was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  The City placed her on administrative leave on November 1, 2021.  Her FMLA leave ended on April 2, 2022, and her status changed to Medical Leave the next day due to knee surgery.  She took involuntary retirement on July 26, 2022.

249.    Plaintiff Attila Michael Foti has worked as a Truck Driver for the San Francisco Municipal Transportation Agency for over 34 years.  On October 27, 2021, Mr. Foti submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Christian, he believes that his body is a temple of the Holy Spirit that must not be defiled with vaccines (especially because the COVID-19 vaccines were created with or tested on aborted fetal cell lines).  He was placed on leave at the beginning of November and his request was denied on November 24, 2021.  The City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other Municipal Transportation Agency employees, CCSF's treatment of Mr. Foti

1   only underscores the pretext of the City's religious accommodation denials.  The denial blindly

2   checked every box as a possible reason.  He was never offered an "interactive process" to assess

3   reasonable accommodations such as testing or consideration of natural immunity.  This is despite the

4   fact that he contracted COVID-19 in 2020, thus giving him natural immunity, plus he worked alone

5   in his truck without any contact with co-workers or anyone else.  Unable to continue without pay,

6   Mr. Foti acquiesced to the City's coercion on December 10, 2021 and took the vaccine under duress.

7            250.    Plaintiff Reginald Bernard Snelgro worked for CCSF for over 31 years, most recently

8   as a Transit Operator at the San Francisco Municipal Transportation Agency.  On October 18, 2021,

9   Mr. Snelgro submitted a timely request for an exemption from the vaccine mandate based on his

10  sincerely held religious beliefs.  As a devout Baptist Protestant Christian, he believes he believes he

11  is made in the image of God, and may not defile his body, which is a temple of the Holy Spirit.  After

12  being placed on administrative leave on November 1, 2021, Mr. Snelgro's request was denied on

13  November 12, 2021.  The City checked all four boxes on its form: (1) there was a failure to prove a

14  sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would

15  prevent employee from performing essential functions; and (4) an accommodation would be an

16  undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a

17  danger to themselves, co-workers, and the public.

18         As with other Municipal Transportation Agency employees, CCSF's treatment of Mr.

19  Snelgro only underscores the pretext of the City's religious accommodation denials.  The denial

20  blindly checked every box as a possible reason.  Mr. Snelgro was never offered an "interactive

21  process" to assess reasonable accommodations such as testing or consideration of natural

22  immunity.  On November 27, 2021, he resigned under duress.

23         251.    Plaintiff Alexander Lavrov worked for CCSF for over 27 years, with his most recent

24  positions being Senior Construction Inspector and Construction Inspector at the San Francisco

25  Municipal Transportation Agency.  On October 14, 2021, Mr. Lavrov submitted a timely request for

26  an exemption from the vaccine mandate based on his sincerely held religious beliefs as an Orthodox

27  Christian.  His request was denied on November 30, 2021.  The City asserted that an accommodation

28  would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee

presents a danger to themselves, co-workers, and the public. Yet from November 1, 2021 to December 10, 2021, the City accommodated Mr. Lavrov by allowing him to telework from home. Mr. Lavrov was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. On December 7, 2021, he was referred to the 60-day Citywide Job Search—a dead end for everyone seeking a reasonable accommodation from the mandate. In the meantime, he was demoted to Construction Inspector and placed on paid administrative leave. Mr. Lavrov previously recovered from COVID-19 and had natural immunity when he was terminated on June 17, 2022 for failure to take a vaccine that induces artificial immunity for COVID variants that were no longer prevalent. The City's egregious actions caused severe strain on Mr. Lavrov's mental health, marriage, and finances. In addition, he has incurred a loss of potential pension earnings, something he has steadfastly built over 27 years.

252.    Plaintiff Joaquin Valle worked for over 19 years as a Transit Operator at the San Francisco Municipal Transportation Agency. On April 6, 2020, Mr. Valle went on disability leave from the City. On March 14, 2022, he submitted a request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production. At the same time, he submitted a reasonable accommodation request under the ADA due to sciatic nerve pain and a knee injury. On or about April 4, 2022, Mr. Valle's religious exemption request was denied. The City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other Municipal Transportation Agency employees, CCSF's treatment of Mr. Valle only underscores the pretext of the City's religious accommodation denials. The denial blindly checked every box as a possible reason. On July 29, 2022, his ADA request was also denied. The City claimed his ADA request was premature due to his lack of clearance to return to work given his non-vaccinated status. But he was never offered or provided any "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity. The City is

recommending that he be dismissed, and placed him on paid administrative leave on October 11, 2022.

253.    Plaintiff Kevin Breston worked for CCSF for over 13 years, most recently as a Transit Operator at the San Francisco Municipal Transportation Agency.  On October 25, 2021, Mr. Breston submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Christian, he believes his body is a Holy Temple that must not be violated by the vaccine.  He also objected to each of the vaccines using fetal stem cells in their production or testing. Mr. Breston was placed on administrative leave at the beginning of November and his request was denied on November 19, 2021.  The City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public. This is despite the fact that he submitted a statement from his pastor detailing his religious beliefs.

As with other Municipal Transportation Agency employees, CCSF's treatment of Mr. Breston only underscores the pretext of the City's religious accommodation denials.  The denial blindly checked every box as a possible reason.  Mr. Breston was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity.  The closest thing to an interactive process Mr. Breston received was being called into his manager's office on multiple occasions for attempts to coerce him into taking the vaccine.  His manger warned him that he would be terminated if he did not take the vaccine—he would not be accommodated.  Mr. Breston was terminated on April 1, 2022.  The City's actions toward him were so egregious that it caused Mr. Breston to need to see a therapist and he is on disability currently.

254.    Plaintiff Leroy L. Vance worked for CCSF for over 12 years, most recently as a Transit Operator at the San Francisco Municipal Transportation Agency.  On October 23, 2021, Mr. Vance submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or production.  He was placed on administrative leave at the beginning of

1 November before having his request denied on November 15, 2021. He was scheduled for
2 termination on or about April 1, 2022. He resigned under duress on May 1, 2022.

3      255. Plaintiff Lenard Morris has worked for CCSF for over nine years, most recently as a
4 Senior Parking Control Officer at the San Francisco Municipal Transportation Agency. On or about
5 October 8, 2021, Mr. Morris submitted a timely request for an exemption from the vaccine mandate
6 based on his sincerely held religious beliefs. As a devout Christian, he believes his body is a temple
7 of the Holy Spirit, and his sacred blood must not be tainted by the vaccine. His request was denied
8 on October 30, 2021. The City asserted that (1) his claim of religious belief was insincere; and (2)
9 an accommodation would be an undue hardship because of the unsubstantiated belief that an
10 unvaccinated employee presents a danger to themselves, co-workers, and the public. Mr. Morris was
11 never offered an "interactive process" to assess reasonable accommodations such as testing or
12 consideration of natural immunity.

13      Mr. Morris remained on disability leave, until being released to full duty on August 28, 2022.
14 CCSF would still not allow him to return to work due to the vaccine mandate, though. He was
15 ultimately forced to resign effective October 4, 2022. The City's actions caused him to suffer loss
16 of income, loss of health insurance for himself and family, loss of pension, loss of seniority, and his
17 services being deemed unsatisfactory. Suffering financial distress, Mr. Morris was forced to sell his
18 property just to support his monthly obligations.

19      256. Plaintiff Dickmar Nova Rodas worked for CCSF for over five years, most recently as
20 a Transit Operator at the San Francisco Municipal Transportation Agency. On September 28, 2021,
21 Mr. Nova Rodas submitted a timely request for an exemption from the vaccine mandate based on his
22 sincerely held religious beliefs. As a devout Christian, he believes his body is a temple of God that
23 must not be defiled by unclean substances such as vaccines. That request was denied on October 30,
24 2021. The City asserted that (1) his claim of religious belief was insincere; and (2) he provided
25 insufficient documentation and the City could not accommodate him (for unstated reasons). This is
26 despite the fact that he submitted a 4-page letter detailing his religious beliefs. Mr. Nova Rodas was
27 never offered an "interactive process" to assess reasonable accommodations such as testing or
28 consideration of natural immunity (even though he had recovered from COVID-19 just a few months

1   prior to that time).  He was placed on leave at the beginning of November.  Mr. Nova Rodas was

2   terminated on April 15, 2022.  Since his dismissal, he has suffered from depression.  His loss of a

3   pension and financial stability has caused great stress to Mr. Nova Rodas and his family.

4         257.     Plaintiff Rachid Amghar worked as a Transit Operator at the San Francisco Municipal

5   Transportation Agency for over three years.  On October 27, 2021, Mr. Amghar submitted a timely

6   request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As

7   a devout Muslim, he opposed the vaccines' use of fetal stem cell lines in their development or

8   production.  After being placed on leave at the beginning of November, his request was denied on

9   November 29, 2021.  The City asserted that an accommodation would be an undue hardship because

10   of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-

11   workers, and the public.  Mr. Amghar was never offered an "interactive process" to assess reasonable

12   accommodations such as testing or consideration of natural immunity.  He was terminated on April

13   1, 2022.

14         258.     Plaintiff Bhanu Vikram has been a Transit Operator at the San Francisco Municipal

15   Transportation Agency for over three years.  On October 13, 2021, Mr. Vikram submitted a timely

16   request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As

17   a devout Hindu, he opposed the use of aborted fetal cell lines in the development and production of

18   vaccines.  He also believes his body is a temple that must be kept unpolluted from vaccines, which

19   are unclean, spiritually impure, and interfere with God's design of the human body.  Two days later,

20   he received an offer of appointment to the Station Agent position, which he accepted.  Then, on

21   November 1, 2021, he was placed on administrative leave and banned from entering all workplaces.

22   On December 3, 2021, his exemption request was denied.  The City checked all four boxes on its

23   form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a

24   direct threat; (3) accommodation would prevent employee from performing essential functions; and

25   (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an

26   unvaccinated employee presents a danger to themselves, co-workers, and the public.

27         As with other Municipal Transportation Agency employees, CCSF's treatment of Mr. Vikram

28   only underscores the pretext of the City's religious accommodation denials.  The denial blindly

1  checked every box as a possible reason.  That was despite the fact that he submitted a four-page

2  statement via his attorney detailing his religious beliefs and answered several predatory and unlawful

3  follow-up questions.  He was never offered an "interactive process" to assess reasonable

4  accommodations such as testing despite offering to pay for it or consideration of natural immunity.

5  Mr. Vikram had previously contracted COVID and even informed his managers that he tested

6  positive for COVID-19 antibodies on December 17, 2021, thus demonstrating clear natural

7  immunity.  In January 2022, Mr. Vikram's appointment to the Station Agent position was rescinded,

8  and termination proceedings were initiated against him for being unvaccinated.  Due to the lack of

9  accommodation, retaliation, and humiliation, Mr. Vikram experienced immense stress and was

10  placed on medical leave on February 1, 2022.

11      Mr. Vikram engaged in several protected activities in 2021 and 2022.  He made a

12  whistleblower complaint with the San Francisco Controller's Office regarding forcing experimental

13  Covid vaccines on San Francisco public employees in November 2021.  He sent several emails to

14  Mayor London Breed, many City leaders, and senior officials in 2021 and 2022 raising valid concerns

15  about CCSF's vaccine policy and asked them to reinstate all unvaccinated employees.  He helped his

16  union, TWU Local 250A, to file two grievances against CCSF's mandatory vaccine policies and lack

17  of accommodations in January 2022.  He also helped fellow public employees file discrimination

18  and retaliation complaints with the EEOC both in 2021 and 2022.

19      As an immigrant from India with no other means of financial support, Mr. Vikram was forced

20  to take the vaccine to keep his job and livelihood.  After completing his retraining and recertification

21  program, CCSF returned him to his regular duties as a Transit Operator on August 3, 2022.  Mr.

22  Vikram had reapplied for the Station Agent position in 2021 and had successfully completed the

23  written test and the oral interview.  After a thorough background check, he was appointed to the

24  Station Agent position on August 15, 2022 and scheduled to start his Station Agent career on

25  September 3, 2022.  Just two days prior, on September 1, 2022, his appointment was rescinded for

26  the second time after new termination proceedings were initiated against him for an incident that

27  happened as far back as December 6, 2020.  CCSF had investigated this racially charged incident in

28  which Mr. Vikram was assaulted and battered, found no wrongdoing on Mr. Vikram's part, and

approved his workers' compensation and battery pay in December 2020. After one year and eight months, the City reopened the file, falsely accusing him of wrongdoing despite video evidence in his favor, for the purpose of retaliating against him by rescinding his appointment to the Station Agent position a second time, aiming ultimately to terminate his employment.

It must be noted that the Station Agent position was open to the public, and Mr. Vikram applied and went through the entire hiring process just like all other candidates; nevertheless, his appointment was rescinded on September 1, 2022, based on the disciplinary proceeding pending outcome even though CCSF has transferred other employees—who do not belong to Mr. Vikram's protected classes—to other positions amidst their disciplinary proceedings pending outcomes.

The City allowed the unvaccinated public of San Francisco to enter buses, trains, and metro stations throughout the pandemic but chose not to accommodate Transit Operator Vikram, who selflessly served the people of San Francisco for many months during the height of the pandemic in 2020. CCSF then targeted him for his religious beliefs and his volunteer work against the City's violations of civil rights, human rights, and labor rights. CCSF's actions have caused incredible pain and suffering to Mr. Vikram and significantly harmed his health, finances, and career.

