UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SASHA B. DISMUKE,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 23-cv-06505-JSW<br>Lead Case No. 22-cv-1587-JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 198 |

Now before the Court is the motion filed by Defendants City and County of San Francisco ("City") and Lillian Chow, Katharine Hobin Porter, and Carol Isen ("Individual Defendants") to dismiss the First Amended Complaint ("Amended Complaint" or "FAC"). Plaintiff Sasha B. Dismuke ("Plaintiff"), appearing *pro se*, raises a constitutional challenge to the application of the City's policy enacted in June of 2021 mandating that all employees be vaccinated against COVID-19 (the "Policy") as well as the City's failure to grant her a religious exemption to the vaccine requirement.[1]

---

[1] The Court has related and provisionally consolidated 40 matters relating to the City's vaccination policy with lead case, *Keene v. City and County of San Francisco*, Case No. 22-cv-01587-JSW ("*Keene*").

The Court has considered the parties' papers, relevant legal authority, and the record in this case, and HEREBY GRANTS Defendants' motion to dismiss the Individual Defendants sued in their official capacities and DENIES the motion to dismiss Plaintiff's seventh cause of action for violation of the Free Exercise Clause of the First Amendment of the U.S. Constitution ("Free Exercise Clause").

**MOTION TO DISMISS INDIVIDUAL DEFENDANTS**

In their motion, the Individual Defendants move to dismiss all claims pending against them.  Plaintiff stipulates that the individuals should be dismissed from the case.  (Dkt. No. 17, Opp. Br. at 2:11-12.)  Accordingly, the Court GRANTS the Individual Defendants' motion to dismiss them from the case.

**MOTION TO DISMISS FREE EXERCISE OF RELIGION CAUSE OF ACTION**

In addition, the City moves to dismiss the cause of action for violation of the Free Exercise Clause pursuant to 42 U.S.C. § 1983.

**A.  Procedural Background.**

On December 18, 2023, Plaintiff filed a complaint alleging a total of eleven causes of action against all Defendants, including violation of Article I, Section 4 of the U.S. Constitution, breach of contract, negligence, and failure to pay wages in violation of California Labor Code §§ 201-203 and 206.  (Case No. 23-cv-06505-JSW, Dkt. No. 1; Complaint ¶¶ 184-216.)  On March 4, 2024, Defendants moved to dismiss Plaintiff's original complaint.  (*Keene*, Dkt. No. 193.)

On March 18, 2024, Plaintiff filed the operative complaint thereby mooting the motion to dismiss.  In her Amended Complaint, Plaintiff alleges only the remaining seven causes of action against all Defendants for: (1) failure to accommodate – religious discrimination pursuant to 42 U.S.C. § 2000E-2(a)(1) ("Title VII"); (2) religious discrimination – disparate treatment pursuant to Title VII; (3) retaliation pursuant to Title VII; (4) religious discrimination – failure to engage in

the interactive process pursuant to California Fair Employment and Housing Act, California Government Code § 12900 *et seq.* ("FEHA"); (5) religious discrimination – failure to accommodate pursuant to FEHA; (6) retaliation for religious claims pursuant to FEHA; and (7) violation of the Free Exercise Clause pursuant to 42 U.S.C. § 1983.  (Dkt. No. 11, FAC at ¶¶ 97-181.)

On March 20, 2024, Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim against the Individual Defendants and failure to state a claim for violation of the Free Exercise Clause.  While the present motion to dismiss has been ripe, the Court issued multiple orders in the related matters and received some instruction from the Ninth Circuit Court of Appeals on how to proceed.

**B.  Factual Background.**

According to the allegations contained in Plaintiff's Amended Complaint, "[o]n Wednesday, June 23, 2021, the City issued a 'COVID-19 Vaccination Policy' requiring that all employees be vaccinated against" the virus.  (FAC ¶ 19.)[2]  Plaintiff alleges the City's Policy coincided with the U.S. Food and Drug Administration ("FDA")'s approval "of any COVID-19 vaccine."  (*Id.*)[3]

During all times relevant to the City's Policy and its subsequent revisions, "Plaintiff has been a follower of Christ with the Evangelical Christian denomination."  (*Id*. at ¶ 15.)  Plaintiff

---

[2] The Court's recitation of the factual background of this matter is based on the facts as alleged in Plaintiff's Amended Complaint, staying true to her timeline while condensing it for the sake of brevity.