259. Plaintiff Michael Patrick Bourne worked for CCSF for over two years, most recently as a Traffic Signal Electrician at the San Francisco Municipal Transportation Agency. On October 18, 2021, Mr. Bourne submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a Christian, he believes his body is a temple of the Holy Spirit that must be protected from vaccines since they are unnatural interventions. His request was denied on December 1, 2021. The City checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from performing essential functions; and (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

As with other Municipal Transportation Agency employees, CCSF's treatment of Mr. Bourne only underscores the pretext of the City's religious accommodation denials. The denial blindly checked every box as a possible reason. Mr. Bourne was never offered an "interactive process" to

1    assess reasonable accommodations such as testing or consideration of natural immunity. On
2    November 1, 2021, he was placed on unpaid leave; he was terminated on April 1, 2022.

3         260.    Plaintiff Derrell Rutherford has worked for over a year CCSF, most recently as a
4    Transit Car Cleaner at the San Francisco Municipal Transportation Agency. On October 13, 2021,
5    he submitted a timely request for an exemption from the vaccine mandate based on his sincerely held
6    religious beliefs. That request was denied on November 16, 2021. The City checked all four boxes
7    on its form: (1) there was a failure to prove a sincere religious belief; (2) accommodation would pose
8    a direct threat; (3) accommodation would prevent employee from performing essential functions; and
9    (4) an accommodation would be an undue hardship because of the unsubstantiated belief that an
10   unvaccinated employee presents a danger to themselves, co-workers, and the public.

11        As with other Municipal Transportation Agency employees, CCSF's treatment of Mr.
12   Rutherford only underscores the pretext of the City's religious accommodation denials. The denial
13   blindly checked every box as a possible reason. Mr. Rutherford was never offered an "interactive
14   process" to assess reasonable accommodations such as testing or consideration of natural
15   immunity. He currently remains on workers' compensation leave.

16   ### *San Francisco Department of Emergency Management (5 Plaintiffs)*

17        261.    Plaintiff Suzanne Borg has worked for CCSF for over 24 years, most recently as a
18   Public Safety Communications Dispatcher at the San Francisco Department of Emergency
19   Management. On September 23, 2021, Ms. Borg submitted a timely request for an exemption from
20   the vaccine mandate based on her sincerely held religious beliefs. As a devout Catholic, she opposed
21   the vaccines' use of fetal stem cell lines in their development or production. Her request was denied
22   on October 14, 2021. The City asserted that (1) her claim of religious belief was insincere; and (2)
23   an accommodation would be an undue hardship because of the unsubstantiated belief that an
24   unvaccinated employee presents a danger to themselves, co-workers, and the public. She was never
25   offered an "interactive process" to assess reasonable accommodations such as telework, testing, or
26   consideration of natural immunity. Ms. Borg was placed on paid leave on November 1, 2021. After
27   being terminated on November 29, 2021, she was reinstated and placed on unpaid leave on December
28   22, 2021. She was under extreme stress during the time in which her termination was pending. She

1  signed up for many overtime shifts, and spent $17,000 out of her savings. Making matters worse,

2  she was diagnosed with diabetes in January 2022. On March 28, 2022, she acquiesced to the City's

3  coercion and took the vaccine under duress to keep her job.

4      262.    Plaintiff Denise Arevalo was a Public Safety Communications Dispatcher at the San

5  Francisco Department of Emergency Management for over 16 years. On October 21, 2021, Ms.

6  Arevalo submitted a timely request for an exemption from the vaccine mandate based on her

7  sincerely held religious beliefs. As a devout Christian, she could not take the vaccine since it is a sin

8  to allow unwanted intrusions into her body, which is a temple of the Holy Spirit. She contracted

9  COVID-19 the next week and notified HR of her current infection. Ms. Arevalo's request was denied

10  on October 28, 2021. The City asserted that (1) her claim of religious belief was insincere; and (2)

11  an accommodation would be an undue hardship because of the unsubstantiated belief that an

12  unvaccinated employee presents a danger to themselves, co-workers, and the public. She was never

13  offered an "interactive process" to assess reasonable accommodations such as telework, testing, or

14  consideration of natural immunity. This is despite the fact that some dispatchers were allowed to

15  work in rooms by themselves. She was placed on unpaid leave and then terminated on November

16  29, 2021. Due to a 120-day amnesty agreement between the City and her labor union, she was

17  reinstated the next day but kept on unpaid leave. Ms. Arevalo was terminated again on April 1, 2022.

18  The City's actions have caused her and her husband to exhaust their deferred compensation accounts

19  and savings, as well as maxing out their credit cards, falling more behind each month.

20      263.    Plaintiff Megan Boyle was employed by CCSF for over seven years, most recently as

21  a Public Safety Communications Dispatcher at the San Francisco Department of Emergency

22  Management. On September 25, 2021, Ms. Boyle submitted a timely request for an exemption from

23  the vaccine mandate based on her sincerely held religious beliefs. As a devout Christian, she believes

24  that her blood is sacred and must not be tainted with vaccines. Her request was denied on November

25  10, 2021. The City asserted that (1) her claim of religious belief was insincere; and (2) an

26  accommodation would be an undue hardship because of the unsubstantiated belief that an

27  unvaccinated employee presents a danger to themselves, co-workers, and the public. Ms. Boyle was

28  never offered an "interactive process" to assess reasonable accommodations such as telework,

testing, or consideration of natural immunity. She was terminated on November 12, 2021. Ms. Boyle was terminated while on per diem status due to having her first child but she had intended to return to full-time status. Due to the City's action, she suffered loss of income and future employability with the City. Suffering from financial distress, Ms. Boyle was forced to sell a property in order to make up for her lost income.

264.   Plaintiff Elizabeth Ng worked for CCSF for over two years, most recently as a Public Safety Dispatcher at the Department of Emergency Management. On September 27, 2021, Ms. Ng submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs. As a devout Christian, Ms. Ng believes her blood is sacred and the word of God must not be defiled by a substance such as the vaccine. On October 15, 2021, her request was denied. The City asserted that (1) Ms. Ng's claim of religious belief was insincere; and (2) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public. She was never offered an "interactive process" to assess reasonable accommodations such as telework, testing, or consideration of natural immunity (which Ms. Ng has from a previous COVID infection). The City also overlooked that she (and others) previously worked in separate spaces with no need to be near one another. On or about the same date, she went on medical leave. Ms. Ng was terminated on November 1, 2021 and placed on unpaid leave. In December 2021 she was reinstated still on unpaid leave while on medical and disability leave. Ms. Ng was terminated a second time on April 1, 2022.

265.   Plaintiff Sasa Galuega worked for CCSF for over one year, most recently as a Public Safety Communications Dispatcher at the Department of Emergency Management. On October 4, 2021, Mrs. Galuega submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs. As a devout Christian and Children's Minister, she believes that her body is a temple of God (where the Holy Spirit resides) that must be kept clear of harmful, impure contaminating substances. Her request was denied on October 12, 2021. The City asserted that (1) her claim of religious belief was insincere; and (2) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public. Mrs. Galuega was never offered an "interactive process" to assess

1    reasonable accommodations such as testing or consideration of natural immunity.  The City also

2    overlooked that she (and others) previously worked in separate spaces with no need to be near one

3    another—because there were so few in her department in need of accommodations, splitting them

4    into different shifts and allowing them to work isolated from others could have been another

5    reasonable (and costless) accommodation.  She was terminated on November 1, 2021 while on

6    disability leave.  Tellingly, she has been attending Skyline College over the past year where her

7    religious exemption request to a vaccine mandate was honored.

8    ***San Francisco Human Services Agency (4 Plaintiffs)***

9        266.    Plaintiff Priscilla Sau Lenh worked for CCSF for over 23 years, most recently as a

10   Senior Eligibility Worker at the Human Services Agency.  On October 15, 2021, Ms. Lenh submitted

11   a timely request for an exemption from the vaccine mandate based on her sincerely held religious

12   beliefs.  Her request was denied on October 29, 2021.  The City asserted that (1) Ms. Lenh's claim

13   of religious belief was insincere; and (2) an accommodation would be an undue hardship because of

14   the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-

15   workers, and the public.  She was never offered an "interactive process" to assess reasonable

16   accommodations such as testing or consideration of natural immunity.  On February 1, 2022, she was

17   placed on unpaid leave.  Ms. Lenh was then terminated on April 1, 2022.

18       267.    Plaintiff Andrea Salfiti worked for CCSF for over nine years, most recently as a

19   Program Support Analyst at the San Francisco Human Services Agency.  On June 29, 2021, Salfiti

20   submitted a timely request for an exemption from the vaccine mandate based on her sincerely held

21   religious beliefs.  As a devout Christian, she opposed the vaccines' use of fetal stem cell lines in their

22   development or production.   Her request was denied on October 15, 2021.  The City asserted that

23   her claim of religious belief was insincere and thus felt justified not to engage in an "interactive

24   process" to determine what reasonable accommodation might be made for Ms. Salfiti.  This is despite

25   the fact that she explained in great detail why abortion violates her religious beliefs and that the

26   vaccines' tainted origins cause them to conflict with those beliefs about the value of human life.  She

27   had contracted COVID-19 just two months earlier and should have been considered naturally

28   immunized—it is not her fault the City preferred artificial immunization to natural

immunization.  She also could have been accommodated through remote work since she had already telecommuted previously 100% between April 2020 and September 2020.  Ms. Salfiti was terminated on or about April 1, 2022.  The City's actions caused her to lose the accumulation of her retirement benefits.  Ms. Salfiti went on to work for the federal Department of Veterans Affairs, which accommodated her religious exemption request.

268.  Plaintiff Doris Nauer worked for CCSF for over five years, most recently as a Senior Clerk with the Human Services Agency.  On October 13, 2021, Ms. Nauer submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout Christian, she opposed the vaccines' use of fetal stem cell lines in their development or production.  That request was denied the same month.  The City asserted that (1) Ms. Nauer's claim of religious belief was insincere; and (2) an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.  This is despite the fact that she submitted a 6-page vaccine position statement detailing her religious objections.  The City never engaged in an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity, even though she was teleworking at the time of her request.  She was first placed on paid leave on November 1, 2021 and then terminated on December 8, 2021.  After being reinstated on unpaid leave, she was terminated again on April 1, 2022.

269.  Plaintiff Vivian Hyun worked for CCSF for 21 years, most recently as an IS Senior Business Analyst for the Department of Human Services.  On August 30, 2021, Ms. Hyun submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs.  As a devout Evangelical Christian, she opposed the vaccines' use of fetal stem cell lines in their development or production.  Her request was denied on October 1, 2021.  The City asserted that her claim of religious belief was insincere and thus felt justified not to engage in an "interactive process" to determine what reasonable accommodation might be made for Ms. Hyun.  She previously had COVID-19 and could have been considered naturally immunized—it is not her fault the City preferred artificial immunization.  Additionally, she previously performed her job duties entirely remote during pandemic lock down.  The IT Department (for which she worked) was exempted from

1    the general requirement that workers be on site three days each week. There was thus no reason she

2    would have to be forced into the office and, indeed, her old unit is currently all remote due to

3    remodeling—her exemption could easily have been accommodated by allowing her to telework. On

4    November 1, 2021, she was removed from her position pending termination. On January 22, 2022,

5    she resigned under duress. The City's actions forced her untimely retirement, causing additional

6    emotional stress due to financial insecurity. She has now been forced to deplete her savings to make

7    ends meet.

8    *San Francisco International Airport (3 Plaintiffs)*

9        270.    Plaintiff Alden Francisco Bello worked for CCSF for over 30 years, most recently an

10   Airfield Safety Officer at the San Francisco International Airport. On October 18, 2021, Mr. Bello

11   submitted a timely request for an exemption from the vaccine mandate based on his sincerely held

12   religious beliefs. As a devout Christian, he wrote a 6-page letter in which he opposed the vaccines'

13   use of fetal stem cell lines in their development or production. He also said the vaccine would violate

14   his body, which is a temple of God. That request was denied on October 28, 2021. The City asserted

15   that an accommodation would be an undue hardship because of the unsubstantiated belief that an

16   unvaccinated employee presents a danger to themselves, co-workers, and the public. Mr. Bello was

17   never offered an "interactive process" to assess reasonable accommodations such as testing or

18   consideration of natural immunity, even though his jobs duties required minimal interaction with

19   other people and he spent most of his time alone in a truck. In his case, a prior infection in March

20   2021 would have revealed to the City the pointlessness of forcing artificial immunity on Mr. Bello.

21   On November 1, 2021, he was placed on unpaid leave and was referred to the (futile) 60-day Citywide

22   Job Search. His job search expired without a vacancy suitable in CCSF's estimation, and he was

23   terminated on April 4, 2022.

24        After his termination, Mr. Bello applied for unemployment benefits but was denied due to

25   the false accusation that he broke a "reasonable employer rule." With no job, no income, and no

26   health insurance, he was forced to retire early. On May 29, 2022, he would have reached 31 years

27   of service with the City. The penalty for his forced early retirement is that he was only able to attain

28   30.70 years of service with a multiplier of only 1.9 instead of the max 2.3 multiplier he would have

received had he served at least 32.5 years. The difference in multiplier and shortened years of service is set to cost him thousands of dollars per year in retirement pay, in addition to the loss of his normal wages, overtime wages, holiday pay, annual raises, and promotional opportunities. Mr. Bello did not receive his first retirement check until June 30, 2022. In the meantime, he was forced to use all of his vacation and comp time, as well as losing approximately 750 hours of sick time which he had accrued over 30 years of service. The City's financial devastation to Mr. Bello has caused him to struggle to keep up with his bills, causing his credit rating to decline, and he has suffered a severe amount of stress about his financial situation and future ability to provide for his family.