[3] Although the Court is compelled to regard the facts as alleged in the complaint as true at this procedural stage, the Court notes that the first COVID-19 vaccine approved for emergency use in the United States was on December 11, 2020.  (https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine)  The vaccine developed to use against subsequent prevalent variants of the virus was approved by the FDA for full use on August 23, 2021.  Then-Acting Commissioner of the FDA, Janet Woodcock, M.D., stated that the "FDA's approval of this vaccine is a milestone as we continue to battle the COVID-19 pandemic."  (*Id.*)

United States District Court
Northern District of California

United States District Court
Northern District of California

alleges that her "sincerely held religious beliefs prohibit her from being injected with any of the COVID-19 vaccinations drugs as they include and/or were tested with/on aborted fetal cell lines." (*Id.*)

Beginning on May 28, 2021, Plaintiff applied for, was interviewed, and thereafter was hired by the City as a civil service 8151 Investigator with the Office of the City Attorney of San Francisco.  (*Id.* at ¶¶ 7, 16, 41.)  Plaintiff was a resident of Los Angeles at the time of her offer and formal acceptance of the position on Friday, August 13, 2021.  (*Id.* at ¶ 7.)  On Sunday, September 5, 2021, Plaintiff re-located to San Francisco.  Two days later, the following Tuesday, September 7, 2021, she began her employment with the City.  (*Id.*)

Plaintiff alleges that she was not informed of the City's vaccine requirement during her various interviews and interactions related to acquiring the position.  (*Id.* at ¶¶ 18, 21, 23, 25.)  Plaintiff also alleges that after she received a tentative offer of employment on July 30, 2021, she traveled to the San Francisco office in person, received a tour, had coffee with supervisors, got fingerprinted, and filled out paperwork necessary to conduct a background check.  Throughout this visit, "there was no mention of a vaccine requirement."  (*Id.* at ¶¶ 28-33.)

Plaintiff alleges that the first mention of the City's vaccine requirement was on August 10, 2021, three days before she accepted the position.  Plaintiff received an email from Human Resources Manager Lillian Chow ("HR") attaching the City's Policy and "which stated, in summation, that all City employees who worked in 'high-risk' areas must be vaccinated by September 15, 2021, and remaining employees by November 1, 2021 – unless exempted."  (*Id.* at ¶ 34.)  The same email indicated that "adherence to the policy was a condition of employment." (*Id.* at ¶ 35.)  The following day, on August 11, 2021, Plaintiff inquired whether her position fell under the "high risk" category.  HR responded that it appeared it would not, at least in the short term.  (*Id.* at ¶¶ 36, 37.)  Plaintiff's official offer letter then arrived by email on August 12, 2021, and detailed the "position title, duties, and salary; there was no mention of a vaccine requirement."

(*Id.* at ¶ 38.)  The following day, Plaintiff accepted the offer.  (*Id.* at ¶ 39.)

On her first day of employment on September 7, 2021, Plaintiff disclosed her vaccination status in writing in her official onboarding documents and orally communicated to HR her intention to seek an accommodation to the City's Policy.  (*Id.* at ¶ 42.)  Two days later, on September 9, 2021, HR called Plaintiff and explicitly recognized that Plaintiff was not vaccinated and indicated that vaccination was a condition of employment.  (*Id.* at ¶¶ 44, 45.)  When HR asked about what kind of exemption Plaintiff sought to the vaccination requirement, Plaintiff explained that she would be seeking a religious accommodation.[4]  (*Id.* at ¶¶ 47, 48.)  After receiving the City's standard form provided to employees seeking any accommodation, on September 14, 2021, Plaintiff submitted her formal written request for a religious exemption accompanied by "an affidavit from a pastor who is a close family friend."  (*Id.* at ¶¶ 49-51.)  HR responded to Plaintiff's accommodation request with a set of questions, explaining that "[t]he office needs further information in order to determine whether [her] request demonstrates a sincere religious belief that prohibits [her] from receiving one of the Covid-19 vaccination [*sic*]."  (*Id.* at ¶ 52.)  The request for further information in the questionnaire related to topics such as Plaintiff's length of membership in her church, her own substantive beliefs that prohibit vaccinations, as well as her and her children's history of taking other vaccines and medicines "developed using the same type of technology used in the development of Covid-19 vaccines, including Tylenol, Pepto Bismol, aspirin [and other medications]."  (*Id.* at ¶¶ 52(1)-(7).)