271.    Plaintiff Yohei Kakuda worked for over 15 years as an Airfield Safety Officer at the San Francisco International Airport. On October 18, 2021, Mr. Kakuda submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their development or production. His request was denied on October 28, 2021. The City asserted that an accommodation would be an undue hardship because of the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public. Mr. Kakuda was never offered an "interactive process" to assess reasonable accommodations such as testing or consideration of natural immunity, even though his jobs duties required minimal interaction with other people and he spent most of his time alone in a truck. In addition, a prior COVID infection would have likely revealed to the City the pointlessness of forcing artificial immunity on Mr. Kakuda.

On November 1, 2021, he was placed on unpaid leave and was referred to the (futile) 60-day Citywide Job Search. Mr. Kakuda's job search expired without a vacancy suitable to CCSF, and he was terminated on April 4, 2022. The City's actions caused him to suffer tremendous financial hardship. After being placed on unpaid leave in November 2021, Mr. Kakuda was forced to use all his accrued vacation and comp time, and he lost over 950 hours of sick time that he had accrued over 15 years of employment. He also missed a promotional opportunity for the Airport Operations Supervisor position which was posted on November 4, 2021. Due to these hardships, he became very anxious, stressed, and emotionally unstable. He had trouble sleeping, and his health started to deteriorate due to the stress of losing his job security, financial stability, health benefits, and

1   retirement.  The deterioration of his health and difficulty sleeping led him to see his primary care

2   doctor who referred him to a sleep specialist.  He was diagnosed with a severe sleep problem and

3   was issued medical equipment to help relieve this problem.  His health insurance abruptly ended after

4   he was terminated, however, and the loss of his health benefits prevented him from going to his

5   follow-up appointments; he was forced to pay for his medical equipment out of pocket.  Mr. Kakuda

6   applied for unemployment for the benefit year beginning on May 15, 2022.  On July 18, 2022, he

7   was notified by Employment Development Department that he was denied unemployment benefits

8   because he had broken a reasonable employer rule, and that he either voluntarily quit without good

9   cause or was discharged for misconduct, neither of which is true.  He has appealed this determination

10  but has still not received any unemployment benefits.

11        272.    Plaintiff Heather Susan Tyks worked for over nine years for CCSF, most recently as

12  an Airfield Safety Officer at the San Francisco International Airport.  On October 18, 2021, Ms. Tyks

13  submitted a timely request for an exemption from the vaccine mandate based on her sincerely held

14  religious beliefs.  As someone with a background in both traditional Christianity and Christian

15  Science, she devoutly believes that she is instructed by God not to pollute her mind, body, and health

16  with unnatural substances that alter the way in which her body functions.  She further believes that

17  the vaccine obfuscates the true nature of the immortal Mind and Spirit, trapping people in mortal

18  thought, which is an erroneous way of living, and can only serve to manifest in the perpetuation of

19  sickness, suffering, and death.  Her request was denied on October 28, 2021.  The City asserted that

20  an accommodation would be an undue hardship because of the unsubstantiated belief that an

21  unvaccinated employee presents a danger to themselves, co-workers, and the public.  Ms. Tyks was

22  never offered an "interactive process" to assess reasonable accommodations such as testing or

23  consideration of natural immunity, even though her jobs duties required minimal interaction with

24  other people and she spent most of her time alone in a truck.  Additionally, a prior COVID infection

25  would have likely revealed to the City the pointlessness of forcing artificial immunity on Ms. Tyks.

26        She was placed on unpaid leave and was referred to the (futile) 60-day Citywide Job Search

27  at the beginning of November.  Her job search expired without a suitable vacancy, and she was

28  terminated on April 4, 2022.  The City's actions caused her to suffer tremendous financial hardship.

After being placed on unpaid leave, Ms. Tyks was forced to use all her accrued vacation and comp time just to pay her bills, and she lost all of her accrued sick time in addition to her normal wages, overtime wages, holiday pay, annual raises, and promotional opportunities.  Ms. Tyks developed severe insomnia, anxiety, arrhythmic heartbeats, chest pain, and palpations which prompted her to make several visits to her urgent care clinic as well as a visit to the emergency room when she experienced a severe panic attack, which she feared was a heart attack.  She did not make any follow up appointments with her doctor after this episode because she did not know when her health benefits would end and knew that she would be unable to afford doctor visits without health insurance.  Ms. Tyks applied for and began receiving unemployment benefits in January 2022.  However, in June 2022 the City filed a dispute against her benefit eligibility claiming she was discharged because she broke a reasonable employer rule.  She filed an appeal, which she won, but these events caused her additional anxiety and stress since if she had lost her appeal, she would have had to pay back all the benefits she received in full.  In August 2022, Ms. Tyks made a difficult decision to sell or donate many of her possessions, relocate out of state, and cohabitate with her mother due to financial difficulties.  She was also forced to place her private loan payments in forbearance resulting in a higher rate of interest capitalization.  She further may lose nearly $36,000 in student loan forgiveness through the federal Public Service Loan Forgiveness program because she was terminated near the end of her 10-year repayment term requirement.

### *San Francisco Recreation and Parks (2 Plaintiffs)*

273.    Plaintiff Vince Bryant-Teasdale worked for CCSF for over four years, most recently as a Stationary Engineer at the San Francisco Recreation and Parks Department.  On October 18, 2021, Mr. Bryant-Teasdale submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As a devout member of the Congregation of Universal Wisdom, he believes the injection of medication, chemicals, or other foreign matter denies natural law and is sacrilege.  After providing all requested documents and answering any additional questions from HR staff, his request was denied.  In denying him, the City checked the box indicating that "documentation was insufficient to show a conflict between vaccination requirement and sincerely held religious belief, practice or observance."  When plaintiff requested clarity about the denial, his

1    denial was validated by the statement from an HR representative: "I know this is frustrating, but I

2    am not aware of any exemption request that have been approved."  Similarly, when Mr. Bryant-

3    Teasdale inquired about what additional documentation was needed, he was told: "I cannot tell you

4    what would be needed.  From what I have seen of the process, even if someone is able to prevail on

5    showing a sincerely held belief, it is unlikely we will be able to accommodate an unvaccinated

6    employee in the workplace."

7            Mr. Bryant-Teasdale was never offered an "interactive process" to assess reasonable

8    accommodations such as testing or consideration of natural immunity.  He was terminated the first

9    time on December 14, 2021 and then again (after a temporary reinstatement) on January 20, 2022.

10   After Mr. Bryant-Teasdale's termination, CCSF refused his claim for unemployment benefits.  With

11   no income, he has exhausted his savings and been forced to take on significant debt to cover his

12   living expenses.  The financial turmoil that CCSF has cause Mr. Bryant-Teasdale has taken a mental

13   and physical toll on him.  He is in a constant stressed state which has caused depression, anxiety,

14   exhaustion, a heart arrhythmia, hair loss, and insomnia.  Moreover, without health insurance he has

15   been fearful of seeing a doctor and increasing his debt even further.

16           274.    Plaintiff Oliver Sampson Hughes worked for CCSF for six years as a public school

17   teacher and, most recently, for two years as a Gardener at the San Francisco Recreation and Parks

18   Department.  On September 22, 2021, Mr. Hughes submitted a timely request for an exemption from

19   the vaccine mandate based on his sincerely held religious beliefs.  As a devout believer in Mother

20   Nature the Creator, he believes that any chemicals additives, like those in the vaccine, that are not

21   naturally derived and can change the function of his body are a threat to Nature's creation and must

22   be rejected.  His request was denied the same day.  Knowing that he worked alone and outdoors—

23   thus a claim of undue burden was not colorable—the City checked the box indicating that Mr.

24   Hughes had not proven the sincerity of his religious belief.  This was claimed by CCSF even though

25   Mr. Hughes provided a detailed description of his beliefs and why they should be honored by his

26   employer.  In addition to vaccination being unnecessary for Mr. Hughes' solitary job role, he also

27   would have been happy to provide proof of COVID-19 antibodies to demonstrate his natural

28   immunity to the virus.  Rather than attempt to accommodate him, Mr. Hughes was placed on

administrative leave on November 1, 2021 and then terminated on April 1, 2022.

*San Francisco Department of Building Inspection (1 Plaintiff)*

275. Plaintiff Johanna Josepha Coble was employed by CCSF for over 21 years, most recently as a Housing Inspector for the Department of Building Inspection. On October 14, 2021, Ms. Coble submitted a timely request for an exemption from the vaccine mandate based on her sincerely held religious beliefs. As a devout Christian, she opposed the vaccines' use of fetal stem cell lines in their development or production. On November 30, 2021, her request—which mentioned that she had previously had COVID-19—was denied. Despite the fact that Ms. Coble submitted a 3-page statement outlining her beliefs (which were detailed in a letter sent from her attorney), the City claimed that Ms. Coble's religious beliefs were insincere and thus never engaged in an "interactive process" to assess reasonable accommodations such as testing or consideration of her natural immunity that was superior to the City's forced artificial immunity. She was placed on unpaid leave at the beginning of November and then terminated on April 1, 2022.

*San Francisco Controller's Office (1 Plaintiff)*

276. Plaintiff Jerry Wayne Schulze worked for the City and County of San Francisco Controller's Office for 11 years, most recently as IT Project Director. On September 22, 2021, he submitted a timely request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their development or production. His request was denied on October 14, 2021 since the City asserted that Mr. Schulze's claim of religious belief was insincere. He was never offered an "interactive process" to assess reasonable accommodations such as testing or continued remote work—event though he had been 100% working remotely since the pandemic was declared. The closest thing to an interactive process Mr. Schulze received was a call from his manager seeking to persuade him to make an exception to his religious beliefs and take the vaccine. His manager alternatively suggested that Mr. Schulze get a fake vaccination card if he could not take the vaccine. Mr. Schulze was placed on administrative leave on November 1, 2021 and then terminated on November 22, 2021. Around the beginning of December 2021, he began working at Children's Hospital Los Angeles as a contractor. Tellingly, the hospital was able to accommodate his religious exemption. Meanwhile,

1    CCSF had rescinded his termination on December 30, 2021 and placed him on unpaid leave. He

2    tested positive for COVID-19 on January 1, 2022, thus giving him natural immunity to the virus.

3    The City terminated him again on April 1, 2022. As a result of CCSF's actions, Mr. Schulze has

4    suffered monetary and career damages. He was forced to take an early retirement since his finances

5    were negatively impacted by having to accept a lower paying job to pay his bills. The future cost of

6    his retirement healthcare has also been severely impacted by the City's actions.

7    ***San Francisco Environmental Services (1 Plaintiff)***

8        277.    Plaintiff Zhangrui Nie has worked for CCSF for over six years, most recently as a

9    Porter at the Department of Environmental Services. On September 14, 2021, Ms. Nie submitted a

10   timely request for an exemption from the vaccine mandate based on her existing medical condition.

11   That request was ignored and, on October 1, 2021, she was placed on administrative leave. The

12   City's actions have caused tremendous harm to Ms. Nie, both medically and financially.

13   ***San Francisco Fire Department (1 Plaintiff)***

14       278.    Plaintiff Marcos Palacio has worked for the San Francisco Fire Department for over

15   eight years, most recently as a Firefighter. On September 29, 2021, Mr. Palacio submitted a timely

16   request for an exemption from the vaccine mandate based on his sincerely held religious beliefs. As

17   a devout Catholic, he opposed the vaccines' use of fetal stem cell lines in their development or

18   production. On October 14, 2021, he received notification that his request was denied. The City

19   checked all four boxes on its form: (1) there was a failure to prove a sincere religious belief;

20   (2) accommodation would pose a direct threat; (3) accommodation would prevent employee from

21   performing essential functions; and (4) an accommodation would be an undue hardship because of

22   the unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-

23   workers, and the public.

24       CCSF's treatment of Mr. Palacio only underscores the pretext of the City's religious

25   accommodation denials. The denial blindly checked every box as a possible reason. He was never

26   offered an "interactive process" to assess reasonable accommodations such as testing or

27   consideration of natural immunity. On January 16, 2022, he was placed on unpaid administrative

28   leave. That same month he contracted COVID-19 and tested positive for antibodies, thus

1  demonstrating natural immunity.  Faced with termination and having spent all of his savings to pay

2  bills, Mr. Palacio was coerced into taking the vaccine on April 8, 2022 to provide for his family.  As

3  is common with those who take the COVID-19 vaccine, he contracted virus again in June 2022.

4  **_San Francisco Planning Department (1 Plaintiff)_**

5      279.    Plaintiff Genta Yoshikawa worked the San Francisco Department of City Planning

6  for over 13 years, most recently as an IT Operations Support Admin IV.  On September 17, 2021,

7  Mr. Yoshikawa submitted a timely request for an exemption from the vaccine mandate based on his

8  sincerely held religious beliefs.  As a devout Christian, he believes that to interfere with his immune

9  system designed by God would be a sin since it would be an attempt to alter or defile his design.  His

10  request was denied on October 12, 2021.  The City asserted that (1) Mr. Yoshikawa's claim of

11  religious belief was insincere; and (2) an accommodation would be an undue hardship because of the

12  unsubstantiated belief that an unvaccinated employee presents a danger to themselves, co-workers,

13  and the public.  He was never offered an "interactive process" to assess reasonable accommodations

14  such as telework, testing, or consideration of natural immunity.  Mr. Yoshikawa previously

15  performed at least 50% of his work remotely and had been told by his supervisor that 90% of his job

16  (or more) could be done remotely and that his supervisor was fine with him not being in the office.

17  His supervisor also relayed this same information to the department's HR manager.  Mr. Yoshikawa

18  was placed on administrative leave at the beginning of November and terminated on November 22,

19  2021.   Around January 3, 2022, he was reinstated and placed on unpaid leave prior to being

20  terminated again on March 22, 2022.