Plaintiff questioned why the City required more information about her religious accommodation request.  (*Id.* at ¶ 53.)  In response, HR indicated that, "aligned with state and federal laws," the "City's policy regarding exemption from the Covid-19 vaccination requirement

---

[4] The City's Policy also permitted employees to seek a medical accommodation to its vaccine requirement.  (FAC at ¶ 138.)

requires the department to engage in the interactive process to determine" whether Plaintiff had stated a "sincere religious belief" and whether the department could "reasonably accommodate" Plaintiff in her position.  (*Id.* at ¶ 54.)  HR indicated that although Plaintiff stated that she "provided sufficient information for a religious exemption, the department [was] unable to make that determination based on the information [Plaintiff had] supplied to date."  (*Id.*)  On Sunday, September 26, 2021, Plaintiff responded that she found the City's "medical questions to be intrusive, legally irrelevant, and violative of her privacy rights under the Health Insurance Portability and Accountability Action" and objected to answering the entire questionnaire "based on her belief that those questions violated her right to privacy."  (*Id.* at ¶ 55.)

From the start of her employment on September 7, 2021, through the month of October 2021, when in-office, Plaintiff alleges that she performed a COVID-19 symptoms check which she reported to her manager, wore a well-fitted mask, sanitized her office, and kept her door closed every day.  (*Id.* at ¶¶ 56-59.)  On Monday, September 27, 2021, Plaintiff received an email as well as a written letter from the City indicating that "if she did not have an accommodation approved by October 18, 2021, she would be released from employment if she was not fully vaccinated."  (*Id.* at ¶¶ 60, 61.)  Plaintiff alleges that HR did not schedule a meeting with her to reach an accommodation and "threatened to label Plaintiff as 'insincere' if Plaintiff failed to respond to the medical" inquiries in the questionnaire.  (*Id.* at ¶¶ 62, 63.)

On Monday, October 18, 2021, after receiving no response to the questionnaire, HR emailed Plaintiff a "determination letter" denying Plaintiff's request for religious accommodation.  (*Id.* at ¶ 64.)  The letter explained that Plaintiff's documentation was "'insufficient to show a conflict between [*sic*] vaccination requirement and sincerely held religious practice, belief, or observance' despite Plaintiff providing in-depth explanations and analysis for her position of faith."  (*Id.*)  On the following Saturday, October 23, 2021, Plaintiff reached out to HR to set up a teleconference at the earliest convenience.  Two business days later, on Tuesday, October 26,

2021, HR and Plaintiff met via virtual video where "Plaintiff reported feeling bullied, harassed, threatened, and believed the City's overall intent was to intimidate and discourage Plaintiff from seeking a reasonable religious accommodation." (*Id.* at ¶¶ 65, 66.) Plaintiff contends that although she understood that everyone seeking a religious exemption from the City's Policy faced the same questions, this "did not negate the fact that the questionnaire along with the entire 'interactive process' was a form of bullying, harassment, and intended to intimidate and discourage such employees from seeking reasonable religious accommodations." (*Id.* at ¶¶ 68-72.) Plaintiff alleges that HR indicated that they "believed Plaintiff to be sincere but could not make any 'exceptions' to the medical questionnaire" as it was "appropriate" under HR's framework for assessing accommodations to the Policy. (*Id.* at ¶ 73.)

Plaintiff further alleges that on October 8, 2021, she was told she would not receive the religious exemption she sought and "would be released from employment on October 18, 2021 – as the City letters stated – and subsequently, Plaintiff had already made arrangements to move back to Los Angeles to be with family and scheduled a doctor's appointments [*sic*] to address the stress incurred from the harassment and bullying of the City." (*Id.* at ¶ 76.) Plaintiff arrived at the office on Monday, October 18, 2021, "with her badge, laptop, and all other items belonging to the City" yet received no communication during the day from HR or any other management personnel "as it related to termination." (*Id.* at ¶ 75.) "Plaintiff reported feelings of frustration and stress" during this time even as she did not discuss the accommodation process with her concerned co-workers. (*Id.* at ¶¶ 77, 78.) Plaintiff further avers that "she felt it was cruel and insulting of the City to continue to drag out her release of employment by formally denying her accommodation on the evening of October 18, 2021 (as opposed to the morning of)." (*Id.* at ¶ 79.) HR stated that Plaintiff's release date would be the following day while "still urging the [*sic*] Plaintiff to get vaccinated if she wanted to remain employed by the City." (*Id.*) "Even more gruesome," Plaintiff alleges, "the City allowed Plaintiff to take on more work, assigned her to join a complex case, and

United States District Court
Northern District of California

subsequently forced her to continue to serve the City 'with a smile' even though [HR] had clearly informed Plaintiff that her accommodation was denied, and she would be terminated sooner than later." (*Id.*)

Although HR offered to release her that same day, Plaintiff repeated that she would "not forfeit her core beliefs with vaccination" and "there was no need to wait a week for the inevitable." (*Id.* at ¶¶ 80, 81). On November 1, 2021, after nearly two months of employment, Plaintiff was terminated from the City following a decision to deny her accommodation to the Policy based on her religious beliefs. (*Id.* at ¶ 79.)