21  **_Port of San Francisco (1 Plaintiff)_**

22      280.    Plaintiff Kent Nishimura worked for CCSF for over two years, most recently as a Port

23  Property Manager at the Port of San Francisco.  On September 27, 2021, Mr. Nishimura submitted a

24  timely request for an exemption from the vaccine mandate based on his sincerely held religious

25  beliefs.  As a devout Christian, he opposed the vaccines' use of fetal stem cell lines in their

26  development or production.  He also believes his body is a temple of the Holy Spirit, and his sacred

27  blood must not be tainted by the vaccine.  His request was denied on October 13, 2021.  The City

28  asserted that his claim of religious belief was insincere and thus felt justified not to engage in an

1  "interactive process" to determine what reasonable accommodation might be made for Mr.

2  Nishimura.  He was placed on administrative leave on November 1, 2021, and terminated on

3  December 2, 2021.  After being reinstated and placed on unpaid leave on December 30, 2021, he was

4  terminated a second time on April 1, 2022.  The City's actions were so egregious that it caused Mr.

5  Nishimura to see a therapist to deal with the immense strain afflicted on his marriage, finances, and

6  mental state.  Due to his poor mental health caused by the City, he is unable to work and is on state

7  disability leave.

8  ### *San Francisco Public Library (1 Plaintiff)*

9      281.    Plaintiff Simon Can Hui Yep worked for CCSF for over 23 years, most recently as a

10  Library Page at the San Francisco Public Library.  On October 4, 2021, Mr. Yep submitted a timely

11  request for an exemption from the vaccine mandate based on his sincerely held religious beliefs.  As

12  a devout Buddhist, he opposed the vaccines' use of fetal stem cell lines in their development or

13  production.  His request was denied on November 1, 2021.  In denying him, the City checked the

14  box indicating that an accommodation would be an undue hardship because of the unsubstantiated

15  belief that an unvaccinated employee presents a danger to themselves, co-workers, and the public.

16  Mr. Yep was never offered an "interactive process" to assess reasonable accommodations such as

17  testing or consideration of natural immunity.  He was terminated on November 30, 2021 and then

18  reinstated on unpaid leave on December 22, 2021.  He was terminated a second time on March 30,

19  2022.  The City's actions caused his family and him to suffer financial stress and negative mental

20  health.  Mr. Yep was forced to restrict family spending and use his life savings to pay for bills.

21      282.    The forgoing mentioned Plaintiffs have filed complaints with the Equal Employment

22  Opportunity Commission ("EEOC") regarding the discriminatory actions described in this

23  Complaint.  The significant majority of Plaintiffs have exhausted their administrative remedies.  Each

24  of Plaintiff's claims are substantially similar in that they each object to the COVID-19 vaccination

25  for a religious or medical reason and have been denied an exemption request.  To the extent any of

26  the Plaintiffs have not fully exhausted administrative remedies at this time, such claims are deemed

27  to have satisfied the administrative remedy exhaustion requirement pursuant to the single filing rule

28  and may nevertheless be filed together in this lawsuit.  (*Harris v. County of Orange* (9th Cir. 2012)

682 F.3d 1126, 1136–37 ("[S]o long as one plaintiff timely files an administrative complaint, a class of similarly-situated plaintiffs may "piggyback" on that complaint, thereby satisfying the exhaustion requirement.").)

**Defendants**

283.    Defendant City and County of San Francisco is a municipal corporation and administrative division of the State of California.

284.    Defendant London Breed is, and at all times relevant here was, the mayor of San Francisco.  As the mayor, Ms. Breed serves as the chief executive of the City and County, and is responsible for its policy decisions such as the vaccine mandate and how the vaccine mandate was implemented (including the blanket denials of accommodation requests).

285.    Defendant Carol Isen is, and at all times relevant here was, the Human Resources Director of San Francisco.  Her responsibilities include enforcing all employment policies of San Francisco, including the vaccine mandate and the denial of accommodation requests.

286.    Defendant Kate Howard is, and all times relevant here was, the Deputy Director of Human Resources for San Francisco.

287.    Defendant Mawuli Tugbenyoh is, and at all times relevant here was, the Chief of Policy for San Francisco.

288.    Defendant Janie White is, and at all times relevant here was, the Medical Leave Program Manager for San Francisco.

289.    Defendant Jessica Comes is, and at all times relevant here was, the Citywide Reasonable Accommodation Coordinator for San Francisco.

290.    On information and belief, all of these Defendants are collectively responsible for various components of CCSF's discriminatory acts alleged in this complaint.  Where various discriminatory acts or omissions are described in this Complaint as being committed by CCSF such acts are also intended to be imputed collectively to all Defendants who are believed to be partially or wholly responsible for creating, implementing, enforcing, and engaging in the discriminatory acts and omissions described in this Complaint.

/ / /

**CAUSES OF ACTION**

**COUNT ONE**

**TITLE VII – RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE**

**(42 U.S.C. § 2000e-2(a)(1))**

**(Religious Plaintiffs vs. All Defendants)**

291.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

292.    Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

293.    In other words, it is "unlawful 'for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.'" *Opuku-Boateng v. State of Cal.,* 95 F.3d 1461, 1467 (9th Cir. 1996) (quoting *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 74 (1977)).

294.    To establish a *prima facie* claim for failure to accommodate a plaintiff must present evidence that: (1) the employee has a bona fide religious belief that conflicts with an employment requirement; (2) they informed the employer of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement. *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).

295.    Once the plaintiff has made out a *prima facie* case for discrimination, the burden then shifts to the employer to show that it could not reasonably accommodated the plaintiff's religious beliefs without undue hardship. *TWA v. Hardison*, 432 U.S. 63, 84 (1977).  Not only does the burden of *proving* an undue hardship fall on CCSF here, "at a minimum, [the City] was required to negotiate with the employee[s] in an effort reasonably to accommodate [their] religious beliefs." *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513 (9th Cir. 1989), overruled on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

296.    The religious Plaintiffs here clearly established a "bona fide religious belief" and its conflict with the vaccine mandate by submitting their religious accommodation requests to the City. While CCSF has laid the groundwork for challenges to the religious beliefs of its employees, the Supreme Court has warned that it is not the place of employers or courts to question the correctness or plausibility of an employee's religious understandings. *See Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 887 (1990).

297.    Likewise, the EEOC has also cautioned employers on this very point: "the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief, practice, or observance.  However, if an employee requests a religious accommodation, and an employer is aware of facts that provide an objective basis for questioning either the religious nature or the sincerity of a particular belief, practice, or observance, the employer would be justified in requesting additional supporting information."  EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, Part K.12.

298.    San Francisco turned that Guidance on its head, teaching its evaluators that religious requests should be assumed to be insincere and providing intrusive (and often factually wrong) questions that should be asked in order to develop a basis for questioning the employee's beliefs.

299.    This is all confirmed by CCSF revoking *granted* accommodation requests.  After determining that an accommodation could be made for numerous employees, the City suddenly reneged on its promises.  In doing so, CCSF sought to provide *ex post* justifications for the denials, including a supposed newfound lack of sincerity on the part of the employees.  The pretext of the City's denials is plain to see.

300.    CCSF provided no reasonable accommodations options for Plaintiffs, nor did it engage in the interactive process to attempt to find a workable accommodation that would not pose an undue hardship to the City.  The failure to engage in a meaningful interactive process signals an employer's violation of its duty to accommodate because the employer is attempting to remain purposefully ignorant of potential reasonable accommodations.

/ / /

/ / /

301.    To establish the defense of "undue hardship," CCSF must demonstrate that any of the aforesaid accommodations would "bear more than a de minimis cost" on the City.  *Hardison*, 432 U.S. at 84.

302.    But as an initial matter, any supposed "undue hardship" must be "*on the conduct of the employer's business*."  *EEOC v. Townley Engineering & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) (citing 42 U.S.C. § 2000e(j)).  As CCSF had operated without vaccinated employees for more than a year and a half throughout the pandemic, having unvaccinated employees on the job cannot be said to be an "undue hardship *on the conduct of the employer's business*."  *Townley,* 859 F.2d at 615.  The employer's business had proceeded through other avenues (such as masking and testing) and compulsory vaccination—while desired by the City—thus cannot override religious exemptions.

303.    Even if having unvaccinated employees suddenly transformed into a hardship on the employer's business here, the above stated accommodations required no additional cost or logistical burden to San Francisco.

304.    The ability to provide reasonable accommodations to Plaintiffs is also evident by considering (1) departments within the City that were able to accommodate their employees (at least until City leadership found out); and (2) other cities and counties similarly situated to CCSF, including those that border San Francisco, that were able to accommodate employees.  Ready examples include Plaintiffs Monica Gutierrez, Nubia Vargas, Carson Schilling, Genta Yoshikawa, Paul Jacowitz, Christopher Krol, Nathan Sablan, Derek Wray, Marcela Hodgers, Joseph Jacowitz, Kevin Contreras, and Robby Willkom each finding a job with neighboring Contra Costa, Sonoma, and Alameda counties, and with Daly City and Redwood City in San Mateo County after being driven out by CCSF.

305.    The existence of cost-free accommodations even for SFGH can also be seen by considering the countless hospitals around the country that allowed those with exemptions from their vaccine mandates to continue working throughout last Fall and Winter (including the University of California hospital in San Francisco).

306.    Tellingly, even COVID-19 vaccine manufacturers such as Janssen (Johnson & Johnson) accommodated their employees with religious based objections to mandatory COVID-19

1    vaccination policies.  The accommodation was simply to continue wearing a mask to contain the

2    spread of the virus but not to take the vaccine.  In damning contrast to CCSF, Janssen also did not

3    attempt to coerce its exempt employees or talk them out of their sincerely held religious beliefs—

4    instead, the company responsibly made room for divergent beliefs and practices while knowing that

5    it was not compromising anything on safety.[62]

6         307.    The question is not whether CCSF *wanted* to accommodate exempt employees—the

7    City clearly did not want to.  The only question is whether CCSF *could* accommodate exempt

8    employees.  All of these examples show that reasonable (and safe) accommodations were available.

9    San Francisco just chose to ignore them.  CCSF is thus without excuse as to why it failed also to

10   follow well-known employment law in this regard.

11        308.    Title VII requires an employer to thoroughly consider reasonable accommodations

12   and not just reject requests out of hand with form denials.  "If the accommodation solution is not

13   immediately apparent, the employer should discuss the request with the employee to determine what

14   accommodations  might  be  effective."[63]    Such  accommodations  might  include  things  such  as

15   testing/masking or considering natural immunity to be at least equivalent to a primary COVID-19

16   vaccine series—as the European Union did throughout 2021.  The City cannot demonstrate even a

17   *de minimis* burden in providing Plaintiffs with similar accommodations.

18        309.    To be sure, testing was a reasonable accommodation even for people physically

19   entering the workplace—it is undisputed that someone cannot catch COVID-19 from someone who

20   does not have COVID-19.  A negative COVID-19 test would have confirmed that Plaintiffs were

21   less of a contagion hazard than untested individuals who were vaccinated at some earlier point in

22   time, but who could still contract and transmit COVID-19.  And Plaintiffs would have been willing

23   to pay for that themselves (as San Francisco would have learned had it engaged in a meaningful

24   interactive process).

25        310.    In denying (*or revoking*) Plaintiffs' religious exemption requests, CCSF blankly

26   asserted "undue hardship" and provided no justification as to why or how the options discussed above

27   _____

28   [62] *See* Exhibit 4, Declaration of Donn Arizumi.

     [63] EEOC Guidance Section 12: Religious Discrimination; Part IV, A.2.

1  (that were clearly available) would cause undue hardship.  And to be clear, the burden of

2  *demonstrating* undue hardship—and not merely *claiming* undue hardship—falls squarely on the

3  shoulders of the employer.

4  311.  In the face of overwhelming evidence and a crumbling vaccine mandate narrative,

5  CCSF forged forward with its campaign to eliminate its religious employees.  This was unlawful

6  discrimination because CCSF cannot demonstrate that providing reasonable accommodations would

7  have imposed any hardship whatsoever, let alone undue hardship.

8  312.  As a direct and proximate result of Defendants' discriminatory actions against

9  religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of special

10 damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest,

11 punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the

12 effects of Defendants' unlawful employment practices.

13 313.  As a further direct and proximate result of Defendants' discriminatory actions against

14 religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of general

15 damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment

16 of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

17 314.  Religious Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant

18 to law.

19 315.  Religious Plaintiffs further seek a declaration that Defendants have discriminated

20 against religious Plaintiffs and have violated Plaintiffs legal rights by failing to provide a reasonable

21 accommodation of their religious beliefs.

22 316.  Defendants willfully and intentionally discriminated against Plaintiffs because of their

23 religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously,

24 Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical

25 information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and

26 undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the

27 vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them

28 to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were

1    malicious, oppressive or in reckless disregard of the Plaintiffs rights and therefore Plaintiffs are

2    entitled to punitive damages in an amount to be determined at trial according to proof.

### COUNT TWO

**TITLE VII – RELIGIOUS DISCRIMINATION – DISPARATE TREATMENT**

**(42 U.S.C. § 2000e-2(a)(1))**

**(Religious Plaintiffs vs. All Defendants)**

7    317.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if

8    fully set forth herein.

9    318.    Title VII makes it "an unlawful employment practice for an employer to discriminate

10   against any individual with respect to h[er] compensation, terms, conditions, or privileges of

11   employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §

12   2000e-2(a)(1).

13   319.    A *prima facie* case for disparate treatment based on religion requires four elements:

14   (1) membership in a protected class; (2) meeting the qualifications for the job in question; (3) adverse

15   employment action; and (4) different treatment than similarly situated employees outside the

16   protected class. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (citing

17   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

18   320.    A plaintiff asserting a prima facie case for disparate treatment can do so through either

19   direct or indirect evidence. *See Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).

20   321.    By requesting religious accommodation from CCSF, religious Plaintiffs established

21   themselves as members of a protected class.