After exhausting her administrative remedies, Plaintiff filed suit in this Court. The Court shall address any additional, specific facts as necessary in its analysis.

**C. Motion to Dismiss Standards.**

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient non-conclusory factual allegations to state a claim that is "plausible on it face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires that the plaintiff plead facts that "allow[] the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* A complaint need not contain "detailed factual allegations," but a pleading that offers merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is not sufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). The court must accept all allegations of material fact as true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

///

///

///

8

**D.  Free Exercise Clause Jurisprudence.**

The Free Exercise Clause of the First Amendment states that "Congress shall make no law … prohibiting free exercise [of religion]." U.S. Const. amend I.  The Clause is applicable to the States under the terms of the Fourteenth Amendment.  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Id.*  The Free Exercise Clause "is a natural outgrowth of the framers' distrust of government attempts to regulate religion and suppress dissent." *Kennedy v. Bremerton Sch. Distr.*, 597 U.S. 507, 524 (2022).  "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714 (1981); *see also Keene v. City and County of San Francisco*, Case No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023).

Laws that incidentally burden religion are "ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (citations omitted).  If a rule is both neutral and generally applicable, it is then subject to rational basis review which requires that government action be "rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Wiseman*, 794 F.3d 1064, 1084 (9th Cir. 2015).  If, however, a rule is either not neutral or not generally applicable, then it is subject to strict scrutiny and must be "narrowly tailored" to serve a "compelling" state interest.  *Kennedy*, 597 U.S. at 525.

Here, the Court analyzes the City's Policy which required all City employees who worked in "high-risk" areas to be vaccinated against COVID-19 by September 15, 2021, and all remaining employees by November 1, 2021, separately from the exemption process ("Exemption Process") by which Plaintiff was refused accommodation and ultimately terminated from employment.

"This aligns with multiple circuit and district courts who have analyzed COVID-19 vaccine policies with exemptions and accommodation in this manner." *UnifySCC v. Cody*¸ Case No. 22-cv-01019-BLF, 2022 WL 2357068, at *5 (N.D. Cal. June 30, 2022) (listing cases). The Free Exercise Clause "does not require religious exemptions to vaccine mandates." *Lynch v. Dep't of Educ. of City of New York*¸ Case No. 24-cv-7795-DG(JAM), --- F. Supp. 3d ---, 2026 WL 607650, at *10 (E.D.N.Y. Mar. 4, 2026) (citing *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 287-88 (2d Cir. 2021)). If, however, "a government entity chooses to offer exemptions to vaccine mandates, it must do so in a non-discriminatory way." *Id.* (citing Case No. 23-cv-8986-DEH, *Chinchilla v. N.Y.C. Police Dep't*, 2024 WL 3400526, at *3 (S.D.N.Y. July 12, 2024)).

In her Amended Complaint, Plaintiff does not raise a facial challenge to the Policy itself. In fact, Plaintiff concedes that she "is informed and believes that … the City's vaccine policy was on its face constitutional because it stated that employees may request exemptions[.]" (FAC at ¶ 178.) Plaintiff states that "Defendants' COVID-19 vaccination policy appears to adhere to the U.S. Constitution's Free Exercise Clause under the First Amendment because it explains that all employees are free to request accommodations[.]" (*Id.* at ¶ 180.) However, for the sake of completeness, the Court shall address a constitutional challenge to the Policy on its face.

A "law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). "For a facial challenge, 'we consider only the text of the [Policy], not its application.'" *Bacon v. Woodward*¸ Case No. 22-35611, 2024 WL 3041850, at *1 (9th Cir. June 18, 2024) (citing *Calvary Chapel Bible Fellowship v. Cnty. of Riverside*, 948 F.3d 1172, 1176 (9th Cir. 2020)). Here, as in *Bacon* and as Plaintiff herself concedes¸ the Policy itself appears to be facially neutral. There is no question that, "[d]uring the relevant timeframe, the Supreme Court found that '[s]temming the spread of COVID-19 is unquestionably a compelling interest.'" *Id.* (citing *Roman Cath. Diocese*

10

*of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020)).  The stemming of the spread of COVID-19 was also within police powers allocated to the States.  *See e.g., Doescher v. Pan*, Case No. 23-cv-02995-KJM, 2025 WL 1705012, at *2 (E.D. Cal. June 18, 2025) (appeal pending, Case No. 25-4531) (citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in which the Supreme Court upheld a Massachusetts smallpox vaccination law by finding that the States' police power enabled them to pass "reasonable regulations" to "protect the public health and public safety.").  Accordingly, the City's Policy requiring vaccination of its high-risk workers was within their police powers and was rationally related to a compelling interest.  The Policy would pass constitutional muster on a facial challenge.