22   322.    Plaintiffs' employee records demonstrate unquestionably that they were qualified for

23   the position. That is why, prior to the mandate, Plaintiffs had no indication that their jobs were in

24   jeopardy—indeed, some were even in line for promotions or appointments to higher paying positions.

25   Simply put, were it not for CCSF's unlawful application of its mandate, Plaintiffs would likely all

26   still be working there.

27   323.    Plaintiffs first suffered an adverse employment action when the City placed them on

28   unpaid leave. They suffered an additional adverse employment action when the City terminated them

1   after they declined—on religious grounds—to take the COVID-19 vaccine by the end of the unpaid

2   leave period.

3       324.    Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to

4   articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *O'Connor v.*

5   *Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996); *Lyons*, 307 F.3d at 1112.

6       325.    If the employer meets that burden, the plaintiff must then prove that the proffered

7   reason was mere pretext and that discrimination was the real reason for the adverse employment

8   action.  *See St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 507–08 (1993).

9       326.    San Francisco claims that it could not accommodate Plaintiffs without undue

10  hardship, yet Plaintiffs could have been accommodated effortlessly through masking/testing,

11  recognition of her natural immunity, or any combination of these options.

12      327.    And at the same time CCSF was discriminating against Plaintiffs, the City knew that

13  vaccinated employees were regularly contracting and spreading COVID-19.   Yet counter to the

14  supposed "workplace safety" justification, the City *relaxed* safety protocols (such as masking and

15  testing) for vaccinated secular employees who were contracting and spreading the virus while

16  simultaneously insisting that exempt employees abandon their religious beliefs.

17      328.    All this evidences pretext since the City has proffered an explanation "unworthy of

18  credence" and it is apparent that unlawful discrimination was more likely the employer's motivation.

19  *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see Chuang v. Univ. of Cal.*

20  *Davis, Bd. Of Trustees*, 225 F.3d 1115, 1123–24 (9th Cir. 2000).

21      329.    Religious employees who were willing to participate in safety measures such as

22  remote work, masking, and testing and/or who had natural immunity were terminated; secular

23  employees who were immunized artificially (even those immunized with an incomplete vaccine

24  series providing arguably inferior immunization) were allowed to keep their jobs.    And

25  counterintuitively, safety protocols were relaxed for those secular employees whereas safety

26  protocols previously deemed effective and required by CCSF were deemed no longer effective

27  leading to termination of religious employees.

28      330.    The City's polices were thus punitive toward religious employees who should have

been accommodated because many if not all of them had natural immunity to the virus and were therefore posed an equal or lower risk to others than the vaccinated secular employees who had not previously contracted COVID-19.[64]    Additionally, all of them were willing to observe safety practices such as remote work, masking, and testing.    The City previously deemed these safety measures adequate.    Furthermore, remote work and/or testing represented the best means of reducing/preventing COVID-19 transmission for both vaccinated and unvaccinated individuals.[65] Yet, CCSF treated religious employees worse because of their religious objection to the vaccine.    (A truly preventative policy would have required something such as continued remote work for jobs not requiring physical interaction and testing for all employees, especially those who had not previously recovered from a COVID-19 infection *even if they were vaccinated*.)

331.    In other words, CCSF required naturally immune religious employees to possess hybrid immunity (vaccine-based immunity + natural immunity) yet did not require any type of enhanced safety protocols for its secular vaccinated employees.    Again, San Francisco relaxed safety protocols for its secular employees at a time it was clear that they could contract and spread COVID-19 (and, indeed, were doing so).

332.    CCSF required hybrid immunity for Plaintiffs and subjected them to heightened safety protocols because of their religious beliefs.    CCSF relaxed safety protocols on its secular vaccinated employees because it favored their non-religious beliefs.    The City rewarded secular vaccinated employees, even though they presented an equal or greater contagion hazard relative to religious naturally immune employees, because the San Francisco favored these employees' views on COVID-19 vaccines.    Moreover, CCSF enforced its policy with the full knowledge and with intent to adversely affect religious employees disproportionately.    Indeed, instead of implementing plans to accommodate religious employees, CCSF implemented discriminatory policies and created an evaluation form to ensure denial of new religious exemption requests and to ensure revocation of

---

[64] Medically speaking, both vaccinated and unvaccinated individuals posed a similar risk of virus transmission, though vaccinated individuals may have posed an even greater risk due to possessing high viral loads while having reduced symptoms.

[65] Since both vaccinated and unvaccinated individuals have a similar risk of virus transmission, testing to ensure lack of infection and/or remote work options, which completely prevents transmission, represent the most effective means of reducing or preventing transmission.

previously granted exemption requests.  When approval of some religious exemption requests still occurred, CCSF revised its forms to make them more discriminatory and implemented additional training to ensure that no religious exemption requests would be approved.

333.    Additionally, CCSF's deployment of "Tips" designed to allow for the purposeful denial of religious exemption requests was an additional instance of direct disparate treatment.  CCSF planned not to provide Plaintiffs a reasonable accommodation and sought only to gain information it might later be able to use against Plaintiffs who deigned to push back on the City's unlawful actions. CCSF subjected Plaintiffs to its sham process, seeking personal information about people's beliefs, personal information, and medical histories even though the City never planned to accommodate them anyway.  This all took place because of Plaintiffs' religious beliefs and they would not have had to undergo that process but for those sincerely held religious beliefs about the COVID-19 vaccine.

334.    The results of the sham process also show a disproportionate attack against religious reasons for needing an accommodation.  While CCSF discriminated against those with medical needs, the approval rate across the City was around 8% for those.  By contrast, religious requests had an approval rate of 0.8%—merely a tenth of an already suspect medical approval number.  CCSF plainly did not want religious requests to succeed and purposefully plotted to deny those requestors.

335.    Because of CCSF's comprehensive pattern and practice of unlawfully distinguishing between secular and religious employees, Plaintiffs believe many additional instances of disparate treatment discrimination will ultimately be revealed.

336.    Any non-discriminatory reason proffered by CCSF is pretextual.  By allowing vaccinated employees to avoid necessary preventative measures like testing, while not even allowing exempt employees like Plaintiffs to use them, the City has undermined any legitimate nondiscriminatory reason it might have tried to claim as it relates to workplace safety.  Moreover, as the evidence shows, the safety justification for treating unvaccinated employees differently (especially those with natural immunity) was non-existent long before the City put people out of work here.  And once the Omicron variant swept across the country in December of 2021 and January of 2022, it became clear that vaccines were not preventing transmission of the virus whatsoever.  It

1  was thus unlawful to continue discriminating against exempt employees, many of whom were
2  terminated or resigned under duress long after Omicron became the dominant variant in the U.S.

3      337.    If CCSF's justification truly was to help provide for a safe work environment during
4  the COVID-19 pandemic, the City would not have singled out those who had natural immunity and/or
5  were willing to submit to testing for worse treatment because they could not take the vaccine for
6  religious reasons.

7      338.    But, as discussed in greater detail above, the safety argument was clearly a pretext.
8  The City's planned attack on religious beliefs is made inexplicably apparent by the City's willful
9  ignorance of the science and the CDC's guidance in March, July, and August of 2021, establishing
10 that the vaccines did not reduce virus transmission.  The vaccine was used as a tool to weed out
11 religious and/or disabled individuals from the City's employ.

12     339.    Considering these factors, a strong inference of intentional religious discrimination
13 exists, and any non-discriminatory reason asserted by CCSF is inauthentic.

14     340.    As a direct and proximate result of Defendants' discriminatory actions against
15 religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of special
16 damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest,
17 punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the
18 effects of Defendants' unlawful employment practices.

19     341.    As a further direct and proximate result of Defendants' discriminatory actions against
20 religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of general
21 damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment
22 of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

23     342.    Religious Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant
24 to law.

25     343.    Religious Plaintiffs further seek a declaration that Defendants have discriminated
26 against religious Plaintiffs and have violated Plaintiffs legal rights by subjecting them to unequal and
27 unfair treatment because of their religious beliefs.

28     344.    Defendants willfully and intentionally discriminated against Plaintiffs because of

135

their religious beliefs and/or disabilities as described in more detail elsewhere herein. Most egregiously, Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them to other coercive means of forcing cooperation. In so doing, Defendants acts/omissions were malicious, oppressive or in reckless disregard of the Plaintiffs rights and therefore Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

## COUNT THREE

### TITLE VII – RETALIATION FOR RELIGIOUS CLAIMS

### (42 U.S.C. §2000e-3(a))

### (Religious Plaintiffs vs. All Defendants)

345.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

346.    Title VII also makes it unlawful for "an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made unlawful by this subchapter." 42 U.S.C. § 2000e-3(a); *see Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 850 (9th Cir. 2004).

347.    A *prima facie* case for retaliation requires a showing that (1) the plaintiff engaged in activity protected by Title VII; (2) an adverse employment action was taken by the employer against the plaintiff; and (3) a causal link existed between the protected activity and the adverse action." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

348.    Here, religious Plaintiffs engaged in protected activity under Title VII when they sought a religious accommodation from the vaccine mandate that would otherwise require them to violate their sincere religious beliefs.

349.    Then, because of their request for an accommodation, CCSF subjected religious Plaintiffs to a sham "interactive" process that was not in good faith and that was designed to result in the denial of all religious exemption requests. When CCSF learned that certain departments were

granting religious accommodation requests, CCSF developed an exemption evaluation form that was designed to result in denial of the requests.  When certain exemptions were still being approved, CCSF revised the exemption forms, added attorney review requirements for exemptions, and re-trained its exemption evaluators until all (or nearly all) religious accommodation requests were denied.  CCSF also retroactively revoked the exemption requests that had previously been granted.  Furthermore, and perhaps most importantly, CCSF made no attempt to identify and provide reasonable accommodations to religious objectors.  Indeed, the sham process was not designed to look for a reasonable accommodation for Plaintiffs because CCSF never intended to accommodate them.  Were it not for Plaintiff's religious beliefs and their requests for an accommodation, they would not have been subjected to such treatment.

350.    After denying religious Plaintiffs' requests, CCSF continued to pressure Plaintiffs to capitulate and get the COVID-19 vaccine by using the false claim that the City could not accommodate their beliefs.  San Francisco then placed Plaintiffs on unpaid leave—a further coercive technique—only to terminate them after a period of unpaid leave.

351.    On information and belief, the City imposed the period of unpaid leave with the intent to punish those who sought accommodations (even when giving what CCSF will argue was a favorable treatment of a 60-day job search).  CCSF hoped that the constant reminder of termination would result in Plaintiffs abandoning their religious beliefs and surrendering to a coerced injection of a COVID-19 vaccine.

352.    CCSF's Policy—purposefully seeking to coerce religious Plaintiffs into compliance—forced those them into a period of extreme emotional and psychological distress.

353.    But for their request for accommodation, Plaintiffs would not have experienced the psychological and emotional distress from the periods of unpaid leave where they were constantly pressured to violate their religious beliefs (and, indeed, some did).

354.    CCSF also terminated religious Plaintiffs for seeking a religious accommodation to the compulsory vaccination policy.  Plaintiffs who withstood the City's coercion maintained their requests for an accommodation through the date of their termination, renewing their requests implicitly each day that passed.

355.    This is evidenced by CCSF's refusal to admit its mistake and bring Plaintiffs back even after it became apparent that (1) accommodations were available; (2) the COVID-19 vaccines were not preventing contraction of the virus; and (3) individuals with natural immunity possessed equal or superior immunity to those with the vaccine only.  Such actions were due to Plaintiffs opposing the City's illegal employment law practice.  San Francisco had made up its mind to purge as many unvaccinated religious employees as it believed it could in order to push for the politically expedient goal of 100% vaccination among its employees—the City's position against those seeking accommodations had become entrenched.

356.    Indeed, even as of October 2022, CCSF is still in the process of terminating employees on unpaid leave who have been unable to take the COVID-19 vaccination.  Even months after the CDC explicitly told employers not to treat unvaccinated individuals differently than vaccinated ones, the City is proceeding with removing religious objectors from its employ.

357.    CCSF continued with termination of religiously exempt employees even after it became obvious that, because there was no scientific need for vaccine mandates, exempt employees could have been allowed to work unvaccinated with no increased threat whatsoever.

358.    CCSF was aware of things such as the CDC's guidance on natural immunity that should have allowed unvaccinated—but naturally immunized—Plaintiffs to continue working or at least be allowed to go back to their jobs.  The City nevertheless kept religious Plaintiffs on unpaid leave and then proceeded with terminations. In sum, after attempting to coerce religious Plaintiffs to give up their religious beliefs through a sham exemption process, intrusive questioning, unpaid leave periods, and other coercive methods, CCSF then implemented an illegal one size fits all approach— get the vaccine or face termination.

359.    With no scientific basis to continue pressing for exempt employees to be vaccinated, such actions may be fairly (and most accurately) attributed to retaliatory motives.

360.    As a direct and proximate result of Defendants' discriminatory actions against religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the

effects of Defendants' unlawful employment practices.

361.    As a further direct and proximate result of Defendants' discriminatory actions against religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

362.    Religious Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to law.

363.    Religious Plaintiffs further seek a declaration that Defendants have discriminated against religious Plaintiffs and have violated Plaintiffs legal rights by retaliating against Plaintiffs because of their religious beliefs.

364.    Defendants willfully and intentionally discriminated against Plaintiffs because of their religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously, Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were malicious, oppressive or in reckless disregard of the Plaintiffs rights, and, therefore, Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

## COUNT FOUR

### CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

### RELIGIOUS DISCRIMINATION – FAILURE TO ENGAGE IN INTERACTIVE

### PROCESS

### (Cal. Gov. Code § 12900 et seq.)

### (Religious Plaintiffs vs. All Defendants)

365.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

/ / /

366.    As noted above, CCSF failed to engage in a good-faith interactive process with religious Plaintiffs.  While the City will say that it provided the opportunity for individuals to apply for exemptions, and even asked follow up questions in some instances, the facts show that this sham process was designed only to coerce, intimidate, harass, and shame those seeking religious exemptions.