Here, however, the Policy provided for exemptions to those with opposing sincerely held religious beliefs as well as those with medical concerns.  Plaintiff states that she is a "follower of Christ associated with the Evangelical Christian denomination."  (FAC at ¶¶ 15, 175.)  Plaintiff further alleges that her sincerely held religious beliefs prohibit her from being injected with any of the COVID-19 vaccination drugs as they include, and/or were tested, on fetal cell lines.  (*Id.* at ¶¶ 15, 103, 171.)

Plaintiff's cause of action for violation of the Free Exercise Clause presents a challenge to the City's Exemption Process as-applied.  Plaintiff claims that the City's application of the Exemption Process is unconstitutional because "it actually deprives employees of their fundamental right of religious freedom in the workplace and penalizes employees with termination for exercising their constitutional right once an employee submits their request for accommodation."  (*Id.* at ¶ 180.)  Plaintiff claims the Exemption Process framework as applied was unconstitutional "because the City intentionally harassed, bullied, threatened, intimidated, deterred and ultimately terminated employees who sought such [religious] exemptions."  (*Id.* at ¶ 178.)

In particular, Plaintiff challenges the framework by the HR Department to

> deny any request involving the religious stance against aborted fetal cell lines as it may not be considered a "qualifying religious belief" which is a known tenet of the Christian faith. Specifically, this categorization of beliefs has long-standing ties to many denominations of the Christian faith including, but not limited to, Evangelical Christians and Catholics … the sincere religious stance against abortion encompasses scientific use of including actual aborted fetal cell lines and the scientific testing on aborted fetuses in general.

(*Id.*)

In her as-applied constitutional challenge to the Exemption Process, Plaintiff claims that HR intentionally isolated her and "directly impeded Plaintiff's ability to freely exercise her belief in the workplace as her request for accommodation was immediately treated as insincere and the information she provided [both to the questionnaire required of all workers seeking a religious exemption and to HR] was intentionally mislabeled as 'insufficient.'" (*Id.* at ¶ 179.) In opposition to the present motion to dismiss, Plaintiff argues that the City "continued to urge Plaintiff to submit to vaccination to keep her job as the religious information Plaintiff submitted was deemed 'insufficient' because according to [the City's] guidance, Plaintiff's stance against abortion would not be recognized as a qualifying religious belief under the City's policy." (Opp. at 4:14-17.) She further contends that the City's Exemption Process "had a coercive effect on Plaintiff's ability to exercise her religious beliefs as a City employee because Plaintiff's only option was to either deny her conscious [*sic*] and forfeit her sincerely held beliefs by receiving the COVID-19 injection or be terminated." (*Id.* at 4:20-23.)

An as-applied challenge under the Free Exercise Clause requires analysis of the facts of a particular case to determine whether the application of a statute or rule, even one that is constitutional on its face, actually deprived the individual to whom it was applied of a protected right. *See Lynch*, 2026 WL 607650, at *9. Here, Plaintiff alleges that she availed herself of the City's Exemption Process and was not granted a religious exemption based on her beliefs as a

12

United States District Court
Northern District of California

Christian.  (FAC ¶¶ 7, 34-76.)  At this threshold procedural posture, the Court must accept all Plaintiff's allegations of fact as true and construe them in the light most favorable to her.  *See Cousins*, 568 F.3d at 1067; *see also* Opp. at 4:24-25 (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ("the issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.").  The Court is familiar with the facts as alleged by Plaintiff and as detailed in this order.  This factual material is the stuff of summary judgment.

Accordingly, Plaintiff's cause of action for an as-applied challenge to the City's Exemption Process survives Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the Individual Defendants and DENIES Defendants' motion to dismiss Plaintiff's seventh cause of action for violation of the First Amendment pursuant to 42 U.S.C. § 1983.

**IT IS SO ORDERED.**

Dated: March 17, 2026

_____
JEFFREY S. WHITE
United States District Judge