367.    As an initial matter, a truly interactive process would not have resulted in almost half of religious Plaintiffs getting back a form with every box checked as a possible basis for denial when it was obvious from their files that they had sincere religious beliefs and could be accommodated in various ways.  Such rubber-stamp denials bear the hallmarks of a fake process not intended to evaluate individuals on the merits of their situations.

368.    Moreover, San Francisco coached its evaluators that religious requests should be assumed to be insincere and provided intrusive (and often factually wrong) questions that should be asked in order to develop a basis for questioning the employee's beliefs.  This policy represented a bad faith attempt to paper over the denials.  It did not attempt to seek information that would allow CCSF to determine how an employee's religious exemption request might be granted and reasonably accommodated.  Consequently, the only exchange that did occur stemmed from the City's ill-conceived plan to trip up and undermine religious Plaintiffs' accommodation requests.

369.    CCSF's revoking of *granted* accommodation requests is instructive.  After determining that an accommodation could be made for numerous employees, the City suddenly reneged on its promises and, in so doing, contradicted what it had already told employees about their individual situations.  The City implemented this "secondary review" only after realizing that certain departments were granting exemptions.  The City deployed this review for the sole purpose of denying requests, and did not to engage in any interactive process.

370.    In numerous instances, Plaintiffs requests were denied on the date submitted with the evaluators checking boxes that were completely unsupported by the facts.  This all stemmed from the purposeful coaching that CCSF provided evaluators to question all claims of religious belief and, in particular, to reject claims related to the vaccines' use of aborted fetal stem cell lines (especially when that claim was made by Catholics).

371.    Additionally, a review of the denial forms (along with each box being checked) shows that either the City or the evaluators (or both) did not even understand the concepts listed on them. For example, to claim that a religious requester cannot perform their essential job functions is nonsensical in context here.  That is normally a question asked of a person seeking a disability exemption.  Every denied police officer, for example, had no problem performing the essential functions of their jobs throughout the pandemic (and some had received commendations while doing so).

372.    What the City appears to have been claiming is that the person could not perform their essential job functions "safely"—even though the same individuals had been performing their essential job functions safely prior to development of the vaccine mandate through masking and most importantly through testing.  Regardless of vaccine status, there can be no legitimate dispute that a person who is not infected cannot spread the disease and, so, is capable of safely performing essential job functions.  Thus, regardless of vaccination status, CCSF's only legitimate inquiry for in-person job functions should have been whether a person is or is not infected (i.e. through testing).  In effect, the City was groundlessly treating unvaccinated individuals as a threat even though only infected individuals (regardless of vaccination status) posed a potential safety risk.

373.    It was clear that CCSF failed to engage in a meaningful interactive process because it sought to deny requests across the board and to purposefully ignore potential reasonable accommodations.  This is precisely the discriminatory behavior California law prohibits.

374.    As a direct and proximate result of Defendants' discriminatory actions against religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

375.    As a further direct and proximate result of Defendants' discriminatory actions against religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

376.     Religious Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to law including, but not limited to, Government Code §§ 12653 and 12965 and California Code of Civil Procedure §1021.5.

377.     Religious Plaintiffs further seek a declaration that Defendants have discriminated against religious Plaintiffs and have violated Plaintiffs legal rights by failing to engage in a good faith interactive process to accommodate their religious beliefs.

378.     Defendants willfully and intentionally discriminated against Plaintiffs because of their religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously, Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were malicious, oppressive, fraudulent, or in conscious disregard of the Plaintiffs rights and, therefore, Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

## COUNT FIVE

### CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT

### RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE

### (Cal. Gov. Code § 12940(l))

### (Religious Plaintiffs vs. All Defendants)

379.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

380.     At all times relevant, CCSF was subject to Government Code § 12940 *et seq.* because it regularly employed five (5) or more persons.  CCSF employed religious Plaintiffs prior to terminating them for their religious beliefs.

381.     Government Code § 12940(l) provides that it is unlawful to discriminate against a person based on religion and may not invoke the undue hardship defense, unless the employer demonstrates it has "explored any available reasonable alternative means of accommodating the

1  religious belief but is unable to reasonably accommodate the religious belief without undue
2  hardship."

3      382.    As elaborated above in detail, all Plaintiffs except for two have sincerely held
4  religious beliefs that prevent them from receiving the COVID-19 Vaccines.  For example, one of the
5  most common religious objections is to the use of aborted fetal stem cells in the testing or
6  manufacturing processes of the COVID-19 vaccines.  Other objections are elaborated in more detail
7  above including but not limited to religious objections based on the body being a temple or based on
8  the religious belief that vaccines are unclean and spiritually impure and will prevent the individual
9  from attaining eternal spiritual freedom.

10     383.    Religious Plaintiffs' sincerely held religious beliefs conflicted with a job requirement
11  enacted during the course of their employment, specifically, CCSF's mandatory COVID-19
12  vaccination policy for all employees.

13     384.    Religious Plaintiffs informed CCSF of their religious beliefs and of the conflict that
14  these beliefs created regarding the vaccination policy.

15     385.    CCSF/Defendants did not explore _any_ available alternatives of accommodating
16  religious Plaintiffs, such as allowing religious Plaintiffs to work remotely, for positions not requiring
17  physical interaction, and/or allowing religious Plaintiffs to receive regular testing and/or
18  acknowledging natural immunity for previous infection, for positions requiring physical interaction.
19  As discussed above, both vaccinated and unvaccinated individuals have a similar propensity (with
20  vaccinated individuals arguably having a higher propensity) for transmitting the COVID-19 virus.
21  Consequently, the only relevant inquiry for purposes of determining whether a person may safely
22  perform their in-person job functions (assuming for purposes of argument that COVID-19 infection
23  presents an undue safety risk) is the infection status of the individual.  Determining infection status
24  requires testing.  If CCSF's was genuinely concerned about avoiding virus transmission, then CCSF
25  should have mandated an indiscriminate testing policy regardless of vaccination status for in-person
26  work functions.  Furthermore, for work functions that did not require in-person interaction, CCSF
27  should have mandated a similar indiscriminate testing policy or, even better, implemented a remote
28  work policy.  Here, however, not only were testing and remote work options not imposed as a policy,

1  these measures were ignored as accommodation options.  Instead, CCSF implemented an illegal one

2  size fits all discriminatory vaccination policy in order to weed out and terminate religious employees

3  from CCSF's employ.  CCSF also relaxed testing requirements for vaccinated employees, but

4  continued to require them of religious Plaintiffs as a form of coercion before eventually terminating

5  them.  In sum, CCSF did not engage in any negotiation process, did not propose *any* accommodation

6  options for religious objectors to CCSF's vaccine mandate, and categorically denied or revoked

7  religious Plaintiffs' exemption requests.

8          386.    Religious Plaintiffs' inability to comply with the conflicting vaccine policy job

9  requirement was a substantial motivating reason, if not the only reason, for CCSF's decisions to take

10  adverse employment actions against religious Plaintiffs.  Adverse employment actions included

11  among other things described in this Complaint, subjecting religious Plaintiffs to intrusive and ill-

12  motivated questioning, subjecting them to unequal safety restrictions, placing religious Plaintiffs on

13  unpaid leave, and eventually terminating religious Plaintiffs.

14          387.    As a direct and proximate result of Defendants' discriminatory actions against

15  religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of special

16  damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest,

17  punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the

18  effects of Defendants' unlawful employment practices.

19          388.    As a further direct and proximate result of Defendants' discriminatory actions against

20  religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of general

21  damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment

22  of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

23          389.    Religious Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant

24  to law including, but not limited to, Government Code §§ 12653 and 12965 and California Code of

25  Civil Procedure §1021.5.

26          390.    Religious Plaintiffs further seek a declaration that Defendants have discriminated

27  against religious Plaintiffs and have violated Plaintiffs legal rights by failing to provide reasonable

28  accommodations of their religious beliefs.

391.    Defendants willfully and intentionally discriminated against Plaintiffs because of their religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously, Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were malicious, oppressive, fraudulent, or in conscious disregard of the Plaintiffs rights and, therefore, Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

## COUNT SIX

### CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT

### RETALIATION FOR RELIGIOUS CLAIMS

### (Cal. Gov. Code § 12940(h) et seq.)

### (Religious Plaintiffs vs. All Defendants)

392.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

393.    At all times relevant, CCSF was subject to Government Code § 12940 *et seq.* because it regularly employed five (5) or more persons.  CCSF employed religious Plaintiffs prior to terminating them for their religious beliefs.

394.    Religious Plaintiffs made a request for a religious accommodation as described herein.  This request included requesting to be excused from the mandatory COVID-19 vaccination policy due to a conflict with religious Plaintiffs' sincerely held religious beliefs.  One common religious objection was to the use of aborted fetal stem cells in the testing and manufacture of the COVID-19 vaccines.  Other objections are elaborated in more detail above including but not limited to religious objections based on the body being a temple or based on the religious belief that vaccines are unclean and spiritually impure and will prevent the individual from attaining eternal spiritual freedom.  Religious Plaintiffs were willing to follow alternate safety protocols such as regular testing, working remotely, and/or following other safety protocols to ensure safe performance of their in-

1  person job functions.  In summary, religious Plaintiffs engaged in a protected activity by making a
2  religious accommodation request and were willing to take reasonable safety measures.

3       395.    As a result of making these requests, CCSF took adverse employment action against
4  religious Plaintiffs including but not limited to intrusive and ill-motivated questioning, subjecting
5  them to unequal safety restrictions, placing religious Plaintiffs on unpaid leave, and eventually
6  terminating religious Plaintiffs.

7       396.    Religious Plaintiffs religious beliefs and their requests for religious accommodation
8  were substantial motivating reasons, if not the only reason, for CCSF's decision to take adverse
9  employment actions against religious Plaintiffs.

10      397.    As a direct and proximate result of Defendants' discriminatory actions against
11  religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of special
12  damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest,
13  punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the
14  effects of Defendants' unlawful employment practices.

15      398.    As a further direct and proximate result of Defendants' discriminatory actions against
16  religious Plaintiffs, as alleged herein, religious Plaintiffs have suffered harm in the form of general
17  damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment
18  of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

19      399.    Religious Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant
20  to law including, but not limited to, Government Code §§ 12653 and 12965 and California Code of
21  Civil Procedure §1021.5.

22      400.    Religious Plaintiffs further seek a declaration that Defendants have discriminated
23  against religious Plaintiffs and have violated Plaintiffs legal rights by retaliating against them because
24  of their religious beliefs.

25      401.    Defendants willfully and intentionally discriminated against Plaintiffs because of their
26  religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously,
27  Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical
28  information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and

1  undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the

2  vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them

3  to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were

4  malicious, oppressive, fraudulent, or in conscious disregard of the Plaintiffs rights and, therefore,

5  Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

6  **COUNT SEVEN**

7  **AMERICANS WITH DISABILITIES ACT**

8  **DISCRIMINATION BASED ON PERCEIVED DISABILITY**

9  **(42 U.S.C. § 12101, *et seq.*)**

10  **(All Plaintiffs vs. All Defendants)**

11  402.  Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if

12  fully set forth herein.

13  403.  In protecting against disability discrimination, the ADA defines a disability to include

14  "being regarded [by your employer] as having such an impairment."  42 U.S.C. § 12102(1)(C).

15  Going on, the statute explains that "[a]n individual meets the requirement of 'being regarded as

16  having such an impairment' if the individual establishes that he or she has been subjected to an

17  [adverse employment] action . . . because of an actual or perceived physical or mental impairment

18  whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

19  The only exception is if the perceived disability is both "transitory and minor"—meaning it is

20  expected to last less than six months. *Id.* § 12102(3)(B)

21  404.  Every Plaintiff informed CCSF that they were unable to receive a COVID-19

22  vaccination and requested reasonable accommodations from the same.

23  405.  CCSF regarded Plaintiffs as disabled, perceiving them as though they were

24  *perpetually* infected with COVID-19.  This is clear from the City's directions to their exemption

25  evaluators that unvaccinated individuals had a "*condition*" that could be equated with the actual threat

26  of COVID-19 itself.  Additionally, CCSF expected this "*condition*" to last indefinitely.

27  / / /

28  / / /

406.    CCSF did not prove—and, especially for those who had already recovered from COVID-19, could not prove—that Plaintiffs posed any increased risk of transmitting COVID-19 than their fellow employees.

407.    San Francisco nevertheless treated Plaintiffs as though they were disabled (*i.e.*, that they could not perform their job safely) simply because they had not received a COVID-19 vaccination.

408.    The City thereby discriminated against Plaintiffs because of an imagined disability that was neither transitory (because CCSF believed it was ongoing) nor minor (because the CCSF believed it impacted safety constantly).

409.    By limiting, segregating, and classifying employees in a manner that adversely affected their employment opportunities based on an imagined disability, CCSF engaged in disability-based discrimination in violation of the ADA, thereby harming Plaintiffs.

410.    As a direct and proximate result of Defendants' discriminatory actions against Plaintiffs, as alleged herein, Plaintiffs have suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

411.    As a further direct and proximate result of Defendants' discriminatory actions against Plaintiffs, as alleged herein, Plaintiffs have suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

412.    Defendants' failure to provide reasonable accommodation was a substantial factor in causing Plaintiffs' harm.

413.    Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to law.

414.    Plaintiffs further seek a declaration that Defendants have discriminated against medical Plaintiffs and have violated Plaintiffs legal rights by failing to provide reasonable accommodations of their perceived disabilities.

415.    Defendants willfully and intentionally discriminated against Plaintiffs because of their

religious beliefs and/or disabilities as described in more detail elsewhere herein. Most egregiously, Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them to other coercive means of forcing cooperation. In so doing, Defendants acts/omissions were malicious, oppressive or in reckless disregard of the Plaintiffs rights, and, therefore, Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

**COUNT EIGHT**

**AMERICANS WITH DISABILITIES ACT**

**DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE**

**(42 U.S.C. § 12101, *et seq*.)**

**(Medical Plaintiffs vs. All Defendants)**

416.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

417.    Medical Plaintiffs informed CCSF of their disabilities and requested reasonable medical accommodations from the City's vaccine mandate.

418.    CCSF violated the ADA when it denied medical Plaintiffs' accommodation requests, thereby discriminating against them because of their disabilities.

419.    CCSF's failure to provide medical accommodations has harmed and continues to harm Plaintiffs.

420.    By failing to engage in the interactive process or offer any reasonable accommodation, CCSF's discriminatory actions were intentional and/or reckless, and in violation of the ADA.

421.    As a direct and proximate result of Defendants' discriminatory actions against medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the

1  effects of Defendants' unlawful employment practices.

2      422.    As a further direct and proximate result of Defendants' discriminatory actions against

3  medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of general

4  damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment

5  of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

6      423.    Defendants' failure to provide reasonable accommodation was a substantial factor in

7  causing medical Plaintiffs' harm.

8      424.    Medical Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to

9  law.

10     425.    Medical Plaintiffs further seek a declaration that Defendants have discriminated

11  against medical Plaintiffs and have violated Plaintiffs legal rights by failing to provide reasonable

12  accommodations of their disabilities.

13     426.    Defendants willfully and intentionally discriminated against Plaintiffs because of their

14  religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously,

15  Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical

16  information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and

17  undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the

18  vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them

19  to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were

20  malicious, oppressive or in reckless disregard of the Plaintiffs rights, and, therefore, Plaintiffs are

21  entitled to punitive damages in an amount to be determined at trial according to proof.

22                          **<u>COUNT NINE</u>**

23                **AMERICANS WITH DISABILITIES ACT**

24               **RETALIATION FOR DISABILITY CLAIMS**

25                    **(42 U.S.C. § 12101, *et seq*.)**

26                 **(Medical Plaintiffs vs. All Defendants)**

27     427.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if

28  fully set forth herein.

428.    Medical Plaintiffs engaged in protected activity when they informed CCSF of their disabilities and requested reasonable medical accommodations from the City's vaccine mandate.

429.    CCSF responded by taking an adverse employment action against each of them by placing (or threatening to place) them on unpaid leave until termination.

430.    The City's response to medical Plaintiffs' protected activity was intended to force employees to forego their medical reasons for not receiving the COVID-19 vaccine.

431.    CCSF continued with termination of medically exempt employees even after it became obvious that there was no scientific need for vaccine mandates and thus the exempt employees could have been allowed to work unvaccinated with no increased threat whatsoever.

432.    CCSF was aware of things such as the CDC's guidance on natural immunity that should have allowed unvaccinated—but naturally immunized—Plaintiffs to continue working or at least be allowed to go back to their jobs.  The City nevertheless kept Plaintiffs on unpaid leave and then proceeded with terminations.

433.    The City engaged in this retaliation against employees seeking a medical exemption because they engaged in that protected activity rather than acquiescing to the City's goal of 100% vaccination.

434.    As a direct and proximate result of Defendants' discriminatory actions against medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

435.    As a further direct and proximate result of Defendants' discriminatory actions against medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

436.    Defendants' failure to provide reasonable accommodation was a substantial factor in causing medical Plaintiffs' harm.

/ / /

437.    Medical Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to law.

438.    Medical Plaintiffs further seek a declaration that Defendants have discriminated against medical Plaintiffs and have violated Plaintiffs legal rights by retaliating against them because of their disabilities.

439.    Defendants willfully and intentionally discriminated against Plaintiffs because of their religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously, Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were malicious, oppressive or in reckless disregard of the Plaintiffs rights, and, therefore, Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

## COUNT TEN

### CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

### DISABILITY DISCRIMINATION – FAILURE TO ENGAGE IN INTERACTIVE PROCESS

### (Cal. Gov. Code § 12900 et seq.)

### (Medical Plaintiffs vs. All Defendants)

440.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

441.    As seen with the religious requesters, Plaintiffs who sought a medical exemption were likewise denied a good-faith interactive process.

442.    While documentation was provided to the City concerning the disabilities of the medical Plaintiffs seeking an exemption from the mandate, CCSF would routinely check the box indicating that the claim was unsupported.

/ / /

443. But the existence of a provable medical claim was of no moment to CCSF anyway. A denial of the request was predetermined under the City's false belief that anyone unvaccinated had a "condition" making them a direct threat.

444. Under the law, the only time a direct threat defense is even applicable is when the threat cannot be mitigated. In this case, those with medical exemptions could have easily mitigated any *imagined* threat by such steps as masking, testing, or remote work options. Thus, the direct threat defense is not available to the City and it should have engaged in a good-faith effort to accommodate its medically exempt employees.

445. Yet even though CCSF was going to deny each of the medical Plaintiffs' requests for the incorrect reason of "direct threat" anyway, the City still made those employees provide them personal information and medical details as part of the sham process.

446. The only supposed "interactive" process was just a series of invasive (and futile) steps that CCSF forced medical Plaintiffs to undergo while the City waited to issue its predetermined denial.

447. As a direct and proximate result of Defendants' discriminatory actions against medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

448. As a further direct and proximate result of Defendants' discriminatory actions against medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

449. Defendants' failure to provide reasonable accommodation was a substantial factor in causing medical Plaintiffs' harm.

450. Medical Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to law.

451. Medical Plaintiffs further seek a declaration that Defendants have discriminated

1  against medical Plaintiffs and have violated Plaintiffs legal rights by failing to engage in any good

2  faith interactive process regarding their disabilities.

3      452.   Defendants willfully and intentionally discriminated against Plaintiffs because of their

4  religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously,

5  Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical

6  information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and

7  undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the

8  vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them

9  to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were

10 malicious, oppressive, fraudulent, or in conscious disregard of the Plaintiffs rights and, therefore,

11 Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

12                              **COUNT ELEVEN**

13              **CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

14                          **FAILURE TO ACCOMMODATE**

15                       **(Cal. Gov. Code § 12900 et seq.)**

16                      **(Medical Plaintiffs vs. All Defendants)**

17     453.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if

18 fully set forth herein.

19     454.   During the course of medical Plaintiffs employment with CCSF, medical Plaintiffs

20 suffered from a disability for which medical Plaintiffs requested exemptions from the COVID-19

21 vaccination policy.  Medical Plaintiffs were able to perform the essential duties of their respective

22 positions, which had not changed except for the implementation of a new mandatory COVID-19

23 vaccination policy.

24     455.   CCSF discriminated against medical Plaintiffs because of medical Plaintiffs disability

25 by failing to reasonably accommodate such disability exemption requests, which could have been

26 accommodated by implementing testing or remote work options for medical Plaintiffs.  CCSF failed

27 to engage in any meaningful interactive process regarding the accommodation request.  The only

28 accommodation that occurred as a sham process designed by the City and re-designed by the City to

ensure denial of any exemption requests.  CCSF denied then requests, used coercive tactics against medical Plaintiffs, and eventually terminated medical Plaintiffs employment as a result of the Plaintiffs disability accommodation request.

456.    As a direct and proximate result of Defendants' discriminatory actions against medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

457.    As a further direct and proximate result of Defendants' discriminatory actions against medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

458.    Defendants' failure to provide reasonable accommodation was a substantial factor in causing medical Plaintiffs' harm.

459.    Medical Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to law including, but not limited to, Government Code §§ 12653 and 12965 and California Code of Civil Procedure §1021.5.

460.    Medical Plaintiffs further seek a declaration that Defendants have discriminated against medical Plaintiffs and have violated Plaintiffs legal rights by failing to provide reasonable accommodations of their disabilities.

461.    Defendants willfully and intentionally discriminated against Plaintiffs because of their religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously, Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were malicious, oppressive, fraudulent, or in conscious disregard of the Plaintiffs rights and, therefore,

1  Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

2  **COUNT TWELVE**

3  **CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT**

4  **RETALIATION FOR DISABILITY CLAIMS**

5  **(Cal. Gov. Code § 12900 et seq.)**

6  **(Medical Plaintiffs vs. All Defendants)**

7      462.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if

8  fully set forth herein.

9      463.    Medical Plaintiffs engaged in the protected activity of making a disability

10 accommodation request as discussed above. CCSF denied medical Plaintiffs' requests, used coercive

11 tactics and intrusive questioning against medical Plaintiffs, and eventually terminated medical

12 Plaintiffs as a result of their respective exemption requests.

13     464.    Medical Plaintiffs disability exemption request was a substantial motivating reason

14 for CCSF's decision to harass and discharge medical Plaintiffs.

15     465.    As a direct and proximate result of Defendants' discriminatory actions against

16 medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of special

17 damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest,

18 punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the

19 effects of Defendants' unlawful employment practices.

20     466.    As a further direct and proximate result of Defendants' discriminatory actions against

21 medical Plaintiffs, as alleged herein, medical Plaintiffs have suffered harm in the form of general

22 damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment

23 of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

24     467.    Defendants' failure to provide reasonable accommodation was a substantial factor in

25 causing medical Plaintiffs' harm.

26     468.    Medical Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to

27 law including, but not limited to, Government Code §§ 12653 and 12965 and California Code of

28 Civil Procedure §1021.5.

469.    Medical Plaintiffs further seek a declaration that Defendants have discriminated against medical Plaintiffs and have violated Plaintiffs legal rights by retaliating against them because of their disabilities.

470.    Defendants willfully and intentionally discriminated against Plaintiffs because of their religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously, Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were malicious, oppressive, fraudulent, or in conscious disregard of the Plaintiffs rights and, therefore, Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

**COUNT THIRTEEN**

**CALIFORNIA FAIR EMPLOYEMENT AND HOUSING ACT**

**FAILURE TO ACCOMMODATE PERCEIVED DISABILITY**

**(Cal. Gov. Code § 12900 et seq.)**

**(All Plaintiffs vs. All Defendants)**

471.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

472.    Pursuant to California Government Code § 12940(a), it is unlawful for any employer to discriminate against an employee because of the employee's disability.  Under California Government Code § 12926(o), this anti-discrimination law covers discrimination against any employee based perceived disability by the employer.  Furthermore, pursuant to California Government Code § 12926(n), the definition of "disability" under the Americans with Disabilities Act of 1990 is adopted into California law to the extent that it provides broader protection than California law.

473.    In protecting against disability discrimination, the ADA defines a disability to include "being regarded [by your employer] as having such an impairment." 42 U.S.C. § 12102(1)(C).

1  Going on, the statute explains that "[a]n individual meets the requirement of 'being regarded as

2  having such an impairment' if the individual establishes that he or she has been subjected to an

3  [adverse employment] action . . . because of an actual or perceived physical or mental impairment

4  whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

5  The only exception is if the perceived disability is both "transitory and minor"—meaning it is

6  expected to last less than six months. *Id.* § 12102(3)(B)

7      474.    Every Plaintiff informed CCSF that they were unable to receive a COVID-19

8  vaccination and requested reasonable accommodations from the same.

9      475.    CCSF regarded Plaintiffs as disabled, perceiving them as though they were

10  *perpetually* infected with COVID-19.  This is clear from the City's directions to their exemption

11  evaluators that unvaccinated individuals had a "*condition*" that could be equated with the actual threat

12  of COVID-19 itself.  Additionally, CCSF expected this "*condition*" to last indefinitely.

13      476.    CCSF did not prove—and, especially for those who had already recovered from

14  COVID-19, could not prove—that Plaintiffs posed any increased risk of transmitting COVID-19 than

15  their fellow employees.

16      477.    San Francisco nevertheless treated Plaintiffs as though they were disabled (*i.e.*, that

17  they could not perform their job safely) simply because they had not received a COVID-19

18  vaccination.

19      478.    The City thereby discriminated against Plaintiffs because of an imagined disability

20  that was neither transitory (because CCSF believed it was ongoing) nor minor (because the CCSF

21  believed it impacted safety constantly).

22      479.    By limiting, segregating, and classifying employees in a manner that adversely

23  affected their employment opportunities based on an imagined disability, CCSF engaged in

24  disability-based discrimination in violation of California law, thereby harming Plaintiffs.

25      480.    As a direct and proximate result of Defendants' discriminatory actions against

26  Plaintiffs, as alleged herein, Plaintiffs have suffered harm in the form of special damages, including

27  but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages,

28  and compensatory damages and other affirmative relief necessary to eradicate the effects of

1    Defendants' unlawful employment practices.

2    481.    As a further direct and proximate result of Defendants' discriminatory actions against

3    Plaintiffs, as alleged herein, Plaintiffs have suffered harm in the form of general damages including,

4    but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation,

5    and loss of civil rights, in an amount to be determined at trial.

6    482.    Defendants' failure to provide reasonable accommodation was a substantial factor in

7    causing Plaintiffs' harm.

8    483.    Defendants willfully and intentionally discriminated against Plaintiffs because of their

9    religious beliefs and/or disabilities as described in more detail elsewhere herein.  Most egregiously,

10   Defendants subjected Plaintiffs to public humiliation by publicly disclosing private medical

11   information, by subjecting them to intrusive and offensive questioning intended to trap Plaintiffs and

12   undermine the sincerity of their religious beliefs, by illegally forcing Plaintiffs to comply with the

13   vaccine mandate or face termination, by placing them on unpaid leave periods and subjecting them

14   to other coercive means of forcing cooperation.  In so doing, Defendants acts/omissions were

15   malicious, oppressive, fraudulent, or in conscious disregard of the Plaintiffs rights and, therefore,

16   Plaintiffs are entitled to punitive damages in an amount to be determined at trial according to proof.

17   484.    Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to law.

18   485.    Plaintiffs further seek a declaration that Defendants have discriminated against

19   medical Plaintiffs and have violated Plaintiffs legal rights by failing to provide reasonable

20   accommodations of their perceived disabilities.

21                                  **<u>COUNT FOURTEEN</u>**

22         **HOSTILE WORK ENVIRONMENT / WORK ENVIRONMENT HARASSMENT**

23                            **(Gov. Code §§ 12923, 12940(j))**

24                            **(All Plaintiffs vs. All Defendants)**

25   486.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if

26   fully set forth herein.

27   487.    At all relevant times, Plaintiffs were employed by the City, which is an employer

28   subject to Gov. Code §§ 12923 and 12940.  The City obtained private medical information

1    concerning the vaccination status of Plaintiffs because of the City's mandatory vaccination policy
2    and Plaintiffs' religious/disability accommodation requests seeking exemption from the policy.  The
3    City disclosed this privacy protected information to non-essential personnel, including publicly
4    disclosing this information on the Transit Department Station's public message board.

5        488.    These acts by the City subjected Plaintiffs to humiliation, coercion, and harassment,
6    pressuring them to comply with the City's vaccination policy and creating a hostile work
7    environment.  This public disclosure of private medical information was severe and pervasive, and a
8    reasonable person in Plaintiffs' circumstances would have considered the work environment to be
9    hostile, intimidating, offensive, oppressive, or abusive.  Plaintiffs in fact considered the work
10   environment to be hostile, intimidating, offensive, oppressive, or abusive as a result of the City's acts
11   in this regard.  Indeed, the public disclosure of this information could serve no other purpose than to
12   humiliate and coerce Plaintiffs to comply with the City's mandatory vaccination policy in violation
13   of their religious beliefs.

14       489.    The City knew or should have known that disclosure of this public information was
15   illegal, should not have disclosed it, and should have been aware that it would create a hostile work
16   environment for Plaintiffs.  The City failed to take appropriate corrective action and indeed did
17   nothing to remedy the hostile environment it had created.

18       490.    Plaintiffs were harmed as a result and the City's conduct was a substantial factor
19   causing Plaintiffs' harm.  Plaintiffs seek recovery of general and special damages according to proof
20   at trial and all other remedies allowed by law including reasonable attorneys' fees.

21       491.    Furthermore, the foregoing public disclosure of private medical information served
22   no other purpose than to intimidate and harass Plaintiffs, creating a hostile work environment.  In
23   doing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud, and malice,
24   and in conscious disregard of Plaintiffs' rights and therefore Plaintiffs are entitled to punitive
25   damages pursuant to California Civil Code section 3294 in an amount to be determined at trial
26   according to proof.

27   / / /
28   / / /

**COUNT FIFTEEN**

**VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT OF**

**THE U.S. CONSTITUTION**

**(42 U.S.C. § 1983)**

**(Religious Plaintiffs vs. All Defendants)**

492.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

493.    The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof."

494.    Defendants' vaccine policy, on its face and as applied, violates Plaintiffs' First Amendment rights by interfering with Plaintiffs' free exercise of religion.

495.    Defendants' vaccine policy, on its face and as applied, is not generally applicable because as the Supreme Court recently reaffirmed, a policy that provides a "mechanism for individualized exemptions" is not generally applicable. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).

496.    Here, although rare, Defendants' vaccine orders and policies provide medical and religious exemptions on an individualized basis, and the Defendants maintain the right to extend exemptions in whole or in part or change their vaccine policy at any time. For this reason, the policies are not generally applicable. And as a result, the policy must survive strict scrutiny. *Id.* at 1881.

497.    Defendants' policy also violates the First Amendment because it denies a benefit or penalizes an employee for exercising a constitutional right. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).

498.    Defendants' vaccine policy fails strict scrutiny because it is not narrowly tailored to meet any compelling government interest. Assuming arguendo that potential, theoretical reduced virus transmission is a compelling government interest, then the vaccine policy is not narrowly tailored. There were less restrictive (and *more* effective) means for furthering the City's touted goal of "safety"—specifically, regular testing. As discussed in more detail above, before any of the Plaintiffs were terminated or subject to adverse employment action, the Defendants knew or should

1  have known that the CDC had published information establishing that the vaccines did not prevent

2  transmission of the virus.

3      499.    As a direct and proximate result of Defendants' violation of the First Amendment,

4  Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental

5  constitutional rights, entitling them to declaratory and injunctive relief.  Additionally, Plaintiffs are

6  entitled to nominal damages, compensatory damages in an amount to be proven at trial and attorneys'

7  fees under 42 U.S.C. § 1988.

8                                **COUNT SIXTEEN**

9      **VIOLATION OF THE FREE EXERCISE CLAUSE OF THE CALIFORNIA**

10                                **CONSTITUTION**

11                           **(Article 1, Section 4)**

12                     **(Religious Plaintiffs vs. All Defendants)**

13      500.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if

14  fully set forth herein.

15      501.    Article I, Section 4 of the California Constitution states, "Free exercise and enjoyment

16  of religion without discrimination or preference are guaranteed."

17      502.    "[T]he religion clauses of the California Constitution are read more broadly than their

18  counterparts in the federal Constitution."  *Carpenter v. City and County of San Francisco,* 93 F.3d

19  627, 629 (1996).

20      503.    The City's vaccine policy imposes a substantial burden on Plaintiffs' free exercise of

21  religion by forcing them to take a religiously objectionable vaccine or face punishment/termination

22  of their employment.  Additionally, there were less restrictive (and *more* effective) means for

23  furthering the City's touted goal of "safety"—specifically, regular testing.  Indeed, before the City

24  took adverse employment actions against any of the Plaintiffs, the City new or should have known

25  of the CDC information published regarding the vaccine failing to prevent transmission.  Thus, the

26  City knew or should have known that testing presented a viable, even a better option, for furthering

27  its purported "safety" goal.

28      504.    As  a  direct  and  proximate  result  of  Defendants'  violation  of  the  California

                                            162

1   Constitution, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their

2   fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

3   Plaintiffs are entitled to recover their costs and attorneys' fees under California Code of Civil

4   Procedure section 1021.5.

5                                    **PRAYER FOR RELIEF**

6        **WHEREFORE**, Plaintiffs pray for judgment against Defendants, awarding relief as

7   follows:

8        1.    Declare that CCSF violated Title VII, the ADA, and California state law for its failure

9              to provide a reasonable accommodation for Plaintiffs clearly articulated religious

10             beliefs and medical needs when numerous no-cost options were available;

11       2.    Declare that CCSF violated Title VII, the ADA and California state law by failing to

12             engage in the interactive process in response to Plaintiffs requests for

13             accommodations to the City's vaccine mandate and, instead, preemptively denied

14             those requests based on pretextual reasons;

15       3.    Declare that CCSF's disparate treatment of religious employees—in interrogating

16             those seeking religious accommodations in a bad faith attempt to undermine their

17             beliefs rather than determine reasonable accommodations—constitutes religious

18             discrimination in violation of Title VII and California state law;

19       4.    Declare that CCSF violated Title VII, the ADA, and California state law by retaliating

20             against Plaintiffs for engaging in protected activity through seeking religious and

21             medical accommodations;

22       5.    Declare that CCSF violated the ADA by treating each of the Plaintiffs as being

23             perpetually infected by a threatening virus, thus regarding them as disabled and

24             discriminating against them without justification;

25       6.    Declare that CCSF violated Plaintiffs' constitutional and statutory privacy rights by

26             disclosing their private medical information to non-authorized personnel and/or to the

27             general public.

28   / / /

7. Declare that CCSF violated Plaintiffs' constitutional rights to free exercise of religion by imposing the vaccine mandate upon them without satisfying the requisite constitutional standards.

8. Award Plaintiffs damages, including back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of CCSF's unlawful employment practices;

9. Award Plaintiffs damages necessary to make them whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial;

10. Award Plaintiffs reinstatement of employment;

11. Award reasonable attorneys' fees and costs; and

12. Grant any other relief that the Court deems just and proper;

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury on all counts so triable.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: March 7, 2025                By:    /s/ *Robert E. Weisenburger*
                                                    Charles S. LiMandri
                                                    Paul M. Jonna
                                                    Jeffrey M. Trissell
                                                    Robert E. Weisenburger

Dated: March 7, 2025                By:    /s/ *John C. Sullivan*
                                                    John C. Sullivan*
                                                    S|L LAW PLLC
                                                    610 Uptown Boulevard, Suite 2000
                                                    Cedar Hill, TX  75104
                                                    john.sullivan@the-sl-lawfirm.com

                                                    *pro hac vice

                                                    *Counsel for Plaintiffs*

FIRST AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

*Denise A. Debrunner, et al. v. The City and County of San Francisco*

**Case No. 22-cv-01587-JSW (Lead)**

**Case No.:  3:22-cv-07455-JSW (Debrunner)**

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

•     **JOINT STIPULATION FOR FILING FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 15(a)(2).**

I certify that one true and correct copy of the foregoing was served on each of the interested parties in this action, addressed as follows:

**\*\*SEE ATTACHED SERVICE LIST\*\***

_____ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business.  The envelope was sealed and placed for collection and mailing on this date following our ordinary practices.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed on March 7, 2025, at Rancho Santa Fe, California.

_____

Kathy Denworth

**SERVICE LIST**
*Keene, et al. v. CCSF, et al.*
**Case No. 22-cv-01587-JSW (Lead)**
**Denise A. Debrunner, et al. v. The City and County of San Francisco**
**Case No.:  4:22-cv-07455-JSW (Debrunner)**

**Ronn Bisbee**
Bisbee Law Group, PC
24040 Camino del Avion, Ste. E-109
Monarch Beach, CA 92629
Email: info@bisbeelawgroup.com

**Alyson Cabrera**
Vanessa Santellan
Meg Naizghi
Mana Koleini
Michael Bruno
Pamela Y Ng
GORDON & REESE
315 Pacific Avenue
San Francisco, CA 94111
Email: acabrera@grsm.com
Email: mdalton@gordonrees.com
Email: vsantellan@grsm.com
Email: mkoleini@grsm.com
Email: mbruno@grsm.com
Email: mnaizghi@grsm.com
Email: png@grsm.com
Email: vsantellan@grsm.com

**Peter Abraham Cownan**
Wayne Kessler Snodgrass
Office of the City Attorney
1390 Market Street
5th Floor
San Francisco, CA 94102
Email: Peter.Cownan@sfcityatty.org
Email: elizabeth.barnette@sfcityatty.org
Email: latricia.baltodano@sfcityatty.org
Email: sylvia.angelo@sfcityatty.org
Email: wayne.snodgrass@sfcityatty.org
Email:ecf-3c567f10a367@ecf.pacerpro.com
Email: holly.chin@sfcityatty.org
Email:pamela.cheeseborough@sfcityatty.org

**Russell Davis**
Pacific Justice Institute
29 Lakewood Avenue
San Francisco, CA 94127
Email: loanhound@sbcglobal.net
Email: rdavis@pji.org

**Peter Joseph Dean**
Law Offices of Peter J. Dean
P.O. Box 1566
Oakdale, CA 95361
Email: peterjd209@protonmail.com

**Heather Gwen Flick**
Heather Flick/Binnall Law Group
1537 Sage Canyon Rd.
Saint Helena, CA 94574-9628
Email: heatherflick@gmail.com

**Arkady Igor Itkin**
Law Office of A. Itkin
57 Post Street, Suite 812
San Francisco, CA 94104
Email: arkady@arkadylaw.com

**Milton Eugene Matchak**
Pacific Justice Institute
PO Box 280
Woodbridge, CA 95258
Email: mmatchak@pji.org

**Mary Cecilia McCann**
Binnall Law Group PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Email: mryccltherese@yahoo.com

**Matthew Brown McReynolds**
Pacific Justice Institute
P.O. Box 276600
Sacramento, CA 95827-6600
Email: mmcreynolds@pji.org
Email: mattmcreynolds@pji.org
**Emily Claire Mimnaugh**
Pacific Justice Institute
1580 Grand Point Way, Suite 33171
Reno, NV 89533
Email: emimnaugh@pji.org

**April Monegas**
2104 East Anderson Lane, Apt. 1513
Austin, TX 78752
Tel: (512) 522-8983
Email: plafm@tutanota.com

PRO SE

**Benjamin North**
Binnall Law Group
717 King St., Suite 300
Alexandria, VA 22314
Email: ben@binnall.com

**Kevin Trent Snider**
Pacific Justice Institute
P.O. Box 276600
Sacramento, CA 95827-6600
Email: ksnider@pji.org
Email: bgreen@pji.org

**John C. Sullivan**
SL Law PLLC
610 Uptown Blvd., Suite 2000
Cedar Hill, TX 75104
Email: john.sullivan@the-sl-lawfirm.com

**Hugo Nicolas Torbet**
1 Harbor Dr., Suite 300
Sausalito, CA 94965
Email: steadyrolling@gmail.com
Email: estelleyancey@yahoo.com
Email: amonegas@gmail.com.

**Estelle Christina Yancey**
668 Industrial Park, #4152
Manteca, CA 95337
Tel: (628) 888-4807
Email: estelleyancey@yahoo.com

**Jerome Clay**
5250 Claremont Avenue, Suite 221
Stockton, CA 95207
Email: jclay7@claylaw.net

**Sasha B. Dismuke**
Email: dismuke.sasha@gmail.com